# 24-961

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

ZIXIAO GARY WANG, CAROLINE ELLISON, NISHAD SINGH, RYAN SALAME,

*Defendants,*

FTX TRADING LTD., WEST REALM SHIRES INC,
ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD.,

*Intervenors,*

SAMUEL BANKMAN-FRIED, AKA SEALED DEFENDANT 1,

*Defendant-Appellant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SPECIAL APPENDIX FOR DEFENDANT-APPELLANT

ALEXANDRA A.E. SHAPIRO
THEODORE SAMPSELL-JONES
JASON A. DRISCOLL
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas,
  17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

PAGE

Order Denying Bankman-Fried's Discovery Motion,
dated June 15, 2023 (Dkt. 165) .................................... SPA-1

Order Denying Bankman-Fried's Discovery Motion,
dated June 23, 2023 (Dkt. 166) ................................... SPA-2

Memorandum Opinion Denying Bankman-Fried's Motion to Dismiss,
dated June 29, 2023 (Dkt. 170) ................................... SPA-3

Scheduling Order Requiring Defense to Provide Notice of Advice-of-
Counsel Defense, dated July 1, 2023 (Dkt. 173) ................. SPA-44

Memorandum And Order On In Limine Motions,
dated September 26, 2023 (Dkt. 289) ........................... SPA-46

Memorandum Opinion Re Advice-Of-Counsel Defense,
dated October 1, 2023 (Dkt. 305) ............................... SPA-62

Memorandum Endorsement Denying Bankman-Fried's Request For
Reconsideration, dated October 11, 2023 (Dkt. 320) ............. SPA-72

Order Granting Government's Motion To Preclude Bankman-Fried
From Introducing Evidence About Value Of Investments,
dated October 16, 2023 (Dkt. 324).............................. SPA-74

Memorandum Opinion Excluding Testimony Concerning The
Involvement Of Counsel, dated February 7, 2024 (Dkt. 398) ..... SPA-75

Preliminary Order of Forfeiture/Money Judgment,
entered March 29, 2024 (Dkt. 423) ............................ SPA-88

Judgment, entered March 29, 2024 (Dkt. 424) ....................... SPA-96

Significant Rules of Law ........................................... SPA-103

**SPA-1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6 - 15 - 2023
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-

                                                S5 22-cr-0673 (LAK)

SAMUEL BANKMAN-FRIED,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        1.    The government has requested a specialty waiver from The Bahamas with respect to the prosecution of the defendant on charges first interposed after the date of defendant's extradition, specifically Counts Four, Six, Nine, Ten and Thirteen of the Fifth Superseding Indictment. In view of the uncertainty of when The Bahamas will render a decision on that request, the government has requested that those counts be severed and scheduled for separate trial from the trial of the pre-extradition charges. Accordingly, Counts Four, Six, Nine, Ten and Thirteen of the Fifth Superseding Indictment are severed and scheduled for trial, unless otherwise ordered, commencing on March 11, 2024.

        2.    For reasons, and subject to the qualifications, stated on the record in open court, defendant's Pretrial Motion Nos. 5 and 6 (set forth in Dkt 136) are denied.

        3.    Pretrial Motion No. 7 is denied as premature.

SO ORDERED.

Dated:     June 15, 2023

                                                    Lewis A. Kaplan
                                    United States District Judge

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/23/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-                                S5 22-cr-0673 (LAK)

SAMUEL BANKMAN-FRIED,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        The defendant moves to compel the government pursuant to Rule 16 of the Federal Rules of Criminal Procedure to produce documents responsive to a subpoena attached as Exhibit A to Dkt 151-1 (the "Subpoena") or, in the alternative, for an order under Rule 17(c)(1) of the Federal Rules of Criminal Procedure authorizing his counsel to issue the Subpoena to the law firm of Fenwick & West LLP ("Fenwick") directing Fenwick to produce these same documents to the defense. (Dkt 150)

        Substantially for the reasons set forth in the government's opposition brief (Dkt 156), the defendant's motion is denied. Neither Fenwick nor the FTX Debtors[1] are part of the "prosecution team," and the government has no obligation to produce materials that are not within its possession, custody, or control. Furthermore, the defendant's proposed subpoena, if enforced, would serve as a fishing expedition and does not meet the specificity, relevance, and admissibility requirements set forth in *United States v. Nixon*, 418 U.S. 683 (1974).

        The FTX Debtors' motion for a protective order (Dkt 163) is denied as moot. The clerk is directed to close Dkts 150 and 163.

        SO ORDERED.

Dated:       June 23, 2023

                                /s/ Lewis A. Kaplan
                                    Lewis A. Kaplan
                            United States District Judge

---

[1]    The "FTX Debtors" include intervenors FTX Trading Ltd., West Realm Shires Inc., Alameda Research LLC, Alameda Research LTD and their subsidiaries and affiliates.

**SPA-3**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/29/2023__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,


        -against-                                  22-cr-0673 (LAK)


SAMUEL BANKMAN-FRIED,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### MEMORANDUM OPINION
### (Corrected)[1]


        Appearances:

                Danielle R. Sassoon
                Samuel Raymond
                Thane Rehn
                Nicolas Roos
                Danielle Marie Kudla
                Assistant United States Attorneys
                Jil Simon
                Trial Attorney
                DAMIAN WILLIAMS
                UNITED STATES ATTORNEY

                Mark Stewart Cohen
                Christian R. Everdell
                S. Gale Dick
                Sri K. Kuehnlenz
                COHEN & GRESSER LLP
                *Attorneys for Defendant*

---

[1]      This Corrected Memorandum Opinion corrects only the first line of page 18 of the Memorandum Opinion (Dkt 167), substituting the word "indictment" for "defendant."

**SPA-4**

2

LEWIS A. KAPLAN, *District Judge.*

Defendant Samuel Bankman-Fried is charged in a thirteen-count superseding indictment with perpetrating an alleged multi-billion-dollar fraud relating to his operation of cryptocurrency companies that he founded and controlled.[2]  The matter is before the Court on the defendant's pretrial motions to dismiss or, in the alternative, to sever certain counts, as well as for additional discovery, a bill of particulars, and pretrial disclosures.  (Dkt 136)  For the reasons that follow, the defendant's motions are denied.

*Background*

I.      *Facts*

In evaluating a motion to dismiss, the Court "accept[s] as true all of the allegations of the indictment."[3]  The following facts are drawn from the superseding indictment filed March 28, 2023 (the "S5 Indictment").

In November 2017, the defendant founded Alameda Research ("Alameda"), a quantitative cryptocurrency trading firm incorporated in Delaware, which had operations in the United States, Hong Kong, and The Bahamas.[4]  He served as CEO of Alameda from its founding until October 2021, at which time he passed the title to two Alameda employees but remained

---

[2]     *See* Dkt 115, at ¶ 1 (hereinafter "S5 Indictment").

[3]     *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

[4]     S5 Indictment ¶ 10.

**SPA-5**

3

Alameda's "ultimate decisionmaker" until it filed for bankruptcy in November 2022.[5]  Throughout the relevant period, he was one of two equity owners of the company.

In May 2019, while still the CEO of Alameda, the defendant founded and installed himself as CEO of FTX.com ("FTX"), a global cryptocurrency exchange that offered customers the ability to trade in cryptocurrencies and crypto derivatives, among other crypto assets.[6]  He remained CEO of FTX until the company filed for bankruptcy in November 2022.[7]

From 2019 until 2022, both Alameda and FTX grew exponentially and with them grew the defendant's public profile, political influence, and personal fortune.[8]  By 2020, FTX already had become one of the largest digital asset exchanges in the world and Alameda accounted for "roughly 5% of global volume" in digital asset trading.[9]  By 2022, FTX claimed to handle approximately $15 billion in daily trading volume on its platforms.[10]  As the two companies evolved so too did their relationship with one another, with FTX describing Alameda as the "largest liquidity provider and market maker" in the digital asset space.[11]

The defendant promoted his companies as "trustworthy and law-abiding" and assured

---

[5]    *Id.*

[6]    *Id.* ¶ 11.

[7]    *Id.* ¶ 62.

[8]    *Id.* ¶ 2.

[9]    *Id.* ¶ 10.

[10]    *Id.* ¶ 12.

[11]    *Id.* ¶ 10.

**SPA-6**

4

the public that the relationship between FTX and Alameda was entirely above board.[12]  As early as July 2019, two months after FTX was founded, the defendant publicly stated that although Alameda was a liquidity provider on FTX, "their account [was] just like everyone else's."[13]  He made similar public representations through and until November 2022, stating, for example, that "[t]here are no parties that have privileged access" on FTX, and that "Alameda is a wholly separate entity."[14]

The government claims that, in reality, the defendant "[e]xploit[ed] the trust that FTX customers placed in him and his exchange."[15]  Specifically, the government alleges that he "stole FTX customer deposits[] and used billions of dollars in stolen funds for a variety of purposes, including, among other things, to support the operations and investments of FTX and Alameda; to fund speculative venture investments; to make charitable contributions; and to enrich himself."[16]  Moreover, the government alleges that he engaged in corrupt practices to advance his fraudulent schemes, including attempting to influence federal cryptocurrency regulation via tens of millions of dollars in illegal campaign contributions and conspiring to bribe one or more Chinese government officials.[17]  Ultimately, the alleged multi-billion-dollar fraud victimized FTX's customers and

---

[12]     *See id.* ¶ 2.

[13]     *Id.* ¶ 24.

[14]     *Id.*

[15]     *Id.* ¶ 1.

[16]     *Id.*

[17]     *Id.*

5

investors, Alameda's lenders, financial institutions, and the Federal Election Commission ("FEC").[18]

The defendant's crypto empire collapsed in November 2022 when an internet news organization leaked what appeared to be a copy of Alameda's balance sheet.  The leaked document revealed that Alameda's solvency was dependent on a multi-billion-dollar valuation that Alameda assigned to its holdings of "FTT," FTX's proprietary digital currency, which was illiquid and difficult to value.  This revelation triggered what was essentially a bank run, as FTX customers hurriedly sought to withdraw their funds from the FTX exchange.[19]  After several failed attempts to reassure the public and to secure sufficient liquid capital to satisfy customer withdrawals, the defendant resigned from FTX on November 11, 2022, and FTX and Alameda filed for Chapter 11 bankruptcy protection.[20]

## II.     Prior Proceedings

On December 9, 2022, the defendant was charged in the original eight-count indictment, which alleged a wide-ranging fraud on FTX's customers and investors and on Alameda's lenders.  That indictment accused him of wire fraud and conspiracy to commit wire fraud against FTX's customers, wire fraud and conspiracy to commit wire fraud against Alameda's lenders, and conspiracies to commit commodities fraud, securities fraud, money laundering, and

---

[18]     *Id.* ¶¶ 1, 4.

[19]     *Id.* ¶ 7.

[20]     *Id.* ¶¶ 7-9, 62.

**SPA-8**

6

violations of the federal campaign finance laws.[21]

On December 10, 2022, the United States provided The Bahamas with a diplomatic note, attaching an arrest warrant issued in this district for arrest of the defendant.  Both the diplomatic note and the arrest warrant listed the eight counts with which the defendant had been charged in the original indictment.[22]

On December 12, 2022, the Royal Bahamas Police Force arrested the defendant on the provisional arrest warrant.[23]  He was detained in The Bahamas until, "having considered the charges set out in the . . . [d]iplomatic [n]ote and arrest warrant," he consented to extradition on December 20, 2022.[24]  The next day, the defendant appeared in a Bahamian court to enter his consent to extradition, which the Bahamian judge accepted and ordered him detained for extradition on the counts set forth in the United States' diplomatic note.[25]  After the court proceeding, the Bahamian Minister of Foreign Affairs executed a warrant of surrender of the defendant whereupon he was taken into U.S. custody.[26]  The warrant of surrender listed seven of the eight charges in the original indictment, but omitted the charge for conspiracy to violate the campaign finance laws.[27]

---

[21]

Dkt 1, at 1-12.

[22]

*See* Dkt 137-1, at 5-6, 13.

[23]

Dkt 4, at 1.

[24]

Dkt 137-1, at 3.

[25]

*See* Dkt 137-4, at 10-11.

[26]

Dkt 137-2, at 2-3; Dkt 36, at 2.

[27]

Dkt 137-2, at 2-3.

SPA-9

7

On December 22, 2022, the defendant was arraigned on the original indictment before Magistrate Judge Gorenstein.  Since then, the government has superseded the original indictment twice with respect to the defendant, the first time on February 23, 2023 (the "S3 Indictment") and the second on March 28, 2023 (the "S5 Indictment").[28]  The S3 Indictment added four charges to those already contained in the original eight-count indictment: a substantive commodities fraud count, a substantive securities fraud count, a bank fraud conspiracy count, and an unlicensed money transmitting conspiracy count.[29]  The S5 Indictment added a count for conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"), yielding a total of thirteen counts in the operative indictment.[30]

On May 8, 2023, the defendant filed seven pretrial motions, set forth in Dkt 136, to dismiss Counts One through Four, Seven through Ten, and Twelve and Thirteen in the S5 Indictment, or in the alternative, to sever Counts Twelve and Thirteen, as well as for additional discovery, a bill of particulars, and pretrial disclosures.[31]  Among the motions was one seeking dismissal of the counts added by the two superseding indictments, as well as the campaign finance charge omitted from the defendant's warrant of surrender issued in The Bahamas, on the basis of the rule of specialty, a doctrine of international law that, broadly speaking, restricts a nation that obtains a defendant by extradition from a requested state to trying the defendant only on the charges

---

[28]

Dkt 80 (S3 Indictment); Dkt 115 (S5 Indictment).

[29]

*See* S3 Indictment ¶¶ 67-68, 73-74, 80-86.

[30]

S5 Indictment ¶¶ 102-05.

[31]

*See* Dkts 136-145.

8

on which extradition was sought.  The defendant contends that dismissal of those counts is appropriate because they were not bases upon which he was extradited from The Bahamas.  The motions are fully briefed.[32]

In his reply brief, the defendant for the first time sought an alternative remedy for the alleged rule of speciality violations:  severance of the post-extradition charges as well as the campaign finance charge.[33]  By letter dated June 14, 2023, the government consented to discretionary severance of the post-extradition charges, but not the campaign finance charge, under Federal Rule of Criminal Procedure 14.[34]

On June 15, 2023, the Court heard oral argument on the motions and subsequently issued an order denying Pretrial Motion Nos. 5, 6, and 7 and severing the post-extradition charges – Counts Four, Six, Nine, Ten, and Thirteen of the S5 Indictment.  For the reasons set forth below, the defendant's remaining pretrial motions are denied either as moot or on the merits.

*Discussion*

I.    *Rule of Specialty*

The defendant moves to dismiss the post-extradition charges (Counts Four, Six, Nine, Ten, and Thirteen) and the campaign finance charge (Count Twelve, and collectively, the "At-Issue Charges") because they allegedly were charged in a manner that violates the "rule of specialty" codified in Article 14 of the "Extradition Treaty between the Government of the Commonwealth of

---

[32]    *See* Dkts 148-149 (Gov't Opp. Brs.); Dkt 158 (Def.'s Reply Br.).

[33]    Dkt 158, 25-28.

[34]    Dkt 162, at 1-2.

**SPA-11**

9

The Bahamas and the Government of The United States of America," signed March 9, 1990 (the "Extradition Treaty").[35]  In the alternative, he moves to sever those counts pursuant to Federal Rule of Criminal Procedure 14 and for an order requiring the government to produce all diplomatic correspondence and notes relating to his extradition.[36]

> A.     *Motion to Dismiss At-Issue Charges*

The rule of specialty "generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country."[37]  Moreover, a defendant that is extradited pursuant to an extradition treaty "can only be tried for one of the offences described in th[e] treaty [under which he is extradited], and for the offence with which he is charged in the proceedings for his extradition."[38]  "As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused."[39]  Consequently, an extraditee lacks standing to seek relief for noncompliance with an extradition treaty "unless the treaty [contains] language indicating that the intent of the treaty drafters' was that such benefits could be vindicated through private

---

[35]

    *See* Dkt 139.

[36]

    *See id.*, at 31-32; Dkt 158, at 25-28.

[37]

    *United States v. Baez*, 349 F.3d 90, 92 (2d Cir. 2003).

[38]

    *United States v. Barinas*, 865 F.3d 99, 104 (2d Cir. 2017) (quoting *United States v. Rauscher*, 119 U.S. 407, 430 (1886)).

[39]

    *Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973).

enforcement."[40]

In the present case, the Extradition Treaty provides in relevant part that an extradited defendant "may only be detained, tried, or punished in the Requesting State for the offense for which extradition was granted, or . . . any offense in response of which the executive authority of the Requested State, in accordance with its laws, has consented to the person's detention, trial, or punishment . . . ."[41]  This language is substantially similar to the U.S.-Dominican Republic extradition treaty at issue in *United States v. Barinas*, which provided that "No person[] shall be tried for any crime or offence other than that for which he was surrendered."[42]  There, the Second Circuit held that the rule of specialty could be invoked only by the Dominican Republic because the extradition treaty "[did] not state that [the] provision [could] be enforced by an individual," and there was "no language indicating that the Dominican Republic and the United States intended the Treaty to be enforceable by individual defendants."[43]

*Barinas* is dispositive.  The Extradition Treaty here at issue does not provide that it may be enforced by an individual.  Nor is there any language indicating that The Bahamas and the United States intended it to be so enforceable.  Accordingly, under the Second Circuit's binding

---

[40]

> *Barinas*, 865 F.3d at 105 (quoting *United States v. Garavito-Garcia*, 827 F.3d 242, 247 (2d Cir. 2016)) (internal quotation marks omitted); *see also id.* (internal citations and quotation marks omitted) ("Absent an express provision in the agreement between the states, any individual rights are only derivative through the states, and absent protest or objection by the offended sovereign, a defendant has no standing to raise the violation of international law.").

[41]

> Dkt 137-2, at 21-22.

[42]

> *Barinas*, 865 F.3d at 105 (quoting Convention Between the United States and the Dominican Republic for the Extradition of Criminals, June 19, 1909, 36 Stat. 2468, 2472).

[43]

> *Id.*

11

precedent, the rule of specialty may be invoked here only by The Bahamas. The defendant lacks standing to do so.

The Court notes that the United States has notified The Bahamas of the additional charges in the S5 Indictment and is seeking a specialty waiver for the post-extradition charges.[44] It concedes that The Bahamas' "response will be dispositive," and that the government will not proceed on the new counts if The Bahamas denies its request.[45]  As to the campaign finance charge – Count Eight of the original indictment and Count Twelve of the S5 Indictment – the government maintains that the rule of specialty does not apply because the "extradition record as a whole suggests that the defendant was extradited on all counts in the original indictment."[46]  Nevertheless, "[i]n an abundance of caution," the United States "has conveyed to The Bahamas its understanding that the omission of the campaign finance charge [from the defendant's warrant of surrender] was inadvertent, and informed The Bahamas that, absent timely information to the contrary from The Bahamas," it intends to proceed on that charge.[47]  The government has represented that it will not

---

[44]

*See* Dkt 148, at 4.

[45]

*Id.*, at 4; *see also United States v. Guzman Loera*, 24 F.4th 144, 152 (2d Cir. 2022) ("[T]o the extent there is any disagreement among the circuits about a defendant's standing to raise a specialty objection in the absence of a waiver by the extraditing nation, there is no support for granting such standing in a case like this, in which [the extraditing country] has explicitly consented to having [the defendant] tried on the instant indictment."); *United States v. Suarez*, 791 F.3d 363, 367 (2d Cir. 2015) (explaining that the defendant "would only have prudential standing to raise the claim that his sentence violated the terms of his extradition if the [Requested State] first makes an official protest").

[46]

Dkt 148, at 13.

[47]

*Id.*, at 14 n. 5.

proceed on the campaign finance charge if The Bahamas objects.[48]

 At this time, The Bahamas has not lodged any objection to these proceedings and the Court is not aware of any response to the request for a specialty waiver or for clarification regarding Count Twelve of the S5 Indictment.  The Court notes also that the defendant has a pending application in the Bahamian courts for judicial review of the Bahamian Attorney General's determination that the defendant does not have a right to be heard before The Bahamas decides whether to grant the requested specialty waiver.[49]  On June 13, 2023, the Supreme Court of The Bahamas issued a ruling enjoining the Bahamian Attorney General and the Bahamian Minister of Foreign Affairs from providing consent to the government's requested specialty waiver until a final determination is made on that pending application.[50]

 In all the circumstances, the defendant lacks standing to invoke the rule of specialty and his motion is denied without prejudice to a renewed motion should The Bahamas object to any of the charges brought against him.[51]  The defendant's request for discovery pertaining to his extradition likewise is denied.  The parties are directed to keep the Court informed regarding the status of the specialty waiver and request for clarification.

---

[48]
 *Id.*

[49]
 See Dkt 160, at 1; Dkt 160-1, at ¶ 81(ii).

[50]
 *See* Dkt 160, at 1; Dkt 160-1, at ¶¶ 16(ix), 81(iii).

[51]
 *See United States v. Ralston*, No. 19-cr-774 (JSR), 2022 WL 769257, at *4 (S.D.N.Y. Mar. 14, 2022) (denying motion to dismiss on specialty grounds where the parties agreed that the pending "decision of the extraditing countries as to waiver of the rule of specialty will be dispositive").

**SPA-15**

B.      *Request to Sever Unlawful Campaign Contributions Conspiracy Count*

In the alternative, the defendant asks to sever the At-Issue Charges and schedule them for a separate trial from the other counts in the S5 Indictment.[52]  The defendant's motion is moot as to Counts Four, Six, Nine, Ten, and Thirteen, which already have been severed by the Court's order dated June 15, 2023.[53]  His motion to sever Count Twelve of the S5 Indictment is denied for the following reasons.

The defendant moves to sever Count Twelve, which charges him with conspiring to make unlawful campaign contributions and to defraud the FEC, on two grounds.[54]  First, he argues that joinder of Count Twelve was improper pursuant to Rule 8(a) because it is not "connected with" and is not "part of a common scheme or plan" with the other charged offenses.[55]  Second, even if joinder were proper, he argues that the count should be severed pursuant to Rule 14(a) because a joint trial would be unduly prejudicial.[56]

Federal Rule of Criminal Procedure 8(a) provides for joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[57]  The Second Circuit has "interpreted Rule 8(a)

---

[52]     Dkt 158, at 25-28.

[53]     Dkt 165, at 1.

[54]     S5 Indictment ¶¶ 96-101.

[55]     Dkt 158, at 63.

[56]     *Id.*, at 25-28, 63-66.

[57]     FED. R. CRIM. P. 8(A).

14

as providing a liberal standard for joinder of offenses,"[58] which "reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused" when multiple offenses are tried together.[59]

Under Rule 14(a), a court "may order separate trials of counts . . . or provide any other relief that justice requires" if the joinder of offenses "appears to prejudice a defendant or the government."[60] Yet because Rule 8 inherently "authorizes some prejudice," a defendant who "seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice."[61] Moreover, the defendant must show substantial prejudice that is "unfair" and "sufficiently severe to outweigh the judicial economy" of a joint trial.[62] Even if prejudice is shown, Rule 14(a) does not require severance and "the relief to be granted, if any, [is left] to the district court's sound discretion."[63]

Count Twelve is joined properly with the other pre-extradition charges in this case because they are unified by a common scheme, they will require "interconnected and overlapping" evidence,[64] and the defendant has not demonstrated prejudice that would be "sufficiently severe to

---

[58]
 *United States v. Wilson,* 512 F. App'x 75, 76 (2d Cir. 2013).

[59]
 *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988).

[60]
 Fed. R. Crim. P. 14(a).

[61]
 *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994).

[62]
 *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011).

[63]
 *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993).

[64]
 *Amato*, 15 F.3d at 236.

15

outweigh the judicial economy" of a joint trial.[65]  First, the charges are united by a common scheme to accelerate the growth of FTX and Alameda and to enrich the defendant thereby.  Count Twelve is closely related to the other pre-extradition charges because it "stemmed from" or was committed with "funds derived" from the criminal conduct charged in the other counts.[66]  Count Twelve alleges that FTX customer assets were misappropriated to fund the defendant's illegal campaign contribution scheme.  For purposes of joinder, such a connection between the "funds derived" from one offense and the commission of another offense constitutes "[t]he most direct link possible" between charges.[67]  Accordingly, there is a "sufficient logical connection" among the counts to justify joining them.[68]

Second, joinder with all of the pre-extradition counts is justified because the evidence required to prove them will be "interconnected and overlapping."[69]  Both the wire fraud counts and the campaign contributions conspiracy will require detailed evidence and analysis of the inflows and outflows from Alameda's accounts.  Moreover, it is likely that there will be substantial overlap among the witnesses called to prove Count Twelve and the remaining charges.[70]  For example, the

---

[65]

    *Page*, 657 F.3d at 129.

[66]

    *See United States v. Bonventre*, 646 F. App'x 73, 80 (2d Cir. 2016); *Turoff*, 853 F.2d at 1043.

[67]

    *Turoff*, 853 F.2d at 1043.

[68]

    *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990).

[69]

    *Amato*, 15 F.3d at 236.

[70]

    *See United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991) ("Joinder is proper where the same evidence may be used to prove each count.").

16

government expects Nishad Singh, who is identified as "CC-1" in the S5 Indictment, to testify regarding his involvement in the campaign finance scheme and other fraudulent schemes charged in the indictment.[71]   Thus, judicial economy will be served by joining all of the pre-extradition charges in the S5 Indictment.

Third, and finally, the defendant has not satisfied his burden of showing that joinder of Count Twelve would cause him substantial and unfair prejudice.  He argues that it is uncertain whether he will be tried on the campaign finance charge due to the government's pending request for clarification from The Bahamas.[72]   Furthermore, he claims that such uncertainty will prejudice his preparation for trial and "raise[] questions about, *inter alia*, the length of the trial, who the Government witnesses are likely to be, the likely scope of their testimony, and which documents are relevant evidence[.]"[73]   Yet, as discussed above, there is significant overlap between the witness testimony and evidence that would be relevant and admissible with respect to Count Twelve and the other pre-extradition charges.[74]   There is nothing in the record to suggest that joinder of the campaign finance charge substantially will affect the length of trial.  Moreover, the defendant has not demonstrated any unfair prejudice because the campaign finance charge was contained in the original indictment on which he knowingly and voluntarily consented to extradition over nine

---

[71]

    *See* Dkt 149, at 65.

[72]

    Dkt 158, at 27.

[73]

    *Id.*

[74]

    *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (defendant's claim of substantial prejudice was "insupportable when the evidence would have been admissible against him in a separate trial").

17

months prior to his October trial date.[75]   Thus, this case is distinguishable from *United States v. Ramos*, cited by the defendant, in which the court held that a defendant would be prejudiced absent severance of three counts that "were added *on the eve* of a long-scheduled, already wide-ranging trial."[76]

Accordingly, in view of the substantial judicial economy from a joint trial and the lack of unfair prejudice to the defendant, the motion for severance of Count Twelve is denied.

II.     *Failure to State an Offense*

In arguments spread across three separate motions, the defendant moves to dismiss ten of the thirteen charges in the S5 Indictment on the bases that it fails to state an offense and that its allegations are defective as a matter of law.[77]  (Dkts 140-142)  As set forth below, these motions are meritless because the S5 Indictment satisfies the pleading requirements as to all ten of those charges.

---

[75]
On December 20, 2022, the defendant signed an affidavit in which he consented to extradition on all eight counts in the original indictment, which were included in the diplomatic note and the arrest warrant from this district.  *See* Dkt 137-1, at 2 ("[H]aving considered the charges set out in the said Diplomatic Note and arrest warrant, … I hereby consent, in writing, to be extradited without formal extradition proceedings.").   The following day, the defendant reiterated his consent to extradition on all eight counts in open court in The Bahamas.  *See* Dkt 137-4, at 6-7, 10-11.

[76]
No. 06-cr-172 (LTS), 2009 WL 1619912, at *2 (S.D.N.Y. June 5, 2009) (emphasis added).

[77]
Specifically, the defendant moves to dismiss Counts One, Two, and Seven through Nine in his second pretrial motion (Dkt 140), Counts Three, Four, and Ten in his third pretrial motion (Dkt 141), and Counts Twelve and Thirteen in his fourth pretrial motion (Dkt 142).

**SPA-20**

18

### A.    Legal Standard

Because "federal crimes are solely creatures of statute, . . . a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."[78]  Nevertheless, a defendant faces a "high standard" in seeking to dismiss an indictment, because Federal Rule of Criminal Procedure 7 requires that the indictment provide "only a plain, concise, and definite written statement of the essential facts constituting the offense charged."[79]  To satisfy this rule, "an indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'"[80]  Only in "very rare cases" must an indictment specify "how a particular element of a criminal charge will be met."[81]  Generally, "[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."[82]

---

[78]

    *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) (internal quotation marks and citations omitted).

[79]

    *United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013) (internal quotation marks and citations omitted) (quoting FED. R. CRIM. P. 7(c)(1)).

[80]

    *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000)).

[81]

    *Id.*, at 125-26; *see also Pirro*, 212 F.3d at 93 (quoting *United States v. Cruikshank*, 92 U.S. 542 (1875)) ("[W]here the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.").

[82]

    *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)).

At the motion to dismiss stage, the Court "accept[s] as true all of the allegations of the indictment."[83]  Moreover, the Court will not "look beyond the face of the indictment and draw inferences as to proof to be adduced at trial, for 'the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss[.]'"[84]  "An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits."[85] That is so because summary judgment proceedings "do[] not exist in federal criminal procedure."[86]

Dismissal of charges "is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights."[87]  Moreover, the Second Circuit has deemed dismissal an "extreme sanction"[88] that has been upheld "only in very limited and extreme circumstances," and should be "reserved for the truly extreme cases," "especially where serious criminal conduct is involved."[89]  Ultimately, "[a]n indictment 'need not be perfect, and common sense and reason are more important than technicalities.'"[90]

---

[83]

    *Goldberg*, 756 F.2d at 950.

[84]

    *United States v. Scully*, 108 F. Supp. 3d 59, 116-17 (E.D.N.Y. 2015) (quoting *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998)).

[85]

    *Costello v. United States*, 350 U.S. 359, 363 (1956).

[86]

    *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021).

[87]

    *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (citing *United States v. Nai Fook Li*, 206 F.3d 56, 62 (1st Cir. 2000) (en banc)).

[88]

    *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978).

[89]

    *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979).

[90]

    *Id.* (quoting *De La Pava*, 268 F.3d at 162).

B.      *Counts One, Two, Seven, Eight, and Nine Sufficiently Allege Conspiracies to Defraud*

The defendant moves to dismiss Counts One, Two, Seven, Eight, and Nine of the S5 Indictment – offenses alleged under the federal wire and bank fraud statutes – on the theory that the indictment fails to allege a valid property right.  (Dkt 140)  He claims that those counts, as pleaded, are premised on the "right to control" theory of fraud that recently was invalidated by the Supreme Court in *Ciminelli v. United States*, 598 U.S. __ (2023).[91]  The defendant's motion is meritless, however, because each of those counts tracks the relevant statutory language and sufficiently alleges a scheme to obtain money or property.

1.      *Count Nine*

Count Nine charges the defendant with conspiracy to commit bank fraud, alleging that he conspired to "obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution" by means of false representations that a bank account "would be used for trading and market making," when in fact it was used to receive and transmit FTX customer deposits and fees.[92]  To establish an offense of bank fraud under 18 U.S.C. § 1344(2), the government must prove that the defendant "had an intent to deprive the victim of money or property."[93]  Count Nine tracks the statutory language of Section 1344(2) and

---

[91]     *See* Dkt 158, at 31.

[92]     S5 Indictment ¶ 87.

[93]     *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019); *see also Kelly v. United States*, 140 S. Ct. 1565, 1566 (2020) (citing *Cleveland v. United States*, 531 U.S. 12, 26 (2000)) (under federal wire fraud statute, government must prove "not only that [the defendant] engaged in deception, but that an object of [the] fraud was money or property.")

21

sufficiently alleges that the defendant conspired to obtain "money or property" in violation of the statute.[94]

The defendant argues that Count Nine should be dismissed because it alleges a "right to control" theory of property that is no longer viable under *Ciminelli*.[95]  But *Ciminelli* is inapposite because the S5 Indictment alleges that the defendant conspired to induce a bank to open an account, which was used to receive FTX customer deposits and from which the defendant and his co-conspirators "regularly took money" from the bank's custody.[96]  There is no requirement under the bank fraud statute that a scheme to obtain money or property must "create[] a risk of financial loss to the bank."[97]  Rather, the Supreme Court has held that "for purposes of the bank fraud statute, a scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from a 'financial institution,' at least where . . . the defendant knew that the bank held the deposits, the funds obtained came from the deposit account, and the defendant misled the bank in order to obtain those funds."[98]  Thus, the indictment plainly alleges a scheme to obtain "money or property," not a scheme to deprive a bank  of "valuable economic information."[99]

---

[94]
  *Stringer*, 730 F.3d at 124.

[95]
  *See* Dkt 140, at 9-10.

[96]
  S5 Indictment ¶¶ 19-23.

[97]
  *Loughrin v. United States*, 573 U.S. 351, 366 n.9 (2014).

[98]
  *Shaw v. United States*, 580 U.S. 63, 67 (2016).

[99]
  *See Ciminelli*, 143 S. Ct. 1121, 1125 (2023) (rejecting "'right to control' theory, under which the Government can establish wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions").

22

Putting *Ciminelli* to one side, the defendant argues also, on the basis of a dated out-of-circuit district court case, *Alkaabi,* that Count Nine must be dismissed because the government cannot "use its motion response to amend the charging theory alleged in the S5 Indictment to one that was never presented to the grand jury."[100]  As an initial matter, the defendant has presented no evidence regarding what charging "theory" was presented to the grand jury.  In fact, he instead argues in substance that the government's theory, as described in its motion papers, is not pleaded in the S5 Indictment.  But *Alkaabi* does not support his argument that the sufficiency of the indictment is measured against the "theory" on which – really, the facts by which – the government proposes to prove its case, is not binding on this Court, and in any case would be unpersuasive here for several reasons.  First, contrary to the defendant's argument, the theory advanced by the government in its response to defendant's motion *is* alleged sufficiently in the S5 Indictment and is incorporated by reference into Count Nine.[101]  Second, the Third Circuit decision relied upon by the district court in *Alkaabi* – *United States v. Panarella*[102] – has been

---

[100]

Dkt 158, at 33 (citing *United States v. Alkaabi*, 223 F. Supp. 2d 583, 589 (D.N.J. 2002)).

[101]

*See* S5 Indictment  19-23, 85; *see also United States v. Bastian*, 770 F.3d 212, 220-21 (2d Cir. 2014) (the Second Circuit has "never suggested that a 'to wit' clause binds the government to prove the exact facts specified in a criminal indictment"); *United States v. D'Amelio*, 683 F.3d 412, 422 (2d Cir. 2012) ("[T]he *specific means* used by a defendant to effect his or her crime does not constitute an 'essential element' of the offense and, therefore, proof of specific means apart from those charged in the indictment does not constructively amend the indictment." (emphasis in original)); *United States v. Ullah*, No. 18-cr-16 (RJS), 2021 WL 21902, at *7 (S.D.N.Y. Jan. 4, 2021) ("[T]he law is clear that the inclusion of a 'to wit' clause in an indictment does not bind the government to prove the exact facts set out therein.").

[102]

277 F.3d 678, 685 (3d Cir. 2002).

23

limited significantly by subsequent authority.  In light of *United States v. Vitillo*[103] and *United States v. Bergrin*,[104] courts in the Third Circuit have held that "an indictment need not allege facts to provide evidentiary support for a violation of a criminal statute.  Rather, the Indictment may simply track the language of the statute while providing sufficient factual orientation to the defendant for double jeopardy purposes."[105]  This is consistent with the pleading requirements articulated by the Second Circuit, which the S5 Indictment satisfies.[106]  Third, *Bergrin* further limited *Panarella* by clarifying that the latter case "merely held that courts should 'determine whether the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, *as a matter of statutory interpretation*.'"[107]  The scope of such an inquiry is limited to "whether the alleged conduct *could ever be alleged* in such a fashion so as to fall within the statute's ambit."[108]  In the present case, the S5 Indictment plainly alleges conduct that could be – and has been – alleged in such a fashion so as to fall within the bank fraud statute's ambit.

Finally, the defendant argues that Count Nine must be dismissed because the S5 Indictment alleges no nexus between the alleged misrepresentations, which induced Bank-1 to

---

[103]

490 F.3d 314 (3d Cir. 2007).

[104]

650 F.3d 257 (3d Cir. 2011).

[105]

*See United States v. Mosberg*, 866 F. Supp. 2d 275, 303 (D.N.J. 2011) (citing *Vitillo*, 490 F.3d at 321).

[106]

*See Yannotti*, 541 F.3d at 127.

[107]

*Bergrin*, 650 F.3d at 271-72. (quoting *Panarella*, 277 F.3d at 685) (emphasis in original).

[108]

*Mosberg*, 866 F.Supp.2d at 303 (emphasis added).

24

open an account, and the withdrawal of funds from the bank's custody.[109]  He is mistaken.

Section 1344(2) requires that a defendant "acquire (or attempt to acquire) bank property 'by means of' the misrepresentation," which "typically indicates that the given result (the 'end') is achieved, at least in part, *through* the specified action, instrument, or method (the 'means')."[110]  Yet, the Second Circuit has upheld a bank fraud charge based on facts substantially similar to those alleged in the S5 Indictment.  In *United States v. Lebedev*, the defendant "caused false information to be sent to financial institutions" and thereby opened a bank account in the name of a "front company . . . to disguise the fact that [the bank's] customers were transacting business with an unregistered Bitcoin exchange."[111]  The Second Circuit held that Lebedev made those misrepresentations "with the intent to obtain funds under those institutions' custody and control; namely, funds in the customers' accounts."[112]  The S5 Indictment alleges that the defendant conspired to send false information to a financial institution to disguise the true nature of an account and to obtain funds from that account that were in the custody and control of the financial institution.[113]  Accordingly, the indictment sufficiently alleges a nexus between the alleged misrepresentations and the defendant's alleged procurement of property from the bank.  Count Nine is legally sufficient.

---

[109]

Dkt 158, at 34.

[110]

*Loughrin v. United States*, 573 U.S. 351, 362-63 (2014) (emphasis in original).

[111]

*United States v. Lebedev*, 932 F.3d 40, 49 (2d Cir. 2019).

[112]

*Id.*

[113]

*See* S5 Indictment ¶¶ 14-22.

SPA-27

25

>    2.    *Counts One and Two*

Counts One and Two charge the defendant with conspiring to commit and committing wire fraud on FTX customers.[114]  The charges track the statutory language of 18 U.S.C. §§ 1349 and 1343, respectively, and allege that the scheme sought to "obtain[] money and property by means of false and fraudulent pretenses."[115]  Specifically, the indictment alleges that the defendant schemed to misappropriate "billions of dollars" of FTX customers' funds, including both fiat deposits and cryptocurrency assets on the FTX exchange, and used those funds "to pay expenses and debts of Alameda, and to make investments, and for other purposes."[116]  Thus, the indictment sufficiently alleges a scheme to defraud, an object of which was obtaining customer funds, which plainly constitute both "money" and "property" within the meaning of Section 1343.

The defendant argues that these counts must be dismissed because the indictment does not allege any "economic loss" to FTX customers.[117]  That is so, he argues, because the "core claim" in the indictment is that he "misused FTX customer funds by providing improper loans to Alameda," but the indictment does not allege that he "never intended to pay back the loans to Alameda."[118]

The defendant is wrong both factually and as a matter of law.  The S5 Indictment

---

[114]    *Id.* ¶¶ 63-67.

[115]    *Id.* ¶¶ 65, 67.

[116]    *See id.* ¶¶ 22-24, 65, 67.

[117]    Dkt 140, at 18-19.

[118]    *Id.*, at 18-20.

alleges that, at the defendant's direction, "Alameda regularly took money from accounts funded by or that included funds from FTX customers" and "spent billions of dollars of those FTX customer funds, among other things, to finance Alameda's trading and expenses, to make venture investments directed by [the defendant], and to bankroll tens of millions of dollars in [strawman] campaign contributions."[119]   In so doing, the defendant "allowed Alameda to incur a multi-billion-dollar negative balance on FTX that [he] knew Alameda could not repay."[120]   Thus, the defendant's assertion that the indictment does not allege any "economic loss" to FTX customers appears to be factually incorrect.   Moreover, it is immaterial as a matter of law whether the defendant intended to repay the misappropriated funds because the offense is "complete" where, as alleged here, there is an "immediate intent to misapply and defraud."[121]   Accordingly, Counts One and Two are legally sufficient.

### 3.   Counts Seven and Eight

Counts Seven and Eight of the S5 Indictment charge the defendant with conspiring to commit and committing wire fraud on Alameda's lenders.[122]   The charges track the statutory

---

[119]

S5 Indictment ¶ 22.

[120]

*Id.* ¶ 4.

[121]

*United States v. Sindona*, 636 F.2d 792, 800 (2d Cir. 1980) ("The offense occurred and was complete when the misapplication took place. What might have later happened as to repayment is not material and could not be a defense."); *see also United States v. Males*, 459 F.3d 154, 158-59 (2d Cir. 2006) ("The requirement under § 1343 that the defendant devise a scheme or artifice for obtaining money or property is satisfied where a defendant fraudulently obtains the *use* of another person's money or property for a period of time, using it for his own personal profit, and depriving the owner of the ability to do so.").

[122]

S5 Indictment ¶¶ 80-84.

27

language of 18 U.S.C. §§ 1349 and 1343, respectively, and state the time and place of the alleged crimes in approximate terms. The indictment alleges that the defendant engaged in a scheme to defraud Alameda's lenders "by providing false and misleading information to those lenders regarding Alameda's financial condition."[123] For example, the defendant allegedly directed Alameda to repay lenders using misappropriated FTX customer funds and provided false and misleading financial statements to lenders "to mislead [them] about the money Alameda had 'borrowed' from FTX, as well as about the substantial personal loans Alameda had made to FTX executives."[124]

The defendant argues that Counts Seven and Eight should be dismissed because they fail to allege a "property interest" that could form the basis for a wire fraud offense against Alameda's lenders.[125] But the indictment alleges that the objective of the scheme, at least in part, was fraudulently to retain "hundreds of millions of dollars in outstanding loans" following the downturn in the cryptocurrency markets in June 2022.[126] Such allegations sufficiently allege a property interest because the "right to be paid money has long been thought to be a species of property"[127] and a defendant's scheme to "obtain or retain money by use of misrepresentations that

---

[123] *Id.* ¶¶ 82, 84.

[124] *Id.* ¶ 36.

[125] Dkt 140, at 15.

[126] *See* S5 Indictment ¶ 36.

[127] *Pasquantino v. United States*, 544 U.S. 349, 356 (2005).

he knew were material" is a "paradigmatic scheme to defraud."[128]   Thus, the S5 Indictment sufficiently alleges that the defendant "had an intent to deprive [Alameda's lenders] of money or property."[129]

### C.    Counts Three and Four

Counts Three and Four charge the defendant with conspiring to commit, and committing, commodities fraud on FTX customers in violation of 7 U.S.C. §§ 9(1) and 13(a)(5) as well as 17 C.F.R. § 180.1.   The defendant moves to dismiss these counts on two independent grounds.

First, he claims that the government has failed to allege an "essential element" of the offense – i.e., that the fraud was "in connection with" a commodities transaction.[130] But Count Four of the S5 Indictment plainly alleges that the defendant engaged in a scheme to defraud FTX customers "in connection with a swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity."[131]   Furthermore,

---

[128]

*United States v. Gole*, 21 F. Supp. 2d 161, 166 (E.D.N.Y. 1997), *aff'd*, 158 F.3d 166 (2d Cir. 1998); *see also Pasquantino*, 544 U.S. at 355 (wire fraud victim's right "to collect money" is "property" in its hands).

[129]

*See Calderon*, 944 F.3d at 85.

The defendant's citation to *Alkaabi* for the proposition that the government cannot "amend the S5 Indictment through its opposition brief," Dkt 158, at 36 (citing *Alkaabi*, 223 F. Supp. 2d at 589), is unpersuasive as to Counts Seven and Eight for substantially the same reasons already articulated with respect to Count Nine.  *See supra* section II.B.1.

[130]

*See* Dkt 141, at 8.

[131]

S5 Indictment ¶ 73.

Count Three alleges that the defendant conspired to do the same.[132]  Because Counts Three and Four track the relevant statutory and regulatory language of 7 U.S.C. §§ 9(1) and 13(a)(5), and 17 C.F.R. § 180.1(a), apprise the defendant of the nature of the accusations against him, and – when read in conjunction with the "Overview" section of the indictment, which Counts Three and Four incorporate by reference – provide notice generally of where and when the crime occurred, both counts sufficiently allege a scheme and conspiracy to defraud "in connection with" a commodities transaction.[133]

Second, the defendant argues that "the alleged conduct relevant to Counts Three and Four was predominantly foreign" and that the Commodity Exchange Act ("CEA") cannot be applied to such extraterritorial conduct.[134]  The government counters that whether an indictment alleges an impermissible extraterritorial application of a statute "is a merits question"[135] and therefore "is not a basis for dismissing an [i]ndictment, particularly where, as here, the extraterritoriality issue requires a full presentation of evidence."[136]  Extraterritoriality typically is assessed after a full presentation of the evidence at trial.[137]  Indeed, the defendant has not identified and the Court is not

---

[132]  *Id.* ¶ 70.

[133]  *See Stringer*, 730 F.3d at 124.

[134]  *See* Dkt 141, at 8.

[135]  Dkt 149, at 34 (quoting *United States v. Prado*, 933 F.3d 121, 138 (2d Cir. 2019)).

[136]  *Id.*, at 34-35 (citing *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009)).

[137]  *See, e.g.*, *United States v. Napout*, 963 F.3d 163, 180 (2d Cir. 2020) (holding government "presented ample evidence" at trial that charge was not extraterritorial); *United States v. Epksamp*, 832 F.3d 154, 169 (2d Cir. 2016); *United States v. Vilar*, 729 F.3d 62, 77 (2d Cir. 2013).

**SPA-32**

30

aware of any case in this district where an indictment has been dismissed on extraterritoriality grounds at the motion to dismiss stage.[138]  In all events, the Court need not decide whether it would be premature to dismiss the indictment on extraterritoriality grounds at this stage because the S5 Indictment alleges a "sufficient domestic nexus" for the commodities fraud and conspiracy charges "to avoid the question of extraterritorial application altogether."[139]

To determine whether a charge involves a proper "domestic application of [a] statute," courts assess "whether the domestic activity pleaded is the focus of congressional concern."[140]  The focus of the CEA is "rooting out manipulation" and "ensuring market integrity."[141] Thus, if "the conduct relevant to *that* focus occurred abroad, . . . then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S.

---

[138]

The Court notes, however, that courts in this district have denied motions to dismiss indictments on extraterritoriality grounds on the merits, rather than on procedural grounds. *See, e.g.*, *United States v. Halkbank*, No. 15-cr-867 (RMB), 2020 WL 5849512, at *6-7 (S.D.N.Y. Oct. 1, 2020), *aff'd sub nom. United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336 (2d Cir. 2021), *aff'd in part, vacated in part, remanded*, 143 S. Ct. 940 (2023) (denying defendant's motion to dismiss indictment on extraterritoriality grounds because "[t]he Government counters persuasively that the Indictment involves a domestic, rather than an extraterritorial, application of the [International Emergency Economic Powers Act], the bank fraud statute, the money laundering statute, and [18 U.S.C.] § 371."); *see also United States v. Sindzingre*, No. 17-cr-0464 (JS), 2019 WL 2290494, at *10 (E.D.N.Y. May 29, 2019), *rev'd in part, appeal dismissed in part sub nom. United States v. Bescond*, 24 F.4th 759 (2d Cir. 2021) (denying defendant's motion to dismiss indictment on basis that the alleged CEA charge is "impermissibly extraterritorial").

[139]

*United States v. Mostafa Kamel Mostafa*, 965 F. Supp. 2d 451, 469 (S.D.N.Y. 2013).

[140]

*Prime Int'l Trad. v. BP PLC*, 937 F.3d 94, 102 (2d Cir. 2019).

[141]

*CFTC v. Gorman*, No. 21-cv-870 (VM), 2023 WL 2632111, at *12 (S.D.N.Y. Mar. 24, 2023) (citing *Prime*, 937 F.3d at 102-03).

31

territory."[142]  The ultimate question is whether sufficient "manipulative conduct or statements [were] made in the United States."[143]

Count Four alleges that the defendant committed commodities fraud "in the Southern District of New York and elsewhere."[144]  Count Three similarly alleges that the defendant conspired to commit commodities fraud and committed overt acts in furtherance of that conspiracy in this district.[145]  The indictment alleges that the defendant made false and misleading statements both in the United States and directed at U.S. customers.  For example, the indictment alleges that the defendant made misrepresentations in testimony before the United States Senate, including that FTX had a focus on "consumer protection," had adopted "principles for ensuring investor protections on digital asset-platforms," and that "as a general principle FTX segregate[d] customer assets from its own assets across [its] platforms."[146]  The defendant allegedly spent millions of dollars on celebrity endorsements that aired throughout the United States during the 2022 Super Bowl, advertising FTX.US as the "safest and easiest way to buy and sell crypto" and "the most trusted way to buy and sell" digital assets.[147]  Furthermore, the defendant allegedly made false and misleading statements

---

[142]  *Prime Int'l Trad.*, 937 F.3d at 107-108 (emphasis in original) (citation and internal quotation marks omitted).

[143]  *Id.* at 108.

[144]  S5 Indictment ¶ 67.

[145]  *Id.* ¶¶ 69, 71.

[146]  *Id.* ¶ 2.

[147]  *See id.* ¶ 2; *see also United States v. Cornelson*, 609 F. Supp. 3d 258, 266 (S.D.N.Y. 2022) (internal quotation marks and citations omitted) ("[I]t is well settled that, when reviewing an indictment, common sense must control, and . . . an indictment must be read to include

32

on Twitter, a U.S.-based social media platform, including that FTX customer assets were "fine," that FTX had "enough to cover all client holdings," and that FTX did not "invest client assets (even in treasuries)."[148]   In all the circumstances, the government has pleaded a sufficiently domestic application of the commodities fraud and conspiracy statutes to call for a trial of the charges on the merits.[149]

>    D.    *Count Ten*

Count Ten charges the defendant with conspiring to operate an unlicensed money transmitting business ("MTB") in violation of 18 U.S.C. § 1960.[150]

Section 1960 makes it a crime knowingly to conduct, control, manage, supervise, direct, or own an "unlicensed money transmitting business."[151]   It defines money transmitting as "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier."[152] Thus, an "unlicensed money transmitting business" comprises (i) "a money transmitting business" that (ii) "affects interstate or foreign commerce in any manner or degree" and (iii) "fails to comply

---

facts which are necessarily implied by the specific allegations made.")

[148]    S5 Indictment ¶¶ 34, 54, 60.

[149]    *See Costello*, 350 U.S. at 363 ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits.").

[150]    S5 Indictment ¶¶ 88-91.

[151]    18 U.S.C. § 1960.

[152]    18 U.S.C. § 1960(b)(2).

**SPA-35**

33

with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section."[153]

Count Ten tracks the language of 18 U.S.C. §§ 1960(a) and (b)(1)(B), alleging that the defendant conspired to operate an "unlicensed money transmitting business affecting interstate and foreign commerce, which failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section."[154] The indictment alleges also the approximate dates and locations where the charged conduct took place. Accordingly, the indictment "satisfies the pleading requirements of Rule 7(c)(1)" and is "sufficient with respect to allegations that [the business] was a money transmitting business" to survive the defendant's motion to dismiss.[155]

The defendant's argument for dismissal – that the "only relevant domestic activity" alleged in the indictment was FTX's "use of a U.S. bank account"[156] – goes beyond the pleading requirements and is without merit in all events. To understand his argument, it is helpful first to provide a summary of the complex statutory and regulatory framework underlying Count Ten.

Section 1960 refers to registration requirements that can be found under Section 5330

---

[153]

See 18 U.S.C. § 1960(b)(1)(B).

Section 1960 provides two other potential definitions of an "unlicensed money transmitting business," neither of which is charged in the S5 Indictment and therefore is not addressed herein. See 18 U.S.C. §§ 1960(b)(1)(A), 1960(b)(1)(C).

[154]

S5 Indictment ¶¶ 89, 90.

[155]

United States v. Murgio, 209 F. Supp. 3d 698, 710-11 (S.D.N.Y. 2016).

[156]

Dkt 141, at 19.

34

or regulations thereunder.[157]  Section 5330 is a provision of the Bank Secrecy Act, 31 U.S.C. §§ 5311 *et seq.*, which states in relevant part that "any person who owns or controls a money transmitting business shall register the business . . . with the Secretary of Treasury[.]"[158] Section 5330 defines a "money transmitting business" as including both (i) a "money transmitting service," which includes persons "accepting currency, funds, or value that substitutes for currency and transmitting the currency, funds, or value that substitutes for currency by any means" and (ii) "any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency[.]"[159]

The implementing regulations for Section 5330 are administered by the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") and are found in 31 C.F.R. § 1010.100 *et seq.* (together, the "FinCEN Regulations").  The FinCEN Regulations require that "each money services business . . . register with FinCEN" unless it falls within certain enumerated exceptions.[160]  A "money services business" ("MSB") is defined as "[a] person *wherever located* doing business, whether or not on a regular basis or as an organized or licensed business concern, *wholly or in substantial part within the United States*, in one or more of the capacities" enumerated in the FinCEN Regulations.[161]

---

[157]

    *See* 18 U.S.C. § 1960(b)(1)(B) (referencing 31 U.S.C. § 5330).

[158]

    31 U.S.C. § 5330(a)(1)

[159]

    31 U.S.C. §§ 5330(d)(2), 5330(d)(1)(A).

[160]

    31 C.F.R. § 1022.380(a)(1).

[161]

    31 C.F.R. § 1010.100(ff) (emphasis added).

35

The defendant's motion to dismiss Count Ten relies on the language of the FinCEN Regulations that limits their scope – and accordingly the scope of Section 1960(b)(1)(B)'s registration requirement – to argue that MSBs must register only if the services they provide as an MSB occur "wholly or in substantial part within the United States."[162]  In 2011, however, FinCEN issued a final rule (the "Final Rule") stating that whether or not a "foreign-located" entity operated as an MSB "wholly or in substantial part within the United States" depends on "all of the facts and circumstances of each case, including whether persons in the United States are obtaining MSB services from the foreign-located person, such as sending money to or receiving money from third parties through the foreign-located person."[163]  Moreover, FinCEN specifically carved out certain activity as not sufficiently "substantial" to trigger the registration requirement, stating in relevant part, "a foreign-located person's mere maintenance of a bank account in the United States should not cause that person to be defined as an MSB."[164]  The defendant argues that the S5 Indictment alleges that FTX "engaged in precisely the conduct that the Final Rule provides does <u>not</u> require registration as an MSB."[165]

The defendant's argument is unpersuasive for several reasons.  First, the alleged conspiracy to operate an unlicensed MTB involved not only FTX, but also U.S.-based companies

---

[162]

Dkt 141, at 21-22 (quoting 31 C.F.R. § 1010.100(ff)).

[163]

U.S. Dep't of Treasury, FinCEN, RIN 1506-AA97, Bank Secrecy Act Regulations; Definitions and Other Regulations Relating to Money Services Businesses, 76 Fed. Reg. 43585, 43588 (July 21, 2011) (hereinafter, the "Final Rule").

[164]

*Id.*

[165]

Dkt 141, at 23 (emphasis in original).

36

Alameda and North Dimension.[166]  Second, the indictment alleges that wire transfers relating to the

unlicensed MTB were received in and were transmitted through this district.[167]  Third, the indictment

alleges that the conspiracy's use of U.S. bank accounts went well beyond "mere maintenance of a

bank account in the United States."[168]  Indeed, those bank accounts were central to the money

transmitting business, which allowed FTX customers to make millions of dollars of deposits to and

withdrawals from the FTX trading platform.  Accordingly, the S5 Indictment sufficiently pleads that

a substantial part of the services provided by the alleged MTB occurred within the United States.

Accordingly, Count Ten is legally sufficient.


  E.  *Count Twelve*

    Count Twelve charges the defendant with conspiring to violate federal election laws,

specifically 52 U.S.C. §§ 30122 and 30118.[169]  Section 30122 provides that "no person shall make

a contribution in the name of another person" and Section 30118 prohibits "any corporation" from

making a "contribution" to any candidate.[170]

    The indictment alleges that the charged conspiracy had three objects: (i) the

defendant conspired to violate Section 30122 by scheming to make contributions that were funded

---

166

  S5 Indictment ¶¶ 18-21.

167

  *Id.* ¶ 91.

168

  Final Rule at 43588.

169

  S5 Indictment ¶¶ 96-101.

170

  52 U.S.C. §§ 30122, 30118.

by assets from Alameda or FTX in the names of two FTX executives;[171] (ii) the defendant conspired to violate Section 30118 by making contributions in his name and the names of his co-conspirators that were funded with FTX and Alameda assets;[172] and (iii) the defendant conspired to defraud the FEC by impairing its ability to administer federal law concerning source and amount restrictions in federal elections.[173]

Count Twelve tracks the relevant statutory language and "charges [the] crime with sufficient precision to inform the defendant of the charges he must meet."[174]

F.    *Count Thirteen*

Count Thirteen charges the defendant with conspiring to violate the FCPA by bribing one or more Chinese government officials in order to regain access to Alameda trading accounts that had been frozen by Chinese law enforcement authorities.[175]   The defendant moves to dismiss this count on two independent bases: (i) the government, he argues, has failed to allege properly that any alleged bribes were paid "in order to assist [a] domestic concern in obtaining or retaining business" and (ii) venue is improper in this district.[176]

---

[171]     S5 Indictment ¶¶ 37, 98.

[172]     *Id.* ¶¶ 37, 99.

[173]     *Id.* ¶¶ 46, 100.

[174]     *Yannotti*, 541 F.3d at 127.

[175]     S5 Indictment ¶¶ 28-31, 102-05.

[176]     *See* Dkt 142, at 20 (citing 15 U.S.C. § 78dd-2(a)).

*1.      The Business Nexus Element*

First, the anti-bribery provision that the defendant allegedly conspired to violate applies where, *inter alia*, a "domestic concern," such as a U.S. resident or a resident's agent, engages in certain conduct "in furtherance of" a payment to a foreign official "to assist . . . in obtaining or retaining business for or with, or directing business to, any person."[177]  This requirement commonly is referred to as the "business nexus element."[178]

Count Thirteen tracks the statutory language of Section 78dd-2(a) and alleges that the defendant conspired to bribe one or more Chinese officials "in order to assist [the defendant], Alameda, and others in obtaining and retaining business for, and directing business to, [the defendant], Alameda, and others."[179]  Moreover, the indictment provides sufficient detail about the time, place, and nature of the alleged bribe "to inform the defendant of the charges he must meet" and to enable him to "plead double jeopardy in a future prosecution based on the same set of events."[180]  Accordingly, the indictment sufficiently pleads the business nexus element and no further inquiry into the factual allegations is required at this stage.[181]

---

[177]

15 U.S.C. § 78dd-2(a).

[178]

*See United States v. Kozeny*, 493 F. Supp. 2d 693, 705 (S.D.N.Y. 2007).

[179]

S5 Indictment ¶ 104.

[180]

*See id.* ¶¶ 6, 28-31; *Yannotti*, 541 F.3d at 127 (quoting *Stavroulakis*, 952 F.2d at 693).

[181]

*See Stringer*, 730 F.3d at 124; *see also United States v. Kay*, 359 F.3d 738, 761 (5th Cir. 2004) ("[T]he business nexus element . . . does not go to the FCPA's core of criminality" and an indictment may be sufficiently pleaded if it "paraphras[es]" the statute without alleging "details regarding what business is sought or how the results of the bribery are meant to assist").

**SPA-41**

2.    *Venue*

Second, the defendant argues that venue in this district is improper for Count Thirteen because the government has failed to allege that he was "first brought" or "arrested" in this district within the meaning of 18 U.S.C. § 3238, which governs venue for certain offenses "begun or committed" outside of the United States.[182]

Section 3238 provides that in such circumstances:

> "The trial of all offenses . . . shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia."[183]

The S5 Indictment alleges that the defendant conspired with "others known and unknown, at least one of whom was first brought to and will be arrested in the Southern District of New York."[184]

The defendant argues that the "first brought" portion of Section 3238 is inapplicable in this case because it  "applies only in situations where the offender is returned to the United States already in custody" in connection with the offense at issue.[185]  The defendant claims that he was brought to this district from The Bahamas in connection with the original indictment, which did not include the FCPA offense, and therefore the "first brought" provision does not apply.  Furthermore,

---

[182]

Dkt 142, at 25; 18 U.S.C. § 3238.

[183]

18 U.S.C. § 3238.

[184]

S5 Indictment ¶ 103.

[185]

Dkt 142, at 26 (citing *United States v. Catino*, 735 F.2d 718, 724 (2d Cir. 1984); *United States v. Ghanem*, 993 F.3d 1113, 1122 (9th Cir. 2021)).

40

he argues that the "arrested" portion of the statute also does not apply here because – although he was arrested on the FCPA offense in this district before his arraignment on the S5 Indictment – he was in California at the time the S5 Indictment was unsealed and he "had no choice but to come" to this district to be arraigned.[186]

At this juncture, the Court need not and does not decide whether the defendant was "first brought" or "arrested" in this district within the meaning of Section 3238 because the government sufficiently alleges that "at least one" of his co-conspirators "was first brought to and will be arrested" in this district.[187]   Therefore, "[t]he question of whether there is sufficient evidence to support venue is appropriately left for trial."[188]   Accordingly, the motion to dismiss for improper venue is denied without prejudice to renewal under Federal Rule of Criminal Procedure 29.[189]

---

[186]   Dkt 142, at 27 (citing *United States v. Hilger*, 867 F.2d 566, 568 (9th Cir. 1989)).

[187]   *See* S5 Indictment ¶ 103; *see also United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006) ("[A]s long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied.").

[188]   *United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010).

[189]   *See United States v. Valencia Rugeles*, No. 04-cr-363 (JGK), 2007 WL 1540981, at *3 (S.D.N.Y. May 24, 2007) ("Because the Government retains the burden of establishing venue by a preponderance of the evidence at trial, the dismissal is without prejudice to renewal under Federal Rule of Criminal Procedure 29.").

*Conclusion*

The Court has considered all of the arguments of the parties.  To the extent not addressed herein, the arguments are either moot or without merit.  For the foregoing reasons, the defendants pretrial motions (Dkt 136), to the extent not previously ruled upon, are denied.

The Clerk is directed to close Dkt 136.

SO ORDERED.

Dated:          June 29, 2023

_____
Lewis A. Kaplan
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,


        -against-                                                        22-cr-0673 (LAK)


SAMUEL BANKMAN-FRIED, et al.,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### SCHEDULING ORDER FOR TRIAL-RELATED
### MOTIONS AND DISCOVERY


LEWIS A. KAPLAN, *District Judge.*

        The Court appreciates the largely successful efforts of counsel to work out a mutually acceptable schedule, much of which is adopted in this order which in some respects modifies the agreement and, in addition, resolves points on which counsel were not in agreement.

        The following schedule is adopted.

| August 14, 2023 | The Government shall provide notice to the defendant of evidence it may seek to offer pursuant to Federal Rule of Evidence 404(b). |
|---|---|
| | The parties shall provide notice to each other, consistent with the requirements of Federal Rule of Criminal Procedure 16, of experts potentially to be called, if any, during the Government's case-in-chief and the defendant's case. |
| | The defendant shall provide notice to the Government, consistent with the requirements of Federal Rules of Criminal Procedure 12.2 and 16, of his intention to present an advice of counsel defense or a defense based on mental condition or defect. |
| | The parties shall file any motions *in limine.* |
| August 21, 2023 | The parties shall file proposed jury instructions. |
| | The parties shall provide notice to each other, consistent with the requirements of Rule 16, of rebuttal experts, if any, to be called during the defendant's case or during the Government's rebuttal case. |

| August 28, 2023 | The parties shall file any *Daubert* motions.<br><br>The parties shall file oppositions to motions *in limine*. |
|---|---|
| September 8, 2023 | The Government shall provide to the defendant material covered by 18 U.S.C. § 3500, including material pursuant to *Giglio v. United States,* 405 U.S. 150 (1972), other witness materials, and a list of witnesses whom the Government reasonably expects to call in its case-in-chief. The Government shall continue to provide witness materials as they are generated on a rolling basis.<br><br>The Government shall provide to the defendant a list of exhibits the Government reasonably expects to seek to introduce during its case-in-chief. This exhibit list will be subject to good-faith revision as the Government continues to prepare its case for trial, including in response to the defense's list of proposed exhibits that it anticipates seeking to introduce into evidence during the Government's case-in-chief. |
| September 11, 2023 | The parties shall file oppositions to any *Daubert* motions.<br><br>The parties shall file proposed questions for the examination of prospective jurors. |
| September 18, 2023 | Defense counsel shall provide to the Government a list of exhibits that the defendant reasonably expects to introduce during the Government's case-in-chief or the defendant's case. This exhibit list will be subject to good-faith revision as the defense continues to prepare for its case.<br><br>The defendant shall produce material covered by Federal Rule of Criminal Procedure 16.<br><br>Defense counsel shall provide to the Government material covered by Federal Rule of Criminal Procedure 26.2 and a list of witnesses whom the defendant reasonably expects to call in his case. |

SO ORDERED.

Dated:        July 1, 2023

/s/        Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,


        -against-                                           S6 22-cr-0673 (LAK)


SAMUEL BANKMAN-FRIED,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM AND ORDER ON *IN LIMINE* MOTIONS**


LEWIS A. KAPLAN, *District Judge.*

        Defendant awaits trial on two substantive counts of wire fraud in violation of

18 U.S.C §§ 1343 and 2, as well as five conspiracy counts alleging conspiracies to commit wire

fraud, securities fraud, commodities fraud, and money laundering.  The matter is before the Court

on motions *in limine* by the government and by the defendant.  (Dkts 204, 206)


*The Government's Motion*

        The government moves *in limine* to (1) admit certain evidence as direct evidence of

the charged conduct or, alternatively, pursuant to Fed. R. Evid. 404(b), (2) admit certain statements

of the defendant's alleged co-conspirators and agents as not barred by the rule against hearsay, (3)

authenticate certain records under Fed. R. Evid. 902(11) and to limit the scope of cross-examination

of record custodians, (4) preclude the defendant from introducing certain evidence and arguments

as irrelevant or unfairly prejudicial, (5) preclude the defendant from cross-examining witnesses

about privileged documents or topics, and (6) preclude the defendant from cross-examining

2

witnesses about their recreational drug use.

     *I.*     *Motion to Admit Certain Evidence as Direct Evidence or Pursuant to Rule 404(b)*

     The government moves to admit as direct evidence of the charged conduct or, alternatively, under Fed. R. Evid. 404(b), evidence (a) that defendant allegedly authorized false statements to a bank ("Bank-1"), (b) of defendant's alleged illegal campaign finance scheme, (c) of defendant's alleged foreign bribery scheme, (d) that defendant created FTT and allegedly manipulated its value, (e) that defendant allegedly selectively prioritized payments to certain creditors, and (f) that defendant allegedly instituted autodeletion policies for business communications.

     1.     Evidence that defendant made or authorized allegedly false statements to Bank-1 is direct evidence of the charged offenses. Such evidence is intertwined inextricably with the evidence regarding the charged offenses, including the charged wire fraud scheme on customers of FTX, and necessary to complete the story of the charged crimes on trial.[1] In all events, the evidence would be admissible also under Rule 404(b) as evidence of defendant's fraudulent intent and knowledge.[2] Where, as here, defendant claims that he "never intended to violate any laws and acted in good faith,"[3] other act evidence "is generally admissible to prove that the defendant acted

---

[1]     *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.").

[2]     *See United States v. Colon*, 880 F.2d 650, 656-57 (2d Cir. 1989).

[3]     *See, e.g.*, Dkt 246, at 24.

**SPA-48**

3

with the state of mind necessary to commit the offense charged."[4]  Any risk that the jury might convict defendant on the basis of the severed bank fraud and unlicensed money transmitting counts, as distinct from the counts on which the defendant will proceed to trial in October, may be foreclosed by an appropriate instruction, which the Court would entertain if requested.

2.      Evidence of defendant's alleged illegal campaign finance scheme is direct evidence of the charged offenses.  Such evidence is intertwined inextricably with the evidence regarding the charged wire fraud scheme on customers of FTX and necessary to complete the story of the charged crimes on trial.[5]  Evidence that the defendant spent FTX customer funds on political contributions is direct evidence of the wire fraud scheme because it is relevant to establishing the defendant's motive and allegedly fraudulent intent.  Proof that defendant routed political contributions through straw donors goes directly to the element of concealment for the charged money laundering count and is probative of defendant's criminal intent and knowledge of the wire fraud scheme.  Furthermore, such evidence goes to the mutual trust that existed between defendant and alleged coconspirators, including Nishad Singh and Ryan Salame.[6]  Any risk that the jury might convict defendant simply on the basis of the withdrawn campaign finance count, as distinct from the counts on which the defendant will proceed to trial in October, may be foreclosed by an appropriate instruction, which the Court would entertain if requested.

---

[4]      *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *see also Carboni*, 204 F.3d at 44 (finding other act evidence admissible under Rule 404(b) where "it tended to rebut [defendant's] contention that he acted in good faith").

[5]      *See Carboni*, 204 F.3d at 44; *see also Gonzalez*, 110 F.3d at 941.

[6]      *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017).

SPA-49

4

3.      Evidence of the defendant's alleged scheme to bribe a Chinese government official to gain the release of $1 billion frozen by the official's government is neither direct evidence of nor "inextricably intertwined with" any offense charged in the S6 Indictment.[7] Such evidence is admissible, however, under Fed. R. Evid. 404(b) as evidence of the motive for defendant's alleged misappropriation of customer assets and to "help [] explain to the jury how the [alleged] illegal relationship between [the defendant and Caroline Ellison] developed."[8] Evidence of the uncharged acts does "not involve conduct any more sensational or disturbing than the crimes with which [the defendant is] charged" in the S6 Indictment.[9] Any risk that the jury might convict defendant simply on the basis of the severed Foreign Corrupt Practices Act count, as distinct from the counts on which the defendant will proceed to trial in October, may be foreclosed by an appropriate instruction, which the Court would entertain if requested.

4.      The government seeks to admit evidence that defendant (i) created the cryptocurrency token FTT, (ii) directed Alameda secretly to "amass[] substantial holdings" of FTT and other tokens "such as Serum," which defendant promoted to the public, (iii) directed Ms. Ellison to manipulate the value of such tokens, and (iv) tried to conceal Alameda's ownership of Serum tokens.  Such evidence is "inextricably intertwined with" proof of the charged offenses and

---

[7]

*See Carboni*, 204 F.3d at 44.

[8]

*United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (quoting *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir.1986), *cert. denied*, 490 U.S. 1022 (1989)).

[9]

*Roldan-Zapata*, 916 F.2d at 804.

5

"necessary to complete the story of the crime on trial."[10]  The alleged manipulation of the cryptocurrency tokens, which resulted in an alleged manipulation of Alameda's balance sheet, was an act "done in furtherance of the alleged conspiracy" and therefore is considered "part of the very act charged."[11]  Moreover, defendant's alleged directive to Ms. Ellison to manipulate the price of FTT is direct evidence of their "relationship of mutual trust."[12]  The probative value of this evidence outweighs any risk of unfair prejudice.  It is admissible.

5.      Evidence that defendant selectively prioritized payments to certain creditors in the aftermath of FTX's collapse goes to defendant's consciousness of guilt and criminal intent, and therefore is direct evidence of the charged crimes.  Furthermore, evidence of these alleged actions does "not involve conduct any more sensational or disturbing than the crimes with which [the defendant is] charged."[13]  The government's motion in this respect is granted.

6.      Evidence that defendant allegedly instituted autodeletion policies for business communications is direct evidence of "an apparent attempt to suppress evidence of the crime and is plainly relevant to show [defendant's] consciousness of guilt."[14]  It would be admissible also

---

10

See *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007); *see also id.* (affirming admission of evidence of "acts [that] were either repeated during the period of the charged conspiracy or were recorded in [the company's] ledgers in a way that affected [its] financial statements . . . .").

11

See *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (quoting *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir.1992)).

12

See *United States v. Pipola*, 83 F.3d 556, 565-66 (2d Cir. 1996)

13

*Roldan-Zapata*, 916 F.2d at 804.

14

*Id.* at 803-04 (citing *United States v. Adegbite*, 877 F.2d 174, 180 (2d Cir.), *cert. denied*, 493 U.S. 956 (1989)).

6

under Rule 404(b) as evidence of defendant's alleged knowledge and intent of the charged crimes.

Defendant moves to introduce evidence that "counsel was involved in these policies" to demonstrate

that the policies were instituted in good faith.[15]  The Court declines to rule on this issue *in limine*.

II.     *Motion to Admit Out-of-Court Statements of Alleged Co-Conspirators and Agents*

The government seeks to admit for their truth out-of-court statements by certain of

defendant's alleged co-conspirators and agents, including Gary Wang, Messrs. Singh and Salame,

and Ms. Ellison, and other unnamed employees of Alameda and FTX.  Specifically, the government

moves to admit (a) documents, including ledgers and notes, made by Wang, Singh, and Ellison

contemporaneously with the conduct at issue in this trial, (b) statements made by FTX and Alameda

employees while they were employed by either company, (c) statements that were made by Ms.

Ellison during the course of her employment by and related to Alameda business, (d) statements by

Mr. Salame about his alleged agreement with the defendant to make political donations in his own

name but paid for by the defendant, and (e) videos of FTX commercials.[16]

7.     The government seeks preliminary rulings on the admissibility of general

categories of out-of-court statements as well as excerpted out-of-court statements of which the Court

has been provided only with portions.  The government argues that many of these statements will

be admissible over hearsay objection (1) under Fed. R. Evid. 801(c) as non-hearsay, (2) under Fed.

R. Evid. 801(d)(2)(D) as non-hearsay statements "made by [an opposing] party's agent or

employee," (3) under Fed. R. Evid. 801(d)(2)(E) as non-hearsay statements made in furtherance of

---

[15]

*See* Dkt 246, at 19.

[16]

Dkt 204, at 18-32.

7

a "joint venture," (4) under Fed. R. Evid. 804(b)(3) as statements against interest, or (5) under Fed. R. Evid. 803(6) as business records.  These bases of admissibility cannot be applied in the abstract. Admissibility ultimately must turn on characteristics of the particular items of evidence and the purposes for which they are offered.  Accordingly, the government's motion is denied in this respect without prejudice to offering this evidence at trial.

III.    *Motion to Authenticate Certain Records Under Rule 902(11) & Limit Cross-Examination of Record Custodians*

8.    The government moves for a determination that certain documents are self-authenticating under Fed. R. Evid. 902(11) and to limit the scope of cross-examination of record custodians.[17]  This aspect of the government's motion is denied without prejudice.  Should the parties fail to agree upon an appropriate stipulation, the Court would consider these issues at trial.[18]

IV.    *Motion to Preclude Defendant from Introducing Certain Evidence*

The government moves to preclude the defendant from introducing certain evidence as irrelevant or unfairly prejudicial.

9.    The government moves to preclude evidence and claims that "FTX customers,

---

[17]    Dkt 204, at 32-36.

[18]    *See United States v. Weigand*, No. 20 Cr. 188 (JSR), 2021 WL 568173, at *2 (S.D.N.Y. Feb. 14, 2021).

8

FTX investors, and/or Alameda's lenders were negligent, gullible, or insufficiently vigilant."[19] Such evidence routinely is excluded from trials on wire and mail fraud charges because "reliance is not an element of criminal fraud," and "the unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent."[20] That motion is granted in this respect because such evidence is not relevant to the claims at issue at trial and any limited probative value would be outweighed substantially by the risk of unfair prejudice and jury confusion.

10.    The government moves to preclude defendant from "arguing or adducing evidence that other companies or individuals were using customers' assets or otherwise engaging in misconduct."[21] Defendant argues that evidence that others in comparable businesses were engaging in practices such as those for which defendant is charged is or may be relevant to whether defendant had a good faith belief in the permissibility of his conduct. The government rejoins in substance that it is no defense to a speeding ticket that the police did not pull over every car traveling at the same rate of speed. And there is some support for both points of view,[22] albeit not

---

[19]    Dkt 204, at 36-38.

[20]    *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017); *see also United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (citing *Weaver*, 860 F.3d at 96) ("The Court of Appeals routinely has rejected a gullible victim defense for wire-fraud charges.").

[21]    Dkt 204 at 38-39.

[22]    *Compare United States v. Litvak*, 808 F.3d 160, 189-90 (2d Cir. 2015) (evidence that defendant's supervisors approved of conduct identical with that of the defendant was probative of defendant's "intent to defraud, *i.e.*, that he held an honest belief that his conduct was not improper or unlawful"); *and United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) ("Culpable intent or lack of good faith is not merely an element of the crime of fraudulent use of the mails . . . ; it is in fact practically crucial where as here the scheme and the mailing are admitted. . . . And hence, since it may be only inferentially proven, . . . no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly

9

on facts indistinguishable from what the evidence may show in this case.  The facts in which the

general issue may be presented, however, are likely to affect its proper resolution in any given

instance.  Moreover, any relevance of the actions of others in any event would seem to depend upon

the defendant's knowledge of those actions at the relevant time or times.  Accordingly, the Court

is not yet sufficiently informed to rule definitively on this aspect of the government's motion.  In

any case, however, defendant is not to open to the jury on this subject nor raise it with any witness

absent prior notice to the Court and the government.

11.    The government moves to preclude defendant from "present[ing] evidence

or argument concerning his prior commission of 'good acts' or [] offer[ing] evidence of his

non-criminal activities to disprove his guilt of the crimes charged."[23]  As a general proposition, "[a]

defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts

on specific occasions."[24]  Furthermore, pursuant to Federal Rule of Evidence 403, "a district court

may exclude evidence of a defendant's prior good acts if it finds that any minimal probative value

of such evidence is outweighed by the likelihood of jury confusion and the risk of jury

---

outweigh any relevancy it might have."); *with United States v. Connolly,* No. 16 Cr. 370
(CM), 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019) (that "everyone is doing it" – is
"not a defense to the crime of wire fraud or conspiracy to commit wire fraud; just as
'everyone speeds' is not a defense if your car happens to get picked up on the radar"); *and
United States v. Mendlowitz,* No. 17 Cr. 248 (VSB), 2019 WL 6977120, at *5 (S.D.N.Y.
Dec. 20, 2019) ("[T]he fact that certain conduct may be common or general practice in an
industry was not relevant to the jury's consideration of the conduct of [the defendant], and
is not a defense to wire fraud.").

[23]    Dkt 204, at 54.

[24]    *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (quoting *United States v. Scarpa*,
897 F.2d 63, 70 (2d Cir. 1990)).

10

nullification."[25]  Accordingly, the defendant is precluded from referring to any alleged prior good acts by the defendant, including any charity or philanthropy, as indicative of his character or his guilt or innocence.

12.    The government moves to preclude defendant from presenting evidence or argument "concerning his family background, health, age, pretrial detention, or any other similar factors . . . absent a showing that such a factor bears on his guilt."[26]  Such evidence "appears not to be relevant to the issue of whether Defendant committed the crimes charged" and thus would be irrelevant.[27]  Accordingly, the motion is granted.  Additionally, the government's motion to preclude defendant from offering evidence or argument concerning the punishment or consequences he would face if convicted is granted.[28]

13.    The government moves to preclude defendant from presenting evidence or argument "about the speed of the Government's charging decisions, the cooperation of the Debtors' attorneys, and the circumstances of the Defendant's extradition."[29]  Any such evidence is irrelevant to the issues for the jury at trial and would carry a substantial risk of distracting the jury from its

---

[25]

*United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (citing *United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011)).

[26]

Dkt 204, at 56.

[27]

*United States v. Battaglia*, No. S9 05 CR. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008).

[28]

*See Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).

[29]

Dkt 204, at 47.

11

duty to determine the defendant's guilt or innocence and of encouraging jury nullification.[30] Accordingly, the government's motion in this respect is granted.

14.     The government moves to preclude defendant from "attempting to shift the blame for FTX's collapse onto regulators" or "argu[ing] for acquittal on the basis of extraneous public policy considerations," such as "the role of regulatory agencies in responding to recent cryptocurrency market events."[31]  Such evidence would have no probative value and would create a substantial risk of confusing the issues and misleading the jury.  Accordingly, the government's motion is granted in this respect.

15.     The government moves to preclude defendant from arguing that he "is not guilty because FTX was not regulated within the United States and he followed the rules with respect to FTX US."[32]  Defendant has not opposed this request, which therefore is granted.

16.     The government moves to preclude defendant from "offering evidence [tending to prove] or arguing that he intended to return or repay victims' funds and therefore that he did not act with intent to defraud."[33]  The defense represents that it has no intention of arguing or introducing evidence that the defendant "intended to steal funds and give them back,"[34] which

---

[30]

*See United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]").

[31]

Dkt 204, at 46.

[32]

Dkt 204, at 53.

[33]

Dkt 204, at 41.

[34]

Dkt 246, at 28.

12

hereby is precluded.  The government's motion, however, is denied without prejudice to the extent

that the defendant seeks to introduce evidence and argument probative of his alleged good-faith

belief that FTX and Alameda's handling of customer assets was permitted by law and under the

Terms of Service.  The government moves also to preclude the defendant "from offering evidence

about the amount of assets that have been recovered through FTX's bankruptcy for purposes of

suggesting to the jury that victims will be made whole, that the FTX Debtors' progress in securing

and recovering estate assets somehow diminishes the scale of the fraud, or that, with more time, FTX

could have satisfied customer withdrawals."[35]  The defense does not object to that request, which

hereby is granted.[36]

      17.    The government moves to preclude defendant from "making arguments or

cross-examining witnesses about contractual disclaimers or similar provisions in FTX's terms of

service or other documents provided to victims or posted on FTX's website."[37]  That motion is

premature and therefore is denied without prejudice.

      18.    The government moves to preclude defendant from "arguing about or

introducing evidence regarding whether FTX needed to declare bankruptcy, whether it was good for

FTX and its customers to declare bankruptcy, whether the defendant supported the bankruptcy

petition, whether the exchange would be operational today but for the bankruptcy, and/or whether

the General Counsel of FTX US and outside attorneys at Sullivan & Cromwell caused FTX to

---

[35]      Dkt 204, at 43-44.

[36]      Dkt 246, at 28 n.7.

[37]      Dkt 204, at 40.

**SPA-58**

13

declare bankruptcy so that they could benefit financially."[38]  That motion is granted, as set forth in more detail below with respect to the defendant's motion *in limine*.

19.    The government moves to preclude defendant from "suggesting that the presence of attorneys at his companies or the involvement of attorneys in certain decision-making demonstrates that he lacked criminal intent," absent a "formal advice of counsel defense."[39]  The Court will defer any ruling on this motion.

V.    *Motion to Preclude the Defendant from Cross-Examining Witnesses About Privileged Documents or Topics*

20.    The government moves to preclude the defendant from cross-examining witnesses about documents or topics that are protected by the attorney-client privilege, including the corporate privilege held by the FTX Debtors.[40]  That motion is denied without prejudice.

VI.    *Motion to Preclude the Defendant from Cross-Examining Witnesses About Their Recreational Drug Use*

21.    The government moves to preclude the defendant from cross-examining witnesses about their recreational drug use on the ground that "it is not probative of a witness's truthfulness and would serve only to harass the witness and prejudice the jury against them."[41]  The

---

[38]    Dkt 204, at 49-50

[39]    Dkt 204, at 44.

[40]    Dkt 204, at 57-58.

[41]    Dkt 204, at 59-60.

14

government's motion is denied without prejudice.  The defendant, however, shall not introduce the subject in the presence of the jury absent prior notice to the Court and the government.

*The Defendant's Motion*

Defendant moves *in limine* to preclude the government from introducing evidence of (a) the FTX bankruptcy, the solvency of FTX and Alameda, and their ability to make customers whole, (b) defendant's resignation from FTX, and (c) statements that pertain to FTX.US.  Defendant moves also for an order directing the government immediately to produce to the defense all orally communicated *Brady* material in its possession.[42]

1.   The government does not seek to offer evidence or argument as to "whether FTX needed to declare bankruptcy, whether it was good for FTX and its customers to declare bankruptcy, whether the defendant supported the petition, whether the exchange would be operational today but for the bankruptcy, and whether attorneys benefitted from the bankruptcy,"[43] so defendant's motion to that extent is moot.  What remains of defendant's motion therefore is an attempt to preclude any evidence whatsoever of the bankruptcy of FTX and Alameda and of the defendant's resignation as FTX's chief executive officer.  That would go too far.  Those facts, which are undisputed by the parties, are intertwined inextricably with the crimes alleged in the Indictment and the government is entitled, within reason and without appealing to sympathy, to explain to the

---

[42]

Defendant moved also to preclude the government from introducing evidence that was produced to the defense after July 1, 2023.  Dkt 206.  That motion already has been denied. *See* Dkt 241.

[43]

Dkt 245, at 1.

**SPA-60**

15

jury its view of what allegedly happened here.[44]  Furthermore, the government's proffered evidence regarding defendant's resignation and his alleged subsequent interference with the bankruptcy estate is direct evidence of at least one of the criminal conspiracies alleged in the Indictment and is admissible also to complete the story of that conspiracy.[45]  Any risk that the jury might convict defendant on the basis of his resignation or the bankruptcies of FTX and Alameda, as opposed to violating the relevant statutes, may be foreclosed by an appropriate instruction, which the Court would entertain if requested.

2.    Defendant moves to preclude the government from introducing public statements and advertising materials regarding FTX.US, which are referenced in the S5 Indictment.[46] The government's proffered evidence regarding two such advertisements demonstrates that they were "capable of leading a reasonable person" to believe that the advertisements pertained to FTX, not merely FTX.US, and to change his or her conduct on that basis.[47]  Defendant's motion therefore is denied as to the two advertisements described in the S5 Indictment and in the government's opposition brief without prejudice to objection at trial should the government then seek to offer other public statements pertaining to FTX.US.[48]

3.    The government repeatedly has acknowledged its disclosure obligations under

---

[44]
*Old Chief v. United States*, 519 U.S. 172 (1997); *Carboni*, 204 F.3d at 44 (evidence is admissible when it is "necessary to complete the story of the crime on trial").

[45]
*See* Dkt 245, at 2.

[46]
Dkt 207, at 16-17.

[47]
*Weaver*, 860 F.3d at 94.

[48]
*See* Dkt 245, at 5-8.

**SPA-61**

16

Rule 16, *Brady*, and *Giglio*, as well as its intention to remain in compliance with those obligations in the future.[49]  There is a schedule for disclosure of such materials, and the government has made a good-faith representation to the Court and defense counsel that it will comply with that schedule. That is sufficient at this time, and defendant's motion regarding the production of *Brady* and *Giglio* materials is denied.

*Conclusion*

Accordingly, the government's motion *in limine* (Dkt 204) is granted in part and denied in part as set forth above.  The defendant's motion *in limine* (Dkt 206) is denied, but without prejudice to renewal at trial to the extent indicated above.

SO ORDERED.

Dated:          September 26, 2023

_____

Lewis A. Kaplan
United States District Judge

---

[49]          *See, e.g.*, Dkt 245, at 8-9.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

          -against-                                     S6 22-cr-0673 (LAK)

SAMUEL BANKMAN-FRIED,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                    Danielle R. Sassoon
                    Nicolas Roos
                    Danielle Marie Kudla
                    Samuel Raymond
                    Thane Rehn
                    Assistant United States Attorneys
                    Jil Simon
                    Trial Attorney
                    DAMIAN WILLIAMS
                    UNITED STATES ATTORNEY

                    Mark Stewart Cohen
                    Christian R. Everdell
                    S. Gale Dick
                    Sri K. Kuehnlenz
                    Alexandra Theobald
                    David Lisner
                    Drew Dean
                    Sharon L. Barbour
                    COHEN & GRESSER LLP
                    *Attorneys for Defendant*

2

LEWIS A. KAPLAN, *District Judge.*

Defendant awaits trial on two substantive counts alleging wire fraud as well as five counts charging conspiracies to commit wire fraud, securities fraud, commodities fraud, and money laundering. The matter is before the Court on the government's motion *in limine* to preclude the defendant from arguing or adducing evidence regarding the involvement of attorneys in certain events at FTX and Alameda absent defendant's assertion of what often is referred to as a formal "advice-of-counsel defense." The Court previously has deferred ruling on the motion.

*Discussion*

It is helpful at the outset to clear the verbal underbrush.

What the government (and some courts in prior cases) refers to as a formal "advice-of-counsel defense" is proof that the defendant "[1] made a complete disclosure to counsel [concerning the matter at issue], [2] sought advice as to the legality of his conduct, [3] received advice that his conduct was legal, and [4] relied on that advice in good faith."[1] But the characterization of such evidence as a "defense" frequently is not accurate in one sense of the term. As the Second Circuit has written:

---

[1] *Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994) (citing *S.E.C. v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314 n.28 (D.C. Cir.1981)).

3

An affirmative defense is '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.' [citations omitted]  In a fraud case, however, the advice-of-counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true.  Rather, the claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.' [citation omitted] The government must carry its burden to prove [the defendant's] intent to defraud, and that burden does not diminish because [the defendant] raised an advice-of-counsel defense.[2]

Thus, evidence concerning the presence, involvement and even advice of lawyers in relevant events is viewed best as evidence probative of the defendant's intent to defraud or lack thereof.[3]

Mr. Bankman-Fried does not assert what commonly is referred to as a formal advice-of-counsel defense, which would require him to establish the four elements set forth above.  Rather,

---

[2]    *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (citations omitted).

[3]    *Id.* at 476-77 (citing *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989)); *see also Markowski*, 34 F.3d at 105 (reliance on the advice of counsel "is not a complete defense, but only one factor for [the jury's] consideration"); *Howard v. S.E.C.*, 376 F.3d 1136, 1147 (D.C. Cir. 2004).

4

he argues that "evidence that [he] was aware that counsel . . . were involved in decisions related to

[the use of ephemeral messaging applications and auto-deletion policies at FTX, the formation and

incorporation of the North Dimension entities, the banking relationship between Silvergate Bank

and Alameda, North Dimension, and FTX, loans given to FTX and Alameda executives, the Terms

of Service, intercompany agreements between FTX and Alameda,] and other matters is directly

relevant to his good faith and lack of criminal intent, even if not introduced as part of a formal

advice of counsel defense."[4]   The government disputes this -- at least in the way it has been stated

by the defendant.  It seeks to preclude the defendant "from *unduly* focusing on the fact of attorneys'

involvement" in such matters or "suggesting that attorneys *blessed*, for instance, the loans, bank

documents, or message deletions."[5]   But these formulations beg at least the following important

questions:

- What would constitute "undue" focus on attorney involvement?

- What could suggest inappropriately that attorneys had "blessed" a particular
  course of conduct?

---

[4]
Dkt 246, at 29.

[5]
Dkt 204, at 45 (emphasis added).

The government seeks also to preclude the defendant "from referencing the involvement of attorneys in his opening statement" and requests that the Court provide "a cautioning instruction" if he attempts to "introduce evidence of the involvement of attorneys during trial." *Id.*

5

- Assuming for the sake of argument that the defendant were to offer evidence
  of attorney involvement that did not focus "unduly" on that involvement or
  "suggest" a "blessing" that the lawyers never intended, on what theory would
  the evidence be relevant?

These problems are illustrated by a number of decisions in other cases.

In *S.E.C. v. Tourre*, the defendant was precluded "from placing undue focus on the

fact of a lawyer's presence at a meeting or that counsel reviewed disclosures" given the defendant's

concession that he would "not be able to prove the required elements of a reliance on advice of

counsel defense."[6]   The Court reasoned that "it would be irrelevant, misleading, or both to

emphasize the presence of counsel" given the risk that the jury could be led to believe that counsel

"blessed" the legality of the transactions at issue.[7]  Accordingly, it precluded evidence that (1) would

be "relevant solely to show that lawyers attended meetings or set up meetings" and (2) could "only

be intended" to "suggest that counsel blessed the relevant disclosures."[8]

---

[6]   950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

[7]   *Id.*

[8]   *Id.*

The Court held also that counsel could not include references to the presence and involvement of lawyers in their openings and that, "to the extent [the defendant] d[id] reference the involvement of lawyers in a manner that could suggest he relied on their advice, the Court [would] give a limiting instruction." *Id.*

6

Similarly, in *S.E.C. v. Lek Securities Corporation*, Judge Cote held that "references to counsel's communications [was] not relevant in the absence of an advice-of-counsel defense and should be excluded . . . pursuant to Rule 403."[9] That was so, she held, because "[t]he intimation that counsel ha[d] blessed a transaction or practice without waiver of the attorney-client privilege 'would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.'"[10] She held also that "any probative value of such references [would be] substantially outweighed by the danger of undue prejudice to the SEC, which was denied discovery of the confidential communications, and the risk that such references [would] sow confusion and mislead the jury by suggesting" that counsel for the defendants were fully informed and approved the transaction at issue.[11]

The defendant relies on an *in limine* ruling issued before the start of trial in *United States v. Tagliaferri*.[12] That decision precluded any testimony or argument that the defendant relied on his attorney's advice because, "according to [defense counsel], [the defendant] did not receive

---

[9] No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at *3-4 (S.D.N.Y. Nov. 5, 2019).

[10] *Id.* (quoting *Tourre*, 950 F. Supp. 2d at 684).

[11] *Id.*

[12] No. 13 Cr. 115 (RA) (S.D.N.Y. 2014), Trial Tr. (Dkt 63), at 83-85.

7

any advice about what was required to be disclosed."[13] The *in limine* ruling, however, nevertheless

permitted the defendant "to elicit testimony that attorneys were involved in the transactions (which

[would have] in any event come out on the government's case)" and "to argue that this involvement

affected his state of mind, thus bearing on whether he acted with fraudulent intent."[14] It held also

that "if [the defendant] has an evidentiary basis for doing so, [he] may argue that attorneys who

drafted or reviewed documents related to the charged transactions did not inform him of the

illegality of his receiving fees or that formal disclosure of them was required, and that the defendant

took comfort in the attorney silence."[15] But this is not the endorsement of defendant's position that

he suggests.

As an initial matter, defendant's argument ignores the factual context. The defendant

was an investment advisor who allegedly took fees -- kickbacks -- from companies in which he

caused his clients to invest and did so, moreover, without disclosing those payments to his clients.

The defendant's lawyer drafted or reviewed for the defendant documents that provided for the

defendant to receive the allegedly concealed kickbacks. The likelihood that the kickbacks were

illegal, or that the defendant at least had a duty to disclose them to his clients, thus was obvious

---

[13]    *Id.* at 83.

[14]    *Id.* at 83-84.

[15]    *Id.* at 84.

8

from the very tasks for which the lawyer was were engaged.  In consequence, the lawyer's alleged

silence at least arguably seemed probative to some degree of the defendant's state of mind.[16]  But

this ruling was not the last word on the subject in that case.

The defendant in *Tagliaferri* took the witness stand at the trial.  He testified that the

lawyer in question never told him that he was obliged to disclose the "advisory fees" – the kickbacks

– to his client.[17]  Judge Abrams in a sidebar then expressed concern that "the jury is getting this

misleading impression that advice was sought and given and that the lawyer advised him that he

didn't need to disclose his fees and that what he was doing was perfectly appropriate.  And I don't

want them to be left with the misleading impression . . . ."[18]  At that point, defendant's counsel

dropped the line of examination.[19]  And on cross-examination, the defendant  admitted that he

neither had asked for nor received any advice from the lawyer about whether or not the kickbacks

---

[16]

Additionally, the defendant in *Tagliaferri* waived the attorney-client privilege, whereas
Mr. Bankman-Fried has not waived, and perhaps lacks the authority to waive, the attorney-
client privilege over any of the alleged communications at issue.  *See Lek*, 2019 WL
5703944, at *3-4 ("The intimation that counsel has blessed a transaction or practice *without
waiver of the attorney-client privilege* 'would give the defendant all of the essential benefits
of an advice of counsel defense without having to bear the burden of proving any of the
elements of the defense.'") (internal quotation marks omitted) (emphasis added).

[17]

*Tagliaferri*, Trial Tr. (Dkt 83), at 2123:10-2125:3.

[18]

*Id.* at 2127:9-13.

[19]

*Id.* at 2128:1-14.

9

should have been disclosed.[20]  Thus, the Court's intervention at the sidebar eliminated the risk of

creating a misleading impression that advice was sought and given on one of the precise alleged

breaches of duty at issue in the criminal case.

In light of the foregoing, the risk of confusion and unfair prejudice to the government

were defendant to focus on the presence or involvement of lawyers at or for FTX and Alameda –

without any degree of specificity about what they were present for or involved in, what their tasks

were, what exactly they knew, and what the defendant knew about what the lawyers knew and were

doing – is palpable.  Cutting the other way may be circumstances in which lawyer presence,

involvement, or advice known to the defendant at the time of his alleged misconduct might have a

real bearing on whether he acted with or without fraudulent intent.  So whether and to what extent

the defendant should be permitted to argue or adduce evidence regarding the presence or

involvement of lawyers will depend on the circumstances.  The best that can be done for now is to

ensure that the Court will have sufficient notice to make appropriate rulings on a case-by-case basis.


*Conclusion*

Accordingly, the government's motion in this respect (Dkt 204) is granted to the

extent that it seeks to preclude the defendant from referring in his opening statement to the presence

---

20

    *Tagliaferri*, Trial Tr. (Dkt 85), at 2302:23-2303:5.

10

or involvement of attorneys and from offering any evidence, argument, or testimony on those

subjects absent prior notice to the Court and the government outside of the presence of the jury.  It

is denied without prejudice in all other respects.

SO ORDERED.

Dated:        October 1, 2023

_____
Lewis A. Kaplan
United States District Judge

Case: 24-961, 09/13/2024, DktEntry: 29.1, Page 74 of 107
**SPA-72**

Case 1:22-cr-00673-LAK   Document 320   Filed 10/11/23   Page 1 of 2
Case 1:22-cr-00673-LAK   Document 306   Filed 10/02/23   Page 1 of 5



**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

# MEMO ENDORSED



October 2, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    **Re:** *United States v. Samuel Bankman-Fried*, **S5 22 Cr. 673 (LAK)**

Dear Judge Kaplan:

    On behalf of our client, Samuel Bankman-Fried, we write to respectfully request clarification and reconsideration regarding certain portions of the Court's ruling on the parties' motions *in limine*, ECF No. 289. In particular, as discussed further below, we seek clarification as to (1) the Court's grant of the Government's request to preclude argument concerning whether FTX was regulated within the United States and FTX.US's compliance with applicable rules, ECF No. 289 at ¶ 15; (2) the Court's grant of the Government's request to preclude Mr. Bankman-Fried from offering evidence concerning recovery of assets in the FTX bankruptcy proceeding, *id.* ¶ 16; (3) the Court's grant of the Government's request to preclude evidence concerning Mr. Bankman-Fried's prior good acts, including charitable giving and philanthropy, to disprove his guilt of the crimes charged, *id.* ¶ 11; and (4) the Court's grant of the Government's request to admit evidence concerning the alleged illegal campaign finance scheme, *id.* ¶ 2.

*1.     Ruling as to Argument Concerning Whether FTX was Regulated in the United States and FTX.US's Compliance with Applicable Rules*

    The Court granted the Government's request to preclude Mr. Bankman-Fried from arguing that "he is not guilty because FTX was not regulated in the United States and he followed the rules with respect to FTX US," on the basis that the "Defendant has not opposed this request[.]" ECF No. 289 at ¶ 15. However, we respectfully note that Mr. Bankman-Fried opposed the Government's request in his Memorandum of Law in Opposition to the Government's Motions *in Limine* ("Opposition Brief"), ECF No. 246, at 23-24.

    Specifically, Mr. Bankman-Fried argued:

Memorandum Endorsement                    United States v. Bankman-Fried, 22-cr-0673 (LAK)

Defendant moves for clarification and reconsideration (Dkt 306) regarding portions of the Court's ruling on the parties' motions *in limine*. The motion is disposed of as follows, the numbered sections of this endorsement corresponding to those of the defendant's motion.

1.      Reconsideration is granted. On reconsideration, the Court adheres to its ruling on the prior motion (Dkt 289, ¶ 15) substantially for the reasons argued by the government in opposition to the defendant's present motion (Dkt 312, ¶ I). Among other things, the fact, assuming it to be so, that cryptocurrency exchanges or the cryptocurrency industry in particular are, in a general sense, unregulated in the United States, at least in the same ways as some other financial services industries such as securities exchanges, commodities exchanges, investment advisors, and so on, is irrelevant. Defendant is being prosecuted here for alleged violations of U.S. statutes of general application to all persons and entities the conduct of which comes within the reach of U.S. law, including, for example, wire fraud and conspiracy to violate other applicable statutes. Among other things, he allegedly misappropriated for his own use money that was "entrusted to [his] care by another." *United States v. Altman*, 48 F.3d 96, 101 (2d Cir. 1995). Even were the evidence that defendant seeks to offer of some relevance, evidence of the lack of the sort of regulation to which defendant refers would be of minimal probative value and would be outweighed substantially by the likelihood of jury confusion, waste of time, and unfair prejudice to the even-handed application of laws of general application to the defendant's alleged conduct.

2.      Reconsideration is denied. First, the defendant's reliance on footnote 7 of his opposition to the government's memorandum on the motion *in limine* is misplaced. Arguments raised only in footnotes (let alone arguments omitted from footnotes) are not properly raised and need not be addressed by the Court. *See Fairfield Sentry Ltd. v. Citibank, N.A.* 630 F. Supp.3d 463, 496 n.34 (S.D.N.Y. 2022) (citing cases). Second, as the Court already has held, "it is immaterial as a matter of law whether the defendant intended to repay [or could have repaid] the misappropriated funds because the offense [wa]s complete where, as alleged here, there is an immediate intent to misapply and defraud."

3.      Reconsideration is granted but, on reconsideration, the Court adheres to its original ruling with this clarification: The government does not object to the defendant's proffer of admissible evidence regarding charitable or philanthropic efforts provided the evidence is presented for a proper purpose, as opposed to attempting to prove lack of a propensity to commit crime or good. Should controversy arise over particular questions, the Court then will rule as appropriate.

4.      Reconsideration is granted but, on reconsideration, the Court adheres to its original ruling. Moreover, and with respect, the defendant has misconstrued the Court's rulings. Properly construed, there is no inconsistency.

In the event of a conviction, the Court reserves the right to expand upon its reasoning with respect to these rulings.

SO ORDERED.

Dated:          October 11, 2023

Lewis A. Kaplan
United States District Judge

**SPA-74**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

          -against-

SAMUEL BANKMAN-FRIED,

                   Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S6 22-cr-0673 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-16-23

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

        For the reasons stated on the record in open court, the government's motion to preclude the defendant from introducing evidence or argument about the current value of certain investments made by the defendant (Dkt 315) is granted.

        SO ORDERED.

Dated:        October 16, 2023

                                     Lewis A. Kaplan
                           United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-

SAMUEL BANKMAN-FRIED,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S5 22-cr-0673 (LAK)

**MEMORANDUM OPINION**

Appearances:

                     Danielle R. Sassoon
                     Nicolas Roos
                     Danielle Marie Kudla
                     Samuel Raymond
                     Thane Rehn
                     Assistant United States Attorneys
                     Jil Simon
                     Trial Attorney
                     DAMIAN WILLIAMS
                     UNITED STATES ATTORNEY

                     Mark Stewart Cohen
                     Christian R. Everdell
                     S. Gale Dick
                     Sri K. Kuehnlenz
                     Alexandra Theobald
                     David Lisner
                     Drew Dean
                     Sharon L. Barbour
                     COHEN & GRESSER LLP

                     Marc L. Mukasey
                     Torrey K. Young
                     MUKASEY YOUNG LLP
                     *Attorneys for Defendant*

## SPA-76

2

LEWIS A. KAPLAN, *District Judge*.

Defendant Samuel Bankman-Fried was indicted on seven counts alleging fraud, conspiracy, and money laundering arising from the collapse of cryptocurrency exchange FTX and cryptocurrency trading firm Alameda Research.  The government moved *in limine* to preclude the defendant from arguing or adducing evidence regarding the involvement of attorneys in certain events at FTX and Alameda.  After initially deferring any ruling on the motion,[1] the Court granted the government's motion to the extent of ordering the defendant to provide prior notice to the Court and government before offering any evidence relating to the involvement of attorneys.[2]

During the trial, the defense gave notice, albeit in vague terms, that it intended to elicit such testimony from the defendant.[3]  In order to determine the substance and admissibility of the proposed testimony, the Court took an offer of proof outside the presence of the jury.  Upon its conclusion, it held that the defendant could testify to the involvement of lawyers in the creation and implementation of document retention policies at FTX but excluded testimony about the involvement of attorneys in the other activities described in the defense notice.[4]  This opinion sets

---

[1]      Dkt 289 at 13.

[2]      Dkt 305 at 9–10 [available at *United States v. Bankman-Fried*, No. S6 22-CR-0673 (LAK), 2023 WL 6392718 (S.D.N.Y. Oct. 1, 2023)].

[3]      Dkt 338 at 1–4.

[4]      Trial Tr. 2291–93.

3

out the context and bases for that ruling.


*Facts*

This case stems from the defendant's involvement in cryptocurrency exchange FTX and cryptocurrency trading firm Alameda Research. In addition to founding and holding substantial ownership stakes in both companies, the defendant served as chief executive officer of FTX from its founding in 2019 until its bankruptcy in 2022 and as chief executive officer of Alameda from its founding in 2017 until he stepped down in 2021.[5] In November 2022, FTX declared bankruptcy.[6] Soon thereafter, the defendant was indicted on two substantive counts alleging wire fraud and five counts alleging conspiracies to commit wire fraud, securities fraud, commodities fraud, and money laundering.[7] After a five-week trial, the defendant was convicted on all seven counts.


*Pretrial Motions*

The government moved *in limine* to preclude the defendant "from suggesting [at trial] that the presence of attorneys at his company or the involvement of attorneys in certain

---

[5]      Trial Tr. 2304, 2313–14, 2365, 2531, 2564, 2570.

[6]      Trial Tr. 2594–95.

[7]      Dkt 202. The Court previously severed several other counts for which it set trial in March 2024. Dkt 165. The government decided not to pursue those counts. Dkt 388.

4

decision-making demonstrates that [defendant] lacked criminal intent."[8]   Such a "defense"

sometimes is called, imprecisely, an "advice-of-counsel defense."[9]   The defendant opposed the

government's motion.[10]   Although he disclaimed a "formal advice-of-counsel defense," the

defendant argued that his awareness that attorneys "were involved in decisions related to" charged

conduct was "directly relevant to his good faith and lack of criminal intent."[11]

Following extensive briefing on the government's motion, the Court concluded that

it lacked sufficiently specific information about the evidence the defense sought to introduce to

reach a definitive ruling.[12]   Accordingly, it granted the government's motion only to the extent that

it "preclude[d] the defendant from referring in his opening statement to the presence or involvement

of attorneys," and it required the defendant to provide the Court and government with notice before

---

[8]     Dkt 204 at 44.

[9]     Dkt 204 at 44.

As this Court noted in its pretrial opinion on this issue, "the characterization of such
evidence as a 'defense' frequently is not accurate" in the respect that it is not an affirmative
defense, which the defendant must prove, but is, rather, relevant to "whether the government
has proved the required element of the offense that the defendant had an 'unlawful intent.'"
Dkt 305 at 2–3 (quoting *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017)).

[10]    Dkts 222, 246 at 29–31.

[11]    Dkt 246 at 29.

[12]    Dkt 305 at 9.

5

"offering any evidence, argument, or testimony on those subjects."[13]

*Proffered Testimony*

   During trial, the defendant notified the Court that Mr. Bankman-Fried planned to testify "regarding [his] knowledge of the involvement of counsel" in four areas:

  1) Implementing document retention policies at FTX and Alameda, including enabling auto-deletion for certain communications applications.

  2) Forming Alameda subsidiary North Dimension, opening its bank account at Silvergate Bank, and executing a payment processing agreement between FTX and Alameda.

  3) Structuring and documenting loans from Alameda to the defendant and other FTX executives.

  4) Drafting the FTX terms of service between FTX and its customers.[14]

   While the defendant thus identified the general subjects on which he proposed to testify, he did not specify the substance of the proposed testimony.  In view of the generality of the defendant's notice, the Court took an offer of proof in question and answer form from the defendant

---

[13]  Dkt 305 at 9–10.

[14]  Dkt 338 at 2–4.

6

outside the presence of the jury pursuant to Federal Rules of Evidence 103 and 104.[15]  On direct

examination of Mr. Bankman-Fried, the defense proffered evidence of the presence of attorneys at

various times and the effect of the attorneys' presence on the defendant's state of mind.   The

government also cross-examined Mr. Bankman-Fried.[16]

        After the offer of proof, the Court ruled that the defendant could testify regarding the

role of FTX attorneys in implementing document retention policies for the company, including auto-

deletion policies for messaging applications.[17]  It explained that this testimony would not pose a

substantial risk of confusion or unfair prejudice.[18]  The Court, however, excluded the other areas of

testimony regarding the presence of attorneys, including attorneys' role in forming Alameda

subsidiary North Dimension[19] and structuring and drafting intercompany agreements, loan

agreements, and the terms of service.[20]  The Court found that testimony on these topics would be

minimally probative but would be likely to be substantially "confusing and highly prejudicial"

---

[15]      Trial Tr. 2072.

[16]      Defendant made no timely objection to the government's cross-examination of defendant. Trial Tr. 2288.

[17]      Trial Tr. 2291–92.

[18]      Trial Tr. 2291–92.

[19]      North Dimension was used for payment processing, a conduit through which FTX customers could deposit funds into their FTX accounts.  Trial Tr. 2233.

[20]      Trial Tr. 2292–93.

7

because it "falsely impl[ied] . . . that the lawyers, with full knowledge of the facts . . . blessed what the defendant is alleged to have done."[21]  The Court more fully explains its rationale here.

*Discussion*

Ordinarily, a so-called advice-of-counsel "defense" requires a defendant to offer proof that he or she "[1] made [a] complete disclosure to counsel [concerning the matter at issue], [2] sought advice as to the legality of his conduct, [3] received advice that his conduct was legal, and [4] relied on that advice in good faith."[22]  These requirements are inapplicable in this case, however, because the defendant disclaimed any formal advice-of-counsel defense.[23]  Instead, he sought to admit evidence of attorneys' presence for and participation in certain events to support his good-faith defense.[24]  The Court therefore considered the defendant's proffered testimony under primarily Federal Rules of Evidence 401 and 403, which call for the admission of *relevant* evidence unless the court concludes that "its probative value is substantially outweighed by," *inter alia,*

---

[21]
  Trial Tr. 2292.

[22]
  *Markowski v. S.E.C.*, 34 F.3d 99, 104–05 (2d Cir. 1994) (citing *S.E.C. v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314 n.8 (D.C. Cir. 1981)).

[23]
  Trial Tr. 2273.

[24]
  The Court observes, without further comment, that it is not entirely clear how, if at all, the relevance of evidence introduced through an informal advice-of-counsel defense varies from that of a formal advice-of-counsel defense.

8

"unfair prejudice, confusing the issues, [or] misleading the jury."[25]  This approach is consistent with

that employed by other courts in this district in similar circumstances.[26]  Thus, the issue before the

Court was not whether the defendant adduced evidence satisfying the elements of a formal advice-

of-counsel defense, but rather whether the testimony he sought to give would have satisfied Rules

401 and 403.

Although evidence of the presence of attorneys can be probative of a defendant's

state of mind,[27] it on occasion can pose a substantial risk of misleading the jury.  Specifically, such

evidence risks suggesting to the jury that, because lawyers were involved to some degree with one

aspect of events, the defendant was entitled to conclude that he was acting within the law with

respect to some other aspect of events.  As Judge Forrest explained in *S.E.C. v. Tourre*, a "jury could

easily believe that the fact that a lawyer is present at a meeting means that he or she must have

implicitly or explicitly 'blessed' the legality of *all* aspects of a transaction."[28]  Such a

misunderstanding would unfairly prejudice the government because it would "give the defendant

---

[25]
     Fed. R. Evid. 403.

[26]
     *See, e.g., S.E.C. v. Lek Sec. Corp.*, 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019); *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

[27]
     *See Lek Sec. Corp.*, 2019 WL 5703944, at *3 ("[E]vidence that a defendant relied on advice from counsel is relevant to the factfinder's assessment of whether the defendant acted with fraudulent intent.").

[28]
     950 F. Supp. 2d at 684 (emphasis added); *accord Lek Sec. Corp.*, 2019 WL 5703944, at *4.

all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense."[29] These concerns are more likely to warrant exclusion where, as in this case, the proffered evidence is only collaterally related to the charged conduct and is thus minimally probative. Ultimately, however, a Rule 403 analysis requires a detailed assessment of the proffered testimony. Accordingly, the Court considered each area of testimony proffered by Mr. Bankman-Fried in detail.

During his testimony outside of the presence of the jury, the defendant testified first that company counsel was involved in drafting and implementing FTX's document retention policies.[30] He testified also that he had discussed with counsel that some messaging applications used by FTX leaders and employees were configured automatically to delete messages after a predetermined period.[31] The Court admitted the testimony, explaining that it was unlikely to confuse the jury.[32] While a jury might have surmised from this testimony that lawyers sanctioned the data retention policies, such an impression would not have prejudiced the government unfairly because the testimony did not tend to suggest that the defendant believed that other, charged conduct had

---

[29] *Tourre*, 950 F. Supp. 2d at 684.

[30] Trial Tr. 2174, 2176–78.

[31] Trial Tr. 2181–82, 2212–13.

[32] Trial Tr. 2291–92.

10

been lawful.

The defendant testified next that counsel was involved in forming North Dimension, a subsidiary of Alameda, opening a bank account for the new entity, drafting a payment processing agreement between Alameda and FTX, and related matters.[33]  The Court excluded this testimony. As it explained, the proffered testimony at best would have been only minimally probative because it pertained to lawyers' involvement in activities for which the defendant was not charged.  Indeed, on cross-examination during the offer of proof, Mr. Bankman-Fried testified that he could not recall discussing with counsel the use or purpose of the North Dimension bank account[34] or the "topic of Alameda spending FTX customer deposits that came into Alameda bank accounts."[35]  He admitted, moreover, that counsel did not tell him "that Alameda could spend FTX customer deposits."[36]  In other words, the defendant testified that attorneys were not involved in the decision to divert and spend FTX customer deposits, allegations at the core of the government's case.  Consequently, the involvement of attorneys in matters only tangentially related to charged conduct would have been irrelevant to whether the defendant acted with or without fraudulent intent.  The testimony, on the

---

[33]    Trial Tr. 2183–88.

[34]    Trial Tr. 2232.

[35]    Trial Tr. 2242.

[36]    Trial Tr. 2245–46.

**SPA-85**

11

other hand, would have threatened to confuse the jury by suggesting, incorrectly, that the involvement of attorneys in those collateral activities — creating North Dimension and the payment processing agreement — would have provided a reasonable basis for defendant believing that diverting customer deposits for personal and business expenses was permissible.

For the same reasons, the Court excluded the defendant's testimony that counsel structured and documented loans from Alameda to the defendant and other FTX executives. The government did not allege that the loans, in and of themselves, or their structuring or documentation were unlawful. Rather, the criminal charges centered on the source of the funds. The defendant was accused of misappropriating customer funds by causing FTX customers to deposit money into Alameda-controlled accounts and by enabling Alameda to take FTX customer funds from FTX-controlled accounts.

The defendant's testimony would have been irrelevant to those allegations. As he admitted on cross-examination, he never discussed with counsel the fact "that some of the funds [for the loans] were coming from FTX customer money."[37] That the defendant took "comfort from the fact that the lawyers had structured the loans" would have been irrelevant to his state of mind in using FTX customer funds, conduct of which the lawyers were unaware.[38] Thus, while the probative

---

[37]      Trial Tr. 2263; *see* Trial Tr. 2265.

[38]      Trial Tr. 2192.

**SPA-86**

12

value of this proffered testimony was no more than *de minimis*, the risk of confusing the jury and unfairly prejudicing the government was manifest.  The jury might have concluded that the involvement of attorneys in structuring and documenting the loans reasonably could have assured the defendant that his misappropriation of customer funds was permissible.  It would have been highly misleading to permit the defendant to imply that his attorneys had been aware that the Alameda loans were funded by FTX customer funds and that his own actions in using that money were benign.

Last, the Court excluded Mr. Bankman-Fried's testimony that attorneys were involved in drafting FTX's terms of service and that he understood the terms' provisions for margins and futures trading to entitle Alameda to borrow from FTX.[39]  The defense theory of relevance — that attorneys' involvement in drafting the terms of service reassured Mr. Bankman-Fried that his conduct was proper — was fatally undermined by the defendant's own admission that he did not discuss the charged conduct (*i.e.*, permitting Alameda to take vast sums of FTX customer deposits) with counsel.  On cross-examination during the offer of proof, the defendant could not recall discussing with counsel any specific provisions of the terms of service, Alameda's line of credit, or the fact that Alameda could maintain a net negative balance with FTX.[40]  As Mr. Bankman-Fried

---

[39]        Trial Tr. 2193–96.

[40]        Trial Tr. 2247–49.

13

could not have taken comfort in conversations he never had, the Court excluded testimony regarding attorneys' role in drafting the terms of service. Any probative value would have been outweighed significantly by the risk, detailed above, of confusing the jury and unfairly prejudicing the government.

*Conclusion*

For the foregoing reasons, as well as those stated on the record on October 27, 2023, the Court granted the defendant's motion insofar as it concerned the participation of attorneys in drafting and implementing data retention policies, and it denied the defendant's motion in all other respects.[41]

SO ORDERED.

Dated:          February 7, 2024

                                                        _____
                                                            Lewis A. Kaplan
                                                        United States District Judge

---

[41]  To the extent the defendant moved to introduce any other testimony concerning the presence, involvement, or advice of attorneys that is not specifically addressed herein, it was denied for substantially the reasons set forth in this opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

      - v. -

SAMUEL BANKMAN-FRIED,
     a/k/a "SBF"
          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    PRELIMINARY ORDER OF
    FORFEITURE / MONEY JUDGMENT

    S6 22 Cr. 673 (LAK)

WHEREAS, on or about August 14, 2023, SAMUEL BANKMAN-FRIED (the "Defendant"), was charged in a seven-count Superseding Indictment, S6 22 Cr. 673 (LAK) (the "Indictment"), with wire fraud, in violation of Title 18, United States Code, Section 1343 and 2 (Counts One and Three); conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 (Counts Two and Four); conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371 (Count Five); conspiracy to commit commodities fraud, in violation of Title 18, United States Code, Section 371 (Count Six); and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Seven);

WHEREAS, the Indictment included a forfeiture allegation as to Counts One through Four of the Indictment, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of offenses charged in Counts One through Four of the Indictment and the following specific property:

    a)  55,273,469 shares of the stock of Robinhood Markets Inc. from Account Number 499-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," formerly held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023 (the "Robinhood Shares");

b) $20,746,713.67 in United States currency formerly on deposit in Account Numbers 499-30500 and 429-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

c) $49,999,500 in United States currency formerly on deposit in Account Number 9000-1924-02685 at Farmington State Bank d/b/a "Moonstone Bank" held in the name of "FTX Digital Markets," seized by the Government on or about January 4, 2023;

d) $5,322,385.32 in United States currency formerly held on deposit in Account Number 0000005090042549 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

e) $719,359.65 in United States currency formerly on deposit in Account Number 0000005090042556 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

f) $1,071.83 in United States currency formerly on deposit in Account Number 0000005090042564 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

g) $94,570,490.63 in United States currency formerly on deposit in Account Number 0000005091010037 at Silvergate Bank held in the name of FTX Digital Markets," seized by the Government on or about January 19, 2023;

h) Any and all monies, assets, and funds contained in Binance account number 94086678;

i) Any and all monies, assets, and funds contained in Binance.us account number 35000066; and

j) Any and all monies, assets, and funds contained in Binance.us account number 35155204

((b) through (j), collectively, the "Indictment Property");

WHEREAS, the Indictment included a forfeiture allegation as to Count Five of the Indictment, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), of any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission the offense charged in Count Five of the Indictment, including but not limited to a sum of money in

2

United States currency representing the amount of proceeds traceable to the commission of the offense charged in Count Five of the Indictment;

WHEREAS, the Indictment included a forfeiture allegation as to Count Seven of the Indictment, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 982(a)(l), of any and all property, real and personal, involved in the offense charged in Count Seven of the Indictment, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in Count Seven of the Indictment, including the Indictment Property and the Robinhood Shares;

WHEREAS, on or about September 1, 2023, the Court entered an interlocutory sale order authorizing the Government to sell the Robinhood Shares;

WHEREAS, on or about September 1, 2023, pursuant to the Court's interlocutory sale order, the Government sold the Robinhood Shares and realized a total of $605,694,411.59 from the sale of the Robinhood Shares (the "Robinhood Share Proceeds");

WHEREAS, on or about November 2, 2023, the Defendant was found guilty, following a jury trial, of Counts One through Seven of the Indictment;

WHEREAS, the Government has identified additional property, which is set forth in **Exhibit A** attached hereto (collectively with the Indictment Property and the Robinhood Shares Proceeds, the "Specific Property"), that (i) constitutes proceeds of the offenses charged in Counts One through Five of the Indictment; and/or (ii) is property involved in the offense charged in Count Seven of the Indictment;

WHEREAS, the Government asserts that $11,020,000,000 in United States currency represents (i) the amount of proceeds traceable to the commission of the offenses charged in Counts One through Five of the Indictment that the Defendant personally obtained; and (ii) the property involved in Count Seven of the Indictment;

3

WHEREAS, the Government seeks the entry of a money judgment in the amount of $11,020,000,000 in United States currency, for which the Defendant is jointly and severally liable with co-defendants Caroline Ellison, Gary Wang, and Nishad Singh (the "Co-Defendants") up to the amount of forfeiture money judgments that may be entered against the Co-Defendants in this case, as well as any other co-conspirators ("Co-Conspirators") up to the amount of forfeiture money judgments that may be entered against the Co-Conspirators for the conduct charged in Counts One through Five and Seven of the Indictment, representing (i) the amount of proceeds traceable to the commission of the offenses charged in Counts One through Five of the Indictment that the Defendant, the Co-Defendants, or the Co-Conspirators, personally obtained and/or controlled and (ii) the property involved in Count Seven of the Indictment;

WHEREAS, the Government seeks to forfeit all right, title and interest of the Defendant in the Specific Property as (i) proceeds traceable to the commission of the offenses charged in Count One through Five of the Indictment, that the Defendant personally obtained and/or controlled; and/or (ii) property involved in the offense charged in Count Seven of the Indictment; and

WHEREAS, pursuant to Title 21, United States Code, Section 853(g), and Rules 32.2(b)(3), 32.2(b)(6), and 32.2(c) of the Federal Rules of Criminal Procedure, the Government is now entitled, pending any assertion of third-party claims, to reduce the Specific Property to its possession, consistent with Federal Rule of Criminal Procedure 32.2, and to notify any person who reasonably appears to be a potential claimant of their interest therein;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      As a result of the offenses charged in Counts One through Five and Seven of the Indictment, to which the Defendant was found guilty, a money judgment in the amount of $11,020,000,000 in United States currency (the "Money Judgment"), for which the Defendant is

jointly and severally liable with the Co-Defendants and with any other Co-Conspirators up to the amount of forfeiture money judgments that may ultimately be entered against the Co-Defendants and Co-Conspirators for the conduct charged in Counts One through Five and Seven One of the Indictment, shall be entered against the Defendant.

2.    As a result of the offenses charged in Counts One through Five and Seven of the Indictment, to which the defendant was found guilty, all of the Defendant's right, title and interest in the Specific Property is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of Title 21, United States Code, Section 853.

3.    Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Preliminary Order of Forfeiture as to Specific Property/Money Judgment is final as to the Defendant, SAMUEL BANKMAN-FRIED, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

4.    All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable to the United States Marshals Service, and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Illicit Finance & Money Laundering Unit, 26 Federal Plaza, New York, New York 10278, and shall indicate the Defendant's name and case number.

5.    The United States Marshals Service (or its designee) is hereby authorized to deposit the payments on the Money Judgment into the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

6.    Upon entry of this Preliminary Order of Forfeiture as to Specific Property/Money Judgment, the United States (or its designee) is hereby authorized to take possession of the Specific Property and to hold such property in its secure custody and control.

**SPA-93**

7.    Pursuant to Title 21, United States Code, Section 853(n)(1), Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, and Rules G(4)(a)(iv)(C) and G(5)(a)(ii) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, the United States is permitted to publish forfeiture notices on the government internet site, www.forfeiture.gov. This site incorporates the forfeiture notices that have been traditionally published in newspapers. The United States forthwith shall publish the internet ad for at least thirty (30) consecutive days. Any person, other than the Defendant, claiming interest in the Specific Property must file a Petition within sixty (60) days from the first day of publication of the Notice on this official government internet web site, or no later than thirty-five (35) days from the mailing of actual notice, whichever is earlier.

8.    The published notice of forfeiture shall state that the petition (i) shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Specific Property, (ii) shall be signed by the petitioner under penalty of perjury, and (iii) shall set forth the nature and extent of the petitioner's right, title or interest in the Specific Property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the Specific Property, any additional facts supporting the petitioner's claim, and the relief sought, pursuant to Title 21, United States Code, Section 853(n).

9.    Pursuant to Rule 32.2 (b)(6)(A) of the Federal Rules of Criminal Procedure, the Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

10.    Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture with respect to specific property pursuant to Title 21, United States Code, Section 853(n) and consistent with Federal Rule of Criminal Procedure 32.2, in which all interests

will be addressed. All specific property forfeited to the United States under a Final Order of Forfeiture shall be applied towards the satisfaction of the Money Judgment.

        11.     Pursuant to Title 21, United States Code, Section 853(p), the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment.

        12.     Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas.

Case: 24-961, 09/13/2024, DktEntry: 29.1, Page 97 of 107

**SPA-95**

Case 1:22-cr-00673-LAK    Document 423    Filed 03/29/24    Page 8 of 8

13. The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture as to Specific Property/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

Dated: New York, New York

March 28 2024

SO ORDERED:

_____
HONORABLE LEWIS A. KAPLAN
UNITED STATES DISTRICT JUDGE

AO 245B (Rev. 09/19)   Judgment in a Criminal Case   (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

### Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| Samuel Bankman-Fried | ) Case Number: 1:(S6)22-CR-673-001(LAK) |
| | ) USM Number: 37244-510 |
| | ) Marc L. Mukasey, Esq. |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   (S6)1 through (S6)7
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §§ 1343 and 2 | Wire Fraud | 11/30/2022 | (S6) 1 & 3 |
| 18 U.S.C. § 1349 | Wire Fraud Conspiracy | 11/30/2024 | (S6) 2 & 4 |
| 18 U.S.C. § 371 | Securities Fraud Conspiracy | 11/30/2024 | (S6) 5 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)   All Open   ☐ is   ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/28/2024

_____
Date of Imposition of Judgment

_____
Signature of Judge

Hon. Lewis A. Kaplan, U.S.D.J.
_____
Name and Title of Judge

3/29/24
_____
Date

**SPA-97**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 1A

| | Judgment—Page | 2 | of | 7 |

DEFENDANT:   Samuel Bankman-Fried
CASE NUMBER:   1:(S6)22-CR-673-001(LAK)

### ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
| --- | --- | --- | --- |
| 18 U.S.C. § 371 | Commodities Fraud Conspiracy | 11/30/2022 | (S6)6 |
| 18 USC § 1956(h) | Money Laundering Conspiracy | 11/30/2022 | (S6)7 |

**SPA-98**

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | | | | |
|---|---|---|---|---|
| | Judgment — Page | 3 | of | 7 |

DEFENDANT:    Samuel Bankman-Fried
CASE NUMBER:    1:(S6)22-CR-673-001(LAK)

## IMPRISONMENT

       The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

       The terms on each of counts (S6)1, (S6)2 and (S6)7 shall be served concurrently with each other. The term on each of counts (S6)3 and (S6)4 shall be served concurrently with each other. The first 180 months of the terms on each of counts (S6)3 and (S6)4 shall be served concurrently with the terms on Counts (S6)1, (S6)2 and (S6)7 and the balance of 60 months on the terms on each of counts (S6)3 and (S6)4 shall be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. IT IS FURTHER ADJUDGED that he be committed to the custody of the Attorney General of the United States for a term of imprisonment of 60 months on each of counts (S6)5 and (S6)6. The terms counts (S6)5 and (S6)6 shall be served concurrently with each other, consecutively to those on Counts (S6)1, (S6)2 and (S6)7, and consecutively with the 60 month portions of the terms on Counts (S6)3 and (S6)4 that are to be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700.

       ✓  The Court Makes the following recommendations to the Bureau of Prisons:

       The Court strongly recommends to the BOP that it consider a Management Variable at initial designation to designate defendant to a medium security facility or any lower security institution the BOP considers appropriate for the following reasons. First, the defendant has no criminal history, and the Court has no reason to believe that defendant has any history of violence or that he would initiate any act of violence against another prisoner or any BOP staff. He therefore does not require the close confinement of a maximum facility institution that in part is designed to present such acts. Second, defendant's notoriety, his association with vast wealth regardless of his present and actual financial resources, and his autism and social awkwardness are likely to make him more than usually vulnerable to misconduct by other inmates in the environment of a maximum security facility. It further recommends that the designated facility be as close to the San Francisco - Bay Area as possible to facilitate family visitation

       ✓ The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

 

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**SPA-99**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
　　　　　　　　　　　　Sheet 3 — Supervised Release

|  |  | Judgment—Page | 4 | of | 7 |

DEFENDANT:   Samuel Bankman-Fried
CASE NUMBER:   1:(S6)22-CR-673-001(LAK)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

3 years of supervised release on each of Counts (S6) 1 through 7, the terms to run concurrently, subject to the mandatory, the standard and the following special conditions:

You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider.

You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider.

You must provide the probation officer with access to any requested financial information.

You must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless you are in compliance with the installment payment schedule.

It is recommended that you be supervised by the district of residence.

## MANDATORY CONDITIONS

1.　You must not commit another federal, state or local crime.
2.　You must not unlawfully possess a controlled substance.
3.　You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
　　　☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.　☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.　☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.　☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.　☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | | | |
|---|---|---|---|
| | Judgment—Page | 5 | of | 7 |

DEFENDANT: Samuel Bankman-Fried
CASE NUMBER: 1:(S6)22-CR-673-001(LAK)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   Date _____

**SPA-101**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 6 | of | 7 |
|---|---|---|---|---|

DEFENDANT: Samuel Bankman-Fried
CASE NUMBER: 1:(S6)22-CR-673-001(LAK)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment\*\*** |
|---|---|---|---|---|---|
| **TOTALS** | $ 700.00 | $ | $ | $ | $ |

☑     The Court declines to order restitution due to the complexity of the case and the number of victims. It instead grants the government's motion to authorize the United States to compensate victims with finally forfeited assets through a remission process, as restitution would be impractical in this case.

☐     The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐     Restitution amount ordered pursuant to plea agreement $ _____

☐     The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐     The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐   the interest requirement is waived for the   ☐ fine   ☐ restitution.

     ☐   the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**SPA-102**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

| | Judgment — Page | 7 | of | 7 |

DEFENDANT:  Samuel Bankman-Fried
CASE NUMBER:  1:(S6)22-CR-673-001(LAK)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ ___700.00___   due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or   ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate
Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
$11,020,000,000, including the specific property identified in the Preliminary Order of Forfeiture.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment,
(5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of
prosecution and court costs.

**SPA-103**

**Significant Rules of Law**

**18 U.S.C. § 1343.** Fraud by wire, radio, or television
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**18 U.S.C. § 1349**. Attempt and conspiracy
Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**18 U.S.C. § 371.** Conspiracy to commit offense or to defraud United States
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

**15 U.S.C. § 78j(b). Manipulative and deceptive devices**
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
…
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
…

**15 U.S.C. § 78ff.** Penalties

(a) Willful violations; false and misleading statements

Any person who willfully violates any provision of this chapter (other than section 78dd–1 of this title), or any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required under the terms of this chapter, or any person who willfully and knowingly makes, or causes to be made, any statement in any application, report, or document required to be filed under this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, or by any self-regulatory organization in connection with an application for membership or participation therein or to become associated with a member thereof which statement was false or misleading with respect to any material fact, shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years, or both, except that when such person is a person other than a natural person, a fine not exceeding $25,000,000 may be imposed; but no person shall be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation.

…

**17 CFR § 240.10b-5**. Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

**7 U.S.C. § 9**. Prohibition regarding manipulation and false information

(1) Prohibition against manipulation

It shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after July 21, 2010, provided no rule or regulation promulgated by the Commission shall require any person to disclose to another person nonpublic information that may be material to the market price, rate, or level of the commodity transaction, except as necessary to make any statement made to the other person in or in connection with the transaction not misleading in any material respect.

**SPA-105**

…

**7 U.S.C. § 13.** Violations generally; punishment; costs of prosecution

(a) Felonies generally

It shall be a felony punishable by a fine of not more than $1,000,000 or imprisonment for not more than 10 years, or both, together with the costs of prosecution, for:

…

(5) Any person willfully to violate any other provision of this chapter, or any rule or regulation thereunder, the violation of which is made unlawful or the observance of which is required under the terms of this chapter, but no person shall be subject to imprisonment under this paragraph for the violation of any rule or regulation if such person proves that he had no knowledge of such rule or regulation.

…

**18 U.S.C. § 981.** Civil forfeiture

(a)

(1) The following property is subject to forfeiture to the United States:

…

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

…

(2) For purposes of paragraph (1), the term "proceeds" is defined as follows:

(A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

(B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

**18 U.S.C. § 982.** Criminal forfeiture

(a)

(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

…