# 24-961

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

ZIXIAO GARY WANG, CAROLINE ELLISON, NISHAD SINGH, RYAN SALAME,

*Defendants,*

FTX TRADING LTD., WEST REALM SHIRES INC,
ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD.,

*Intervenors,*

SAMUEL BANKMAN-FRIED, AKA SEALED DEFENDANT 1,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX FOR DEFENDANT-APPELLANT
## VOLUME I OF V
### (Pages A-1 to A-212)

ALEXANDRA A.E. SHAPIRO
THEODORE SAMPSELL-JONES
JASON A. DRISCOLL
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas,
   17th Floor
New York, New York 10036
(212) 257-4880

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

PAGE

District Court Docket Entries in *United States v. Bankman-Fried*,
    No. 22-cr-673 (LAK) (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Excerpts of Arraignment Transcript, dated January 3, 2023 . . . . . . . . . . . . . . A-86

Memorandum and Order Modifying Release Conditions,
    dated February 1, 2023 (Dkt. 58) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-88

Order Modifying Release Conditions, dated February 14, 2023
    (Dkt. 68) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-95

Excerpts of Transcript of February 16, 2023 Pre-Trial Conference . . . . . . . A-96

Third Superseding Indictment, dated February 23, 2023 (Dkt. 80) . . . . . A-103

Fifth Superseding Indictment, dated March 28, 2023 (Dkt. 115) . . . . . . . A-142

Exhibits to Declaration of Christian R. Everdell in Support of Motion
    for Additional Discovery

    Exhibit 9 – Excerpts of Bankruptcy Hearing Transcript,
    dated February 6, 2023 (Dkt. 137-9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-185

    Exhibit 10 – Emails dated February 16, 2023,
    and January 13, 2023 (Dkt. 137-10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-205

    Exhibit 11 – Email dated December 16, 2022 (Dkt. 137-11) . . . . . . . A-211

Exhibit To Bankman-Fried's Motion to Compel Discovery

    Exhibit 1 – Subpoena to Fenwick & West LLP (Dkt. 151-1) . . . . . . . A-213

Excerpts of Transcript of June 15, 2023 Pre-Trial Conference . . . . . . . . . A-361

ii

PAGE

Letter from Government to Hon. Lewis A. Kaplan Re Pretrial Filings,
dated June 29, 2023 (Dkt. 171) ................................... A-374

Excerpts of Transcript of July 26, 2023 Pre-Trial Conference.......... A-377

Excerpts of Transcript of August 11, 2023 Pre-Trial Conference....... A-379

Sixth Superseding (Operative) Indictment, dated August 14, 2023
(Dkt. 202).................................................... A-381

Excerpts of Transcript of August 30, 2023 Pre-Trial Conference....... A-399

Letter from Government to Hon. Lewis A. Kaplan Re Advice-Of-
Counsel Defense Notice, dated August 18, 2023 (Dkt. 211) ....... A-401

Government's Requests to Charge, dated August 21, 2023 (Dkt. 214) .. A-404

Bankman-Fried's Requests to Charge, dated August 21, 2023
(Dkt. 215).................................................... A-504

Letter from Bankman-Fried to Hon. Lewis A. Kaplan Re Advice-Of-
Counsel Defense Notice, dated August 23, 2023 (Dkt. 222) ....... A-554

Letter from Government to Hon. Lewis A. Kaplan Re Advice-Of-
Counsel Defense Notice, dated August 29, 2023 (Dkt. 239) ....... A-557

Letter from Bankman-Fried to Hon. Lewis A. Kaplan In Response To
Dkt. 239, dated August 30, 2023 (Dkt. 240) ..................... A-565

Order On Motions To Exclude Proposed Expert Testimony,
dated September 21, 2023 (Dkt. 287) ........................... A-572

Letter from Bankman-Fried to Hon. Lewis A. Kaplan Seeking
Clarification And Reconsideration Of Rulings,
dated October 2, 2023 (Dkt. 306) ............................... A-577

iii

PAGE

Letter from Government to Hon. Lewis A. Kaplan Moving to
Preclude Evidence Of Current Value Of Investments,
dated October 8, 2023 (Dkt. 315) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-582

Letter from Bankman-Fried to Hon. Lewis A. Kaplan Seeking
Permission To Cross Examine Gary Wang On Involvement of
Counsel In Loan Structuring, dated October 9, 2023 (Dkt. 316) . . . A-585

Letter from Bankman-Fried to Hon. Lewis A. Kaplan In Response To
Dkt. 315, dated October 10, 2023 (Dkt. 317) . . . . . . . . . . . . . . . . . . . . A-588

Letter from Bankman-Fried to Hon. Lewis A. Kaplan Seeking
Permission To Cross Examine Caroline Ellison On Involvement
of Counsel In Creating Auto-Deletion Policies,
dated October 10, 2023 (Dkt. 318) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-590

Letter from Government to Hon. Lewis A. Kaplan Re Additional
Requests To Charge, dated October 19, 2023 (Dkt. 326) . . . . . . . . . . A-592

Bankman-Fried's Amended Requests to Charge,
dated October 19, 2023 (Dkt. 327) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-598

Letter from Bankman-Fried to Hon. Lewis A. Kaplan Re Objections
to Government's Proposed Jury Instructions,
dated October 24, 2023 (Dkt. 329) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-658

Letter from Bankman-Fried to Hon. Lewis A. Kaplan Providing
Notice of Certain Direct Examination Testimony Regarding
Involvement of Counsel, dated October 25, 2023 (Dkt. 338) . . . . . . . A-664

Excerpts of Trial Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-670

**Government's Exhibits**

GX-532 FTX Investor Deck, dated March 2021 . . . . . . . . . . . . . . . . . A-1220

GX-558 FTX Terms Of Service, dated May 13, 2022 . . . . . . . . . . . . A-1231

GX-866 @SBF_FTX Twitter Post, dated November 7, 2022 . . . . . . A-1293

iv

PAGE

GX-1005 Alameda Balance on FTX in 2022 Chart ............... A-1295

GX-1014 Alameda Borrowing From Third Party Lenders Chart .. A-1296

**Defense Exhibits**

DX-1617 Alameda LOC Principal Chart ......................... A-1297

DX-1618 FTX User Accounts Balance Chart .................... A-1298

DX-1619 FTX User Accounts All Coins Balance Chart .......... A-1299

DX-964 (excluded) FTX Blogpost, dated October 28, 2020 ...... A-1300

Exhibit to Bankman-Fried's Sentencing Submission

Excerpts of Exhibit E – November 15, 2022 Letter From James
M. McDonald To Prosecutors (Dkt. 407-34) ..................... A-1304

Excerpts of Sentencing Transcript, dated March 28, 2024 ............ A-1308

Notice of Appeal, filed April 11, 2024 (Dkt. 428) .................... A-1311

**A-1**

APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
### CRIMINAL DOCKET FOR CASE #: 1:22-cr-00673-LAK All Defendants

Case title: USA v. BANKMAN-FRIED                    Date Filed: 12/09/2022

Assigned to: Judge Lewis A. Kaplan

**Defendant (1)**

**Samuel Bankman-Fried**
*TERMINATED: 04/01/2024*
*also known as*
Sealed Defendant 1
*TERMINATED: 04/01/2024*

represented by **Mark Stewart Cohen**
Cohen & Gresser, LLP (NYC)
800 Third Avenue
New York, NY 10022
(212) 957-7600
Fax: (212)957-4514
Email: mcohen@cohengresser.com
*TERMINATED: 03/04/2024*
*LEAD ATTORNEY*
*Designation: Retained*

**Alexandra Theobald**
Cohen & Gresser LLP
800 Third Ave.
New York, NY 10022
212-707-7264
Email: atheobald@cohengresser.com
*TERMINATED: 03/04/2024*
*Designation: Retained*

**Christian R. Everdell**
Cohen & Gresser LLP
800 Third Avenue
New York, NY 10022
212-707-7268
Fax: 212-957-4514
Email: ceverdell@cohengresser.com
*TERMINATED: 03/04/2024*
*Designation: Retained*

**David Lisner**
Cohen & Gresser, LLP (NYC)
800 Third Avenue
New York, NY 10022
212-707-1329
Email: dlisner@cohengresser.com
*TERMINATED: 03/04/2024*

**A-2**

*Designation: Retained*

**Drew Dean**
Cohen & Gresser LLP
New York
800 Third Avenue
New York, NY 10022
212-957-7600
Email: ddean@cohengresser.com
*TERMINATED: 03/04/2024*
*Designation: Retained*

**Marc Lee Mukasey**
Mukasey Young LLP
Litigation
570 Lexington Avenue
Suite 3500
New York, NY 10022
212-466-6400
Email: marc.mukasey@mukaseylaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Sharon L Barbour**
Cohen & Gresser, LLP (NYC)
800 Third Avenue
New York, NY 10022
(212) 957-7600
Fax: (212) 957-4514
Email: SBarbour@cohengresser.com
*TERMINATED: 03/04/2024*
*Designation: Retained*

**Sri Kuehnlenz**
Cohen & Gresser, LLP (NYC)
800 Third Avenue
New York, NY 10022
212-707-7274
Fax: 212-957-4514
Email: skuehnlenz@cohengresser.com
*TERMINATED: 03/04/2024*
*Designation: Retained*

**Stephen Gale Dick**
Cohen & Gresser, LLP (NYC)
800 Third Avenue
New York, NY 10022
(212)-707-7263
Email: sgdick@cohengresser.com
*TERMINATED: 03/04/2024*
*Designation: Retained*

**Torrey Kaufman Young**
Mukasey Young LLP

## A-3

570 Lexington Avenue
Suite 3500
New York, NY 10022
212-466-6409
Email: torrey.young@mukaseylaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| | Imprisonment for a total term of The terms on each of counts (S6)1, (S6)2 and (S6)7 shall be served concurrently with each other. The term on each of counts (S6)3 and (S6)4 shall be served concurrently with each other. The first 180 months of the terms on each of counts (S6)3 and (S6)4 shall be served concurrently with the terms on Counts (S6) I, (S6)2 and (S6)7 and the balance of 60 months on the terms on each of counts (S6)3 and (S6)4 shall be served consecutively to the terms on counts (S6) 1, (S6)2 and (S6)7. IT IS FURTHER ADJUDGED that he be committed to the custody of the Attorney General of the United States for a term of imprisonment of 60 months on each of counts (S6)5 and (S6)6. The terms counts (S6)5 and (S6)6 shall be served concurrently with each other, consecutively to those on Counts (S6)1, (S6)2 and (S6)7, and consecutively with the 60 month portions of the terms on Counts (S6)3 and (S6)4 that are to be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700. Supervised Release for a term of 3 Years of supervised release on each of Counts (S6) 1 through 7, the terms to run concurrently, subject to the mandatory, the standard and the following special conditions |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION (1sss) | |
| ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD (2sss) | Imprisonment for a total term of The terms on each of counts (S6)1, (S6)2 and (S6)7 shall be served concurrently with each other. The term on each of counts (S6)3 and (S6)4 shall be served concurrently with each other. The first 180 months of the terms on each of counts (S6)3 and (S6)4 shall be served concurrently with the terms on Counts (S6) I, (S6)2 and (S6)7 and the balance of 60 months on the terms on each of counts (S6)3 |

**A-4**

and (S6)4 shall be served consecutively to the terms on counts (S6) 1, (S6)2 and (S6)7. IT IS FURTHER ADJUDGED that he be committed to the custody of the Attorney General of the United States for a term of imprisonment of 60 months on each of counts (S6)5 and (S6)6. The terms counts (S6)5 and (S6)6 shall be served concurrently with each other, consecutively to those on Counts (S6)1, (S6)2 and (S6)7, and consecutively with the 60 month portions of the terms on Counts (S6)3 and (S6)4 that are to be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700. Supervised Release for a term of 3 Years of supervised release on each of Counts (S6) 1 through 7, the terms to run concurrently, subject to the mandatory, the standard and the following special conditions

18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION
(3sss)

Imprisonment for a total term of The terms on each of counts (S6)1, (S6)2 and (S6)7 shall be served concurrently with each other. The term on each of counts (S6)3 and (S6)4 shall be served concurrently with each other. The first 180 months of the terms on each of counts (S6)3 and (S6)4 shall be served concurrently with the terms on Counts (S6) I, (S6)2 and (S6)7 and the balance of 60 months on the terms on each of counts (S6)3 and (S6)4 shall be served consecutively to the terms on counts (S6) 1, (S6)2 and (S6)7. IT IS FURTHER ADJUDGED that he be committed to the custody of the Attorney General of the United States for a term of imprisonment of 60 months on each of counts (S6)5 and (S6)6. The terms counts (S6)5 and (S6)6 shall be served concurrently with each other, consecutively to those on Counts (S6)1, (S6)2 and (S6)7, and consecutively with the 60 month portions of the terms on Counts (S6)3 and (S6)4 that are to be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700. Supervised Release for a term of 3 Years of supervised

**A-5**

ATTEMPT AND CONSPIRACY TO
COMMIT WIRE FRAUD
(4sss)

release on each of Counts (S6) 1 through 7,
the terms to run concurrently, subject to the
mandatory, the standard and the following
special conditions

Imprisonment for a total term of The terms
on each of counts (S6)1, (S6)2 and (S6)7
shall be served concurrently with each other.
The term on each of counts (S6)3 and (S6)4
shall be served concurrently with each other.
The first 180 months of the terms on each of
counts (S6)3 and (S6)4 shall be served
concurrently with the terms on Counts (S6)
I, (S6)2 and (S6)7 and the balance of 60
months on the terms on each of counts (S6)3
and (S6)4 shall be served consecutively to
the terms on counts (S6) 1, (S6)2 and (S6)7.
IT IS FURTHER ADJUDGED that he be
committed to the custody of the Attorney
General of the United States for a term of
imprisonment of 60 months on each of
counts (S6)5 and (S6)6. The terms counts
(S6)5 and (S6)6 shall be served concurrently
with each other, consecutively to those on
Counts (S6)1, (S6)2 and (S6)7, and
consecutively with the 60 month portions of
the terms on Counts (S6)3 and (S6)4 that are
to be served consecutively to the terms on
counts (S6)1, (S6)2 and (S6)7. The
foregoing results in an aggregate term of
imprisonment of 300 months. You thereafter
shall serve a term of 3 years on supervised
release, and you shall pay the mandatory
special assessment of $700. Supervised
Release for a term of 3 Years of supervised
release on each of Counts (S6) 1 through 7,
the terms to run concurrently, subject to the
mandatory, the standard and the following
special conditions

18:371.F CONSPIRACY TO COMMIT
SECURITIES FRAUD
(5sss)

Imprisonment for a total term of The terms
on each of counts (S6)1, (S6)2 and (S6)7
shall be served concurrently with each other.
The term on each of counts (S6)3 and (S6)4
shall be served concurrently with each other.
The first 180 months of the terms on each of
counts (S6)3 and (S6)4 shall be served
concurrently with the terms on Counts (S6)
I, (S6)2 and (S6)7 and the balance of 60
months on the terms on each of counts (S6)3
and (S6)4 shall be served consecutively to
the terms on counts (S6) 1, (S6)2 and (S6)7.
IT IS FURTHER ADJUDGED that he be
committed to the custody of the Attorney
General of the United States for a term of

**A-6**

imprisonment of 60 months on each of counts (S6)5 and (S6)6. The terms counts (S6)5 and (S6)6 shall be served concurrently with each other, consecutively to those on Counts (S6)1, (S6)2 and (S6)7, and consecutively with the 60 month portions of the terms on Counts (S6)3 and (S6)4 that are to be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700. Supervised Release for a term of 3 Years of supervised release on each of Counts (S6) 1 through 7, the terms to run concurrently, subject to the mandatory, the standard and the following special conditions

Imprisonment for a total term of The terms on each of counts (S6)1, (S6)2 and (S6)7 shall be served concurrently with each other. The term on each of counts (S6)3 and (S6)4 shall be served concurrently with each other. The first 180 months of the terms on each of counts (S6)3 and (S6)4 shall be served concurrently with the terms on Counts (S6) I, (S6)2 and (S6)7 and the balance of 60 months on the terms on each of counts (S6)3 and (S6)4 shall be served consecutively to the terms on counts (S6) 1, (S6)2 and (S6)7. IT IS FURTHER ADJUDGED that he be committed to the custody of the Attorney General of the United States for a term of imprisonment of 60 months on each of counts (S6)5 and (S6)6. The terms counts (S6)5 and (S6)6 shall be served concurrently with each other, consecutively to those on Counts (S6)1, (S6)2 and (S6)7, and consecutively with the 60 month portions of the terms on Counts (S6)3 and (S6)4 that are to be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700. Supervised Release for a term of 3 Years of supervised release on each of Counts (S6) 1 through 7, the terms to run concurrently, subject to the mandatory, the standard and the following special conditions

18:371.F CONSPIRACY TO COMMIT COMMODITIES FRAUD
(6sss)

**A-7**

18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (7sss)

Imprisonment for a total term of The terms on each of counts (S6)1, (S6)2 and (S6)7 shall be served concurrently with each other. The term on each of counts (S6)3 and (S6)4 shall be served concurrently with each other. The first 180 months of the terms on each of counts (S6)3 and (S6)4 shall be served concurrently with the terms on Counts (S6) I, (S6)2 and (S6)7 and the balance of 60 months on the terms on each of counts (S6)3 and (S6)4 shall be served consecutively to the terms on counts (S6) 1, (S6)2 and (S6)7. IT IS FURTHER ADJUDGED that he be committed to the custody of the Attorney General of the United States for a term of imprisonment of 60 months on each of counts (S6)5 and (S6)6. The terms counts (S6)5 and (S6)6 shall be served concurrently with each other, consecutively to those on Counts (S6)1, (S6)2 and (S6)7, and consecutively with the 60 month portions of the terms on Counts (S6)3 and (S6)4 that are to be served consecutively to the terms on counts (S6)1, (S6)2 and (S6)7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700. Supervised Release for a term of 3 Years of supervised release on each of Counts (S6) 1 through 7, the terms to run concurrently, subject to the mandatory, the standard and the following special conditions

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD (ON CUSTOMERS) (1) | Dismissed |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD ON CUSTOMERS OF FTX (1s) | Dismissed |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD ON CUSTOMERS OF FTX (1ss) | Dismissed |

**A-8**

| | |
|---|---|
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION (ON CUSTOMERS) (2) | Dismissed |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION ON CUSTOMERS OF FTX (2s) | Dismissed |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION ON CUSTOMERS OF FTX (2ss) | Dismissed |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD (ON LENDERS) (3) | Dismissed |
| 18:371.F CONSPIRACY TO COMMIT FRAUD ON CUSTOMERS OF FTX IN CONNECTION WITH PURCHASE AND SALE OF DERIVATIVES (3s) | Dismissed |
| 18:371.F CONSPIRACY TO COMMIT FRAUD ON CUSTOMERS OF FTX IN CONNECTION WITH PURCHASE AND SALE OF DERIVATIVES (3ss) | Dismissed |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION (ON LENDERS) (4) | Dismissed |
| 7:13C.F &9.F FRAUD ON CUSTOMERS OF FTX IN CONNECTION WITH PURCHASE AND SALE OF DERIVATIVES (4s) | Dismissed |
| 7:13C.F & 9.F FALSE CLAIMS AND STATEMENTS (FRAUD ON CUSTOMERS OF FTX IN CONNECTION WITH PURCHASE AND SALE OF DERIVATIVES) (4ss) | Dismissed |
| 18:371.F CONSPIRACY TO COMMIT COMMODITIES FRAUD (5) | Dismissed |
| 18:371.F CONSPIRACY TO COMMIT SECURITIES FRAUD ON INVESTORS IN FTX (5s) | Dismissed |
| 18:371.F CONSPIRACY TO COMMIT SECURITIES FRAUD ON INVESTORS IN FTX (5ss) | Dismissed |

**A-9**

| | |
|---|---|
| 18:371.F CONSPIRACY TO COMMIT SECURITIES FRAUD (6) | Dismissed |
| 15:78J.F MANIPULATIVE AND DECEPTIVE DEVICES (SECURITIES FRAUD ON INVESTORS IN FTX (6s) | Dismissed |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (7) | Dismissed |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD ON LENDERS TO ALAMEDA RESEARCH (7s) | Dismissed |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD ON LENDERS TO ALAMEDA RESEARCH (7ss) | Dismissed |
| 18:371.F CONSPIRACY TO DEFRAUD THE UNITES STATES AND VIOLATE THE CAMPAIGN FINANCE LAWS (8) | Dismissed |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION ON LENDERS TO ALAMEDA RESEARCH (8s) | Dismissed |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION ON LENDERS TO ALAMEDA RESEARCH (8ss) | Dismissed |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT BANK FRAUD (9s) | Dismissed |
| 18:371.F CONSPIRACY TO OPERATE AN UNLICENSED MONEY TRANSMITTING BUSINESS (10s) | Dismissed |
| 18:371.F CONSPIRACY TO OPERATE AN UNLICENSED MONEY TRANSMITTING BUSINESS (10ss) | Dismissed |
| 18:1956-4999.F MONEY LAUNDERING - CONSPIRACY (11s) | Dismissed |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER - CONSPIRACY (11ss) | Dismissed |
| 18:371.F CONSPIRACY TO MAKE UNLAWFUL POLITICAL | Dismissed |

## A-10

CONTRIBUTIONS AND DEFRAUD THE
FEC
(12s)

18:371.F CONSPIRACY TO MAKE
UNLAWFUL POLITICAL
CONTRIBUTIONS AND DEFRAUD THE                    Dismissed
FEC
(12ss)

18:371.F CONSPIRACY VIOLATE THE
ANTI-BRIBERY PROVISIONS OF THE
FOREIGN CORRUPT PRACTICES ACT)                   Dismissed
(13ss)

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                   **Disposition**

None

---

Assigned to: Judge Lewis A. Kaplan

**Defendant (2)**

**Zixiao (Gary) Wang**          represented by   **Alex B. Miller**
                                                Fried, Frank, Harris, Shriver & Jacobson
                                                LLP
                                                One New York Plaza
                                                Ste 2644
                                                New York, NY 10004
                                                212-859-8447
                                                Fax: 212-859-4000
                                                Email: alex.miller@friedfrank.com
                                                *ATTORNEY TO BE NOTICED*
                                                *Designation: Retained*

                                                **Ilan Tuviah Graff**
                                                Fried, Frank, Harris, Shriver & Jacobson
                                                LLP
                                                One New York Plaza
                                                New York, NY 10004
                                                212-859-8931
                                                Fax: 212-859-4000
                                                Email: ilan.graff@friedfrank.com
                                                *ATTORNEY TO BE NOTICED*
                                                *Designation: Retained*

**Pending Counts**                               **Disposition**

18:1349.F ATTEMPT AND CONSPIRACY
TO COMMIT WIRE FRAUD ON

## A-11

CUSTOMERS
(1)

FRAUD BY WIRE, RADIO, OR
TELEVISION ON CUSTOMERS
(2)

18:371.F CONSPIRACY TO COMMIT
COMMODITIES FRAUD
(3)

18:371.F CONSPIRACY TO COMMIT
SECURITIES FRAUD
(4)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: Judge Lewis A. Kaplan

**Defendant (3)**

| **Caroline Ellison** | represented by | **Anjan Sahni** |
|---|---|---|
| | | Wilmer Cutler Pickering Hale & Dorr LLP (NYC) |
| | | 7 World Trade Center |
| | | New York, NY 10007 |
| | | (212)-937-7418 |
| | | Email: anjan.sahni@wilmerhale.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Stephanie Avakian** |
| | | Wilmer Cutler Pickering Hale and Dorr LLP |
| | | 2100 Pennsylvania Avenue NW |
| | | Washington, DC 20037 |
| | | 202-663-6471 |
| | | Email: stephanie.avakian@wilmerhale.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |

**A-12**

**Nicholas Werle**
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
New York, NY 10006
212-230-8800
Email: nick.werle@wilmerhale.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Peter Gillies Neiman**
Wilmer Cutler Pickering Hale and Dorr LLP
(NYC)
7 World Trade Center
250 Greenwich St.
New York, NY 10007
(212)-230-8818
Fax: (212) 230-8888
Email: Peter.Neiman@wilmerhale.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Pending Counts | Disposition |
|---|---|
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD ON CUSTOMERS (1) | |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION ON CUSTOMERS (2) | |
| 18:1349.F ATTEMPT AND CONSPIRACY TO COMMIT WIRE FRAUD ON LENDERS (3) | |
| 18:1343.F FRAUD BY WIRE, RADIO, OR TELEVISION ON LENDERS (4) | |
| 18:371.F CONSPIRACY TO COMMIT COMMODITIES FRAUD (5) | |
| 18:371.F CONSPIRACY TO COMMIT SECURITIES FRAUD (6) | |
| 18:1956-4999.F MONEY LAUNDERING - FRAUD, OTHER (CONSPIRACY) (7) | |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|

# A-13

None

**Highest Offense Level (Terminated)**
None

**Complaints**                                             **Disposition**
None

---

Assigned to: Judge Lewis A. Kaplan

**Defendant (4)**

**Nishad Singh**                          represented by   **Andrew Daniel Goldstein**
                                                            Cooley LLP
                                                            1299 Pennsylvania Ave. NW
                                                            Suite 700
                                                            Washington, DC 20004
                                                            202-842-7805
                                                            Email: agoldstein@cooley.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Retained*

                                                            **Russell Capone**
                                                            Cooley LLP
                                                            55 Hudson Yards
                                                            New York, NY 10001
                                                            212-479-6580
                                                            Email: rcapone@cooley.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Retained*

**Pending Counts**                                         **Disposition**

18:1349.F CONSPIRACY TO COMMIT
WIRE FRAUD ON CUSTOMERS
(1)

18:1343.F WIRE FRAUD ON
CUSTOMERS
(2)

18:371.F CONSPIRACY TO COMMIT
COMMODITIES FRAUD
(3)

18:371.F CONSPIRACY TO COMMIT
SECURITIES FRAUD
(4)

18:1956-4999.F CONSPIRACY TO
COMMIT MONEY LAUNDERING
(5)

## A-14

18:1956-4999.F CONSPIRACY TO MAKE
UNLAWFUL POLITICAL
CONTRIBUTIONS AND DEFRAUD THE
FEC
(6)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: Judge Lewis A. Kaplan

**Defendant (5)**

**Ryan Salame**
*TERMINATED: 05/29/2024*

represented by **Gina Marie Parlovecchio**
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
212-506-2522
Email: gparlovecchio@mayerbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**H. Christopher Bartolomucci**
Schaerr Jaffe LLP
1717 K Street NW
Suite 900
Washington, DC 20006
202-787-1060
Fax: 202-776-0136
Email: cbartolomucci@schaerr-jaffe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Field**
Schaerr Jaffe LLP
1717 K Street, NW
Suite 900
Washington, DC 20006
202-787-1060
Fax: 202-776-0136

**A-15**

Email: bfield@schaerr-jaffe.com
*ATTORNEY TO BE NOTICED*

**Jason Linder**
Mayer Brown LLP
333 S. Grand Avenue
Ste 47th Floor
Los Angeles, CA 90071
213-229-9500
Email: jlinder@mayerbrown.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Pending Counts | Disposition |
|---|---|
| | Imprisonment for a total term of 60 months on Count (S7)One, and 60 months on Count (S7)Two; the term on Count (S7)Two shall run concurrently with the last 30 months on Count (S7)One, and consecutively to the remainder on Count (S7)One, for an aggregate term of imprisonment of 90 months. Supervised Release for a term of 3 Years |
| 18:371.F CONSPIRACY TO MAKE UNLAWFUL POLITICAL CONTRIBUTIONS AND DEFRAUD THE FEC (1) | |
| 18:371.F CONSPIRACY TO OPERATE A UNLICENSED MONEY TRANSMITTING BUSINESS (2) | Imprisonment for a total term of 60 months on Count (S7)One, and 60 months on Count (S7)Two; the term on Count (S7)Two shall run concurrently with the last 30 months on Count (S7)One, and consecutively to the remainder on Count (S7)One, for an aggregate term of imprisonment of 90 months. Supervised Release for a term of 3 Years |

**Highest Offense Level (Opening)**
Felony

| Terminated Counts | Disposition |
|---|---|
| None | |

**Highest Offense Level (Terminated)**
None

| Complaints | Disposition |
|---|---|
| None | |

---

**Interested Party**

| | | |
|---|---|---|
| **Joint Liquidators of Emergent Fidelity Technologies Ltd.** | represented by | **Daniel B. Tehrani**<br>Morgan Lewis & Bockius LLP |

**A-16**

101 Park Avenue
New York, NY 10178
212-309-6000
Fax: 212-309-6001
Email: daniel.tehrani@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**Emergent Fidelity Technologies Ltd.**          represented by **Daniel B. Tehrani**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**Fulcrum Distressed Partners Limited**          represented by **Rick Bruce Antonoff**
Blank Rome LLP
1271 Avenue of the Americas
Ste 15th Floor
New York, NY 10020
212-885-5000
Fax: 212-885-5001
Email: rantonoff@blankrome.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

---

**Interested Party**

**FTX Cryptocurrency Exchange Collapse Litigation**

---

**Interested Party**

**Alexander Chernyavsky**          represented by **David Boies**
Boies Schiller and Flexner
333 Main Street
Armonk, NY 10504
914-749-8201
Fax: 914-749-8300
Email: dboies@bsfllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

**A-17**

Kyle Rupprecht            represented by **David Boies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

Mike Livieratos            represented by **David Boies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

Sunil Kavuri            represented by **David Boies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

Austin Onusz            represented by **Andrew J Entwistle**
Entwistle & Cappucci LLP
500 West 2nd st
Ste 1900
Austin, TX 78701
512-710-5960
Email: aentwistle@entwistle-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

Cedric Kees Van Putten      represented by **Andrew J Entwistle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Interested Party**

Nicholas J. Marshall        represented by **Andrew J Entwistle**
(See above for address)
*LEAD ATTORNEY*

## A-18

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Interested Party**

**Hamad Dar**                    represented by  **Andrew J Entwistle**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: Retained*

**Intervenor**

**FTX Trading Ltd.**             represented by  **Nicole Ware Friedlander**
                                                 Sullivan & Cromwell, LLP (NYC)
                                                 125 Broad Street
                                                 New York, NY 10004
                                                 (212)-558-4000
                                                 Fax: (212)-558-3588
                                                 Email: friedlandern@sullcrom.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: Retained*

                                                 **Shane Russell Yeargan**
                                                 Sullivan & Cromwell, LLP (NYC)
                                                 125 Broad Street
                                                 New York, NY 10004
                                                 (212)-558-4852
                                                 Fax: (212)-291-9394
                                                 Email: yeargans@sullcrom.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: Retained*

                                                 **Steven Robert Peikin**
                                                 Sullivan & Cromwell, LLP (NYC)
                                                 125 Broad Street
                                                 New York, NY 10004
                                                 (212) 558-7228
                                                 Fax: (212) 558-3588
                                                 Email: peikins@sullcrom.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: Retained*

**Intervenor**

**West Realm Shires Inc.**       represented by  **Nicole Ware Friedlander**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*

**A-19**

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Shane Russell Yeargan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Steven Robert Peikin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Intervenor**

**Alameda Research LLC**              represented by  **Nicole Ware Friedlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Shane Russell Yeargan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Steven Robert Peikin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Intervenor**

**Alameda Research LTD**              represented by  **Nicole Ware Friedlander**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Shane Russell Yeargan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Steven Robert Peikin**
(See above for address)
*LEAD ATTORNEY*

**A-20**

*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**<u>Plaintiff</u>**

**USA**                                   represented by   **Danielle Renee Sassoon**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2200
Email: Danielle.Sassoon@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Nicolas Roos**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2421
Email: nicolas.roos@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Rohrbach**
DOJ-USAO
1 St. Andrew's Plaza
New York, NY 10007
212-637-2345
Email: Andrew.Rohrbach@usdoj.gov
*TERMINATED: 06/06/2023*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Danielle Marie Kudla**
DOJ-USAO
1 St. Andrew's Plaza
New York, NY 10007
212-637-2304
Email: danielle.kudla@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jeremy Adam Chase**
Davis Wright Tremaine LLP (NYC)
1251 Avenue of the Americas
New York, NY 10020
(212)-603-6495
Fax: (212)-379-5235
Email: jeremychase@dwt.com
*TERMINATED: 01/23/2023*
*Designation: Retained*

**Jil Simon**

## A-21

DOJ-Crm
1400 New York Ave NW
Washington, DC 20005
202-514-3257
Email: jill.simon@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Nathan Martin Rehn**
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007
(212)-637-2354
Fax: (212)-637-2527
Email: nathan.rehn@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Samuel Raymond**
DOJ-USAO
1 St Andrew's Plaza
New York, NY 10007
212-637-6519
Email: samuel.raymond@usdoj.gov
*TERMINATED: 09/04/2024*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/09/2022 | 1 | SEALED INDICTMENT as to Sealed Defendant 1 (1) count(s) 1, 2, 3, 4, 5, 6, 7, 8. (jm) (Entered: 12/13/2022) |
| 12/13/2022 | 2 | Order to Unseal Indictment as to Sealed Defendant 1. (Signed by Magistrate Judge James L. Cott on 12/13/22)(jm) (Entered: 12/13/2022) |
| 12/13/2022 | | INDICTMENT UNSEALED as to Samuel Bankman-Fried. (jm) (Entered: 12/13/2022) |
| 12/13/2022 | | Case Designated ECF as to Samuel Bankman-Fried. (jm) (Entered: 12/13/2022) |
| 12/13/2022 | | Case as to Samuel Bankman-Fried ASSIGNED to Judge Ronnie Abrams. (jm) (Entered: 12/13/2022) |
| 12/13/2022 | | Attorney update in case as to Samuel Bankman-Fried. Attorney Danielle Renee Sassoon for USA added. (jm) (Entered: 12/13/2022) |
| 12/13/2022 | 4 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Ronnie Abrams from AUSA Danielle R. Sassoon dated December 13, 2022 re: status letter Document filed by USA. (Sassoon, Danielle) (Entered: 12/13/2022) |
| 12/13/2022 | 5 | NOTICE OF ATTORNEY APPEARANCE Nicolas Roos appearing for USA. (Roos, Nicolas) (Entered: 12/13/2022) |
| 12/19/2022 | 6 | S(1) INFORMATION (Felony) filed as to Zixiao (Gary) Wang (2) count(s) 1, 2, 3, 4. (jm) (Entered: 12/22/2022) |
| 12/19/2022 | 7 | WAIVER OF INDICTMENT by Zixiao (Gary) Wang. (jm) (Entered: 12/22/2022) |
| 12/19/2022 | 8 | S(2) INFORMATION (Felony) filed as to Caroline Ellison (3) count(s) 1, 2, 3, 4, 5, 6, 7. (jm) (Entered: 12/22/2022) |

# A-22

| 12/19/2022 | 9 | WAIVER OF INDICTMENT by Caroline Ellison. (jm) (Entered: 12/22/2022) |
|---|---|---|
| 12/19/2022 | | Arrest of Caroline Ellison. (ap) (Entered: 12/22/2022) |
| 12/19/2022 | doc | Minute Entry for proceedings held before Judge Ronnie Abrams: Initial Appearance as to Caroline Ellison held on 12/19/2022. Bond Hearing as to Caroline Ellison held on 12/19/2022. AUSA Nicolas Roos and Danielle Sassoon for the Government. Anian Sahni, Peter G. Neiman, Stephanie Avakian, Nick Werle, for the Defendant. BAIL DISPOSITION: AGREED CONDITIONS OF RELEASE; $250,000 PRB; TRAVEL RESTRICTED TO SDNY/EDNY/continental United States; SURRENDER TRAVEL DOCUMENTS (& NO NEW APPLICATIONS); PRETRIAL SUPERVISION: AS DIRECTED BY PRETRIAL SERVICES. DEF. WAIVES INDICTMENT. (ap) (ap). (Entered: 12/22/2022) |
| 12/19/2022 | | Minute Entry for proceedings held before Judge Ronnie Abrams: Arraignment as to Caroline Ellison (3) Count 1,2,3,4,5,6,7 held on 12/19/2022.AUSA Nicolas Roos present. AUSA Danielle Sassoon present. Pretrial Services Officer Lea Harmon present. Defendant (3) Caroline Ellison present with attorneys Anjan Sahni, Peter G. Neiman, Stephanie Avakian and Nick Werle. Defendant waives Indictment and pleads guilty to Counts One, Two, Three, Four, Five, Six and Seven of the Superseding Information. A control sentence date is scheduled for December 19, 2023. (Court Reporter Sadie Herbert) (ap) (Entered: 12/22/2022) |
| 12/19/2022 | | Minute Entry for proceedings held before Judge Ronnie Abrams: **Plea entered by Caroline Ellison (3) Guilty as to Count 1,2,3,4,5,6,7.** (ap) (Entered: 12/22/2022) |
| 12/19/2022 | | Arrest of Zixiao (Gary) Wang. (ap) (Entered: 12/22/2022) |
| 12/19/2022 | 18 | Minute Entry for proceedings held before Judge Ronnie Abrams: Initial Appearance as to Zixiao (Gary) Wang held on 12/19/2022. Bond Hearing as to Zixiao (Gary) Wang held on 12/19/2022. AUSAs Nicolas Roos, Danielle Sassoon for the Government. Ilan T. Graff, Alex Miller for Defendant. BAIL DISPOSITION: AGREED CONDITIONS OF RELEASE; $250,000 PRB; 1 FRP; TRAVEL RESTRICTED TO SDNY/EDNY/continental United States; SURRENDER TRAVEL DOCUMENTS (& NO NEW APPLICATIONS); PRETRIAL SUPERVISION: AS DIRECTED BY PRETRDEF. WAIVES INDICTMENT. IAL SERVICES. DEFENDANT NOT TO COMMUNICATE WITH CO-DEFENDANTS. (ap) (Entered: 12/22/2022) |
| 12/19/2022 | | Minute Entry for proceedings held before Judge Ronnie Abrams:Arraignment as to Zixiao (Gary) Wang (2) Count 1,2,3,4 held on 12/19/2022. AUSA Nicolas Roos present. AUSA Danielle Sassoon present. Pretrial Services Officer Evelyn Alvayero present. Defendant (2) Zixiao (Gary) Wang present with attorneys Ilan Graff and Alex Miller. Court reporter Sam Mauro present. Defendant waives Indictment and pleads guilty to Counts One, Two, Three, and Four of the Superseding Information. A control sentence date is scheduled for December 19, 2023. (Court Reporter Sam Mauro) (ap) (Entered: 12/22/2022) |
| 12/19/2022 | | Minute Entry for proceedings held before Judge Ronnie Abrams: **Plea entered by Zixiao (Gary) Wang (2) Guilty as to Count 1,2,3,4.** (ap) (Entered: 12/22/2022) |
| 12/19/2022 | 24 | ENDORSED LETTER as to Caroline Ellison addressed to Judge Ronnie Abrams from Anjan Sahni dated December 19, 2022 ENDORSEMENT: Defendants motion to seal the courtroom during todays plea hearing is denied. The Second Circuit has instructed that closure should be invoked only upon a showing of a significant risk of prejudice to the defendant's right to a fair trial or of danger to persons, property, or the integrity of significant activities entitled to confidentiality, such as ongoing undercover investigations or detection devices. Application of The Herald Co., 734 F.2d 93, 100 (2d Cir. 1984). While the Court is sensitive to Defendants concerns about her privacy, a generalized |

## A-23

| | | |
|---|---|---|
| | | interest in avoiding public attention or press scrutiny is not a compelling interest that justifies closure of the courtroom. See United States v. Doe, 63 F.3d 121, 127-28 (2d Cir. 1995); see also United States v. Martoma, No. 12-cr-973 (PGG), 2014 WL 164181, at *6 (S.D.N.Y. Jan. 9, 2014) (observing that, "although courts consider the defendant's privacy interest" in evaluating whether to close a proceeding, "it is generally the privacy interests of innocent third parties that weigh heavily in a court's balancing equation") (cleaned up) (emphasis in original). Nor has Defendant shown that denying this motion would pose a substantial probability of danger to her. Doe, 63 F.3d at 129-130. SO ORDERED. (Signed by Judge Ronnie Abrams on December 19, 2022)(arc) (Entered: 12/23/2022) |
| 12/19/2022 | 110 | Appearance Bond Entered as to Caroline Ellison: $250,000 Personal recognizance bond; Additional conditions..... (jbo) (Entered: 03/24/2023) |
| 12/22/2022 | 10 | NOTICE OF ATTORNEY APPEARANCE: Alex B. Miller appearing for Zixiao (Gary) Wang. Appearance Type: Retained. (Miller, Alex) (Entered: 12/22/2022) |
| 12/22/2022 | 11 | NOTICE OF ATTORNEY APPEARANCE: Anjan Sahni appearing for Caroline Ellison. Appearance Type: Retained. (Sahni, Anjan) (Entered: 12/22/2022) |
| 12/22/2022 | 12 | NOTICE OF ATTORNEY APPEARANCE: Nicholas Werle appearing for Caroline Ellison. Appearance Type: Retained. (Werle, Nicholas) (Entered: 12/22/2022) |
| 12/22/2022 | 13 | Minute Entry for proceedings held before Magistrate Judge Gabriel W. Gorenstein:Initial Appearance as to Samuel Bankman-Fried held on 12/22/2022. Defendant is present with attorneys Mark Cohen and Christian Everdell; AUSA Nicolas Roos is also present. Bail is set as follows: $250,000,000 PRB cosigned by four (4) financially responsible persons (one non-family) and secured by parent's home in Palo Alto; travel restricted to SDNY/EDNY (solely for Court appearances) and ND California; surrender travel documents and no new applications; strict Pretrial supervision; mental health evaluation/treatment as directed by Pretrial Services; home detention; location monitoring technology as directed by Pretrial Services; Defendant not to possess firearm/destructive device other weapon; two (2) non-parent sureties to sign bonds in lesser amounts to be agreed to; Defendant to live in parents' home in Palo Alto in N.D. California and to be supervised from that District; Pretrial Services office may exercise discretion to allow Defendant to leave home for exercise; Defendant not to open new lines of credit, open a business, or enter into financial transactions in excess of $1,000 without pre-approval of the Government or Court, except to pay for legal costs and fees; equity interest in parent's home to be posted by 1/12/23. Defendant to be released on own signature plus signature of parents and surrender of passport/installation of electronic monitor with remaining conditions to be met by 1/5/23. Conference before USDJ on 1/3/23 at 2:00 PM. Speedy Trial Time excluded until 1/3/23. (jm) Modified on 12/22/2022 (jm). (Entered: 12/22/2022) |
| 12/22/2022 | | Minute Entry for proceedings held before Magistrate Judge Gabriel W. Gorenstein: As to Samuel Bankman-Fried Status Conference set for 1/3/2023 at 02:00 PM before Judge Ronnie Abrams. (jm) (Entered: 12/22/2022) |
| 12/22/2022 | 14 | Appearance Bond Entered as to Samuel Bankman-Fried: $250,000,000 Personal recognizance bond; To be cosigned by four financially responsible persons, one non family; Additional conditions..... (jbo) Modified on 12/22/2022 (jm). (Entered: 12/22/2022) |
| 12/22/2022 | 15 | ORDER as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison. On December 19, 2022, Defendants Ellison and Wang waived indictment, consented to the filing of a Superseding Information, and pleaded guilty to each of the counts with which they were charged. At the time their pleas were entered, the Court granted the government's application that the filings and transcripts of the plea allocutions would be |

# A-24

| | | |
|---|---|---|
| | | temporarily sealed, and docketing delayed until such time as Defendant Bankman-Fried was extradited to this district from the Bahamas, finding that premature exposure of cooperation could hinder ongoing law enforcement efforts. The government now requests that the plea agreements include certain limited redactions upon unsealing. Defendant Ellison additionally requests the redaction of health-related information from the transcript of her plea allocution. For the reasons that follow, the Court grants the instant applications....[*** See this Order ***]... CONCLUSION: Accordingly, for the reasons articulated above, the Court grants the government's application to redact certain portions of the plea agreements, and grants Defendant Ellison's application to redact health-related questions and answers in the transcript of her plea allocution. All other materials related to these pleas---with the exception of the oral recitation of Defendant Wang's pretrial services report, see 18 U.S.C. § 3153(c)(1)---shall be immediately unsealed to the extent that they have not been already. SO ORDERED. (Signed by Judge Ronnie Abrams on 12/22/2022)(bw) (Entered: 12/22/2022) |
| 12/22/2022 | | Transmission to Sealed Records Clerk: as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison. Transmitted re: 15 ORDER, to the Sealed Records Clerk for the unsealing of document(s). (bw) (Entered: 12/22/2022) |
| 12/22/2022 | 16 | ORDER as to Samuel Bankman-Fried. An initial conference is scheduled for January 3, 2023 at 2:00 p.m. and will be held in Courtroom 318 at the Thurgood Marshall United States Courthouse, 40 Foley Square. SO ORDERED. ( Initial Conference set for 1/3/2023 at 02:00 PM in Courtroom 318, 40 Centre Street, New York, NY 10007 before Judge Ronnie Abrams. )(Signed by Judge Ronnie Abrams on 12/22/2022)(bw) (Entered: 12/22/2022) |
| 12/22/2022 | 17 | NOTICE OF ATTORNEY APPEARANCE: Stephanie Avakian appearing for Caroline Ellison. Appearance Type: Retained. (Avakian, Stephanie) (Entered: 12/22/2022) |
| 12/23/2022 | 19 | TRANSCRIPT of Proceedings as to Caroline Ellison re: Plea held on 12/19/2022 before Judge Ronnie Abrams. Court Reporter/Transcriber: Sadie Herbert, (212) 805-0310, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/13/2023. Redacted Transcript Deadline set for 1/23/2023. Release of Transcript Restriction set for 3/23/2023. (McGuirk, Kelly) (Entered: 12/23/2022) |
| 12/23/2022 | 20 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Caroline Ellison. Notice is hereby given that an official transcript of a Plea proceeding held on 12/19/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/23/2022) |
| 12/23/2022 | 21 | TRANSCRIPT of Proceedings as to Zixiao (Gary) Wang re: Plea held on 12/19/2022 before Judge Ronnie Abrams. Court Reporter/Transcriber: Samuel Mauro, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/13/2023. Redacted Transcript Deadline set for 1/23/2023. Release of Transcript Restriction set for 3/23/2023. (McGuirk, Kelly) (Entered: 12/23/2022) |
| 12/23/2022 | 22 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Zixiao (Gary) Wang. Notice is hereby given that an official transcript of a Plea proceeding held on 12/19/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of |

# A-25

| | | |
|---|---|---|
| | | this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/23/2022) |
| 12/23/2022 | 23 | ORDER OF RECUSAL in case as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison: It has come to the Courts attention that the law firm of Davis Polk & Wardwell LLP, at which my husband is a partner, advised FTX in 2021, as well as represented parties that may be adverse to FTX and Defendant Bankman-Fried in other proceedings (or potential proceedings). My husband has had no involvement in any of these representations. These matters are confidential and their substance is unknown to the Court. Nonetheless, to avoid any possible conflict, or the appearance of one, the Court hereby recuses itself from this action. See 28 U.S.C. § 455.SO ORDERED. Judge Ronnie Abrams is recused. (Signed by Judge Ronnie Abrams on December 23, 2022)(arc) (Entered: 12/23/2022) |
| 12/27/2022 | | NOTICE OF CASE REASSIGNMENT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison to Judge Lewis A. Kaplan. Judge Ronnie Abrams no longer assigned to the case. (jw) (Entered: 12/27/2022) |
| 12/28/2022 | | Set/Reset Hearings as to Samuel Bankman-Fried: Arraignment and Initial Appearance set for 1/3/2023 at 02:00 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan.. (Mohan, Andrew) (Entered: 12/28/2022) |
| 12/28/2022 | | Set/Reset Hearings as to Samuel Bankman-Fried: Arraignment and Initial Appearance set for 1/3/2023 at 02:00 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 12/28/2022) |
| 12/28/2022 | 25 | NOTICE OF ATTORNEY APPEARANCE Andrew Rohrbach appearing for USA. (Rohrbach, Andrew) (Entered: 12/28/2022) |
| 12/28/2022 | 26 | NOTICE OF ATTORNEY APPEARANCE Samuel Raymond appearing for USA. (Raymond, Samuel) (Entered: 12/28/2022) |
| 12/30/2022 | 27 | NOTICE OF ATTORNEY APPEARANCE: Mark Stewart Cohen appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Cohen, Mark) (Entered: 12/30/2022) |
| 12/30/2022 | 28 | NOTICE OF ATTORNEY APPEARANCE: Christian R. Everdell appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Everdell, Christian) (Entered: 12/30/2022) |
| 12/30/2022 | 32 | Appearance Bond Entered as to Zixiao (Gary) Wang: $250,000 Personal recognizance bond; To be cosigned by one financially responsible person; Additional conditions..... (jbo) (Entered: 01/04/2023) |
| 01/03/2023 | 29 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated January 3, 2023 re: Request to Redact Names and Identifying Information for Certain Bail Sureties . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 01/03/2023) |
| 01/03/2023 | 30 | NOTICE OF ATTORNEY APPEARANCE Nathan Martin Rehn appearing for USA. (Rehn, Nathan) (Entered: 01/03/2023) |
| 01/03/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Arraignment as to Samuel Bankman-Fried (1) Count 1,2,3,4,5,6,7,8 held on 1/3/2023. Arraignment and Initial conference regarding Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Mark S. Cohen and Christian R. Everdell. AUSAs Danielle R. Sassoon, Nicolas Roos, and Andrew Rohrbach present. Defendant arraigned on the indictment and entered a plea of not guilty. The letter application dated 1/3/2023, DI 29, to redact names and identifying information for certain bail sureties, was granted by the Court without prejudice to any application to release the |

# A-26

| | | |
|---|---|---|
| | | names and addresses, unless otherwise ordered; any such application shall be made by motion filed no later than 1/12/2023. Trial is scheduled to begin 10/2/2023 at 9:30 AM. Defendant's motions due 4/3/2023, Government opposition briefs due 4/24/2023, Defendant's reply briefs due 5/8/2023; oral argument or a status conference shall be held on 5/18/2023 @ 10:00 AM. Time from today through and including 10/2/2023 is excluded from speedy trial calculations in the interests of justice. Bail modified to add the condition of That the defendant be prohibited from accessing or transferring any FTX or Alameda assets or cryptocurrency, including assets or cryptocurrency purchased with funds from FTX or Alameda. With FTX defined to include FTX.com, FTX U.S., FTX digital markets LTD, and all affiliated subsidiary and successor entities and Alameda defined to include Alameda Research and any affiliated subsidiary and successor entities. Defendant remained released on bail. (Motions due by 4/3/2023. Responses due by 4/24/2023. Replies due by 5/8/2023. Jury Trial set for 10/2/2023 at 09:30 AM before Judge Lewis A. Kaplan. Oral Argument set for 5/18/2023 at 10:00 AM before Judge Lewis A. Kaplan. Status Conference set for 5/18/2023 at 10:00 AM before Judge Lewis A. Kaplan) (Court Reporter Rebecca Forman) (ap) Modified on 1/3/2023 (ap). (Entered: 01/03/2023) |
| 01/03/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: **Plea entered by Samuel Bankman-Fried (1) Count 1,2,3,4,5,6,7,8 Not Guilty.** (ap) (Entered: 01/03/2023) |
| 01/03/2023 | 31 | NOTICE of Application to release names and information of bail sureties as to Samuel Bankman-Fried (Lee, Matthew) (Entered: 01/03/2023) |
| 01/06/2023 | 33 | AFFIRMATION of Danielle R. Sassoon by USA as to Samuel Bankman-Fried. (Attachments: # 1 Text of Proposed Order re Victim Notification)(Sassoon, Danielle) (Entered: 01/06/2023) |
| 01/06/2023 | 34 | ORDER as to Samuel Bankman-Fried re: 33 Affirmation filed by USA. Accordingly, it is hereby ORDEREDThat the following procedures are a reasonable procedure giving effect to the notification rights contained in Title 18,United States code, Section 3771(a):a. The Government will maintain a notice (the "Notice") regarding this case online athttps://www.justice.gov/usao-sdny/united-states-v-samuel-bankman-fried-aka-sbf-22-cr-673-lakb. The Notice will contain the following information:i. The caption, case number, assigned judge, and name of the defendant;ii. A substantially verbatim listing of the rights provided for in Title 18, United States Code, Section 3771(a);iii. A listing of public proceedings scheduled in the case; andiv. The name and contact information for a United States Attorney's Office official with responsibility for addressing victims' rights.c. In addition, the Government will continue to update the Notice to reflect scheduled court and public proceedings, within a reasonable period of time of such scheduling;d. In advance of court proceedings such as a plea proceeding or sentencing, the Notice will specify that the Court, in order to conduct orderly proceedings and to maintain a reasonable schedule, requires advance notice from victims who wish to be heard at the relevant proceeding. Based on the number of victims who provide such notice, the Court will rule on the manner in which victims will be heard at such proceedings. (Signed by Judge Lewis A. Kaplan on 1/6/2023)(Mohan, Andrew) (Entered: 01/06/2023) |
| 01/06/2023 | 35 | RULE 5(f) ORDER as to Samuel Bankman-Fried. (Signed by Judge Lewis A. Kaplan on 1/6/2023) (lnl) (Entered: 01/09/2023) |
| 01/10/2023 | 36 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Arraignment held on 12/22/2022 before Magistrate Judge Gabriel W. Gorenstein. Court Reporter/Transcriber: Sara Beiter, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction |

## A-27

| | | |
|---|---|---|
| | | Request due 1/31/2023. Redacted Transcript Deadline set for 2/10/2023. Release of Transcript Restriction set for 4/10/2023. (McGuirk, Kelly) (Entered: 01/10/2023) |
| 01/10/2023 | 37 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Arraignment proceeding held on 12/22/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/10/2023) |
| 01/10/2023 | 38 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 1/3/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Rebecca Forman, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/31/2023. Redacted Transcript Deadline set for 2/10/2023. Release of Transcript Restriction set for 4/10/2023. (McGuirk, Kelly) (Entered: 01/10/2023) |
| 01/10/2023 | 39 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 1/3/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/10/2023) |
| 01/11/2023 | 40 | LETTER as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Dan R. Green, dated 1/10/2023, re: Unsealing Request. (lnl) (Entered: 01/11/2023) |
| 01/11/2023 | 41 | ORDER as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison: Any papers in response to Dkts 31 and 40 and any subsequent filings with respect to redaction of the names of sureties on appearance bonds for defendant Bankman-Fried shall be filed no later than January 19, 2023. SO ORDERED. (Responses due by 1/19/2023) (Signed by Judge Lewis A. Kaplan on 1/11/2023) (lnl) (Entered: 01/11/2023) |
| 01/12/2023 | 42 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Jeremy Chase dated 1/12/2023 re: Unsealing Request by various news organizations, including The Associated Press, Bloomberg L.P., The Financial Times Ltd., CNBC LLC, Reuters News & Media Inc., Dow Jones & Co., Inc., publisher of The Wall Street Journal, Insider, Inc., and WP Company LLC, publisher of The Washington Post. . Document filed by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison. (Chase, Jeremy) (Entered: 01/12/2023) |
| 01/12/2023 | 43 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Lacy H. Koonce, III (Klaris Law PLLC) on behalf of CoinDesk, Inc. dated January 12, 2023 re: Unsealing of surety information . Document filed by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison. (Koonce, Lacy) (Entered: 01/12/2023) |
| 01/13/2023 | 44 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Danielle R. Sassoon dated January 13, 2023 re: proposed protective order Document filed by USA. (Attachments: # 1 Text of Proposed Order Proposed Protective Order)(Sassoon, Danielle) (Entered: 01/13/2023) |
| 01/14/2023 | 45 | STIPULATED PROTECTIVE ORDER as to Samuel Bankman-Fried regarding procedures to be followed that shall govern the handling of discovery in this case. (Signed by Judge Lewis A. Kaplan on 1/14/2023)(Mohan, Andrew) (Entered: 01/14/2023) |

# A-28

| Date | No. | Description |
|---|---|---|
| 01/19/2023 | 46 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 1/19/23 re: 31 Notice (Other), 40 Letter, 29 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated January 3, 2023 re: Request to Redact Names and Identifying Information for Certain Bail Sureties ., 42 LETTER MOTION addressed to Judge Lewis A. Kaplan from Jeremy Chase dated 1/12/2023 re: Unsealing Request by various news organizations, including The Associated Press, Bloomberg L.P., The Financial Times Ltd., CNBC LLC, Reuters News & Media Inc., 43 LETTER MOTION addressed to Judge Lewis A. Kaplan from Lacy H. Koonce, III (Klaris Law PLLC) on behalf of CoinDesk, Inc. dated January 12, 2023 re: Unsealing of surety information . re: Unsealing Requests . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 01/19/2023) |
| 01/19/2023 | 47 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 1/19/23 re: bail conditions . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 01/19/2023) |
| 01/20/2023 | 48 | MEMO ENDORSEMENT as to Samuel Bankman-Fried on re: 47 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 1/19/23 re: bail conditions. ENDORSEMENT: In view of the fact that the Government has agreed to all of the bail conditions for reasons it finds satisfactory, the Courts role here is extremely limited. I approve the signing by the non-parent sureties of separate appearance bonds and of the amounts agreed by the parties. The names and addresses of the non-parental sureties shall remain under seal pursuant to my prior ruling pending the outcome of the motion practice now under weigh with respect to whether those names should be made public. (Signed by Judge Lewis A. Kaplan on 1/20/2023) (ap) (Main Document 48 replaced on 1/20/2023) (ap). (Entered: 01/20/2023) |
| 01/20/2023 | 49 | BILL OF PARTICULARS by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison . (Raymond, Samuel) (Entered: 01/20/2023) |
| 01/27/2023 | 50 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from AUSA Danielle R. Sassoon dated January 27, 2023 re: bail modifications Document filed by USA. (Sassoon, Danielle) (Entered: 01/27/2023) |
| 01/28/2023 | 51 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated January 28, 2023 re: bail conditions. (Cohen, Mark) (Entered: 01/28/2023) |
| 01/28/2023 | 52 | SCHEDULING ORDER as to Samuel Bankman-Fried.. (Signed by Judge Lewis A. Kaplan on 1/28/2023)(Kaplan, Lewis) (Entered: 01/28/2023) |
| 01/30/2023 | 53 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison addressed to Judge Lewis A. Kaplan from Danielle Sassoon dated January 30, 2023 re: bail modification Document filed by USA. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Sassoon, Danielle) (Entered: 01/30/2023) |
| 01/30/2023 | 54 | NOTICE OF ATTORNEY APPEARANCE Danielle Marie Kudla appearing for USA. (Kudla, Danielle) (Entered: 01/30/2023) |
| 01/30/2023 | 55 | UNSECURED PERSONAL RECOGNIZANCE Bond Entered as to Samuel Bankman-Fried. $200,000 PRB; TO BE SIGNED BY 1 FRP; TRAVEL RESTRICTED TO SDNY/EDNY/(SOLELY FOR COURT APPEARANCES) AND THE N.D. CAL; SURRENDER TRAVEL DOCUMENTS & NO NEW APPLICATIONS; STRICT SUPERVISION BY PRETRIAL SERVICES; MENTAL HEALTH EVAL/TREATMENT AS DIRECTED BY PTS; HOME DETENTION; LOCATION MONITORING TECHNOLOGY AS DIRECTED BY PTS; DEFT NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON; DEFENDANT TO BE RELEASED ON OWN SIGNATURE PLUS SIGNATURE OF PARENTS AND |

**A-29**

| | | |
|---|---|---|
| | | SURRENDER OF PASSPORT/INSTALLATION OF ELECTRONIC MONITOR; REMAINING CONDITIONS TO BE MET BY 1/5/23; DEF. TO LIVE IN PARENTS HOME IN PALO ALTO IN N.D. CAL. AND TO BE SUPERVISED FROM THAT DISTRICT. PTS OFFICE MAY EXERCISE DISCRETION TO ALLOW DEFENDANT TO LEAVE HOME FOR EXERCISE. DEFT NOT TO OPEN NEW LINES OF CREDIT, OPEN A BUSINESS, OR ENTER INTO FINANCIAL TRANSACTIONS IN EXCESS OF $1,000 WITHOUT PRE-APPROVAL OF GOVERNMENT OR COURT, EXCEPT TO PAY FOR LEGAL COSTS AND FEES; EQUITY INTEREST IN PARENTS HOME TO BE POSTED BY 1/12/23. MODIFIED BY USDJ KAPLAN TO ADD THE CONDITION THAT THE DEFENDANT BE PROHIBITED FROM ACCESSING OR TRANSFERRING ANY FTX OR ALEMEDA ASSETS OR CYRPTOCURRENCY, INCLUDING ASSETS OR CYRPTOCURRENCY PURCHASED WITH FUNDS FROM FTX OR ALAMEDA WITH FTX DEFINED TO INCLUDE FTX.COM, FTX U.S., FTX DIGITAL MARKETS, LTD AND ALL AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES AND ALAMEDA DEFINED TO INCLUDE ALAMEDA RESEARCH AND ANY AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES. (lnl) (Entered: 01/30/2023) |
| 01/30/2023 | 56 | UNSECURED PERSONAL RECONGIZANCE Bond Entered as to Samuel Bankman-Fried. $500,000 PRB; TO BE SIGNED BY I FRP; TRAVEL RESTRICTED TO SDNY/EDNY/(SOLELY FOR COURT APPEARANCES) AND THE N.D. CAL; SURRENDER TRAVEL DOCUMENTS & NO NEW APPLICATIONS; STRICT SUPERVISION BY PRETRIAL SERVICES; MENTAL HEALTH EVAL/TREATMENT AS DIRECTED BY PTS; HOME DETENTION; LOCATION MONITORING TECHNOLOGY AS DIRECTED BY PTS; DEFT NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON; DEFENDANT TO BE RELEASED ON OWN SIGNATURE PLUS SIGNATURE OF PARENTS AND SURRENDER OF PASSPORT/INSTALLATION OF ELECTRONIC MONITOR; REMAINING CONDITIONS TO BE MET BY 1/5/23; DEF. TO LIVE IN PARENTS HOME IN PALO ALTO IN N.D. CAL. AND TO BE SUPERVISED FROM THAT DISTRICT. PTS OFFICE MAY EXERCISE DISCRETION TO ALLOW DEFENDANT TO LEA VE HOME FOR EXERCISE. DEFT NOT TO OPEN NEW LINES OF CREDIT, OPEN A BUSINESS, OR ENTER INTO FINANCIAL TRANSACTIONS IN EXCESS OF $1,000 WITHOUT PRE-APPROVAL OF GOVERNMENT OR COURT, EXCEPT TO PAY FOR LEGAL COSTS AND FEES; EQUITY INTEREST IN PARENTS HOME TO BE POSTED BY 1/12/23. MODIFIED BY USDJ KAPLAN TO ADD THE CONDITION THAT THE DEFENDANT BE PROHIBITED FROM ACCESSING OR TRANSFERRING ANY FTX OR ALEMEDA ASSETS OR CYRPTOCURRENCY, INCLUDING ASSETS OR CYRPTOCURRENCY PURCHASED WITH FUNDS FROM FTX OR ALAMEDA WITH FTX DEFINED TO INCLUDE FTX.COM, FTX U.S., FTX DIGITAL MARKETS, LTD AND ALL AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES AND ALAMEDA DEFINED TO INCLUDE ALAMEDA RESEARCH AND ANY AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES. (lnl) (Entered: 01/30/2023) |

# A-30

| | | |
|---|---|---|
| 01/30/2023 | 57 | MEMORANDUM OPINION as to Samuel Bankman-Fried: For the foregoing reasons, the News Organizations' motions to intervene (Dkt 31, 40, 42, 43) are GRANTED for the limited purpose of asserting the public's claimed right of access to the names of the non-parental sureties. Further, the News Organizations' motions to unseal the names of the non-parental sureties are GRANTED. As the question presented here is novel and an appeal is likely, this order is stayed until 5 p.m. on February 7, 2023 and, if a notice of appeal from this order is filed by then, until February 14, 2023 at 5 p.m. in order to permit an application for a further stay to be made to the Court of Appeals should any adversely affected party wish to file one. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 1/30/2023) (lnl) (Entered: 01/30/2023) |
| 02/01/2023 | 58 | ORDER as to Samuel Bankman-Fried regarding the Goverment's 1/27/2023 letter motion for bail modification. "The Court will hear argument on this matter on February 7, 2023 at 2 p.m. In the interim, pending the outcome of that hearing, I hereby amend the conditions of defendants release, effective immediately, to add the governments proposed additional conditions that (1) the defendant shall not contact or communicate with current or former employees of FTX or Alameda (other than immediate family members) except in the presence of counsel, unless the government or Court exempts an individual from this rule and (2) the defendant shall not use any encrypted or ephemeral call or messaging application, including but not limited to Signal." (Signed by Judge Lewis A. Kaplan on 2/1/2023)(Mohan, Andrew) (Entered: 02/01/2023) |
| 02/02/2023 | 59 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 2/2/23 re: 52 Scheduling Order, 53 Letter, 51 Letter, 58 Order,,, re: request to modify scheduling order as to Samuel Bankman-Fried. . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 02/02/2023) |
| 02/02/2023 | 60 | MEMO ENDORSED ORDER granting 59 LETTER MOTION Time for submission of reply papers previously due today is extended until Monday, February 6, 2023. Oral argument is adjourned until 10:30 a.m. on February 9, 2023. re: 59 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 2/2/23 re: 52 Scheduling Order, 53 Letter, 51 Letter, 58 Order,,, re: request to modify scheduling order as to Samuel Bankman-Fried. . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 2/2/2023) (Mohan, Andrew) (Entered: 02/02/2023) |
| 02/02/2023 | | Bail modification hearing re Bankman-Fried set for 2/9/2023 at 10:30 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 02/02/2023) |
| 02/06/2023 | 61 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 2/6/23 re: 52 Scheduling Order, 53 Letter, 51 Letter, 59 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 2/2/23 re: 52 Scheduling Order, 53 Letter, 51 Letter, 58 Order,,, re: request to modify scheduling order as to Samuel Bankman-Fried. ., 58 Order,,, re: Request to Modify Bail Conditions . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 02/06/2023) |
| 02/07/2023 | 62 | MEMO ENDORSEMENT denying 61 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 2/6/23 re: Request to Modify Bail Conditions. ENDORSEMENT: The letter motion (Dkt 61) is denied without prejudice pending oral argument, which remains scheduled for 10:30 a.m. on February 9, 2023. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/7/2023) (lnl) (Entered: 02/07/2023) |
| 02/07/2023 | 63 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thomas F. Morrissey, Jr., dated 1/31/2023, re: Request to reverse decision. (lnl) (Entered: 02/07/2023) |

| 02/07/2023 | 64 | NOTICE OF APPEAL (Interlocutory) by Samuel Bankman-Fried from 57 Memorandum Opinion. Filing fee $ 505.00, receipt number 12125. (nd) (Entered: 02/07/2023) |
|---|---|---|
| 02/07/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Samuel Bankman-Fried to US Court of Appeals re: 64 Notice of Appeal - Interlocutory. (nd) (Entered: 02/07/2023) |
| 02/07/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Samuel Bankman-Fried re: 64 Notice of Appeal - Interlocutory were transmitted to the U.S. Court of Appeals. (nd) (Entered: 02/07/2023) |
| 02/09/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Status Conference as to Samuel Bankman-Fried held on 2/9/2023. Conference regarding Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Mark S. Cohen and Christian R. Everdell. AUSAs Danielle R. Sassoon, Nicolas Roos, Danielle Kudla, and Andrew Rohrbach present. Pretrial Services Officer Jonathan Lettieri present. Argument regarding bail modification heard. The Court extends the February 1, 2023 Order (Dkt 58) until 11 :59 p.m. on February 21, 2023. The parties shall file their submission or submissions with respect to defendant's conditions of release on or before February 13, 2023. (Court Reporter Steven Greenblum) (ap) Modified on 2/9/2023 (Mohan, Andrew). (Entered: 02/09/2023) |
| 02/09/2023 | 65 | ORDER as to Samuel Bankman-Fried: In view of today's hearing before the undersigned, and on consent of the parties, the Court extends the February 1, 2023 Order (Dkt 58) until 11 :59 p.m. on February 21, 2023. The parties shall file their submission or submissions with respect to defendant's conditions of release on or before February 13, 2023. (Signed by Judge Lewis A. Kaplan on 2/9/2023) (ap) (Entered: 02/09/2023) |
| 02/13/2023 | 66 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Danielle R. Sassoon dated February 13, 2023 re: bail conditions Document filed by USA. (Sassoon, Danielle) (Entered: 02/13/2023) |
| 02/14/2023 | 67 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated February 14, 2023 re: 66 Letter re: response to government's letter re: bail conditions . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 02/14/2023) |
| 02/14/2023 | 68 | ORDER RE LETTER MOTION The parties' motions for an extension of the deadline for their submission or submissions with respect to defendant's conditions of release (Dkt 66; Dkt 67) are denied in part. The parties will supplement their submissions with respect to the defendant's conditions of release by February 15, 2023 at 5:00 p.m. The Court will hear argument on this matter on February 16, 2023 at 2:30 p.m. It is undisputed by the parties that the defendant has used a VPN or "Virtual Private Network" at least twice to access the internet while on release- and at least once since the Court ordered that the defendant refrain from using any encrypted or ephemeral call or messaging applications. (Dkt 58) The defendant's use of a VPN presents many of the same risks associated with his use of an encrypted messaging or call application. Thus, pending the outcome of the hearing on February 16, I hereby amend the conditions of defendant's release, effective immediately, to prohibit the defendant's use of any VPN. Moreover, the Court extends the February 1, 2023 Order (Dkt 58), as thus amended, until 11 :59 p.m. on February 24, 2023. re: 67 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated February 14, 2023 re: 66 Letter re: response to government's letter re: bail conditions . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 2/14/2023) (Mohan, Andrew) (Entered: 02/14/2023) |
| 02/14/2023 | | Set Hearings as to Samuel Bankman-Fried: Oral Argument set for 2/16/2023 at 02:30 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. |

**A-32**

| | | Kaplan.. (Mohan, Andrew) (Entered: 02/14/2023) |
|---|---|---|
| 02/15/2023 | 69 | ORDER as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison. On January 30, 2023, the Court issued an order granting the motions of several news organizations to unseal the names of defendant's non-parental bail sureties. (Dkt 57) Given the novelty of the question presented and the likelihood of appeal, the Court stayed the order "until 5 p.m. on February 7, 2023 and, if a notice of appeal from th[at] order [was] filed by then, until February 14, 2023 at 5 p.m. in order to permit an application for a further stay to be made to the Court of Appeals should any adversely affected party wish to seek one." (Dkt 57, at 12.) On February 7, 2023, Defendant timely filed a notice of appeal from the January 30, 2023 Order. As of today, however, no application for a further stay has been made to the Court of Appeals. Accordingly, the Clerk shall file on the unrestricted public record complete copies of the redacted bonds previously docketed as Dkt 55 and 56. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/15/2023)(bw) (Entered: 02/15/2023) |
| 02/15/2023 | 70 | UNSECURED PERSONAL RECOGNIZANCE Bond Entered as to Samuel Bankman-Fried in amount of $200,000.00 PRB; TO BE SIGNED BY 1 FRP; TRAVEL RESTRICTED TO SDNY/EDNY/ (SOLELY FOR COURT APPEARANCES) AND THE N.D. CAL; SURRENDER TRAVEL DOCUMENTS & NO NEW APPLICATIONS; STRICT SUPERVISION BY PRETRIAL SERVICES; MENTAL HEALTH EVAL/TREATMENT AS DIRECTED BY PTS; HOME DETENTION; LOCATION MONITORING TECHNOLOGY AS DIRECTED BY PTS; DEFT NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON; DEFENDANT TO BE RELEASED ON OWN SIGNATURE PLUS SIGNATURE OF PARENTS AND SURRENDER OF PASSPORT/INSTALLATION OF ELECTRONIC MONITOR; REMAINING CONDITIONS TO BE MET BY 1/5/23; DEF. TO LIVE IN PARENTS HOME IN PALO ALTO IN N.D. CAL. AND TO BE SUPERVISED FROM THAT DISTRICT. PTS OFFICE MAY EXERCISE DISCRETION TO ALLOW DEFENDANT TO LEAVE HOME FOR EXERCISE. DEFT NOT TO OPEN NEW LINES OF CREDIT, OPEN A BUSINESS, OR ENTER INTO FINANCIAL TRANSACTIONS IN EXCESS OF $1,000 WITHOUT PRE-APPROVAL OF GOVERNMENT OR COURT, EXCEPT TO PAY FOR LEGAL COSTS AND FEES; EQUITY INTEREST IN PARENTS HOME TO BE POSTED BY 1/12/23. MODIFIED BY USDJ KAPLAN TO ADD THE CONDITION THAT THE DEFENDANT BE PROHIBITED FROM ACCESSING OR TRANSFERRING ANY FTX OR ALEMEDA ASSETS OR CYRPTOCURRENCY, INCLUDING ASSETS OR CYRPTOCURRENCY PURCHASED WITH FUNDS FROM FTX OR ALAMEDA WITH FTX DEFINED TO INCLUDE FTX.COM, FTX U.S., FTX DIGITAL MARKETS, LTD AND ALL AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES AND ALAMEDA DEFINED TO INCLUDE ALAMEDA RESEARCH AND ANY AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES. (bw) (Entered: 02/15/2023) |
| 02/15/2023 | 71 | UNSECURED PERSONAL RECOGNIZANCE Bond Entered as to Samuel Bankman-Fried in amount of $500,000.00 PRB; TO BE SIGNED BY 1 FRP; TRAVEL RESTRICTED TO SDNY/EDNY/ (SOLELY FOR COURT APPEARANCES) AND THE N.D. CAL; SURRENDER TRAVEL DOCUMENTS & NO NEW APPLICATIONS; STRICT SUPERVISION BY PRETRIAL SERVICES; MENTAL HEALTH EVAL/TREATMENT AS DIRECTED BY PTS; HOME DETENTION; LOCATION MONITORING TECHNOLOGY AS DIRECTED BY PTS; DEFT NOT TO POSSESS FIREARM/DESTRUCTIVE DEVICE/OTHER WEAPON; DEFENDANT TO BE RELEASED ON OWN SIGNATURE PLUS SIGNATURE OF PARENTS AND SURRENDER OF PASSPORT /INSTALLATION OF ELECTRONIC MONITOR; REMAINING CONDITIONS TO BE MET BY 1/5/23; DEF. TO LIVE IN PARENTS HOME IN PALO ALTO IN N.D. CAL. AND TO BE SUPERVISED FROM THAT DISTRICT. PTS OFFICE MAY EXERCISE DISCRETION TO ALLOW DEFENDANT |

# A-33

| | | TO LEAVE HOME FOR EXERCISE. DEFT NOT TO OPEN NEW LINES OF CREDIT, OPEN A BUSINESS, OR ENTER INTO FINANCIAL TRANSACTIONS IN EXCESS OF $1,000 WITHOUT PRE-APPROVAL OF GOVERNMENT OR COURT, EXCEPT TO PAY FOR LEGAL COSTS AND FEES; EQUITY INTEREST IN PARENTS HOME TO BE POSTED BY 1/12/23. MODIFIED BY USDJ KAPLAN TO ADD THE CONDITION THAT THE DEFENDANT BE PROHIBITED FROM ACCESSING OR TRANSFERRING ANY FTX OR ALEMEDA ASSETS OR CYRPTOCURRENCY, INCLUDING ASSETS OR CYRPTOCURRENCY PURCHASED WITH FUNDS FROM FTX OR ALAMEDA WITH FTX DEFINED TO INCLUDE FTX.COM, FTX U.S., FTX DIGITAL MARKETS, LTD AND ALL AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES AND ALAMEDA DEFINED TO INCLUDE ALAMEDA RESEARCH AND ANY AFFILIATED SUBSIDIARY AND SUCCESSOR ENTITIES. (bw) (Entered: 02/15/2023) |
|---|---|---|
| 02/15/2023 | 72 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated February 15, 2023 re: bail conditions . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Exhibit A - Declaration of David Sun)(Everdell, Christian) (Entered: 02/15/2023) |
| 02/15/2023 | 73 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Nicolas Roos dated February 15, 2023 re: Modification of Bail Conditions . Document filed by USA as to Samuel Bankman-Fried. (Roos, Nicolas) (Entered: 02/15/2023) |
| 02/16/2023 | 74 | LETTER addressed to Judge Lewis A. Kaplan from S. Keithley dated 2/9/2023 re: Letter from S. Keithley regarding defendant Sam Bankman Fried (jw) (Entered: 02/16/2023) |
| 02/16/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Oral Argument as to Samuel Bankman-Fried held on 2/16/2023. Defendant Samuel Bankman-Fried present with attorneys Mark S. Cohen and Christian R. Everdell. AUSAs Danielle R. Sassoon, Nicolas Roos, Samuel Raymond, Danielle Kudla, and Andrew, Rohrbach present. Pretrial Services Officer John Moscato present. Court reporter Andrew Walker present. Argument regarding bail conditions heard. Defendant remained released on bail. (lnl) (Entered: 02/16/2023) |
| 02/17/2023 | 75 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 2/9/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/10/2023. Redacted Transcript Deadline set for 3/20/2023. Release of Transcript Restriction set for 5/18/2023. (McGuirk, Kelly) (Entered: 02/17/2023) |
| 02/17/2023 | 76 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 2/9/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/17/2023) |
| 02/21/2023 | 77 | LETTER as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thomas F. Morrissey, Jr. dated January 31, 2023. (bw) (Entered: 02/21/2023) |
| 02/21/2023 | 78 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 2/21/23 re: technical consultant (Everdell, Christian) (Entered: 02/21/2023) |

| 02/23/2023 | 79 | ORDER as to Samuel Bankman-Fried to unseal S(3) superseding indictment. (Signed by Judge Lewis A. Kaplan on 2/23/23)(jm) Modified on 2/23/2023 (jm). (Entered: 02/23/2023) |
|---|---|---|
| 02/23/2023 | 80 | (S3) SUPERSEDING INDICTMENT FILED as to Samuel Bankman-Fried (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, 7s, 8s, 9s, 10s, 11s, 12s. (jm) (ORIGINALLY FILED UNDER SEAL ON 2/22/23) (Entered: 02/23/2023) |
| 02/23/2023 | 81 | LETTER as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Dr. Nicholas Weaver, Ph.D. dated 2/18/2023 re: I am a lecturer in Computer Science at the University of California at Berkeley and a researcher at the International Computer Science Institute in Berkeley. I am writing this amicus letter as an individual and uninterested party in US vs Bankmari-Fried (1:22-cr-00673) to offer an explanation of VPN technologies and usages as well as a comparison to a similarly situated defendant's bond conditions in a lower profile cryptocurrency case.... (bw) (Entered: 02/23/2023) |
| 02/23/2023 | 82 | ORDER as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison. In view of the February 16, 2023 hearing before the undersigned, and on consent of the parties, the Court extends the February 1, 2023 Order (Dkt 58), as amended by the February 14, 2023 Order (Dkt 68), until 11:59 p.m. on March 3, 2023. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/23/2023)(bw) (Entered: 02/23/2023) |
| 02/23/2023 | 83 | LETTER as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Robert A. Bishop, Texas Retired CPA. (bw) (Entered: 02/23/2023) |
| 02/23/2023 | 84 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from AUSA Nicolas Roos dated February 22, 2023 re: On February 22, 2023, a grand jury returned a twelve-count superseding indictment (the "S3 Indictment") charging Samuel Bankman-Fried with conspiracy to commit wire fraud, wire fraud, conspiracy to commit commodities fraud, commodities fraud, conspiracy to commit securities fraud, securities fraud, conspiracy to commit bank fraud, conspiracy to commit unlicensed money transmission, conspiracy to commit money laundering, and conspiracy to commit campaign finance violations and defraud the Federal Election Commission. A copy of the S3 Indictment is enclosed. As the Court knows, the defendant was previously extradited from The Bahamas on an Indictment returned on December 9, 2022. The S3 Indictment has been sealed so as to permit time for the Government to make the appropriate diplomatic notifications about the new charges. Those notifications will be made this evening. Accordingly, the Government respectfully requests that the Court order the S3 Indictment unsealed as of 9:00 a.m. on February 23, 2023. For the reasons set forth in this letter, the Government also respectfully requests that this letter be maintained under seal until the unsealing of the S3 Indictment. (bw) (Entered: 02/23/2023) |
| 02/23/2023 | 85 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated February 23, 2023 re: S3 Indictment, Arraignment, and Exclusion of Time Document filed by USA. (Roos, Nicolas) (Entered: 02/23/2023) |
| 02/24/2023 | 86 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 2/16/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Andrew Walker, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/17/2023. Redacted Transcript Deadline set for 3/27/2023. Release of Transcript Restriction set for 5/25/2023. (McGuirk, Kelly) (Entered: 02/24/2023) |
| 02/24/2023 | 87 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 2/16/2023 has been filed by the court reporter/transcriber in the above-captioned matter. |

| | | |
|---|---|---|
| | | The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/24/2023) |
| 02/24/2023 | 88 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 2/24/23 re: Request for Extension . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 02/24/2023) |
| 02/27/2023 | 89 | USCA MANDATE ON INTERLOCUTORY APPEAL (certified copy) as to Samuel Bankman-Fried re: 64 Notice of Appeal - Interlocutory. USCA Case Number 23-6134. Appellant moves to withdraw the above-captioned appeal. IT IS HEREBY ORDERED that the motion is GRANTED. The appeal is deemed WITHDRAWN. Catherine O'Hagan Wolfe, Clerk USCA. Issued As Mandate: 2/27/2023. (nd) (Entered: 02/27/2023) |
| 02/28/2023 | 90 | (S4) SUPERSEDING INFORMATION (Felony) filed as to Nishad Singh (4) count(s) 1, 2, 3, 4, 5, 6. (jbo) (Entered: 02/28/2023) |
| 02/28/2023 | 91 | WAIVER OF INDICTMENT by Nishad Singh. (jbo) (Entered: 02/28/2023) |
| 02/28/2023 | 92 | ORDER as to Nishad Singh. Upon the application of the United States, and with the consent of the defendant, redacted copies of the (S4) superseding information and the Consent Preliminary Order of Forfeiture as to Specific Property shall be filed on the public docket and the unredacted originals of each document shall be kept by the Clerk of Court under seal pending further order of this Court. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/28/23)(jbo) (Entered: 02/28/2023) |
| 02/28/2023 | | Case Designated ECF as to Nishad Singh. (jbo) (Entered: 02/28/2023) |
| 02/28/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Initial Appearance as to Nishad Singh held on 2/28/2023. Arraignment as to Nishad Singh (4) Count 1,2,3,4,5,6 held on 2/28/2023. Initial appearance and entry of guily plea regarding defendant Nishad Singh (04) before the Hon. Lewis A. Kaplan held. Defendant Nishad Singh present with attorneys Russell Capone and Andrew Goldstein. AUSAs Danielle R. Sassoon, Nicolas Roos, and Andrew Rohrbach present. Pretrial Services Officer Maherun Mayer present. Court reporter Doug Colavito present. Defendant arraigned on the (S4) information, waived indictment, and entered a plea of guilty as charged in the (S4) information. Redacted copies of the (S4) information and the Consent Preliminary Order of Forfeiture as to Specific Property were ordered to be filed, with the unredacted originals to be filed under seal. Bail conditions as to defendant Nishad Sing are set as follows: $250,000 personal recognizance bond, co-signed by one financially responsible person; travel restricted to the continental United States; the defendant to surrender all travel documents and refrain from making any new applications; supervision as directed by Pretrial Services; and adherence to all other standard conditions of release. Sentencing scheduled for 11/13/2024 at 10:00 AM. (jbo) (Entered: 02/28/2023) |
| 02/28/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Plea entered by Nishad Singh (4) Guilty as to Count 1,2,3,4,5,6. (Sentencing set for 11/13/2024 at 10:00 AM before Judge Lewis A. Kaplan.) (jbo) (Entered: 02/28/2023) |
| 02/28/2023 | 93 | RULE 5(F) ORDER as to Nishad Singh. (Signed by Judge Lewis A. Kaplan on 2/28/23) (jbo) (Entered: 02/28/2023) |
| 02/28/2023 | 94 | BAIL ORDER as to Nishad Singh. Bail conditions as to defendant Nishad Sing are set as follows: $250,000 personal recognizance bond, co-signed by one financially responsible person; travel restricted to the continental United States; the defendant to surrender all travel documents and refrain from making any new applications; supervision as directed |

# A-36

| | | |
|---|---|---|
| | | by Pretrial Services; and adherence to all other standard conditions of release. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/28/23)(jbo) (Entered: 02/28/2023) |
| 02/28/2023 | 95 | CONSENT PRELIMINARY ORDER OF FORFEITURE AS TO SPECIFIC PROPERTY as to Nishad Singh. (Signed by Judge Lewis A. Kaplan on 2/28/23)(jbo) (Entered: 02/28/2023) |
| 02/28/2023 | 96 | Appearance Bond Entered as to Nishad Singh: $250,000 Personal recognizance bond; To be cosigned by one financially responsible person; Additional conditions..... (jbo) (Main Document 96 replaced on 3/22/2023) (jbo). (Entered: 02/28/2023) |
| 02/28/2023 | 97 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 02/28/2023) |
| 02/28/2023 | 98 | AMENDED BAIL ORDER as to Nishad Singh. (Signed by Judge Lewis A. Kaplan on 2/28/2023) (See ORDER set forth) (ap) (Entered: 02/28/2023) |
| 03/01/2023 | 99 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated March 1, 2023 re: proposed technical consultant (Attachments: # 1 Exhibit A - CV of Edward Stroz, # 2 Exhibit B - CV of Michael McGowan)(Everdell, Christian) (Entered: 03/01/2023) |
| 03/03/2023 | 100 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated March 3, 2023 re: Joint Proposed Modified Conditions of Release re Electronic Devices and the Internet Document filed by USA. (Roos, Nicolas) (Entered: 03/03/2023) |
| 03/06/2023 | 101 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan, from Tom Janson dated 2/24/2023 re: Tom Janson writes to request Defendant's bail be revoked. (ap) (Entered: 03/06/2023) |
| 03/07/2023 | 102 | TRANSCRIPT of Proceedings as to Nishad Singh re: Plea held on 2/28/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Doug Colavito, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/28/2023. Redacted Transcript Deadline set for 4/7/2023. Release of Transcript Restriction set for 6/5/2023. (McGuirk, Kelly) (Entered: 03/07/2023) |
| 03/07/2023 | 103 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Nishad Singh. Notice is hereby given that an official transcript of a Plea proceeding held on 2/28/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 03/07/2023) |
| 03/07/2023 | 104 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan, from Mary Moon dated 2/17/2023 re: Mary Moon writes regarding release. (ap) (Entered: 03/07/2023) |
| 03/07/2023 | | Set Hearings as to Samuel Bankman-Fried: Pretrial Conference set for 3/10/2023 at 11:00 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. The defendant himself is not required to attend. (Mohan, Andrew) (Entered: 03/07/2023) |
| 03/08/2023 | 105 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated March 8, 2023 re: Bail Conditions, Database Access, and Motions Schedule . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 03/08/2023) |

**A-37**

| 03/10/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan:Pretrial Conference as to Samuel Bankman-Fried held on 3/10/2023. Defendant not present, but attorneys Mark Cohen and Christian Everdell present. AUSAs Danielle Sassoon, Nicolas Roos, and Danielle M. Kudla present. (Court Reporter Khris Sellin) (Mohan, Andrew) (Entered: 03/20/2023) |
|---|---|---|
| 03/16/2023 | 106 | LETTER addressed to Judge Lewis A. Kaplan from Nicholas Weaver, Ph.D dated 2/18/2023 re: I am a lecturer in Computer Science at the University of California at Berkeley and a researcher at the International Computer Science Institute in Berkeley. I am writing this amicus letter as an individual and uninterested party in US vs Bankman-Fried (1:22-cr-00673) to offer an explanation of VPN technologies and usages as well as a comparison to a similarly situated defendant's bond conditions in a lower profile cryptocurrency case. (jw) (Entered: 03/16/2023) |
| 03/17/2023 | 107 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 3/10/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/7/2023. Redacted Transcript Deadline set for 4/17/2023. Release of Transcript Restriction set for 6/15/2023. (McGuirk, Kelly) (Entered: 03/17/2023) |
| 03/17/2023 | 108 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 3/10/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 03/17/2023) |
| 03/17/2023 | 109 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated March 17, 2023 re: Request to Modify Bail Conditions . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Text of Proposed Order (Proposed Order))(Everdell, Christian) (Entered: 03/17/2023) |
| 03/24/2023 | 111 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated March 24, 2023 re: Status Report re Proposed Bail Modifications Document filed by USA. (Roos, Nicolas) (Entered: 03/24/2023) |
| 03/27/2023 | 112 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated March 27, 2023 re: Request to Modify Bail Conditions . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Exhibit A - Proposed Order, # 2 Exhibit B - Declaration of David Sun)(Everdell, Christian) (Entered: 03/27/2023) |
| 03/28/2023 | 113 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 03/28/2023 re: Requesting Court Conference Document filed by USA. (Attachments: # 1 Exhibit 1, # 2 Exhibit 1 (continued))(Kudla, Danielle) (Entered: 03/28/2023) |
| 03/28/2023 | 114 | ORDER as to Samuel Bankman-Fried to unseal the S(5) superseding indictment as of 9:00 AM on 3/28/23. (Signed by Magistrate Judge Robert W. Lehrburger on S5)(jm) (Entered: 03/28/2023) |
| 03/28/2023 | | Set/Reset Hearings as to Samuel Bankman-Fried: Pretrial Conference set for 3/30/2023 at 11:00 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan.. (Mohan, Andrew) (Entered: 03/28/2023) |

# A-38

| | | |
|---|---|---|
| 03/28/2023 | 115 | (S5) SUPERSEDING INDICTMENT FILED as to Samuel Bankman-Fried (1) count(s) 1ss, 2ss, 3ss, 4ss, 5ss, 7ss, 8ss, 10ss, 11ss, 12ss, 13ss. (jm) (Entered: 03/28/2023) |
| 03/28/2023 | 116 | ORDER as to Samuel Bankman-Fried (1): IT IS HEREBY ORDERED that the Defendant's bail conditions will be modified by adding the following: 1. The Defendant will be given access to a laptop computer (the "Laptop") that will be configured to allow him to access the AWS Database via a secure VPN connection, pursuant to the following conditions: a.The Laptop will be owned and controlled by Cohen & Gresser and will not be one of Mr. Bankman-Fried's personal devices.b.When Mr. Bankman-Fried wishes to use the Laptop, an attorney or paralegal from Cohen & Gresser will bring the Laptop to Mr. Bankman-Fried's residence, remain with Mr. Bankman-Fried while he uses the Laptop, and take back the Laptop and remove it from the residence when he is finished. c.Mr. Bankman-Fried may use the Laptop only to query, review, and analyze the data in the AWS Database, and share those results with his counsel and others on the defense team. d.For those purposes, the Laptop will be installed with the Microsoft 11 operating system and its associated programs and will be loaded only with the following additional applications and programs: 1.AWS VPN client (to access the AWS Database); ii. pgAdmin (PostgreSQL tool to query the AWS Database); iii. Microsoft Office, including Microsoft Word, Excel, and Access (to create documents and analyze data); iv. Adobe Acrobat Reader (to read documents in.pdf format); v. 7zip (to create zip files to transfer large files); vi. Google Chrome (to send files to the defense team via Mr. Bankman-Fried's Gmail account or via the Cohen & Gresser ShareFile site); and vii. A remote access support tool (for remote support by Cohen & Gresser). e. If requested, Cohen & Gresser will provide the Government with device specific identifying information for the Laptop. 2. Apart from this modification, the Defendant's existing bail conditions will remain in effect. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 3/28/2023) (lnl) (Entered: 03/28/2023) |
| 03/28/2023 | 117 | MEMO ENDORSEMENT as to Samuel Bankman-Fried (1) on 112 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell March 27, 2023 re: Request to Modify Bail Conditions. ENDORSEMENT: The request to file Appendix I under seal is granted for the reasons stated above. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 3/28/2023) (lnl) (Entered: 03/28/2023) |
| 03/28/2023 | 118 | ORDER as to Samuel Bankman-Fried: IT IS HEREBY ORDERED that the Defendant's bail conditions will be modified by adding the following: General Conditions 1. The Defendant shall not contact or communicate with current or former employees of FTX or Alameda (other than immediate family members), except in the presence of counsel, unless the Government or Court exempts an individual from this rule in writing. 2. The Defendant shall not use any encrypted or ephemeral call or messaging application, including but not limited to "Signal." 3. The Defendant shall not use a Virtual Private Network ("VPN"), except as explicitly authorized in his bail conditions, as described below and in Appendix 1. (Signed by Judge Lewis A. Kaplan on 3/28/2023) (See ORDER as further set forth) (lnl) (Entered: 03/28/2023) |
| 03/28/2023 | 119 | MEMO ENDORSEMENT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh on 113 LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 03/28/2023 re: Requesting Court Conference. ENDORSEMENT: The Court will arraign the defendant on S5 and hold a pretrial conference on March 30, 2023 at 11 am. SO ORDERED. (Arraignment set for 3/30/2023 at 11:00 AM before Judge Lewis A. Kaplan) (Signed by Judge Lewis A. Kaplan on 3/28/2023) (lnl) (Entered: 03/28/2023) |

# A-39

| 03/29/2023 | 120 | NOTICE OF ATTORNEY APPEARANCE Jil Simon appearing for USA. (Simon, Jil) (Entered: 03/29/2023) |
|---|---|---|
| 03/30/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Arraignment as to Samuel Bankman-Fried (1) Count 1s,1ss,2s,2ss,3s,3ss,4s,4ss,5s,5ss,6s,7s,7ss,8s,8ss,9s,10s,10ss,11s,11ss,12s,12ss, 13ss held on 3/30/2023. Conference regarding Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Mark S. Cohen and Christian R. Everdell. AUSAs Danielle R. Sassoon, Nicolas Roos, Danielle Kudla, present. Court reporter Kristen Carranante present. Defendant arraigned on both the (S3) and (S5) indictments, the defendants entered pleas of Not Guilty to both the (S3) and (S5) indictments. Discovery status given by the Government. The Court ruled that the current bail order applies to the (S5) indictment. The motion schedule was modified so that Defendant's motions are due 5/8/2023; Government opposition due 5/29/2023; Defense replies due 6/12/2023; oral argument or a PTC is scheduled for 6/15/2023 @ 3:30 PM. Time is excluded from today through and including 10/2/2023 on all indictments in the interests of justice. Defendant remained released on bail. (Motions due by 5/8/2023. Responses due by 5/29/2023. Pretrial Conference/Oral Argument set for 6/15/2023 at 03:30 PM before Judge Lewis A. Kaplan.) **Plea entered by Samuel Bankman-Fried (1) Count 1s,1ss,2s,2ss,3s,3ss,4s,4ss,5s,5ss,6s,7s,7ss,8s,8ss,9s,10s,10ss,11s,11ss,12s,12ss, 13ss Not Guilty.** (lnl) (Entered: 03/30/2023) |
| 04/04/2023 | 121 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 4/4/23 re: Request for Extension and Modification . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 04/04/2023) |
| 04/04/2023 | 122 | MEMO ENDORSEMENT as to Samuel Bankman-Fried (1) on 121 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 4/4/23 re: Request for Extension and Modification. ENDORSEMENT: SO ORDERED. (Signed by Judge Lewis A. Kaplan on 4/4/2023) (ap) (Entered: 04/04/2023) |
| 04/11/2023 | 123 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/11/2023) |
| 04/11/2023 | 124 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/11/2023) |
| 04/11/2023 | 125 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated April 11, 2023 re: Request for Enlargement of Time to Implement Bail Conditions . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Exhibit A - Declaration of Allan Joseph Bankman, # 2 Exhibit B - Declaration of Barbara Fried)(Everdell, Christian) (Entered: 04/11/2023) |
| 04/12/2023 | 126 | MEMO ENDORSEMENT 125 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated April 11, 2023 re: Request for Enlargement of Time to Implement Bail Conditions as to Samuel Bankman-Fried....ENDORSEMENT...Granted. SO ORDERED (Signed by Judge Lewis A. Kaplan on 4/12/2023) (jw) (Entered: 04/12/2023) |
| 04/17/2023 | 127 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Arraignment held on 3/30/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/8/2023. Redacted Transcript Deadline set for 5/18/2023. Release of Transcript Restriction set for 7/17/2023. (McGuirk, Kelly) (Entered: 04/17/2023) |
| 04/17/2023 | 128 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on |

# A-40

| | | |
|---|---|---|
| | | 3/30/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 04/17/2023) |
| 04/18/2023 | 129 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated April 18, 2023 re: Request for Extension . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 04/18/2023) |
| 04/19/2023 | 130 | MEMO ENDORSEMENT granting 129 LETTER MOTION filed by Samuel Bankman-Fried (1), addressed to Judge Lewis A. Kaplan from Attorney Christian R. Everdell dated April 18, 2023 re: Request for Extension.... Accordingly, we respectfully request the Court to grant an extension until Friday, April 21, 2023 to implement the bail conditions related to the parents' cellphones. In the meantime, we respectfully request that Mr. Bankman-Fried's parents be permitted to use their existing cellphones. ENDORSEMENT: Granted. SO ORDERED: (Signed by Judge Lewis A. Kaplan on 4/19/2023) (bw) (Entered: 04/19/2023) |
| 04/20/2023 | 131 | LETTER as to USA v. Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Karin Brothers dated March 3, 2023 re: Case no. 22 Cr. 673. (bw) (Entered: 04/20/2023) |
| 04/21/2023 | 132 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 4/21/23 re: Request for Modification of Bail Conditions . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 04/21/2023) |
| 04/24/2023 | 133 | MEMO ENDORSEMENT as to Samuel Bankman-Fried (1) granting 132 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 4/21/23 re: Request for Modification of Bail Conditions. ENDORSEMENT: Granted. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 4/22/2023) (lnl) (Entered: 04/24/2023) |
| 05/08/2023 | 134 | NOTICE OF ATTORNEY APPEARANCE: Stephen Gale Dick appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Dick, Stephen) (Entered: 05/08/2023) |
| 05/08/2023 | 135 | NOTICE OF ATTORNEY APPEARANCE: Sri Kuehnlenz appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Kuehnlenz, Sri) (Entered: 05/08/2023) |
| 05/08/2023 | 136 | MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts*. Document filed by Samuel Bankman-Fried as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh. (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 137 | DECLARATION of Christian R. Everdell in Support as to Samuel Bankman-Fried re: 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts*.. (Attachments: # 1 Exhibit 1 to Everdell Declaration, # 2 Exhibit 2 to Everdell Declaration, # 3 Exhibit 3 to Everdell Declaration, # 4 Exhibit 4 to Everdell Declaration, # 5 Exhibit 5 to Everdell Declaration, # 6 Exhibit 6 to Everdell Declaration, # 7 Exhibit 7 to Everdell Declaration, # 8 Exhibit 8 to Everdell Declaration, # 9 Exhibit 9 to Everdell Declaration, # 10 Exhibit 10 to Everdell Declaration, # 11 Exhibit 11 to Everdell Declaration, # 12 Exhibit 12 to Everdell Declaration, # 13 Exhibit 13 to Everdell Declaration)(Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 138 | DECLARATION of James Lewis, KC in Support as to Samuel Bankman-Fried re: 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the |

# A-41

| | | |
|---|---|---|
| | | *Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts*.. (Attachments: # 1 Exhibit A to Lewis Declaration, # 2 Exhibit B to Lewis Declaration, # 3 Exhibit C to Lewis Declaration, # 4 Exhibit D to Lewis Declaration, # 5 Exhibit E to Lewis Declaration, # 6 Exhibit F to Lewis Declaration, # 7 Exhibit G to Lewis Declaration, # 8 Exhibit H to Lewis Declaration, # 9 Exhibit I to Lewis Declaration, # 10 Exhibit J to Lewis Declaration, # 11 Exhibit K to Lewis Declaration, # 12 Exhibit L to Lewis Declaration) (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 139 | MEMORANDUM in Support by Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Dismiss Counts 9, 10, 12 and 13 as Violating the Rule of Specialty, or, in the Alternative, for Related Discovery)* (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 140 | MEMORANDUM in Support by Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Dismiss Counts 7-9 and 1-2 for Failure to Allege a Valid Property Right)* (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 141 | MEMORANDUM in Support by Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Dismiss Counts 3-4, and Count 10)* (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 142 | MEMORANDUM in Support by Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Dismiss Counts 12-13 or, in the Alternative, to Sever Counts 12-13)* (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 143 | MEMORANDUM in Support by Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion for Discovery on the Basis that FTX is Member of the Prosecution Team)* (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 144 | MEMORANDUM in Support by Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion for a Bill of Particulars and Pretrial Disclosures)* (Cohen, Mark) (Entered: 05/08/2023) |
| 05/08/2023 | 145 | MEMORANDUM in Support by Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Dismiss Multiplicitous Counts)* (Cohen, Mark) (Entered: 05/08/2023) |

## A-42

| 05/12/2023 | 147 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated May 12, 2023 re: Ciminelli decision (Everdell, Christian) (Entered: 05/12/2023) |
|---|---|---|
| 05/23/2023 | | Reset Hearing Time as to Samuel Bankman-Fried: Oral Argument regarding DI 136 set for 6/15/2023 at 10:30 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 05/23/2023) |
| 05/29/2023 | 148 | MEMORANDUM in Opposition by USA as to Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts*.. *(Memorandum In Opposition to Defendant's Motion to Dismiss Based on the Rule of Specialty)* (Rehn, Nathan) (Entered: 05/29/2023) |
| 05/29/2023 | 149 | MEMORANDUM in Opposition by USA as to Samuel Bankman-Fried re 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts*.. (Sassoon, Danielle) (Entered: 05/29/2023) |
| 05/30/2023 | 150 | MOTION to Compel *the Government to Produce Documents and for an Order Authorizing a Subpoena to Be Served on Fenwick & West*. Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 05/30/2023) |
| 05/30/2023 | 151 | MEMORANDUM in Support by Samuel Bankman-Fried re 150 MOTION to Compel *the Government to Produce Documents and for an Order Authorizing a Subpoena to Be Served on Fenwick & West*.. (Attachments: # 1 Exhibit 1- Subpoena with Attachments 1 - 23)(Cohen, Mark) (Entered: 05/30/2023) |
| 05/30/2023 | 152 | DECLARATION of Christian R. Everdell in Support as to Samuel Bankman-Fried re: 150 MOTION to Compel *the Government to Produce Documents and for an Order Authorizing a Subpoena to Be Served on Fenwick & West*.. (Attachments: # 1 Exhibit 1- Excerpts from transcript from February 6, 2023 Hearing in In re FTX (Bankr. D. Del.)) (Cohen, Mark) (Entered: 05/30/2023) |
| 06/05/2023 | 153 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 6/5/23 re: Discovery Status (Cohen, Mark) (Entered: 06/05/2023) |
| 06/06/2023 | 154 | LETTER MOTION addressed to Judge Lewis A. Kaplan from AUSA Andrew Rohrbach dated June 6, 2023 re: Terminate appearance . Document filed by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh. (Rohrbach, Andrew) (Entered: 06/06/2023) |
| 06/06/2023 | 155 | MEMO ENDORSEMENT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh granting 154 LETTER MOTION addressed to Judge Lewis A. Kaplan from AUSA Andrew Rohrbach dated June 6, 2023 re: Terminate appearance. ENDORSEMENT: Granted. SO ORDERED. (Attorney Andrew Rohrbach terminated in case as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh) (Signed by Judge Lewis A. Kaplan on 6/6/2023) (lnl) (Entered: 06/06/2023) |
| 06/09/2023 | 156 | MEMORANDUM in Opposition by USA as to Samuel Bankman-Fried re 150 MOTION to Compel *the Government to Produce Documents and for an Order Authorizing a Subpoena to Be Served on Fenwick & West*.. (Roos, Nicolas) (Entered: 06/09/2023) |
| 06/12/2023 | 157 | DECLARATION of Honourable James Lewis KC in Support as to Samuel Bankman-Fried re: 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and* |

| | | *Pretrial Disclosures, and to Dismiss Multiplicitous Counts*.. (Cohen, Mark) (Entered: 06/12/2023) |
|---|---|---|
| 06/12/2023 | 158 | REPLY MEMORANDUM OF LAW in Support as to Samuel Bankman-Fried re: 136 MOTION to Dismiss *Counts 1-4, 7-10 and 12-13 in the S5 Indictment, or in the Alternative, to Sever Counts 12-13, for Additional Discovery, a Bill of Particulars and Pretrial Disclosures, and to Dismiss Multiplicitous Counts*. . (Cohen, Mark) (Entered: 06/12/2023) |
| 06/13/2023 | 159 | ORDER as to Samuel Bankman-Fried. Defendant Samuel Bankman-Fried has moved to compel the production of certain documents relating to Fenwick & West LLP's representation of FTX Trading Ltd., West Realm Shires Inc., Alameda Research LLC, Alameda Research LTD, and their subsidiaries and affiliates (the "FTX Debtors"). (Dkt 150) The FTX Debtors move to intervene to oppose the defendant's motion, and they request a protective order barring the production of certain allegedly privileged materials....[*** See this Order ***]... In the present case, the defendant's motion to compel seeks documents that reflect Fenwick & West LLP's "research, assessment, analysis, guidance, or legal advice" conducted for or provided to the FTX Debtors.(See Footnote 4 on this Order). Such requests, on their face, call for documents protected from disclosure by the FTX Debtors' attorney-client privilege. Accordingly, the FTX Debtors' motion to intervene is granted and the Clerk is directed to add the FTX Debtors as intervenors to the case. The merits of the defendant's motion to compel and the FTX Debtors' motion for a protective order will be addressed in due course. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/13/2023)(bw) (Entered: 06/13/2023) |
| 06/13/2023 | 160 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated June 13, 2023 re: Supreme Court of the Bahamas Ruling (Attachments: # 1 Exhibit A - June 13, 2023 Ruling from The Bahamas Supreme Court)(Cohen, Mark) (Entered: 06/13/2023) |
| 06/14/2023 | 161 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated June 14, 2023 re: Discovery Status Update Document filed by USA. (Roos, Nicolas) (Entered: 06/14/2023) |
| 06/14/2023 | 162 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thane Rehn dated June 14, 2023 re: Rule of Specialty Document filed by USA. (Rehn, Nathan) (Entered: 06/14/2023) |
| 06/15/2023 | 163 | MOTION for Protective Order . Document filed by Alameda Research LTD, Alameda Research LLC, West Realm Shires Inc., FTX Trading Ltd. as to Samuel Bankman-Fried. (Friedlander, Nicole) (Entered: 06/15/2023) |
| 06/15/2023 | 164 | MEMORANDUM in Support by Alameda Research LTD, Alameda Research LLC, West Realm Shires Inc., FTX Trading Ltd. as to Samuel Bankman-Fried re 163 MOTION for Protective Order .. (Friedlander, Nicole) (Entered: 06/15/2023) |
| 06/15/2023 | 165 | ORDER as to Samuel Bankman-Fried. 1. The government has requested a specialty waiver from The Bahamas with respect to the prosecution of the defendant on charges first interposed after the date of defendant's extradition, specifically Counts Four, Six, Nine, Ten and Thirteen of the Fifth Superseding Indictment. In view of the uncertainty of when The Bahamas will render a decision on that request, the government has requested that those counts be severed and scheduled for separate trial from the trial of the pre-extradition charges. Accordingly, Counts Four, Six, Nine, Ten and Thirteen of the Fifth Superseding Indictment are severed and scheduled for trial, unless otherwise ordered, commencing on March 11, 2024. 2. For reasons, and subject to the qualifications, stated on the record in open court, defendant's Pretrial Motion Nos. 5 and 6 (set forth in Dkt |

# A-44

| | | |
|---|---|---|
| | | 136) are denied. 3. Pretrial Motion No. 7 is denied as premature. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/15/2023)(bw) (Entered: 06/15/2023) |
| 06/15/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Oral Argument as to Samuel Bankman-Fried held on 6/15/2023. Oral argument on pending motions re Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Mark S. Cohen, Christian R. Everdell, Sri Kuehnlenz, and Stephen G. Dick. AUSAs Danielle R. Sassoon, Nicolas Roos, Danielle Kudla, Jil Simon, and Samuel Raymond present. Court reporter Amy Walker present. See written order regarding the Court's rulings on the motions. Defendant remained released on bail. (bw) (Entered: 06/15/2023) |
| 06/23/2023 | 166 | ORDER as to Samuel Bankman-Fried: The defendant moves to compel the government pursuant to Rule 16 of the Federal Rules of Criminal Procedure to produce documents responsive to a subpoena attached as Exhibit A to Dkt 151-1 (the "Subpoena") or, in the alternative, for an order under Rule 17(c)(1) of the Federal Rules of Criminal Procedure authorizing his counsel to issue the Subpoena to the law firm of Fenwick & West LLP ("Fenwick") directing Fenwick to produce these same documents to the defense. (Dkt 150) Substantially for the reasons set forth in the government's opposition brief (Dkt 156), the defendant's motion is denied. Neither Fenwick nor the FTX Debtors1 are part of the "prosecution team," and the government has no obligation to produce materials that are not within its possession, custody, or control. Furthermore, the defendant's proposed subpoena, if enforced, would serve as a fishing expedition and does not meet the specificity, relevance, and admissibility requirements set forth in United States v. Nixon, 418 U.S. 683 (1974). The FTX Debtors' motion for a protective order (Dkt 163) is denied as moot. The clerk is directed to close Dkts 150 and 163. (Signed by Judge Lewis A. Kaplan on 6/23/2023) (ap) (Entered: 06/23/2023) |
| 06/27/2023 | 167 | MEMORANDUM OPINION as to Samuel Bankman-Fried is charged in a thirteen-count superseding indictment with perpetrating an alleged multi-billion-dollar fraud relating to his operation of cryptocurrency companies that he founded and controlled. The Court has considered all of the arguments of the parties. To the extent not addressed herein, the arguments are either moot or without merit. For the foregoing reasons, the defendants pretrial motions (Dkt 136), to the extent not previously ruled upon, are denied. The Clerk is directed to close Dkt 136. (Signed by Judge Lewis A. Kaplan on 6/27/2023)(jw) (Entered: 06/27/2023) |
| 06/27/2023 | 168 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 6/15/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Amy Walker, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/18/2023. Redacted Transcript Deadline set for 7/28/2023. Release of Transcript Restriction set for 9/25/2023. (McGuirk, Kelly) (Entered: 06/27/2023) |
| 06/27/2023 | 169 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 6/15/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/27/2023) |
| 06/29/2023 | 170 | MEMORANDUM OPINION as to Samuel Bankman-Fried. The Court has considered all of the arguments of the parties. To the extent not addressed herein, the arguments are either moot or without merit. For the foregoing reasons, the defendants pretrial motions |

| | | |
|---|---|---|
| | | (Dkt 136), to the extent not previously ruled upon, are denied. The Clerk is directed to close Dkt 136. (Signed by Judge Lewis A. Kaplan on 6/29/2023) (See ORDER set forth) (ap) (Entered: 06/29/2023) |
| 06/29/2023 | 171 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated June 29, 2023 re: Proposed Schedule for Trial Filings and Disclosures Document filed by USA. (Roos, Nicolas) (Entered: 06/29/2023) |
| 06/29/2023 | 172 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated June 29, 2023 re: Pretrial Disclosure Schedule (Everdell, Christian) (Entered: 06/29/2023) |
| 07/01/2023 | 173 | ORDER as to Samuel Bankman-Fried. Follows oral order of 7/1/2023.. (Signed by Judge Lewis A. Kaplan on 7/1/2023)(Kaplan, Lewis) (Entered: 07/01/2023) |
| 07/13/2023 | 174 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated July 13, 2023 re: Household Guests . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Exhibit A (Filed Under Seal))(Everdell, Christian) (Entered: 07/13/2023) |
| 07/14/2023 | 175 | NOTICE of Application to unseal list filed July 13, 2023 as to Samuel Bankman-Fried (Lee, Matthew) (Entered: 07/14/2023) |
| 07/20/2023 | 176 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Danielle R. Sassoon dated July 20, 2023 re: extrajudicial statements Document filed by USA. (Sassoon, Danielle) (Entered: 07/20/2023) |
| 07/21/2023 | 177 | ORDER as to Samuel Bankman-Fried: The Court will hear argument on the government's letter application, dated July 20, 2023, on July 26, 2023 at 2 p.m. The defendant shall be present. At or before 11 a.m. on July 24, 2023, the government shall file the proposed order that it asks the Court to enter. The parties shall be prepared on July 26 to address, among other things, the adequacy and continuation of the current bail conditions. ( Oral Argument set for 7/26/2023 at 02:00 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan.). (Signed by Judge Lewis A. Kaplan on 7/21/2023)(Mohan, Andrew) (Entered: 07/21/2023) |
| 07/23/2023 | 178 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated July 22, 2023 re: Proposed Order (Cohen, Mark) (Entered: 07/23/2023) |
| 07/24/2023 | 179 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Danielle R. Sassoon dated July 24, 2023 re: proposed order re extrajudicial statements Document filed by USA. (Attachments: # 1 Proposed Order governing extrajudicial statements)(Sassoon, Danielle) (Entered: 07/24/2023) |
| 07/26/2023 | 180 | TEMPORARY ORDER GOVERNING EXTRAJUDICIAL STATEMENTS as to Samuel Bankman-Fried. SO ORDERED: (Signed by Judge Lewis A. Kaplan on 7/26/2023) (bw) (Entered: 07/26/2023) |
| 07/26/2023 | 181 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thane Rehn dated July 26, 2023 re: Status of Unlawful Campaign Contributions Count Document filed by USA. (Rehn, Nathan) (Entered: 07/26/2023) |
| 07/26/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Oral Argument as to Samuel Bankman-Fried held on 7/26/2023. Oral argument regarding Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Mark S. Cohen and Christian R. Everdell. AUSAs Nathan M. Rehn, Danielle R. Sassoon, Nicolas Roos, Samuel Raymond, and Danielle Kudla, present. Attorney for FTX Debtors Nicole Friedlander present. Pretrial Services Officer Josh Rothman present. Government's letter due by 7/28/2023; defense letter due by 8/1/2023; |

# A-46

| | | |
|---|---|---|
| | | and Government reply due by 8/3/2023. Defendant remained released on bail. (Motions due by 7/28/2023.. Responses due by 8/1/2023. Replies due by 8/3/2023) (Court Reporter Andrew Walker) (ap) (Entered: 07/28/2023) |
| 07/27/2023 | 182 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 7/27/23 re: Request to Seal Documents . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 07/27/2023) |
| 07/27/2023 | 183 | NOTICE of Opposition to sealing in full of documents defendant gave to NYT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh (Lee, Matthew) (Entered: 07/27/2023) |
| 07/28/2023 | 184 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from AUSA Danielle R. Sassoon dated July 28, 2023 re: motion for an order of detention Document filed by USA. (Sassoon, Danielle) (Entered: 07/28/2023) |
| 08/01/2023 | 185 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated August 1, 2023 re: Opposition to Government's Letter Motion for an Order of Detention . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Affidavit of Laurence H. Tribe)(Cohen, Mark) (Entered: 08/01/2023) |
| 08/01/2023 | 186 | DECLARATION of Christian R. Everdell in Support as to Samuel Bankman-Fried re: 185 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated August 1, 2023 re: Opposition to Government's Letter Motion for an Order of Detention .. (Attachments: # 1 Exhibit A: Signal messages dated November 10 and 13, 2022, # 2 Exhibit B: Email correspondence dated November 13, 2022 through December 12, 2022, # 3 Exhibit C: Email correspondence and Signal messages dated January 15, 2023, # 4 Exhibit D: Memo re: Unsafe Working Conditions at MDC Brooklyn dated June 23, 2023) (Everdell, Christian) (Entered: 08/01/2023) |
| 08/02/2023 | 187 | LETTER from the New York Times addressed to Judge Lewis A. Kaplan from David McCraw dated 8/2/2023 re: Dear Judge Kaplan: I write on behalf of The New York Times Company (The Times) concerning the Courts current interim order limiting what trial participants can say to journalists and its consideration of a further restraining order. (See Government Letter, July 20, 2023, Dkt. No. 176.) We believe that any such order must follow the standards set out in two provisions of S.D.N.Y. Local Criminal Rule 23.1 in order to adequately protect the public's First Amendment right to receive information about a financial scandal that stripped billions of dollars from the economy and harmed innumerable members of the public. (Mohan, Andrew) Modified on 8/3/2023 (Mohan, Andrew). (Entered: 08/03/2023) |
| 08/03/2023 | 188 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from AUSA Danielle R. Sassoon dated August 3, 2023 re: reply in support of detention Document filed by USA. (Sassoon, Danielle) (Entered: 08/03/2023) |
| 08/04/2023 | 189 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 7/26/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Amy Walker, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/25/2023. Redacted Transcript Deadline set for 9/5/2023. Release of Transcript Restriction set for 11/2/2023. (McGuirk, Kelly) (Entered: 08/04/2023) |
| 08/04/2023 | 190 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 7/26/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

| | | |
|---|---|---|
| | | remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 08/04/2023) |
| 08/04/2023 | 191 | LETTER by Nanette Burnstein and Propagate Content LLC as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Matthew A. Leish dated 8/3/2023 re: I write on behalf of documentary filmmaker Nanette Burstein and production company Propagate Content LLC (Propagate) to respectfully object to the Temporary Order Governing Extrajudicial Statements entered by the Court in this proceeding (Docket No. 180) and to the potential entry of a permanent restraining order. The First Amendment standards applicable to gag orders on trial participants, as well as the applicable standards under Local Criminal Rule 23.1, have been fully set out by counsel for the New York Times in their August 1, 2023 letter (Docket No. 187), and Propagate and Burstein join in the Times arguments. The purpose of this letter is to address several additional points of law and to explain the particular impact that the Temporary Order is having, and will continue to have, on the First Amendment rights of Burstein and Propagate in particular. (Mohan, Andrew) (Entered: 08/04/2023) |
| 08/04/2023 | 192 | LETTER by Reporters Committee for Freedom of the Press as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Kattie Townsend dated 8/3/2023 re: The Reporters Committee for Freedom of the Press (the Reporters Committee) writes with respect to the Temporary Order Governing Extrajudicial Statements entered by the Court in the above-referenced case on July 26, 2023. (Dkt. No. 180 (the Temporary Order)). (Mohan, Andrew) (Entered: 08/04/2023) |
| 08/04/2023 | 193 | ORDER as to Samuel Bankman-Fried. The Court will hear further argument on the government's application to revoke defendant's bail or for alternative at 2 p.m. on August 11, 2023. The defendant shall be present. (Signed by Judge Lewis A. Kaplan on 8/4/2023) (Mohan, Andrew) (Entered: 08/04/2023) |
| 08/04/2023 | | Bond Hearing as to Samuel Bankman-Fried: Bond Hearing set for 8/11/2023 at 02:00 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 08/04/2023) |
| 08/07/2023 | 194 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated August 7, 2023 re: Expert Notice . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 08/07/2023) |
| 08/08/2023 | 195 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from AUSA Danielle R. Sassoon dated August 8, 2023 re: trial indictment Document filed by USA. (Sassoon, Danielle) (Entered: 08/08/2023) |
| 08/08/2023 | 196 | MEMO ENDORSEMENT as to Samuel Bankman-Fried (1) granting 194 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated August 7, 2023 re: Expert Notice. ENDORSEMENT: Granted. (Signed by Judge Lewis A. Kaplan on 8/8/2023) (ap) (Entered: 08/08/2023) |
| 08/08/2023 | 197 | NOTICE OF ATTORNEY APPEARANCE: David Lisner appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Lisner, David) (Entered: 08/08/2023) |
| 08/11/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan:Bond Revocation Hearing as to Samuel Bankman-Fried held on 8/11/2023. Defendant present with attorneys Mark Stewart Cohen and Christian R. Everdell. AUSAs Danielle R. Sassoon, Nicholas Roos, Samuel Raymond, and Diane Kudla present. Pretrial Services Officer John Moscato present. Bond as to Samuel Bankman-Fried (1) Revoked and defendant ordered remanded. Defendant moved to stay the Court's ruling on pending appeal, which was denied by the Court. (Court Reporter Eve Giniger) (Mohan, Andrew) (Entered: 08/11/2023) |

| 08/11/2023 | 198 | ORDER as to Samuel Bankman-Fried. Follows oral order of 8/11/2023. The defendant is ordered remanded into the custody of the U.S. Marshal. (Signed by Judge Lewis A. Kaplan on 8/11/2023)(Mohan, Andrew) (Entered: 08/11/2023) |
|---|---|---|
| 08/11/2023 | 199 | NOTICE OF APPEAL (Interlocutory) by Samuel Bankman-Fried from 198 Order. Filing fee $ 505.00, receipt number 19794. (nd) (Entered: 08/11/2023) |
| 08/11/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Samuel Bankman-Fried to US Court of Appeals re: 199 Notice of Appeal - Interlocutory. (nd) (Entered: 08/11/2023) |
| 08/11/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Samuel Bankman-Fried re: 199 Notice of Appeal - Interlocutory were transmitted to the U.S. Court of Appeals. (nd) (Entered: 08/11/2023) |
| 08/11/2023 | 200 | ORDER as to Samuel Bankman-Fried. Follows oral order of 8/11/2023. The order of release of the defendant, as modified, after a hearing, is hereby revoked pursuant to 18 U.S.C. § 3148 and the defendant remanded because the Court has found, for reasons stated on the record in open court, that there is probable cause to believe that the defendant has committed the federal crime of attempted witness tampering in violation of 18 U.S.C. § 1512 while on release, and based on the factors set forth in 18 U.S.C. § 3142(g), there is no condition or combination of conditions of release that will assure that the defendant will not pose a danger to other persons or the safety of the community. (Signed by Judge Lewis A. Kaplan on 8/11/2023)(Mohan, Andrew) (Entered: 08/11/2023) |
| 08/11/2023 | | First Supplemental ROA Sent to USCA (Electronic File). Certified Supplemental Indexed record on Appeal Electronic Files as to Samuel Bankman-Fried re: 200 Order were transmitted to the U.S. Court of Appeals. (nd) (Entered: 08/11/2023) |
| 08/14/2023 | 201 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 8/14/23 re: Access to Medication . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Appendix A - Letter from George K. Lerner, M.D., # 2 Appendix B - Proposed Order)(Everdell, Christian) (Entered: 08/14/2023) |
| 08/14/2023 | 202 | (S6) SUPERSEDING INDICTMENT FILED as to Samuel Bankman-Fried (1) count(s) 1sss, 2sss, 3sss, 4sss, 5sss, 6sss, 7sss. (jm) Modified on 8/22/2023 (jm). (Entered: 08/14/2023) |
| 08/14/2023 | 203 | ORDER 201 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 8/14/23 re: Access to Medication as to Samuel Bankman-Fried. IT IS HEREBY ORDERED that the Metropolitan Detention Center ensure the above-noted medications and dosages are provided to the defendant for the duration of his detention (Signed by Judge Lewis A. Kaplan on 8/14/2023) (jw) (Entered: 08/14/2023) |
| 08/14/2023 | 204 | MOTION in Limine . Document filed by USA as to Samuel Bankman-Fried. (Sassoon, Danielle) (Entered: 08/14/2023) |
| 08/14/2023 | 205 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan Document filed by USA. (Raymond, Samuel) (Entered: 08/14/2023) |
| 08/14/2023 | 206 | MOTION in Limine *by Samuel Bankman-Fried*. Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 08/14/2023) |
| 08/14/2023 | 207 | MEMORANDUM in Support by Samuel Bankman-Fried re 206 MOTION in Limine *by Samuel Bankman-Fried*.. (Cohen, Mark) (Entered: 08/14/2023) |
| 08/14/2023 | 208 | DECLARATION of Christian R. Everdell in Support as to Samuel Bankman-Fried re: 206 MOTION in Limine *by Samuel Bankman-Fried*.. (Attachments: # 1 Exhibit A to Everdell Declaration, # 2 Exhibit B to Everdell Declaration, # 3 Exhibit C to Everdell |

**A-49**

| | | Declaration, # 4 Exhibit D to Everdell Declaration)(Everdell, Christian) (Entered: 08/14/2023) |
|---|---|---|
| 08/18/2023 | 209 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 08/18/2023 re: Discovery Access Document filed by USA. (Kudla, Danielle) (Entered: 08/18/2023) |
| 08/18/2023 | 210 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 8/18/23 re: Access to Discovery . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 08/18/2023) |
| 08/18/2023 | 211 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Nicolas Roos dated August 18, 2023 re: Advice-of-Counsel Defense Disclosure . Document filed by USA as to Samuel Bankman-Fried. (Roos, Nicolas) (Entered: 08/18/2023) |
| 08/21/2023 | 212 | ORDER as to Samuel Bankman-Fried: Any response to the government's August 18, 2023 application regarding the advice of counsel defense shall be filed no later than August 23, 2023 at 10 a.m. (Responses due by 8/23/2023) (Signed by Judge Lewis A. Kaplan on 8/21/2023) (ap) (Entered: 08/21/2023) |
| 08/21/2023 | 213 | ORDER as to Samuel Bankman-Fried: Insofar as the defendant has sought relief for August 22, see Dkt 210, the request is granted to the extent that the Marshall shall make the defendant available to meet with his counsel, in the Marshal's cell block attorney room, from approximately 8:30 a.m. until approximately 3 p.m. Counsel may bring one Internet-enabled laptop and one WiFi device into the Courthouse for the purpose of the meeting. The balance of the request for August 22 is denied. (Signed by Judge Lewis A. Kaplan on 8/21/2023) (ap) (Entered: 08/21/2023) |
| 08/21/2023 | 214 | Request To Charge by USA as to Samuel Bankman-Fried. (Roos, Nicolas) (Entered: 08/21/2023) |
| 08/21/2023 | 215 | Request To Charge by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 08/21/2023) |
| 08/22/2023 | | Minute Entry for proceedings held before Magistrate Judge Sarah Netburn: Deft. appears with counsels Mark Cohen and Christian Everdell; AUSAs Danielle Kudla and Danielle Sassoon are also present. Arraignment as to Samuel Bankman-Fried (1) Count 1sss,2sss,3sss,4sss,6sss,7sssSamuel Bankman-Fried (1) Count 1sss,2sss,3sss,4sss,5sss,6sss,7sss held on 8/22/2023., Plea entered by Samuel Bankman-Fried (1) Count 1sss,2sss,3sss,4sss,6sss,7sssSamuel Bankman-Fried (1) Count 1sss,2sss,3sss,4sss,5sss,6sss,7sss Not Guilty. Speedy Trial Time excluded until 10/3/23. (jm) (Entered: 08/22/2023) |
| 08/22/2023 | 216 | ORDER denying as moot 185 LETTER MOTION opposiition to govt motion re: 185 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated August 1, 2023 re: Opposition to Government's Letter Motion for an Order of Detention . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 8/22/2023) (Kaplan, Lewis) (Entered: 08/22/2023) |
| 08/22/2023 | 217 | ORDER denying as moot 174 LETTER MOTION modification of bail conditions re household guests re: 174 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated July 13, 2023 re: Household Guests . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 8/22/2023) (Kaplan, Lewis) (Entered: 08/22/2023) |
| 08/22/2023 | 218 | ORDER granting 182 LETTER MOTION sealing certain documents re: 182 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 7/27/23 re: |

# A-50

| | | |
|---|---|---|
| | | Request to Seal Documents . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 8/22/2023) (Kaplan, Lewis) (Entered: 08/22/2023) |
| 08/22/2023 | 219 | ORDER denying as moot 72 LETTER MOTION bail condition modification re: 72 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated February 15, 2023 re: bail conditions . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 8/22/2023) (Kaplan, Lewis) (Entered: 08/22/2023) |
| 08/22/2023 | 220 | ORDER denying as moot 73 LETTER MOTION bail condition modifications re: 73 LETTER MOTION addressed to Judge Lewis A. Kaplan from Nicolas Roos dated February 15, 2023 re: Modification of Bail Conditions . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 8/22/2023) (Kaplan, Lewis) (Entered: 08/22/2023) |
| 08/22/2023 | 221 | ORDER denying as moot 105 LETTER MOTION bail condition modifications etc. re: 105 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated March 8, 2023 re: Bail Conditions, Database Access, and Motions Schedule . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 8/22/2023) (Kaplan, Lewis) (Entered: 08/22/2023) |
| 08/23/2023 | 222 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated August 23, 2023 re: Advice of Counsel Defense (Cohen, Mark) (Entered: 08/23/2023) |
| 08/23/2023 | 223 | INTERIM ORDER RE DEFENDANT'SACCESS TO DISCOVERY MATERIALS as to Samuel Bankman-Fried. Pending the Court's resolution of the dispute between the government and the defendant concerning defendant's access to discovery materials in view of his detention 1 and unless otherwise ordered, the government and the USMS shall make available to the defendant, if he elects to avail himself of the government's offer set out in the last three paragraphs of the government's letter of August 18, 2023, the accommodations there set forth commencing August 21, 2023. To whatever extent the defendant elects to meet with counsel in the courthouse cell block, he shall give notice to the government and the USMS at least 48 hours in advance of any requested meeting date. (Signed by Judge Lewis A. Kaplan on 8/23/2023) (ap) (Entered: 08/23/2023) |
| 08/23/2023 | | **\*\*\*DELETED DOCUMENT. Deleted document number 224. "TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 8/11/2023 before Judge Lewis A. Kaplan," as to Samuel Bankman-Fried. The document was incorrectly filed in this case. (bw) (Entered: 08/23/2023)** |
| 08/23/2023 | | **\*\*\*DELETED DOCUMENT. Deleted document number 225. " NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 8/11/2023 has been filed by the court reporter/transcriber in the above-captioned matter," as to Samuel Bankman-Fried. The document was incorrectly filed in this case. (bw)** (Entered: 08/23/2023) |
| 08/23/2023 | 224 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 8/11/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Eve Giniger, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/13/2023. Redacted Transcript Deadline set for 9/25/2023. Release of Transcript Restriction set for 11/21/2023. (McGuirk, Kelly) (Entered: 08/23/2023) |
| 08/23/2023 | 225 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 8/11/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to |

# A-51

| | | |
|---|---|---|
| | | Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 08/23/2023) |
| 08/24/2023 | 226 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 8/24/23 re: Extension of Time . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 08/24/2023) |
| 08/25/2023 | 227 | MEMO ENDORSEMENT as to Samuel Bankman-Fried (1) granting 226 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 8/24/23 re: Extension of Time. ENDORSEMENT: Granted. (Signed by Judge Lewis A. Kaplan on 8/25/2023) (ap) (Entered: 08/25/2023) |
| 08/25/2023 | | Set/Reset Deadlines as to Samuel Bankman-Fried: Responses due by 9/1/2023. (ap) (Entered: 08/25/2023) |
| 08/25/2023 | 228 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 8/25/23 re: Access to Discovery . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 08/25/2023) |
| 08/26/2023 | 229 | ORDER as to Samuel Bankman-Fried.. (Signed by Judge Lewis A. Kaplan on 8/26/2023) (Kaplan, Lewis) (Entered: 08/26/2023) |
| 08/26/2023 | 230 | ORDER as to Samuel Bankman-Fried. Follows oral order of 8/26/2023.. (Signed by Judge Lewis A. Kaplan on 8/26/2023)(Kaplan, Lewis) (Entered: 08/26/2023) |
| 08/28/2023 | 231 | ORDER as to Samuel Bankman-Fried. Oral Argument is set for August 30, 2023 at 1:00 p.m. via video conference before the undersigned. Counsel of record have been sent an email invite to participate by video. Public, press, and non-participating attorneys may dial in on the Court's AT&T conference line, 1-888-363-4749 with conference ID 7664205#, in order to listen to audio of the hearing. Participants and listeners are advised that any recording or rebroadcasting of the hearing, in whole or in part, is prohibited by Court rules. All AT&T callers will be muted upon joining. SO ORDERED. ( Oral Argument set for 8/30/2023 at 01:00 PM before Judge Lewis A. Kaplan. ) (Signed by Judge Lewis A. Kaplan on 8/28/2023)(bw) (Entered: 08/28/2023) |
| 08/28/2023 | 232 | MOTION to Exclude *Government Expert Peter Easton*. Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 08/28/2023) |
| 08/28/2023 | 233 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated August 28, 2023 re: Discovery . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 08/28/2023) |
| 08/28/2023 | 234 | MEMORANDUM in Support by Samuel Bankman-Fried re 232 MOTION to Exclude *Government Expert Peter Easton.. (Memorandum of Law in Support of Samuel Bankman-Fried's Motion to Exclude Government Expert Peter Easton)* (Cohen, Mark) (Entered: 08/28/2023) |
| 08/28/2023 | 235 | DECLARATION of David F. Lisner in Support as to Samuel Bankman-Fried re: 232 MOTION to Exclude *Government Expert Peter Easton*.. (Attachments: # 1 Exhibit 1 to Lisner Declaration)(Cohen, Mark) (Entered: 08/28/2023) |

# A-52

| | | |
|---|---|---|
| 08/28/2023 | 236 | MOTION to Exclude *the Testimony of the Defendant's Expert Witnesses*. Document filed by USA as to Samuel Bankman-Fried. (Attachments: # 1 Exhibit A - Expert Notice of Lawrence Akka, # 2 Exhibit B - Expert Notice of Thomas Bishop, # 3 Exhibit C - Expert Notice of Brian Kim, # 4 Exhibit D - Expert Notice of Joseph Pimbley, # 5 Exhibit E - Expert Notice of Bradley Smith, # 6 Exhibit F - Expert Notice of Peter Vinella, # 7 Exhibit G - Expert Notice of Andrew Di Wu, # 8 Exhibit H - Defendants Rebuttal Notice, # 9 Exhibit I - Expert Notice of Peter Easton)(Roos, Nicolas) (Entered: 08/28/2023) |
| 08/29/2023 | 237 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thane Rehn dated August 29, 2023 re: Defendant's Motion in Limine Regarding Discovery Document filed by USA. (Rehn, Nathan) (Entered: 08/29/2023) |
| 08/29/2023 | 238 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 08/29/2023 re: Discovery Access Document filed by USA. (Kudla, Danielle) (Entered: 08/29/2023) |
| 08/29/2023 | 239 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated August 29, 2023 re: Advice of Counsel Notice Document filed by USA. (Roos, Nicolas) (Entered: 08/29/2023) |
| 08/30/2023 | 240 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated August 30, 2023 re: Discovery and Advice of Counsel Defense (Cohen, Mark) (Entered: 08/30/2023) |
| 08/30/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Oral Argument as to Samuel Bankman-Fried held on 8/30/2023. Attorneys Mark S. Cohen and Christian R. Everdell present for Defendant Samuel Bankman-Fried. AUSAs Nathan M. Rehn, Danielle R. Sassoon, Nicolas Roos, Samuel Raymond, and Danielle Kudla, present (Defendant not in attendance). Court Reporter Alena Lynch present. Oral Argument held (via Teams video conference). Joint letter regarding advice-of-counsel defense due September 1, 2023. Joint letter regarding access to discovery due September 5, 2023. (Court Reporter Alena Lynch) (ap) (Entered: 08/31/2023) |
| 08/31/2023 | 241 | ORDER as to Samuel Bankman-Fried. For the reasons stated on the record in open court, the defendant's Motion in Limine No. 1 (set forth in Dkt 206) is denied. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 8/31/2023)(bw) (Entered: 08/31/2023) |
| 09/01/2023 | 242 | INTERLOCUTORY SALE ORDER as to Samuel Bankman-Fried.... NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT: 1. The proposed SPA is an appropriate, beneficial, commercially feasible interlocutory sale of the Robinhood Shares, and is in the best interests of the relevant stakeholders. 2. If the proposed SPA fails, the USMS or their designees are authorized to conduct an interlocutory sale of the Robinhood Shares in a commercially feasible manner and with reasonable notice to FTX, Emergent, BlockFi, and Bankman-Fried. Among the means of such an interlocutory sale, the USMS or their designees are authorized to pursue a private sale of the Robinhood Shares. 3. The net proceeds realized from the sale of the Robinhood Shares, and any and all income or interest accrued thereon, shall be the substitute res for the Robinhood Shares. The term "net proceeds" shall mean the net amount realized from the interlocutory sale, after the payment of all costs and disbursements related to the sale of the Robinhood Shares, including any costs incurred by the Federal Bureau of Investigation, USMS, or their designees in connection with the sale. The net proceeds shall be deposited and maintained in the Seized Asset Deposit Fund pending resolution of the instant case and any related forfeiture proceedings, or further order from the Court. 4. In any forfeiture proceedings, the net proceeds from the sale of the Robinhood Shares (the "Substitute Res") shall be treated in all respects as |

| | | |
|---|---|---|
| | | though they are the Robinhood Shares, with all claims, interests, and defenses applicable to the Robinhood Shares or claims by third parties, to apply instead to the Substitute Res and any and all claims to, or secured by, or interests in, the Robinhood Shares shall be paid, if at all, from the Substitute Res. Upon consummation of any transfer of the Robinhood Shares in accordance with this Order, the title to the Robinhood Shares shall transfer free and clear of any claims, interests, liens, and encumbrances. 5. The Government may, in its sole discretion, reject any offer to purchase the Robinhood Shares should the Government: (i) determine that the offer is made by, on behalf of, or in aid of any person involved in or associated with the criminal activity alleged as the basis for forfeiture in this matter; or (ii) deem that the proposed sale and purchase does not constitute an arms-length transaction. 6. The Government shall provide notice of consummation of the transfer of the Robinhood Shares in accordance with this Order within two business days of such transfer, and upon such notice, this filing will be unsealed. 7. This Court shall have exclusive jurisdiction over the interpretation and enforcement of this Order for the Interlocutory Sale of the Robinhood Shares. This Court shall further retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this Order. SO ORDERED: (Signed by Judge Lewis A. Kaplan on 8/28/2023) (bw) (Entered: 09/01/2023) |
| 09/01/2023 | 243 | JOINT LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated September 1, 2023 re: Advice of Counsel Notice Document filed by USA. (Roos, Nicolas) (Entered: 09/01/2023) |
| 09/01/2023 | 244 | NOTICE OF ATTORNEY APPEARANCE: Sharon L Barbour appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Barbour, Sharon) (Entered: 09/01/2023) |
| 09/01/2023 | 245 | MEMORANDUM in Opposition by USA as to Samuel Bankman-Fried re 206 MOTION in Limine *by Samuel Bankman-Fried*.. (Rehn, Nathan) (Entered: 09/01/2023) |
| 09/01/2023 | 246 | MEMORANDUM in Opposition by Samuel Bankman-Fried re 204 MOTION in Limine .. *(Samuel Bankman-Fried's Memorandum of Law in Opposition to Government's Motions in Limine)* (Cohen, Mark) (Entered: 09/01/2023) |
| 09/01/2023 | 247 | DECLARATION of Christian R. Everdell in Support as to Samuel Bankman-Fried re: 206 MOTION in Limine *by Samuel Bankman-Fried*.. (Attachments: # 1 Exhibit A to Everdell Declaration, # 2 Exhibit B to Everdell Declaration)(Everdell, Christian) (Entered: 09/01/2023) |
| 09/05/2023 | 248 | MEMO ENDORSEMENT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh on re: 211 filed by USA...ENDORSEMENT...The parties shall compy with this proposes schedule. The Clerk shall terminate Dkt 211 as moot (Signed by Judge Lewis A. Kaplan on 9/3/23)(jw) (Entered: 09/05/2023) |
| 09/05/2023 | 249 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 8/30/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Alena Lynch, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/26/2023. Redacted Transcript Deadline set for 10/6/2023. Release of Transcript Restriction set for 12/4/2023. (McGuirk, Kelly) (Entered: 09/05/2023) |
| 09/05/2023 | 250 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 8/30/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

# A-54

| | | |
|---|---|---|
| | | remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 09/05/2023) |
| 09/05/2023 | 251 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Arraignment held on 8/22/2023 before Magistrate Judge Sarah Netburn. Court Reporter/Transcriber: Doug Colavito, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/26/2023. Redacted Transcript Deadline set for 10/6/2023. Release of Transcript Restriction set for 12/4/2023. (McGuirk, Kelly) (Entered: 09/05/2023) |
| 09/05/2023 | 252 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Arraignment proceeding held on 8/22/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 09/05/2023) |
| 09/05/2023 | 253 | JOINT LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 09/05/2023 re: Detention Discovery Access Document filed by USA. (Kudla, Danielle) (Entered: 09/05/2023) |
| 09/05/2023 | 254 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 5, 2023 re: Response to Court's Joint Discovery Access Report Request (Cohen, Mark) (Entered: 09/05/2023) |
| 09/06/2023 | 255 | ORDER as to Samuel Bankman-Fried... Accordingly, the defendant shall advise the Court by letter no later than September 8 whether defendant claims that any factual statement contained in the government's September 5, 2023 letter is inaccurate in any way, shall identify each such statement, and shall state the basis for each such claim. So Ordered. (Signed by Judge Lewis A. Kaplan on 9/6/23)(jbo) (Entered: 09/06/2023) |
| 09/06/2023 | 256 | ORDER of USCA (Certified Copy) as to Samuel Bankman-Fried re: 199 Notice of Appeal - Interlocutory. USCA Case Number 23-6914. Appellant Samuel Bankman-Fried moves for pretrial release and for his immediate release pending disposition of this appeal. The Government opposes the motion. IT IS HEREBY ORDERED that the motion for pretrial release is REFERRED to the next available three-judge panel. To the extent Appellant requests his immediate release pending decision by the three-judge panel, that request is DENIED. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit, Clerk USCA. Certified: 09/06/2023. (nd) (Entered: 09/06/2023) |
| 09/07/2023 | 257 | SEALED DOCUMENT placed in vault. (jus) (Entered: 09/07/2023) |
| 09/07/2023 | 258 | SEALED DOCUMENT placed in vault. (jus) (Entered: 09/07/2023) |
| 09/07/2023 | 259 | SEALED DOCUMENT placed in vault. (jus) (Entered: 09/07/2023) |
| 09/07/2023 | 260 | NOTICE OF ATTORNEY APPEARANCE: Drew Dean appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Dean, Drew) (Entered: 09/07/2023) |
| 09/07/2023 | 261 | NOTICE OF ATTORNEY APPEARANCE: Alexandra Theobald appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Theobald, Alexandra) (Entered: 09/07/2023) |
| 09/07/2023 | 262 | S(7) INFORMATION (Felony) filed as to Ryan Salame (5) count(s) 1, 2. (jm) (Entered: 09/07/2023) |

**A-55**

| 09/07/2023 | | Arrest/Surrender of Ryan Salame. (jm) (Entered: 09/07/2023) |
|---|---|---|
| 09/07/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Defendant appears with counsels Jason Linder and Gina Parlovecchio; AUSAs Sassoon, Nicolas Roos, Samuel Raymond and Danielle Kudla PTSO Christina Venablle are also present. Pro Hac Vice order admitting attorney Jason Linder was granted. The Government filed, in open Court the S(7) Superseding Information and Waiver of Indictment. The Court gave an oral Rule 5(f) warning to the Government. Initial Appearance as to Ryan Salame held on 9/7/2023., Plea entered by Ryan Salame (5) Guilty as to Count 1,2., as to Ryan Salame A written bail order was issued. The Defense submission is due one (1) week ahead of sentencing and the Governments is due three (3) weeks ahead of sentencing. Defendant released on bond. ( Offense Conduct to be submitted to Probation on 11/22/2023., Sentencing set for 3/6/2024 at 03:00 PM before Judge Lewis A. Kaplan.) (Court Reporter Pamela Utter) (jm) (Entered: 09/07/2023) |
| 09/07/2023 | 263 | ORDER Setting Terms of Release as to Ryan Salame. The Defendant shall be released as follows: $1,000,000 PRB cosigned by two financially responsible persons; surrender of Defendant's passport and other travel documents to PTS; Defendant shall make no new applications for a passport or other travel documents; supervision as directed by PTS in District of residence; Defendant shall not posses firearm/destructive device/other weapon. The Defendant may be released on his own signature with cosigners to sign the bond no later than September 14, 2023. (Signed by Judge Lewis A. Kaplan on 9/7/23)(jm) (Entered: 09/07/2023) |
| 09/07/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan:Arraignment held on 9/7/2023. Arraignment regarding defendant Ryan Salame (05) before the Hon. Lewis A. Kaplan held.Defendant Ryan Saleme present with attorneys Jason Linder and Gina Parlovecchio. AUSAsDanielle R. Sassoon, Nicolas Roos, Samuel Raymond, and Danielle Kudla, present. Pretrial ServicesOfficer Christina Venable present. Court reporter Pamela Utter present. Defendant entered a plea of Guilty. (Court Reporter pam Utter) (jm) (Entered: 09/07/2023) |
| 09/07/2023 | 264 | Brady ORDER as to Ryan Salame. (Signed by Judge Lewis A. Kaplan on 9/7/23)(jm) (Entered: 09/07/2023) |
| 09/07/2023 | | Attorney update in case as to Ryan Salame. Attorney Gina Marie Parlovecchio for Ryan Salame added.. (jm) (Entered: 09/07/2023) |
| 09/07/2023 | 265 | WAIVER OF INDICTMENT by Ryan Salame. (jm) (Entered: 09/07/2023) |
| 09/07/2023 | 266 | MOTION FOR ADMISSION PRO HAC VICE for Jason Linder to Appear Pro Hac Vice (jw) (Entered: 09/07/2023) |
| 09/07/2023 | 267 | MEMO ENDORSEMENT as to Ryan Salame re: Motion for Admission Pro Hac Vice...ENDORSEMENT...Granted. SO ORDERED (Signed by Judge Lewis A. Kaplan on 9/7/2023)(jw) (Entered: 09/07/2023) |
| 09/07/2023 | 268 | CONSENT PRELIMINARY ORDER FOR FORFEITURE AS TO SUBSTITUTE ASSETS/MONEY JUDGMENT as to Ryan Salame.As a result of the offsens charged in Count two of the Information towhich the Defendant plea guilty, a money judgment in the amount of $1,555,183,143 in U. S. currency. (Signed by Judge Lewis A. Kaplan on 9/7/23)(jm) (Entered: 09/07/2023) |
| 09/07/2023 | 269 | APPEARANCE Bond Entered as to Ryan Salame. $1,000,000 personal recognizance bond; To be co-signed by two financially responsible persons. Additional conditions... (joe) (Main Document 269 replaced on 9/22/2023) (Bonano, Josephine). (Entered: 09/07/2023) |

# A-56

| | | |
|---|---|---|
| 09/07/2023 | 270 | ORDER SETTING TERMS OF RELEASE as to Ryan Salame. It is hereby ordered that, pending trial, the defendant be released on the following conditions, as agreed by the parties: $1,000,000 personal recognizance bond, to be cosigned by two financially responsible persons. Surrender of the defendant's passport and any other travel documents to Pretrial Services. The defendant shall make no new applications for a passport or other travel document. Pretrial supervision as directed by pretrial services in the District of residence. Defendant is not to possess any firearms or destructive devices. The defendant may be released on his own signature, with the cosigners to sign the bond no later than September 14, 2023. (Signed by Judge Lewis A. Kaplan on 9/7/2023)(jw) (Entered: 09/08/2023) |
| 09/08/2023 | 271 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 8, 2023 re: Follow-Up on Discovery Access Letter and Request for Temporary Release . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 09/08/2023) |
| 09/11/2023 | 272 | MEMORANDUM in Opposition by USA as to Samuel Bankman-Fried re 232 MOTION to Exclude *Government Expert Peter Easton*.. (Roos, Nicolas) (Entered: 09/11/2023) |
| 09/11/2023 | 273 | Proposed Voir Dire Questions by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 09/11/2023) |
| 09/11/2023 | 274 | PROPOSED EXAMINATION OF JURORS by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame. (Raymond, Samuel) (Entered: 09/11/2023) |
| 09/11/2023 | 275 | MEMORANDUM in Opposition by Samuel Bankman-Fried re 236 MOTION to Exclude *the Testimony of the Defendant's Expert Witnesses.. (Samuel Bankman-Fried's Memorandum of Law in Opposition to Government's Motions to Exclude Expert Testimony)* (Cohen, Mark) (Entered: 09/11/2023) |
| 09/11/2023 | 276 | DECLARATION of Christian R. Everdell in Opposition as to Samuel Bankman-Fried re: 236 MOTION to Exclude *the Testimony of the Defendant's Expert Witnesses*.. (Attachments: # 1 Exhibit 1 to Everdell Declaration, # 2 Exhibit 2 to Everdell Declaration, # 3 Exhibit 3 to Everdell Declaration, # 4 Exhibit 4 to Everdell Declaration, # 5 Exhibit 5 to Everdell Declaration, # 6 Exhibit 6 to Everdell Declaration, # 7 Exhibit 7 to Everdell Declaration, # 8 Exhibit 8 to Everdell Declaration, # 9 Exhibit 9 to Everdell Declaration, # 10 Exhibit 10 to Everdell Declaration)(Everdell, Christian) (Entered: 09/11/2023) |
| 09/12/2023 | 277 | ORDER denying 233 LETTER MOTION preclude govt use of documents produced after 7/1/2023 re: 233 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated August 28, 2023 re: Discovery . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 9/12/2023) (Kaplan, Lewis) (Entered: 09/12/2023) |
| 09/12/2023 | 278 | MEMO ENDORSEMENT as to Samuel Bankman-Fried (1) denying 271 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 8, 2023 re: Follow-Up on Discovery Access Letter and Request for Temporary Release. ENDORSEMENT: Defendant here seeks to be released from pretrial detention pursuant to 18 U.S.C. 3142(i), implicitly arguing that the Court should find that "such release [is] necessary for preparation of [defendant's] defense" for the trial scheduled to begin on October 3, 2023. The defendant, however, has not provided sufficient basis for such a finding despite his relatively unsupported claims that he does not have unimpeded access to electronically stored discovery and other material (collectively, "ESI") while detained and a variety of other arguments. First, defendant largely ignores the fact that he had extensive access to most of the ESI for 7-1/2 months before his bail was revoked shortly before trial. He was indicted on December 9, 2022. The indictment was unsealed on |

December 13, and defendant was presented in this Court on December 22, 2022 following his extradition from the Bahamas. He immediately was released on bail and permitted to reside in his parents' home in Palo Alto, California, where he had extensive access to telephone and the Internet until his bail was revoked on August 11, 2023. Thus, whatever impediments defendant may have experienced in preparing for trial since August 11, he faced no such impediments during the roughly 7-1/2 months between his presentment to this Court and the revocation of his bail. Apart from the fact that the government - in order to comply with its obligation to produce Rule 16 discovery requested by the defendant promptly after receiving it from third parties - has continued to produce documents I in recent weeks, defendant had months in which to explore the discovery and make whatever other investigations he wished by electronic means. Tr., Aug. 30, 2023 [Dkt 249], at 11 :9-12:6. There has been no persuasive showing that this did not permit him to prepare for trial except to the extent that some of the materials now available had not been produced by the government until recently. Moreover, the recently produced documents are text searchable indexed productions, the majority of which came from the defendant's own Google accounts and therefore were accessible to the defendant long before the government received those ve1y same materials in a late production from Google. Tr., Aug. 30, 2023 [Dkt 249], at 12: 1-12: 16. Second, whatever time pressure defendant now claims to face given the imminence of the trial date and the claimed limitations on his access to ESI while incarcerated largely would be of his own making. When this case first came before the undersigned last January, both the government and the defendant sought a trial in September or October 2023. Tr., Jan. 3, 2023 [Dkt 38], at 8:22-9:3. The Court gave them what they asked for- an October 2 trial date (id. at 10:7-10), subsequently adjusted to October 3. And when the defendant began complaining that his recent incarceration made trial preparation by that date more difficult for him, the Court offered to consider any request by the defendant for a substantial adjournment of the trial to give him more time in which to prepare. Tr., Aug. 30, 2023 [Dkt 249], at 20:9-21 :25. Yet defendant conspicuously failed to request any additional time. Third, the premise of defendant's position here is that he personally is entitled to review and consider every single piece of the discovery in this case, to generate unspecified work product in respect thereof, and so on. But the premise is incorrect. Defendant is represented by a substantial team of extremely able retained lawyers. He proposes to call at trial seven expert witnesses. And no represented defendant, much less a defendant detained pretrial in order to protect the public, has a constitutional or other right to inspect eve1y bit of discove1y. United States v. Ingram, 2021 WL4134828, at *3 (N.D. Cal. Sept. 10, 202l); Mackey v. Hanson, 2019 WL5894306, at *8 (D. Colo. Nov.12, 2019) ("criminal defendants are not accorded an unqualified right to personally review all discovery materials"); United States v. Thompson, 2013 WL 1809659, at* 5-6 (D. Me. Apr. 29, 2013) (there are no cases holding that the Constitution or Rule 11 "require[] that a defendant represented by a lawyer must personally see all the discovery... or even the discove1y that [the defendant] asks to see") (alterations in original); United States v. Faulkner, 2011 WL 3962513, at *4 (N.D. Tex. Sept. 8, 2011); Baker v. McKee, 2009 WL 1269628 (E.D. Mich. Apr. 30, 2009) (criminal defendant has no independent right to own copy of discoverable documents when represented by counsel); see Rodriguez v. United States, 2013 WL 3388223, at *6 (S.D.N.Y. July 8, 2013) ("[d]efense counsel is not required to present a defendant, for his review, with all discovery material that defense counsel acquires"); Standard Criminal Discovery Order, Case No. 3 :20-MC- 52, 2020 WL 1659564, at *4 (W.D.N.C. Mar. 23, 2000) (same). Finally, as the Court suggested in remarks on August 30, 2023 (Tr., Aug. 30, 2023 [Dkt 249], at 20:20-21: 1), and as remains true today, the defendant has not made any detailed showing as to specific materials that he claims he has been unable to access personally and the reasons why any such personal inability actually would impede his defense. Generalities about millions of pages without connecting those dots simply is not persuasive. Defendant's team of lawyers is able to provide defendant with any materials that he would like to review on

# A-58

| | | |
|---|---|---|
| | | hard drives at the MDC. There has been no suggestion that counsel is incapable of running any searches across the Relativity or A WS databases that defendant may desire and then providing him with the results.. For all of these reasons, defendant's repeated Section 3142(i) requests to be released for trial preparation purposes are denied. This ruling does not foreclose a further application on a more factually grounded and persuasive showing. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 9/12/2023) (lnl) (Entered: 09/12/2023) |
| 09/13/2023 | 279 | ORDER as to (22-Cr-673-01) Samuel Bankman-Fried. The start of the jury selection is ordered delayed by one day from October 2 to October 3, 2023 at 9:30 AM. SO ORDERED. ( Jury Selection set for 10/3/2023 at 09:30AM before Judge Lewis A. Kaplan. ) (Signed by Judge Lewis A. Kaplan on 9/13/2023)(bw) (Entered: 09/13/2023) |
| 09/13/2023 | | Terminate Deadlines and Hearings as to Samuel Bankman-Fried (1): Terminated Jury Trial set for 10/2/2023 at 09:30 AM before Judge Lewis A. Kaplan. (bw) (Entered: 09/13/2023) |
| 09/13/2023 | 280 | ORDER denying as moot 228 LETTER MOTION objections re: 228 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 8/25/23 re: Access to Discovery . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 9/13/2023) (Kaplan, Lewis) (Entered: 09/13/2023) |
| 09/15/2023 | 281 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 09/15/2023 re: Courtroom IT Requests Document filed by USA. (Attachments: # 1 Proposed Order Proposed Order)(Kudla, Danielle) (Entered: 09/15/2023) |
| 09/15/2023 | 282 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Danielle R. Sassoon dated September 15, 2023 re: voir dire Document filed by USA. (Sassoon, Danielle) (Entered: 09/15/2023) |
| 09/18/2023 | 283 | TRANSCRIPT of Proceedings as to Ryan Salame re: Plea held on 9/7/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Pamela Utter, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/10/2023. Redacted Transcript Deadline set for 10/19/2023. Release of Transcript Restriction set for 12/18/2023. (McGuirk, Kelly) (Entered: 09/18/2023) |
| 09/18/2023 | 284 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ryan Salame. Notice is hereby given that an official transcript of a Plea proceeding held on 9/7/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 09/18/2023) |
| 09/19/2023 | 285 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle R. Sassoon dated September 19, 2023 re: trial schedule Document filed by USA. (Sassoon, Danielle) (Entered: 09/19/2023) |
| 09/20/2023 | 286 | MEMO ENDORSEMENT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame on 285 LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle R. Sassoon dated September 19, 2023 re: |

# A-59

| | | trial schedule. ENDORSEMENT: Granted. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 9/20/2023) (lnl) (Entered: 09/20/2023) |
|---|---|---|
| 09/21/2023 | 287 | ORDER ON MOTIONS TO EXCLUDE PROPOSED EXPERT TESTIMONY as to Samuel Bankman-Fried: the Government's motions in limine (Dkt 236) are GRANTED to the extent set forth above and otherwise DENIED. The defendant's motion in limine to exclude the testimony of Mr. Easton (Dkt. 232) is DENIED. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 9/21/2023) (lnl) (Entered: 09/21/2023) |
| 09/25/2023 | 288 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 25, 2023 re: Temporary Release . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 09/25/2023) |
| 09/26/2023 | 289 | MEMORANDUM AND ORDER ON IN LIMINE MOTIONS as to Samuel Bankman-Fried. Defendant awaits trial on two substantive counts of wire fraud in violation of 18 U.S.C §§ 1343 and 2, as well as five conspiracy counts alleging conspiracies to commit wire fraud, securities fraud, commodities fraud, and money laundering. The matter is before the Court on motions in limine by the government and by the defendant. (Dkts 204, 206). Accordingly, the government's motion in limine (Dkt 204) is granted in part and denied in part as set forth above. The defendants motion in limine (Dkt 206) is denied, but without prejudice to renewal at trial to the extent indicated above. SO ORDERED (Signed by Judge Lewis A. Kaplan on 9/26/2023) (jw) (Entered: 09/26/2023) |
| 09/26/2023 | 290 | ORDER as to Samuel Bankman-Fried. Any response to the defense's September 25, 2023 application regarding temporary release of the defendant pursuant to 18 U.S.C. § 3142(i) shall be filed no later than September 27, 2023 at 5 p.m. ( Responses due by 9/27/2023) (Signed by Judge Lewis A. Kaplan on 9/26/2023)(jw) (Entered: 09/26/2023) |
| 09/26/2023 | 291 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 9/26/23 re: Business Attire Clothing at Trial . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Appendix A - Proposed Order)(Everdell, Christian) (Entered: 09/26/2023) |
| 09/27/2023 | 292 | MEMO ENDORSEMENT 291 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 9/26/23 re: Business Attire Clothing at Trial as to Samuel Bankman-Fried....ENDORSEMENT...Granted. SO ORDERED (Signed by Judge Lewis A. Kaplan on 9/27/23) (jw) (Entered: 09/27/2023) |
| 09/27/2023 | 293 | ORDER as to Samuel Bankman-Fried. IT IS HEREBY ORDERED that the USMS and/or MDC permit and make appropriate arrangements for the defendant to wear business attire clothing while he is in Courtroom 26A for the duration of his criminal trial commencing October 3, 2023; and IT IS FURTHER ORDERED that the USMS and/or MDC accept and maintain on the defendant's behalf the following articles of clothing to be provided by defense counsel: three (3) suits (consisting of slacks and jackets); four (4) dress shirts; three (3) ties; one ( 1) belt; four (4)pairs of socks; two (2) pairs of shoes; and appropriate undergarments. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 9/27/2023)(jw) (Entered: 09/27/2023) |
| 09/27/2023 | 294 | ORDER as to Samuel Bankman-Fried. IT IS HEREBY ORDERED that the defendant Samuel Bankman-Fried will be permitted the use of an "air-gapped," internet-disabled laptop solely in order to take notes in Courtroom 26A during his trial commencing October 3, 2023, on the conditions noted above. (Signed by Judge Lewis A. Kaplan on 9/27/2023)(jw) (Entered: 09/27/2023) |

## A-60

| | | |
|---|---|---|
| 09/27/2023 | | Set Hearings as to Samuel Bankman-Fried: Oral Argument set for 9/28/2023 at 10:00 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan regarding the defendant's motion for temporary release. The defendant's presence is not required. (Mohan, Andrew) (Entered: 09/27/2023) |
| 09/27/2023 | 295 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 09/27/2023 re: Opp'n to Temporary Release Document filed by USA. (Kudla, Danielle) (Entered: 09/27/2023) |
| 09/28/2023 | 296 | MEMO ENDORSEMENT 288 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 25, 2023 re: Temporary Release as to Samuel Bankman-Fried....ENDORSEMENT...Denied for reasons stated on the record this date. SO ORDERED (Signed by Judge Lewis A. Kaplan on 9/28/2023) (jw) (Entered: 09/28/2023) |
| 09/28/2023 | 297 | Minute Entry for proceedings held before Judge Lewis A. Kaplan:Oral Argument as to Samuel Bankman-Fried held on 9/28/2023 re: 288 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 25, 2023 re: Temporary Release . filed by Samuel Bankman-Fried. Motion denied. Court Exhibit XX - Trial Calendar is attached to this docket entry. (Court Reporter Noah Collin) (Mohan, Andrew) Modified on 9/28/2023 (Mohan, Andrew). (Entered: 09/28/2023) |
| 09/28/2023 | 298 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 28, 2023 re: Immunized Witnesses (Cohen, Mark) (Entered: 09/28/2023) |
| 09/29/2023 | 299 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated September 29, 2023 re: Witness Immunity (Everdell, Christian) (Entered: 09/29/2023) |
| 09/29/2023 | 300 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 29, 2023 re: Voir Dire Objections . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 09/29/2023) |
| 09/30/2023 | 301 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Thane Rehn dated September 30, 2023 re: Motion in Limine re Witness Testimony . Document filed by USA as to Samuel Bankman-Fried. (Rehn, Nathan) (Entered: 09/30/2023) |
| 09/30/2023 | 302 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Thane Rehn dated September 30, 2023 re: Motion in Limine Regarding Remote Testimony . Document filed by USA as to Samuel Bankman-Fried. (Rehn, Nathan) (Entered: 09/30/2023) |
| 10/01/2023 | 303 | MEMORANDUM & OPINION as to Samuel Bankman-Fried.. (Signed by Judge Lewis A. Kaplan on 10/1/2023)(Kaplan, Lewis) (Entered: 10/01/2023) |
| 10/01/2023 | 304 | ORDER as to Samuel Bankman-Fried.. (Signed by Judge Lewis A. Kaplan on 10/1/2023) (Kaplan, Lewis) (Entered: 10/01/2023) |
| 10/01/2023 | 305 | MEMORANDUM & OPINION as to Samuel Bankman-Fried.. (Signed by Judge Lewis A. Kaplan on 10/1/2023)(Kaplan, Lewis) (Entered: 10/01/2023) |
| 10/02/2023 | 306 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 10/2/23 re: ruling on motions in limine (ECF No. 289) (Cohen, Mark) (Entered: 10/02/2023) |

# A-61

| 10/02/2023 | 307 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 10/2/23 re: Government's letter motions in limine (ECF Nos. 301 and 302) (Cohen, Mark) (Entered: 10/02/2023) |
|---|---|---|
| 10/02/2023 | 308 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 10/2/23 re: in opposition to ECF No. 302 (Cohen, Mark) (Entered: 10/02/2023) |
| 10/03/2023 | 309 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 2, 2023 re: Opposition to Government Letter Motion in Limine re Witness Testimony (Dkt 301) (Cohen, Mark) (Entered: 10/03/2023) |
| 10/03/2023 | 310 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Conference held on 9/28/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Noah Collin, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/24/2023. Redacted Transcript Deadline set for 11/3/2023. Release of Transcript Restriction set for 1/1/2024. (McGuirk, Kelly) (Entered: 10/03/2023) |
| 10/03/2023 | 311 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Conference proceeding held on 9/28/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 10/03/2023) |
| 10/03/2023 |  | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Voir Dire held on 10/3/2023 as to Samuel Bankman-Fried. Jury Selection begun regarding Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Mark S. Cohen, Christian R. Everdell, David Lisner, Sri Khuenlenz, and Stephen Gale Dick. AUSAs Nathan M. Rehn, Danielle R. Sassoon, Nicolas Roos, Samuel Raymond, Andrew Rohrback, and Danielle Kudla, present. Jury selection begun and continued to 10/4/2023. (Court Reporter Kris Sellin and Steve Greenblum) (ap) (Entered: 10/06/2023) |
| 10/04/2023 | 312 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan re: October 2, 2023 Letter from Defendant re: ruling on motions in limine Document filed by USA. (Raymond, Samuel) (Entered: 10/04/2023) |
| 10/04/2023 | 313 | ORDER denying as moot 300 LETTER MOTION voir dire objections re: 300 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated September 29, 2023 re: Voir Dire Objections . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 10/4/2023) (Kaplan, Lewis) (Entered: 10/04/2023) |
| 10/04/2023 | 314 | BILL OF PARTICULARS by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame . (Raymond, Samuel) (Entered: 10/04/2023) |
| 10/04/2023 |  | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/4/2023. Jury selection continued, trial begun. Jury of 12 jurors and 6 alternates selected and sworn. Opening arguments heard, Governments case begun. Trial continued to 10/5/2023. (ap) (Entered: 10/06/2023) |
| 10/05/2023 |  | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/5/2023. Trial held and continued to 10/6/2023 at 9:30 AM. |

## A-62

| | | |
|---|---|---|
| | | (Jury Trial set for 10/6/2023 at 09:30 AM before Judge Lewis A. Kaplan) (ap) (Entered: 10/06/2023) |
| 10/06/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan:Jury Trial as to Samuel Bankman-Fried held on 10/6/2023. Jury Trial held and continued to 10/10/2023 at 9:30 AM. (jw) (Entered: 10/10/2023) |
| 10/08/2023 | 315 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Thane Rehn dated October 8, 2023 re: Motion in Limine Regarding Evidence About Current Value of Investments . Document filed by USA as to Samuel Bankman-Fried. (Rehn, Nathan) (Entered: 10/08/2023) |
| 10/09/2023 | 316 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated October 9, 2023 re: Request to Cross Examine Gary Wang on the Involvement of Counsel . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 10/09/2023) |
| 10/10/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan:Jury Trial as to Samuel Bankman-Fried held on 10/10/2023. Jury Trial held and continued to 10/11/2023 at 9:30 AM. (jw) (Entered: 10/10/2023) |
| 10/10/2023 | 317 | LETTER MOTION addressed to Judge Lewis A. Kaplan from David Lisner dated October 10, 2023 re: Opposition to Government's Letter Motion re Evidence About Current Value of Investments (Dkt. 315) . Document filed by Samuel Bankman-Fried. (Lisner, David) (Entered: 10/10/2023) |
| 10/10/2023 | 318 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 10, 2023 re: Request to Cross Examine Caroline Ellison on the Involvement of Counsel . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 10/10/2023) |
| 10/10/2023 | 319 | ORDER denying as moot 316 LETTER MOTION examine G Wang re counsel re: 316 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated October 9, 2023 re: Request to Cross Examine Gary Wang on the Involvement of Counsel . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 10/10/2023) (Kaplan, Lewis) (Entered: 10/10/2023) |
| 10/11/2023 | 320 | MEMO ENDORSEMENT as to Samuel Bankman-Fried on re: 309 LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated 10/2/23 re: ruling on motions in limine (ECF No. 289). ENDORSEMENT: Defendant moves for clarification and reconsideration (Dkt 306) regarding portions of the Court's ruling on the parties' motions in limine. The motion is disposed of as follows, the numbered sections of this endorsement corresponding to those of the defendant's motion. 1. Reconsideration is granted. On reconsideration, the Court adheres to its ruling on the prior motion (Dkt 289, 1 15) substantially for the reasons argued by the government in opposition to the defendant's present motion (Dkt 312, 1 I). Among other things, the fact, assuming it to be so, that cryptocurrency exchanges or the cryptocurrency industry in particular are, in a general sense, unregulated in the United States, at least in the same ways as some other financial services industries such as securities exchanges, commodities exchanges, investment advisors, and so on, is irrelevant. Defendant is being prosecuted here for alleged violations of U.S. statutes of general application to all persons and entities the conduct of which comes within the reach of U.S. law, including, for example, wire fraud and conspiracy to violate other applicable statutes. Among other things, he allegedly misappropriated for his own use money that was "entrusted to [his] care by another." United States v. Altman, 48 F.3d 96, 101 (2d Cir. 1995). Even were the evidence that defendant seeks to offer of some relevance, evidence of the lack of the sort of regulation to which defendant refers would be of minimal probative value and would be outweighed |

# A-63

| | | |
|---|---|---|
| | | substantially by the likelihood of jury confusion, waste of time, and unfair prejudice to the even-handed application of laws of general application to the defendant's alleged conduct. 2. Reconsideration is denied. First, the defendant's reliance on footnote 7 of his opposition to the government's memorandum on the motion in limine is misplaced. Arguments raised only in footnotes (let alone arguments omitted from footnotes) are not properly raised and need not be addressed by the Court. See Fairfield Sentry Ltd. v. Citibank, N.A. 630 F. Supp.3d 463, 496 n.34 (S.D.N.Y. 2022) (citing cases). Second, as the Court already has held, "it is immaterial as a matter of law whether the defendant intended to repay [ or could have repaid] the misappropriated funds because the offense [wa]s complete where, as alleged here, there is an immediate intent to misapply and defraud." 3. Reconsideration is granted but, on reconsideration, the Court adheres to its original ruling with this clarification: The government does not object to the defendant's proffer of admissible evidence regarding charitable or philanthropic efforts provided the evidence is presented for a proper purpose, as opposed to attempting to prove lack of a propensity to commit crime or good. Should controversy arise over particular questions, the Court then will rule as appropriate. 4. Reconsideration is granted but, on reconsideration, the Court adheres to its original ruling. Moreover, and with respect, the defendant has misconstrued the Court's rulings. Properly construed, there is no inconsistency. In the event of a conviction, the Court reserves the right to expand upon its reasoning with respect to these rulings. (Signed by Judge Lewis A. Kaplan on 10/11/2023) (ap) (Entered: 10/11/2023) |
| 10/11/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan:Jury Trial as to Samuel Bankman-Fried held on 10/11/2023. Jury Trial held and continued to 10/12/2023 at 9:30 AM. (jw) (Entered: 10/11/2023) |
| 10/12/2023 | 321 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 12, 2023 re: Evidentiary Issues . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 10/12/2023) |
| 10/12/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/12/2023. Jury Trial held and continued to 10/13/2023 at 9:30 AM. (jbo) (Entered: 10/12/2023) |
| 10/13/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/13/2023. Jury Trial held and continued to 10/16/2023 at 9:30 AM. (Jury Trial set for 10/16/2023 at 09:30 AM before Judge Lewis A. Kaplan) (lnl) (Entered: 10/13/2023) |
| 10/13/2023 | 322 | LETTER RESPONSE in Opposition by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thane Rehn dated October 13, 2023 re: 321 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 12, 2023 re: Evidentiary Issues .. (Rehn, Nathan) (Entered: 10/13/2023) |
| 10/15/2023 | 323 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 15, 2023 re: Medication During Trial . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 10/15/2023) |
| 10/16/2023 | 324 | ORDER granting 315 LETTER MOTION as to Samuel Bankman-Fried (1). For the reasons stated on the record in open court, the government's motion to preclude the defendant from introducing evidence or argument about the current value of certain investments made by the defendant (Dkt 315) is granted. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 10/16/2023) (bw) (Entered: 10/16/2023) |
| 10/16/2023 | 325 | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/16/2023. Jury Trial held and continued to 10/17/2023 at 9:30 AM. (lnl) (Entered: 10/17/2023) |

# A-64

| | | |
|---|---|---|
| 10/17/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/17/2023. Jury Trial held and continued to 10/18/2023 at 9:30 AM. (Jury Trial set for 10/18/2023 at 09:30 AM before Judge Lewis A. Kaplan) (ap) (Entered: 10/17/2023) |
| 10/18/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/18/2023. Jury Trial held and continued to 10/19/2023 at 9:30 AM. (Jury Trial set for 10/19/2023 at 09:30 AM before Judge Lewis A. Kaplan) (ap) (Entered: 10/19/2023) |
| 10/19/2023 | 326 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Thane Rehn dated October 19, 2023 re: Jury Instructions . Document filed by USA as to Samuel Bankman-Fried. (Rehn, Nathan) (Entered: 10/19/2023) |
| 10/19/2023 | 327 | Request To Charge by Samuel Bankman-Fried. (Attachments: # 1 Exhibit 1: Redline against Mr. Bankman-Frieds Proposed Requests to Charge filed on August 21, 2023 (Dkt. 215))(Cohen, Mark) (Entered: 10/19/2023) |
| 10/19/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/19/2023. Jury Trial held and continued to 10/26/2023 at 9:30 AM. (bw) (Entered: 10/20/2023) |
| 10/19/2023 | | Set/Reset Hearings as to Samuel Bankman-Fried: Jury Trial set for 10/26/2023 at 09:30 AM before Judge Lewis A. Kaplan. (bw) (Entered: 10/20/2023) |
| 10/23/2023 | 328 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 23, 2023 re: Expert Witness Disclosure . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Exhibit Expert Witness Disclosure of Joseph M. Pimbley, PhD.) (Cohen, Mark) (Entered: 10/23/2023) |
| 10/24/2023 | 329 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 24, 2023 re: objections to the Government's Proposed Jury Instructions and Oct. 19, 2023 Letter . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 10/24/2023) |
| 10/24/2023 | 330 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Danielle R. Sassoon dated October 24, 2023 re: scheduling Document filed by USA. (Sassoon, Danielle) (Entered: 10/24/2023) |
| 10/24/2023 | 331 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thane Rehn dated October 24, 2023 re: Jury Instructions Document filed by USA. (Rehn, Nathan) (Entered: 10/24/2023) |
| 10/25/2023 | 332 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 25, 2023 re: Extrinsic Evidence of Prior Inconsistent Statements . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 10/25/2023) |
| 10/25/2023 | | Set Teleconference as to Samuel Bankman-Fried: Telephone Conference set for today, 10/25/2023 at 10:30 AM before Judge Lewis A. Kaplan. Press & Public can dial-in to listen only at 1-888-363-4749 and enter conference ID 7664205. Callers are reminded that recording or rebroadcasting the conference in whole or in part is forbidden by Court rules. (Mohan, Andrew) (Entered: 10/25/2023) |
| 10/25/2023 | 333 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 25, 2023 re: Special Verdict . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 10/25/2023) |
| 10/25/2023 | 334 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated October 25, 2023 re: misc trial issues Document filed by USA. |

# A-65

| | | (Sassoon, Danielle) (Entered: 10/25/2023) |
|---|---|---|
| 10/25/2023 | 335 | MEMO ENDORSEMENT as to Samuel Bankman-Fried on 334 LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated October 25, 2023 re: misc trial issues. ENDORSEMENT: Defendant shall disclose any Rule 26.2 material forthwith. So Ordered. (Signed by Judge Lewis A. Kaplan on 10/25/2023) (lnl) (Entered: 10/25/2023) |
| 10/25/2023 | 336 | ORDER terminating 333 LETTER MOTION re: 333 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 25, 2023 re: Special Verdict . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 10/25/2023) (Kaplan, Lewis) (Entered: 10/25/2023) |
| 10/25/2023 | | ORDER terminating 329 LETTER MOTION re: 329 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 24, 2023 re: objections to the Government's Proposed Jury Instructions and Oct. 19, 2023 Letter . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 10/25/2023) (Kaplan, Lewis) (Entered: 10/25/2023) |
| 10/25/2023 | | ORDER terminating 328 LETTER MOTION re: 328 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 23, 2023 re: Expert Witness Disclosure . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 10/25/2023) (Kaplan, Lewis) (Entered: 10/25/2023) |
| 10/25/2023 | 337 | MEMORANDUM in Opposition by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame re 332 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 25, 2023 re: Extrinsic Evidence of Prior Inconsistent Statements .. (Raymond, Samuel) (Entered: 10/25/2023) |
| 10/25/2023 | 338 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 25, 2023 re: Defendant's Testimony . Document filed by Samuel Bankman-Fried. (Cohen, Mark) (Entered: 10/25/2023) |
| 10/25/2023 | 339 | ORDER denying 332 LETTER MOTION eleicit certain testimony from Agents Booth and Allain re: 332 LETTER MOTION addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 25, 2023 re: Extrinsic Evidence of Prior Inconsistent Statements . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 10/25/2023) (Kaplan, Lewis) (Entered: 10/25/2023) |
| 10/26/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/26/2023. Jury Trial held. Government rested. Defense moved for acquittal under Rule 29, which was denied by the Court. Defense case begun. Jury excused for the day at 2:00 PM. Evidentiary hearing held outside the presence of the jury regarding DI 338, a 10/25/2023 letter filed by the defense to which the Court reserved decision. Trial continued to 10/27/2023 at 9:30 AM. (Jury Trial set for 10/27/2023 at 09:30 AM before Judge Lewis A. Kaplan) (ap) (Entered: 10/27/2023) |
| 10/30/2023 | 340 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 30, 2023 re: Addendum to Request No. 5 of Defendants Proposed Jury Instructions (Attachments: # 1 Exhibit 1- Addendum to Addendum to Defense Request No. 5)(Cohen, Mark) (Entered: 10/30/2023) |
| 10/30/2023 | 341 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 30, 2023 re: English Law Authorities Cited in Addendum to Request No. 5 of Defendant's Proposed Jury Instructions (Attachments: # 1 Exhibit 1 - English Law Authorities (Part I), # 2 Exhibit 2 - English Law Authorities (Part II)) (Cohen, Mark) (Entered: 10/30/2023) |

# A-66

| | | |
|---|---|---|
| 10/30/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/30/2023. Jury Trial held and continued to 10/31/2023. (ap) (Entered: 10/31/2023) |
| 10/31/2023 | 342 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Mark S. Cohen dated October 31, 2023 re: Proposed Jury Instruction (Cohen, Mark) (Entered: 10/31/2023) |
| 10/31/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 10/31/2023. Jury Trial held on 10/31/2023. Defense case rested. Government rebuttal case waived. Jury left early and defendant's renewed Rule 29 motion for Judgement of Acquittal made and denied by the Court. Charge conference held. Closings to begin on 11/1/2023 at 9:30 AM. (Jury Trial set for 11/1/2023 at 09:30 AM before Judge Lewis A. Kaplan) (ap) (Entered: 11/01/2023) |
| 11/01/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 11/1/2023. Government and defense closing arguments made. Government's rebuttal closing argument, to be followed by the jury charge, continued to 11/2/2023 @ 9:30 AM. (lnl) (Entered: 11/02/2023) |
| 11/02/2023 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Jury Trial as to Samuel Bankman-Fried held on 11/2/2023. Jury Trial held and concluded on 11/2/2023. Governments rebuttal closingargument heard. Jury charged. Deliberations began and concluded. A verdict of guilty as to counts (S6)One through (S6)Seven returned and as to Count (S6)Seven the jury answered a special verdict question that it was a unanimous verdict based on both concealment money laundering, and wire fraud proceeds money laundering. Defense post-trial motions are due by 11/20/2023; Government opposition due by 12/11/2023; Defense replies due by 12/18/2023. Defense sentencing submissions are due by 2/27/2024. Government sentencing submissions are due by 3/15/2024. Sentencing is scheduled for 3/28/2023 at 9:30 AM. Defendant remained remanded. (Motions due by 11/20/2023. Responses due by 12/11/2023. Replies due by 12/18/2023. Sentencing set for 3/28/2024 at 09:30 AM before Judge Lewis A. Kaplan) (ap) (Entered: 11/07/2023) |
| 11/02/2023 | doc | JURY VERDICT as to Samuel Bankman-Fried (1) Guilty on Count 1sss,2sss,3sss,4sss,5sss,6sss,7sss. (ap) (Mohan, Andrew). (Entered: 11/07/2023) |
| 11/07/2023 | 343 | MEMORANDUM AND ORDER as to Samuel Bankman-Fried. During the trial, the defendant moved to elicit testimony from FBI Special Agents Booth and Allain for the purpose of attempting to prove what he contended were prior inconsistent statements, Dkt 332, The order disposing of that motion (Dkt 339) stated that a memorandum would follow in the event of a conviction, Defendant was convicted on all counts, Accordingly, this memorandum sets out the bases for the rule on defendant's letter motion, As a preliminary matter, the Court applied to defendant's motion the principles summarized in United States v, Ghailani, 761 F, Supp2d 114, 117-18 (S,D.N..Y. 2011). The following paragraphs deal with each of the four proposed subjects of extrinsic evidence of alleged prior inconsistent statements and correspond to the similarly numbered paragraphs of defendant's letter motion. i-ii. The material referred to in paragraphs and ii (Dkt 332, at 2-3) was inadmissible for at least the following reasons. First, there is no material inconsistency. Mr. Wang consistently testified that the "allow negative" flag initially was added in 2019 because Alameda, then the largest market maker on FTX, on occasion needed to withdraw stablecoins from the FTX platform, convert them, and then redeposit them on FTX in order to convert between stablecoins, thus "going negative" in the withdrawn coins, and that he may have described this as patt of "market making" or "for the functionality of the exchange"(Tr. 485-488; id at 487:25-488:2) (Mr. Wang agreeing that "[b]eing able to go negative was necessaiy so that Alameda could satisfy stablecoin |

# A-67

| | | |
|---|---|---|
| | | requests"), which amounts essentially to the same thing (id. at 480:4-6) (Mr. Wang agreeing that "one thing Alameda did as a market maker was it facilitated access to stablecoins"). In any case, Mr. Wang ultimately testified on redirect that Alameda's "special features," which included the "allow negative" flag, may have been in part to facilitate market making. Tr. 611: 17-612: I. (Signed by Judge Lewis A. Kaplan on 11/7/2023) (See ORDER set forth) (ap) (Entered: 11/07/2023) |
| 11/08/2023 | 344 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 11/09/2023) |
| 11/17/2023 | 345 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 11/17/23 re: Extension of Time . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 11/17/2023) |
| 11/18/2023 | 346 | ORDER granting 345 LETTER MOTION extension of time re: 345 LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 11/17/23 re: Extension of Time . as to Samuel Bankman-Fried (1). (Signed by Judge Lewis A. Kaplan on 11/18/2023) (Kaplan, Lewis) (Entered: 11/18/2023) |
| 11/20/2023 | 347 | ORDER as to Samuel Bankman-Fried: The court having required the jurors to remain at the courthouse beyond the normal end of day for deliberations on November 2, 2023, IT IS HEREBY ORDERED, that the Clerk of Court is authorized to pay the invoice submitted by Global Automated Services, no. 24675, dated 11/16/2023 for the jurors' transportation home on 11/2/2023. (Signed by Judge Lewis A. Kaplan on 11/20/2023) (Forwarded to Finance Unit via email on 11/20/2023) (ap) (Entered: 11/20/2023) |
| 11/21/2023 | 348 | USCA MANDATE ON INTERLOCUTORY APPEAL (certified copy) as to Samuel Bankman-Fried re: 199 Notice of Appeal - Interlocutory. USCA Case Number 23-6914-cr. Upon due consideration, it is hereby ORDERED that the motion for release pending trial is DENIED. The motion for immediate release pending disposition of this appeal is DENIED as moot. Catherine OHagan Wolfe, Clerk USCA. Issued As Mandate: 11/21/2023. (tp) (Entered: 11/21/2023) |
| 11/21/2023 | | Transmission of USCA Mandate/Order to the District Judge re: 348 USCA Mandate - Interlocutory Appeal. (tp) (Entered: 11/21/2023) |
| 12/01/2023 | 349 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 12/1/23 re: Post-Trial Motions (Everdell, Christian) (Entered: 12/01/2023) |
| 12/12/2023 | 350 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/3/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 351 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/3/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 352 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/6/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the |

# A-68

| | | |
|---|---|---|
| | | Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 353 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/6/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 354 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/4/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 355 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/4/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 356 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/5/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 357 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/5/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 358 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/10/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 359 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/10/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction |

| | | |
|---|---|---|
| | | of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 360 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/11/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 361 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/11/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 362 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/12/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 363 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/12/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 364 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/13/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 365 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/13/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 366 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/16/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. |

## A-70

| | | |
|---|---|---|
| | | Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 367 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/16/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 368 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/17/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 369 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/17/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 370 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/18/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 371 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/18/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 372 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/19/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 373 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/19/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 374 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/26/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805- |

# A-71

| | | |
|---|---|---|
| | | 0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 375 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/26/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 376 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/27/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 377 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/27/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 378 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/30/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 379 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/30/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 380 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 10/31/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 381 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 10/31/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties |

# A-72

| | | |
|---|---|---|
| | | have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 382 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 11/1/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 383 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 11/1/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 384 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Trial held on 11/2/2023 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/2/2024. Redacted Transcript Deadline set for 1/12/2024. Release of Transcript Restriction set for 3/11/2024. (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/12/2023 | 385 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Trial proceeding held on 11/2/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 12/12/2023) |
| 12/20/2023 | 386 | MEMO ENDORSEMENT as to Samuel Bankman-Fried. Regarding the 12/20/2023 letter submitted by attorneys Mark S. Cohen and Christian R. Everdell on behalf of defendant Samuel Bankman-Fried, requesting a four to six-week adjournment of the sentencing hearing was memo endorsed as follows: The defendant's application, dated December 20, 2023, to adjourn the sentencing date and to postpone the dates for the first and second disclosures of the PSR is denied. The sentencing date was fixed without objection from the defendant. The defendant already has been granted one extension for the filing of sentencing submissions. The defendant already has had over six weeks in which to prepare for the presentence interview, which shall take place tomorrow as scheduled. This ruling is without prejudice to a renewed application with respect to the sentencing date in the event the government elects to proceed to trial on the severed counts. (Signed by Judge Lewis A. Kaplan on 12/20/2023)(Mohan, Andrew) (Entered: 12/20/2023) |
| 12/20/2023 | 387 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Christian R. Everdell dated 12/20/23 re: Sentencing Adjournment . Document filed by Samuel Bankman-Fried. (Everdell, Christian) (Entered: 12/20/2023) |
| 12/29/2023 | 388 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle |

# A-73

| | | |
|---|---|---|
| | | Kudla dated 12/29/23 re: March 2024 Trial Document filed by USA. (Kudla, Danielle) (Entered: 12/29/2023) |
| 01/09/2024 | 390 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 01/09/2024) |
| 01/09/2024 | 391 | NOTICE OF ATTORNEY APPEARANCE: Marc Lee Mukasey appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Mukasey, Marc) (Entered: 01/09/2024) |
| 01/09/2024 | 392 | NOTICE OF ATTORNEY APPEARANCE: Torrey Kaufman Young appearing for Samuel Bankman-Fried. Appearance Type: Retained. (Young, Torrey) (Entered: 01/09/2024) |
| 01/10/2024 | 393 | LETTER by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan, from Mary McKee dated 1/4/2024 re: Mary McKee writes regarding sentencing of Defendant. (ap) (Entered: 01/10/2024) |
| 01/19/2024 | 394 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated January 19, 2024 re: Proposed Protective Order for New Counsel Document filed by USA. (Attachments: # 1 Proposed Order Protective Order)(Roos, Nicolas) (Entered: 01/19/2024) |
| 01/22/2024 | 395 | PROTECTIVE ORDER as to Samuel Bankman-Fried...regarding procedures to be followed that shall govern the handling of confidential material.... (Signed by Judge Lewis A. Kaplan on 1/22/2024)(jw) (Entered: 01/22/2024) |
| 02/06/2024 | 397 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated February 6, 2024 re: Curcio Hearing Document filed by USA. (Roos, Nicolas) (Entered: 02/06/2024) |
| 02/07/2024 | 398 | MEMORANDUM OPINION as to Samuel Bankman-Fried....[*** See this Memorandum Opinion ***]... Conclusion. For the foregoing reasons, as well as those stated on the record on October 27, 2023, the Court granted the defendant's motion insofar as it concerned the participation of attorneys in drafting and implementing data retention policies, and it denied the defendant's motion in all other respects.(See Footnote 41 on this Memorandum Opinion). SO ORDERED. (Signed by Judge Lewis A. Kaplan on 2/7/2024)(bw) (Entered: 02/07/2024) |
| 02/07/2024 | 399 | ORDER as to Samuel Bankman-Fried. The Court will conduct a Curcio hearing in this matter on February 21, 2024 at 2:00 pm. Mr. Mukasey, Mr. Young, and the defendant all shall be present together with counsel for the government. SO ORDERED. ( Curcio Hearing set for 2/21/2024 at 02:00 PM before Judge Lewis A. Kaplan. ) (Signed by Judge Lewis A. Kaplan on 2/7/2024)(bw) (Entered: 02/07/2024) |
| 02/14/2024 | 401 | MOTION for Forfeiture of Property . Document filed by USA as to Ryan Salame. (Attachments: # 1 Proposed Order Proposed Consent Interlocutory of Sale)(Raymond, Samuel) (Entered: 02/14/2024) |
| 02/15/2024 | 402 | CONSENT INTERLOCUTORY SALE ORDER 401 Motion for Forfeiture of Property as to Ryan Salame. (Signed by Judge Lewis A. Kaplan on 2/15/24) (jw) (Entered: 02/15/2024) |
| 02/21/2024 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Curcio hearing concerning docket items 397 and 399 regarding Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Marc Lee Mukasey and Torrey K. Young. AUSA Nicolas Roos present. Court reporter Pamela Utter present. Defendant waived any potential conflicts regarding incoming counsel. Sentencing remains scheduled for 3/28/2024 @ 9:30 AM. Detained. (Mohan, Andrew) (Entered: 03/08/2024) |

# A-74

| | | |
|---|---|---|
| 02/21/2024 | | Set Hearings as to Samuel Bankman-Fried: Sentencing set for 3/28/2024 at 09:30 AM in Courtroom 26A, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 03/08/2024) |
| 02/23/2024 | | Set/Reset Deadlines/Hearings as to Ryan Salame: Sentencing set for 5/1/2024 at 11:00 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 02/23/2024) |
| 02/23/2024 | 403 | MOTION for Mark S. Cohen, Christian R. Everdell, S. Gale Dick, David F. Lisner, Sri Kuehnlenz, Sharon L. Barbour, Alexandra K. Theobald, and Andrew Dean of Cohen & Gresser LLP to Withdraw as Attorney . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Proposed Order Proposed Order Granting Motion to Withdraw as Attorney)(Everdell, Christian) (Entered: 02/23/2024) |
| 02/23/2024 | 404 | DECLARATION of Chris Everdell in Support as to Samuel Bankman-Fried re: 403 MOTION for Mark S. Cohen, Christian R. Everdell, S. Gale Dick, David F. Lisner, Sri Kuehnlenz, Sharon L. Barbour, Alexandra K. Theobald, and Andrew Dean of Cohen & Gresser LLP to Withdraw as Attorney .. (Everdell, Christian) (Entered: 02/23/2024) |
| 02/23/2024 | 405 | DECLARATION of Sam Bankman-Fried in Support as to Samuel Bankman-Fried re: 403 MOTION for Mark S. Cohen, Christian R. Everdell, S. Gale Dick, David F. Lisner, Sri Kuehnlenz, Sharon L. Barbour, Alexandra K. Theobald, and Andrew Dean of Cohen & Gresser LLP to Withdraw as Attorney .. (Everdell, Christian) (Entered: 02/23/2024) |
| 02/27/2024 | 407 | SENTENCING SUBMISSION by Samuel Bankman-Fried. (Attachments: # 1 Exhibit A - Index of Letters in Support of Samuel Bankman-Fried's Sentencing Submission, # 2 Exhibit A-1, # 3 Exhibit A-2, # 4 Exhibit A-3, # 5 Exhibit A-4, # 6 Exhibit A-5, # 7 Exhibit A-6, # 8 Exhibit A-7, # 9 Exhibit A-8, # 10 Exhibit A-9, # 11 Exhibit A-10, # 12 Exhibit A-11, # 13 Exhibit A-12, # 14 Exhibit A-13, # 15 Exhibit A-14, # 16 Exhibit A-15, # 17 Exhibit A-16, # 18 Exhibit A-17, # 19 Exhibit A-18, # 20 Exhibit A-19, # 21 Exhibit A-20, # 22 Exhibit A-21, # 23 Exhibit A-22, # 24 Exhibit A-23, # 25 Exhibit A-24, # 26 Exhibit A-25, # 27 Exhibit A-26, # 28 Exhibit A-27, # 29 Exhibit A-28, # 30 Exhibit A-29, # 31 Exhibit B - 2018 writing, # 32 Exhibit C - Webpage capture, # 33 Exhibit D - Assets and Liabilities Sheet, # 34 Exhibit E - assorted documents, # 35 Exhibit F - January 2023 report, # 36 Exhibit G - March 2023 report, # 37 Exhibit H - September 2023 report, # 38 Exhibit I - declaration and exhibits, # 39 Exhibit J - regulatory-related documents, # 40 Exhibit K - 2016 writing, # 41 Exhibit L - Declaration of Shannon Race and exhibits)(Mukasey, Marc) (Entered: 02/27/2024) |
| 03/04/2024 | 408 | ORDER GRANTING MOTION TO WITHDRAW as to Samuel Bankman-Fried: Upon consideration of the Motion to Withdraw, it is HEREBY ORDERED THAT Mark S. Cohen, Christian R. Everdell, S. Gale Dick, David F. Lisner, Sri Kuehnlenz, Sharon L. Barbour, Alexandra K. Theobald, and Andrew Dean of Cohen & Gresser LLP are granted leave to withdraw as co-counsel for defendant Samuel Bankman-Fried in the above-captioned matter. Attorney Drew Dean; Stephen Gale Dick; Christian R. Everdell; Sri Kuehnlenz; David Lisner; Alexandra Theobald; Sharon L Barbour and Mark Stewart Cohen terminated in case as to Samuel Bankman-Fried. (Signed by Judge Lewis A. Kaplan on 3/4/2024) (ap) (Entered: 03/04/2024) |
| 03/05/2024 | 409 | LETTER re Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan, from Stephen Salment dated 2/28/2024 re: Stephen Salmen writes with his opinion. (ap) Modified on 3/15/2024 (Mohan, Andrew). (Entered: 03/05/2024) |
| 03/15/2024 | 410 | SENTENCING SUBMISSION by USA as to Samuel Bankman-Fried. (Attachments: # 1 Exhibit A - Victim Twitter Messages, # 2 Exhibit B - Google Document, # 3 Exhibit C - Google Document, # 4 Exhibit D - Google Document, # 5 Exhibit E - Twitter Thread, # 6 Proposed Order Preliminary Order of Forfeiture)(Roos, Nicolas) (Entered: 03/15/2024) |

# A-75

| 03/18/2024 | 411 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 03/18/2024 re: Redactions & Victim Impact Statements Document filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B - part 1, # 3 Exhibit B - part 2, # 4 Exhibit B - part 3, # 5 Exhibit B - part 4, # 6 Exhibit B - part 5, # 7 Exhibit B - part 6) (Kudla, Danielle) (Entered: 03/18/2024) |
|---|---|---|
| 03/19/2024 | 412 | ORDER as to Samuel Bankman-Fried: The defendant and government each cite to a hearing transcript in In re FTX Trading Ltd. et al., 22-bk-11068 (JTD) (Bankr. D. Del. Jan. 31, 2024) (ECF No. 6908). The parties shall provide an electronic copy of the transcript to the Court. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 3/19/2024) (lnl) (Entered: 03/19/2024) |
| 03/19/2024 | 413 | Sentencing Letter by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Marc L. Mukasey and Torrey K. Young dated March 19, 2024 re: reply to government's Sentencing Memorandum. (Attachments: # 1 Exhibit A - 2022 writing, # 2 Exhibit B - various communications, # 3 Exhibit C - Omnibus Corporate Authority)(Mukasey, Marc) (Entered: 03/19/2024) |
| 03/20/2024 | 414 | Sentencing Letter by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Marc L. Mukasey, Torrey K. Young, Thomas E. Thornhill, Michael F. Westfal dated March 20, 2024 re: further reply to government's Sentencing Submission. (Attachments: # 1 Exhibit A - United States v Gary sentencing transcript, # 2 Exhibit B - February 28, 2024 revision, # 3 Exhibit C - February 14, 2024 letter)(Mukasey, Marc) (Entered: 03/20/2024) |
| 03/20/2024 | 415 | LETTER by Alameda Research LTD, Alameda Research LLC, West Realm Shires Inc., FTX Trading Ltd. as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from John J. Ray III dated 03/20/2024 re: Victim Impact Statement Document filed by Alameda Research LTD, Alameda Research LLC, West Realm Shires Inc., FTX Trading Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Peikin, Steven) (Entered: 03/20/2024) |
| 03/22/2024 | 416 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan Document filed by USA. (Attachments: # 1 Exhibit Stipulation and Order)(Raymond, Samuel) (Entered: 03/22/2024) |
| 03/22/2024 | 417 | STIPULATION AND ORDER as to (S6 22-Cr-673) Samuel Bankman-Fried. SO ORDERED: (Signed by Judge Lewis A. Kaplan on 3/22/2024)(bw) (Entered: 03/22/2024) |
| 03/26/2024 | 418 | Sentencing Letter by Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Marc L. Mukasey and Torrey K. Young dated March 26, 2024 re: additional letters of support for Samuel Bankman-Fried. (Attachments: # 1 Exhibit A-30, # 2 Exhibit A-31, # 3 Exhibit A-32, # 4 Exhibit A-33, # 5 Exhibit A-34)(Mukasey, Marc) (Entered: 03/26/2024) |
| 03/26/2024 | 419 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 03/26/2024 re: Additional Victim Impact Statements Document filed by USA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Kudla, Danielle) (Entered: 03/26/2024) |
| 03/27/2024 | 420 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Nicolas Roos dated March 27, 2024 re: Measure of Investor Loss Document filed by USA. (Roos, Nicolas) (Entered: 03/27/2024) |

# A-76

| 03/27/2024 | 421 | LETTER by USA as to Samuel Bankman-Fried addressed to Judge Lewis A. Kaplan from Thane Rehn dated March 27, 2024 re: Additional Victim Impact Statements Document filed by USA. (Attachments: # 1 Exhibit Combined MDL Statements)(Rehn, Nathan) (Entered: 03/27/2024) |
|---|---|---|
| 03/27/2024 | 422 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle Kudla dated 03/27/24 re: Additional Victim Impact Statement Document filed by USA. (Attachments: # 1 Exhibit A)(Kudla, Danielle) (Entered: 03/27/2024) |
| 03/28/2024 |  | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Sentencing held on 3/28/2024 for Samuel Bankman-Fried (1) Count 1sss,2sss,3sss,4sss,5sss,6sss,7sss. Sentencing hearing Samuel Bankman-Fried before the Hon. Lewis A. Kaplan held. Defendant Samuel Bankman-Fried present with attorneys Marc Lee Mukasey and Torrey K. Young. AUSAs Nicolas Roos, Danielle Sassoon, Danielle Kudla, Nathan Rehn, Samuel Raymond present. Court reporters George Malinowski and Steven Greenblum present. The defendant is sentenced to 240 months on each of counts 1 through 4 and count 7. The terms on each of counts 1, 2 and 7 shall be served concurrently with each other. The term on each of counts 3 and 4 shall be served concurrently with each other. The first 180 months of the terms on each of counts 3 and 4 shall be served concurrently with the terms on Counts 1, 2 and 7 and the balance of 60 months on the terms on each of counts 3 and 4 shall be served consecutively to the terms on counts 1, 2 and 7. IT IS FURTHER ADJUDGED that he be committed to the custody of the Attorney General of the United States for a term of imprisonment of 60 months on each of counts 5 and 6. The terms counts 5 and 6 shall be served concurrently with each other, consecutively to those on Counts 1, 2 and 7, and consecutively with the 60 month portions of the terms on Counts 3 and 4 that are to be served consecutively to the terms on counts 1, 2 and 7. The foregoing results in an aggregate term of imprisonment of 300 months. You thereafter shall serve a term of 3 years on supervised release, and you shall pay the mandatory special assessment of $700. The term of supervised release shall be subject to the mandatory, the standard and the following special conditions: You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider. You must provide the probation officer with access to any requested financial information. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless you are in compliance with the installment payment schedule. It is recommended that you be supervised by the district of residence. It is further adjudged that he forfeit to the United States the sum of $11,020,000,000, including the specific property identified in the Preliminary Order of Forfeiture that I am signing today, all on the terms and conditions there set forth. The Court declines to order restitution due to the complexity of the case and the number of victims. It instead grants the government's motion to authorize the United States to compensate victims with finally forfeited assets through a remission process, as restitution would be impractical in this case. The Court strongly recommends to the BOP that it consider a Management Variable at initial designation to designate defendant to a medium security facility or any lower security institution the BOP considers appropriate for the following reasons. First, the defendant has no criminal history, and the Court has no reason to believe that defendant has any history of violence or that he would initiate any act of violence against another prisoner or any BOP staff. He therefore does not require the close confinement of a maximum facility institution that in part is designed to present such acts. Second, defendant's notoriety, his |

| | | |
|---|---|---|
| | | association with vast wealth regardless of his present and actual financial resources, and his autism and social awkwardness are likely to make him more than usually vulnerable to misconduct by other inmates in the environment of a maximum security facility. It further recommends that the designated facility be as close to the San Francisco - Bay Area as possible to facilitate family visitation Defendant remained remanded. (Court Reporter George Malinowski and Steven Greenblum) (ap) Modified on 3/28/2024 (lnl) (Entered: 03/28/2024) |
| 03/28/2024 | | DISMISSAL OF COUNTS on Government Motion as to Samuel Bankman-Fried (1) Count 1,1s,1ss,2,2s,2ss,3,3s,3ss,4,4s,4ss,5,5s,5ss,6,6s,7,7s,7ss,8,8s,8ss,9s,10s,10ss,11s, 11ss,12s,12ss,13ss. (ap) (Entered: 03/28/2024) |
| 03/29/2024 | 423 | PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Samuel Bankman-Fried. (Signed by Judge Lewis A. Kaplan on 3/28/2024) (lnl) (Additional attachment(s) added on 4/3/2024: # 1 Exhibit A) (lnl). (Entered: 03/29/2024) |
| 03/29/2024 | 424 | FILED JUDGMENT IN A CRIMINAL CASE as to Samuel Bankman-Fried (1), Count(s) 1, 10s, 10ss, 11s, 11ss, 12s, 12ss, 13ss, 1s, 1ss, 2, 2s, 2ss, 3, 3s, 3ss, 4, 4s, 4ss, 5, 5s, 5ss, 6, 6s, 7, 7s, 7ss, 8, 8s, 8ss, 9s, Dismissed; Found guilty to Count(s) 1sss, Count(s) 2sss, Count(s) 3sss, Count(s) 4sss, Count(s) 5sss, Count(s) 6sss, Count(s) 7sss, Imprisonment for a total term of The terms on each of counts (S6)1, (S6)2 and (S6)7 shall be served concurrently with each other. The term on each of counts (S6)3 and (S6). The Court Makes the following recommendations to the Bureau of Prisons: The Court strongly recommends to the BOP that it consider a Management Variable at initial designation to designate defendant to a medium security facility or any lower security institution the BOP considers appropriate for the following reasons. First, the defendant has no criminal history, and the Court has no reason to believe that defendant has any history of violence or that he would initiate any act of violence against another prisoner or any BOP staff. He therefore does not require the close confinement of a maximum facility institution that in part is designed to present such acts. Second, defendant's notoriety, his association with vast wealth regardless of his present and actual financial resources, and his autism and social awkwardness are likely to make him more than usually vulnerable to misconduct by other inmates in the environment of a maximum security facility. It further recommends that the designated facility be as close to the San Francisco - Bay Area as possible to facilitate family visitation. Special Assessment of 700 which is due immediately (Signed by Judge Lewis A. Kaplan on 3/29/24)(jw) (Entered: 04/01/2024) |
| 04/08/2024 | 425 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Marc L. Mukasey and Torrey K. Young dated April 8, 2024 re: request for continued confinement at MDC . Document filed by Samuel Bankman-Fried. (Attachments: # 1 Proposed Order Proposed Order on Confinement)(Mukasey, Marc) (Entered: 04/08/2024) |
| 04/09/2024 | 426 | TRANSCRIPT of Proceedings as to Samuel Bankman-Fried re: Sentence held on 3/28/2024 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/30/2024. Redacted Transcript Deadline set for 5/10/2024. Release of Transcript Restriction set for 7/8/2024. (McGuirk, Kelly) (Entered: 04/09/2024) |
| 04/09/2024 | 427 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Samuel Bankman-Fried. Notice is hereby given that an official transcript of a Sentence proceeding held on 3/28/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

# A-78

| | | |
|---|---|---|
| | | remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 04/09/2024) |
| 04/09/2024 | | Set/Reset Hearings as to Ryan Salame: Sentencing set for 5/28/2024 at 11:00 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 04/09/2024) |
| 04/11/2024 | 428 | NOTICE OF APPEAL by Samuel Bankman-Fried from 424 Judgment. (nd) (Entered: 04/11/2024) |
| 04/11/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Samuel Bankman-Fried to US Court of Appeals re: 428 Notice of Appeal. (nd) (Entered: 04/11/2024) |
| 04/11/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Samuel Bankman-Fried re: 428 Notice of Appeal were transmitted to the U.S. Court of Appeals. (nd) (Entered: 04/11/2024) |
| 04/11/2024 | 429 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/11/2024) |
| 04/11/2024 | 430 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/11/2024) |
| 04/11/2024 | 431 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/11/2024) |
| 04/26/2024 | 432 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/26/2024) |
| 05/14/2024 | 433 | SENTENCING SUBMISSION by Ryan Salame. (Parlovecchio, Gina) (Entered: 05/14/2024) |
| 05/14/2024 | 434 | MOTION to Seal Document . Document filed by Ryan Salame. (Parlovecchio, Gina) (Entered: 05/14/2024) |
| 05/15/2024 | 435 | MEMO ENDORSEMENT as to Ryan Salame (5) granting 434 MOTION to Seal Document. ENDORSEMENT: Granted. (Signed by Judge Lewis A. Kaplan on 5/15/2024) (ap) (Entered: 05/15/2024) |
| 05/21/2024 | 436 | SENTENCING SUBMISSION by USA as to Ryan Salame. (Raymond, Samuel) (Entered: 05/21/2024) |
| 05/21/2024 | 437 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Gina M. Parlovecchio dated May 21, 2024 re: 433 Sentencing Submission re: additional letters of support in connection with the sentencing and to request an order permitting the redaction of personally identifying information contained within the supplemental letters . Document filed by Ryan Salame. (Attachments: # 1 Exhibit C - Additional Letters in Support of Ryan Salame's Sentencing Submission (Redacted))(Parlovecchio, Gina) (Entered: 05/21/2024) |
| 05/22/2024 | 438 | ORDER terminating 437 LETTER MOTION additional letters re: 437 LETTER MOTION addressed to Judge Lewis A. Kaplan from Gina M. Parlovecchio dated May 21, 2024 re: 433 Sentencing Submission re: additional letters of support in connection with the sentencing and to request an order permitting the redaction o as to Ryan Salame (5). (Signed by Judge Lewis A. Kaplan on 5/22/2024) (Kaplan, Lewis) (Entered: 05/22/2024) |
| 05/22/2024 | 439 | MEMO ENDORSEMENT as to Ryan Salame on re: 437 LETTER MOTION filed by Ryan Salame addressed to Judge Lewis A. Kaplan from Attorney Gina M. Parlovecchio dated May 21, 2024 re: 433 Sentencing Submission re: additional letters of support in connection with the sentencing and to request an order permitting the redaction of personally identifying information contained within the supplemental letters. ENDORSEMENT: Granted. (Signed by Judge Lewis A. Kaplan on 5/22/2024) (bw) (Entered: 05/22/2024) |

# A-79

| | | |
|---|---|---|
| 05/22/2024 | 440 | ORDER as to (S1 22-Cr-673) Samuel Bankman-Fried. Pursuant to Federal Rule of Criminal Procedure 38(b)(2), the Court RECOMMENDS to the Bureau of Prisons that defendant Samuel Bankman-Fried remain confined at the Metropolitan Detention Center in Brooklyn, New York, until his appeal has been fully briefed to facilitate access to appellate counsel. A copy of this Order shall be forwarded to the Bureau of Prisons. SO ORDERED: (Signed by Judge Lewis A. Kaplan on 5/22/2024, nunc pro tunc to 4/9/2024) (bw) (Entered: 05/22/2024) |
| 05/22/2024 | 441 | ENDORSED LETTER as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan from BOIES SCHILLER FLEXNER LLP dated April 12, 2024 re: We represent Plaintiffs on behalf of themselves and as representatives of all FTX Victims as Co-Lead Counsel in In re: FTX Cryptocurrency Exchange Collapse Litigation, MDL No. 3076, pending before the Honorable Judge K. Michael Moore in the Southern District of Florida (the "FTX MDL"). As instructed by the Clerk's Office, as Co-Lead Counsel we hereby write to request that Your Honor direct the E-Filing Clerk to add the MDL Plaintiffs1 to the docket of United States v. Samuel Bankman-Fried, 22-cr-00673-LAK as an interested third party, thereby enabling Co-Lead Counsel to appear on behalf of the MDL Plaintiffs during the forfeiture process. Attached hereto is a courtesy copy of the Notice by FTX MDL Leadership of Intent to Participate As Interested Third Parties in Forfeiture Process, which Co-Lead Counsel seek to file. Such e-filing access will permit MDL Plaintiffs to be heard in a timely and efficient manner and facilitate the filing of any accompanying motions requested by this Court to facilitate such participation. ENDORSEMENT: Denied without prejudice to renewal in the event a petition is filed pursuant to Fed. R. Crim. P. 32.2. SO ORDERED: (Signed by Judge Lewis A. Kaplan on 5/22/2024) (bw) (Entered: 05/22/2024) |
| 05/23/2024 | 442 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 05/23/2024) |
| 05/27/2024 | 443 | LETTER by USA as to Ryan Salame addressed to Judge Lewis A. Kaplan Document filed by USA. (Attachments: # 1 Affidavit Declaration, # 2 Proposed Order Proposed Order Partially Vacating Forfeiture)(Raymond, Samuel) (Entered: 05/27/2024) |
| 05/28/2024 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan: Sentencing held on 5/28/2024 for Ryan Salame (5) Count 1,2. Defendant Ryan Saleme present with attorneys Jason Linder and Gina Parlovecchio. AUSAs Nathan Rehn, Danielle R. Sassoon, Nicolas Roos, Samuel Raymond, and Danielle Kudla, present.. Court reporter Nadine Kristoferson present. Defendant Salame was sentenced to a term of imprisonment of 60 months on Count (S7)One, and 60 months on Count (S7)Two; the term on Count (S7)Two shall run concurrently with the last 30 months on Count (S7)One, for an aggregate term of imprisonment of 90 months. The term of imprisonment shall be followed by term of supervised release of 3 years subject to the mandatory, standard, and following special conditions of supervised release: 1) You will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. 2) You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance use disorder treatment provider. 3) You must provide the probation officer with access to any requested financial information. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless you are in compliance with the installment payment schedule. The mandatory drug testing condition is suspended because the conditions of supervised release contemplate drug testing. The defendant shall forfeit to the United States the sum of $1,561,187,623.74, which is more fully set forth in the Consent Preliminary Order of Forfeiture as to |

| | | Substitute Assets/Money Judgment, entered 9/7/2023, as modified by the Partial Vacatur of the Preliminary Order of Forfeiture, dated 5/28/2024. The defendant shall pay a fine of $250,000 on each of counts (S7)One and (S7)Two, for an aggregate fine of $500,000. The defendant shall pay restitution in the amount of $5,593,177.91 to the U.S. Bankruptcy estate of FTX Trading Ltd., as satisfied. The defendant shall surrender to the Bureau of (Bureau) Prisons at the institution designated by it for the commencement of service of the sentence on the date and by the time designated by the Bureau, which shall not be earlier than 8/29/2024. If the defendant for any reason has not previously surrendered to the Bureau, the defendant shall surrender to the United States Marshal for this district, on the fourth floor of his building, on 8/30/2024 before 2 p.m. The Court recommends to the BOP that subject to the defendant's security classification, he be designated to a facility as close to the Washington D.C. area as possible. Additionally, that the BOP consider the defendant for participation in the RDAP program. Defendant remained released on bail. (jbo) (Entered: 05/28/2024) |
|---|---|---|
| 05/29/2024 | 444 | PARTIAL VACATUR OF THE PRELIMINARY ORDER OF FORFEITURE as to Ryan Salame. (Signed by Judge Lewis A. Kaplan on 5/28/24)(jw) (Entered: 05/29/2024) |
| 05/29/2024 | 445 | FILED JUDGMENT IN A CRIMINAL CASE as to Ryan Salame (5), Pleaded guilty to Count(s) 1 and Count(s) 2, Imprisonment for a total term of 60 months on Count (S7)One, and 60 months on Count (S7)Two; the term on Count (S7)Two shall run concurrently with the last 30 months on Count (S7)One, and consecutively to the remainder on Count (S7)One, for an aggregate term of imprisonment of 90 months. Supervised Release for a term of 3 Years. The court makes the following recommendations to the Bureau of Prisons: That consistent with the defendant's security classification, the defendant be designated to a facility as close to the Washington D.C. area as possible, and be considered for participation in the RDAP program. Special Assessment of $200. Fine of $500,000.00 and Restitution of $5,593,177.91. Lump Sum payment of $500,200.00 which is due immediately (Signed by Judge Lewis A. Kaplan on 5/29/24)(jw) (Entered: 05/29/2024) |
| 06/13/2024 | 446 | PETITION IN RESPONSE TO FORFEITURE ORDER by Emergent Fidelity Technologies Ltd. as to Samuel Bankman-Fried re: 423 Order, Terminate Motions . (Tehrani, Daniel) (Entered: 06/13/2024) |
| 06/13/2024 | 447 | PETITION IN RESPONSE TO FORFEITURE ORDER by Joint Liquidators of Emergent Fidelity Technologies Ltd. as to Samuel Bankman-Fried re: 423 Order, Terminate Motions . (Tehrani, Daniel) (Entered: 06/13/2024) |
| 06/14/2024 | 448 | TRANSCRIPT of Proceedings as to Ryan Salame re: Sentence held on 5/28/2024 before Judge Lewis A. Kaplan. Court Reporter/Transcriber: Nadine Kristoferson, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/8/2024. Redacted Transcript Deadline set for 7/15/2024. Release of Transcript Restriction set for 9/12/2024. (McGuirk, Kelly) (Entered: 06/14/2024) |
| 06/14/2024 | 449 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Ryan Salame. Notice is hereby given that an official transcript of a Sentence proceeding held on 5/28/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 06/14/2024) |
| 06/14/2024 | 450 | THIRD PARTY PETITION IN RESPONSE TO FORFEITURE ORDER by FTX Trading Ltd. as to Samuel Bankman-Fried *re: 423 Order*. (Attachments: # 1 Exhibit A - |

# A-81

| | | |
|---|---|---|
| | | Preliminary Forfeiture Order, # 2 Exhibit B - FTX DM Global Settlement Order, # 3 Exhibit C - Disclosure Statement, # 4 Exhibit D - BlockFi Global Settlement Agreement, # 5 Exhibit E - Objection to Island Air Capital Aranha Motion)(Croke, Jacob) (Entered: 06/14/2024) |
| 06/17/2024 | 451 | MEMO ENDORSEMENT as to Samuel Bankman-Fried re: Blank Rome LLP represents Fulcrum Distressed Partners Limited ("Fulcrum") which is not yet a party in the above criminal proceeding but has an interest in two petitions that were filed by the Joint Liquidators of Emergent Fidelity Technologies Ltd. (Doc. #4 77) and by Emergent Fidelity Technologies Ltd. (Doc. #446)...ENDORSEMENT...ECF Filed permitted. SO ORDERED (Signed by Judge Lewis A. Kaplan on 6/17/24)(jw) (Entered: 06/17/2024) |
| 06/17/2024 | 452 | MEMO ENDORSEMENT as to Samuel Bankman-Fried re: We represent Plaintiffs Alexander Chemyavsky, Kyle Rupprecht, Mike Livieratos, and Sunil Kavuri, both individually and on behalf of the MDL Plaintiff Class as Co-Lead Counsel in In re: FTX Cryptocurrency Exchange Collapse Litigation, MDL No. 3076, pending before the Honorable Judge K. Michael Moore in the Southern District of Florida (the "FTX MDL")....ENDORSEMENT...E-Filing Permitted (Signed by Judge Lewis A. Kaplan on 6/17/24)(jw) (Entered: 06/17/2024) |
| 06/17/2024 | 453 | MOTION for Joinder with 447 Petition in Response to Forfeiture Order, 446 Petition in Response to Forfeiture Order . Document filed by Fulcrum Distressed Partners Limited as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame. (Antonoff, Rick) (Entered: 06/17/2024) |
| 06/17/2024 | 454 | THIRD PARTY PETITION IN RESPONSE TO FORFEITURE ORDER by Sunil Kavuri, Mike Livieratos, Kyle Rupprecht, Alexander Chernyavsky as to Samuel Bankman-Fried re: 423 Order, Terminate Motions . (Attachments: # 1 Affidavit Declaration of Brooke Alexander, # 2 Exhibit A- FTX.US User Agreement dated May 6, 2022, # 3 Exhibit B- FTX International User Agreement dated May 13, 2022, # 4 Exhibit C- Expert Report of Lee Reiners, dated June 14, 2024)(Boies, David) (Entered: 06/17/2024) |
| 06/18/2024 | 455 | ORDER as to Samuel Bankman-Fried Before the Court are four third-party petitions (Dkts 446,447,450,454) for proceedings to adjudicate petitioners' claims to property subject to the Court's March 2024 preliminary order of forfeiture/money judgment (Dkt 423). The government shall respond by July 2, 2024. SO ORDERED. (Responses due by 7/2/2024) (Signed by Judge Lewis A. Kaplan on 6/18/2024) (lnl) (Entered: 06/18/2024) |
| 06/18/2024 | 456 | MEMO ENDORSEMENT Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame denying 453 MOTION for Joinder with 447 Petition in Response to Forfeiture Order, 446 Petition in Response to Forfeiture Order. ENDORSEMENT: Denied without prejudice to the filing by this entity of a petition in its own right. (Signed by Judge Lewis A. Kaplan on 6/18/2024) (lnl) Modified on 6/18/2024 (lnl). (Entered: 06/18/2024) |
| 06/26/2024 | 457 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan Document filed by USA. (Raymond, Samuel) (Entered: 06/26/2024) |
| 06/26/2024 | 458 | MEMO ENDORSEMENT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame on 457 LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan. ENDORSEMENT: Granted. SO ORDERED. (Signed by Judge Lewis A. Kaplan on 6/26/2024) (lnl) (Entered: 06/26/2024) |

| 07/03/2024 | 459 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan Document filed by USA. (Raymond, Samuel) (Entered: 07/03/2024) |
|---|---|---|
| 07/04/2024 | 460 | MEMO ENDORSEMENT as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame on re: 459 LETTER by USA addressed to Judge Lewis A. Kaplan from AUSA Samuel Raymond dated July 3, 2024 re: In its June 26, 2024 letter to the Court, Dkt. No. 457, the Government stated that the applicable deadline for entities that did not receive direct notice of the Preliminary Order of Forfeiture to file third-party petitions was July 8, 2024. The Government has spoken with counsel for a number of such third-parties who are considering whether to file such petitions, who have requested additional time to file a petition. The Government therefore respectfully requests that the Court order that the applicable deadline for third-party petitions be extended to July 26, 2024, so third-parties will have sufficient time to decide whether to file a third-party petition and to allow additional discussions with the Government. ENDORSEMENT: Granted. SO ORDERED: (Signed by Judge Lewis A. Kaplan on 7/4/2024) (bw) (Entered: 07/08/2024) |
| 07/09/2024 | | Set Hearings as to Nishad Singh: Sentencing set for 10/30/2024 at 03:30 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 07/09/2024) |
| 07/09/2024 | | Set Hearings as to Zixiao (Gary) Wang: Sentencing set for 11/20/2024 at 03:30 PM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Lewis A. Kaplan. (Mohan, Andrew) (Entered: 07/09/2024) |
| 07/09/2024 | 461 | NOTICE OF ATTORNEY APPEARANCE: Andrew Daniel Goldstein appearing for Nishad Singh. Appearance Type: Retained. (Goldstein, Andrew) (Entered: 07/09/2024) |
| 07/09/2024 | 462 | NOTICE OF ATTORNEY APPEARANCE: Russell Capone appearing for Nishad Singh. Appearance Type: Retained. (Capone, Russell) (Entered: 07/09/2024) |
| 07/26/2024 | 463 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan Document filed by USA. (Raymond, Samuel) (Entered: 07/26/2024) |
| 07/26/2024 | 464 | MEMO ENDORSEMENT as to Samuel Bankman-Fried on re: 463 LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan. ENDORSEMENT: Granted. (Signed by Judge Lewis A. Kaplan on 7/26/2024) (ap) (Entered: 07/26/2024) |
| 07/26/2024 | 465 | MOTION to Continue - *Motion Requesting Continuance of Self-Surrender Date*. Document filed by Ryan Salame. (Attachments: # 1 Exhibit A - Singh Letter, # 2 Exhibit B - Salame Op Note)(Parlovecchio, Gina) (Entered: 07/26/2024) |
| 07/26/2024 | 466 | PETITION IN RESPONSE TO FORFEITURE ORDER by Hamad Dar, Nicholas J. Marshall, Cedric Kees Van Putten, Austin Onusz as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame re: 450 Petition in Response to Forfeiture Order, filed by FTX Trading Ltd., 454 Petition in Response to Forfeiture Order, filed by Sunil Kavuri, Mike Livieratos, Alexander Chernyavsky, Kyle Rupprecht . (Attachments: # 1 Exhibit A - Onusz Class Action Adversary Complaint, # 2 Exhibit B - FTX MDL Order dated July 18, 2024, # 3 Exhibit C - MDL Panel Order Denying Transfer, # 4 Exhibit D - Delaware Bankruptcy Court Letter Ruling Denying Motions to Sever, # 5 Exhibit E - Onusz Plaintiffs' Joinder to Debtors' Motion to Enforce Automatic Stay)(Entwistle, Andrew) (Entered: 07/26/2024) |
| 07/30/2024 | 467 | MEMO ENDORSEMENT as to Ryan Salame (5) granting 465 MOTION to Continue - Motion Requesting Continuance of Self-Surrender Date. ENDORSEMENT: Granted. SO |

# A-83

| | | |
|---|---|---|
| | | ORDERED. (Signed by Judge Lewis A. Kaplan on 7/30/2024) (lnl) (Entered: 07/30/2024) |
| 08/13/2024 | 468 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan Document filed by USA. (Raymond, Samuel) (Entered: 08/13/2024) |
| 08/14/2024 | 469 | MEMO ENDORSEMENT as to Samuel Bankman-Fried on re: 468 LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan. ENDORSEMENT: Granted. (Responses due by 8/30/2024) (Signed by Judge Lewis A. Kaplan on 8/14/2024) (ap) (Entered: 08/14/2024) |
| 08/21/2024 | 470 | MOTION for Writ of OF ERROR CORAM NOBIS, OR ALTERNATIVELY FOR A WRIT OF AUDITA QUERELA . Document filed by Ryan Salame. (Bartolomucci, H. Christopher) (Entered: 08/21/2024) |
| 08/21/2024 | 471 | DECLARATION of Ryan Salame in Support as to Ryan Salame re: 470 MOTION for Writ of OF ERROR CORAM NOBIS, OR ALTERNATIVELY FOR A WRIT OF AUDITA QUERELA .. (Bartolomucci, H. Christopher) (Entered: 08/21/2024) |
| 08/21/2024 | 472 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-29783989. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Ryan Salame. (Attachments: # 1 Affidavit of H. Christopher Bartolomucci with Certificate of Good Standing, # 2 Proposed Order)(Bartolomucci, H. Christopher) Modified on 8/21/2024 (rju). (Entered: 08/21/2024) |
| 08/21/2024 | 473 | MOTION for Brian J. Field to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-29784068. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Ryan Salame. (Attachments: # 1 Affidavit of Brian J. Field with Certificate of Good Standing, # 2 Proposed Order)(Field, Brian) (Entered: 08/21/2024) |
| 08/21/2024 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice as to Ryan Salame to RE-FILE Document No. 472 MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-29783989. Motion and supporting papers to be reviewed by Clerk's Office staff... The filing is deficient for the following reason(s): missing Certificate of Good Standing from Supreme Court of Virginia;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order.. (rju)** (Entered: 08/21/2024) |
| 08/21/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 473 MOTION for Brian J. Field to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-29784068. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 08/21/2024) |
| 08/21/2024 | 474 | LETTER by USA as to Ryan Salame addressed to Judge Lewis A. Kaplan from Danielle R. Sassoon dated August 21, 2024 re: Salame coram nobis petition Document filed by USA. (Sassoon, Danielle) (Entered: 08/21/2024) |
| 08/21/2024 | 475 | ORDER as to Ryan Salame: The government shall file its response to this defendant's petition for a writ of error coram no bis or other relief on or before September 4, 2024. The defendant shall file any reply papers at or before 1 p.m. on October 10, 2024. The Court will hear argument on September 12, 2024 at 10 a.m. As counsel who filed this petition on behalf of defendant have not appeared nor are admitted to practice in this |

# A-84

| | | |
|---|---|---|
| | | Court, the Clerk will email a copy of this order to them immediately upon its filing. (Responses due by 9/4/2024. Replies due by 9/12/2024) (Emailed on 8/22/2024 to: cbartolomucci@schaerr-jaffe.com and bfield@schaerr-jaffe.com) (Signed by Judge Lewis A. Kaplan on 8/21/2024) (ap) (Entered: 08/22/2024) |
| 08/22/2024 | 476 | ORDER FOR ADMISSIONPRO HAC VICE as to Ryan Salame (5) granting 473 Motion for Pro Hac Vice for BRIAN J. FIELD to Appear Pro Hac Vice. (Signed by Judge Lewis A. Kaplan on 8/22/2024) (ap) (Entered: 08/22/2024) |
| 08/26/2024 | 477 | MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice *[previously paid fee Receipt #ANYSDC-29783989]*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Ryan Salame. (Attachments: # 1 Affidavit of H. Christopher Bartolomucci with Certificates of Good Standing, # 2 Proposed Order) (Bartolomucci, H. Christopher) Modified on 8/26/2024 (bc). (Entered: 08/26/2024) |
| 08/26/2024 | 478 | LETTER by USA as to Ryan Salame addressed to Judge Lewis A. Kaplan from Thane Rehn dated August 26, 2024 re: Factually Related Cases Document filed by USA. (Rehn, Nathan) (Entered: 08/26/2024) |
| 08/26/2024 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 477 MOTION for H. Christopher Bartolomucci to Appear Pro Hac Vice *[previously paid fee Receipt #ANYSDC-29783989]*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 08/26/2024) |
| 08/27/2024 | 479 | ORDER FOR ADMISSION PRO HAC VICE 477 Motion for H. Christopher Bartolomucci to Appear Pro Hac Vice as to Ryan Salame. The motion of H. Christopher Bartolomucci for admission to practice Pro Hac Vice in the above-captioned action is granted. (Signed by Judge Lewis A. Kaplan on 8/27/24) (jw) (Entered: 08/27/2024) |
| 08/28/2024 | 482 | LETTER by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame addressed to Judge Lewis A. Kaplan Document filed by USA. (Raymond, Samuel) (Entered: 08/28/2024) |
| 08/29/2024 | 483 | MEMO ENDORSEMENT as to Samuel Bankman-Fried on re: 482 The Government writes to respectfully request that the Court extend the deadline for its response to third-party ancillary petitions from the currently scheduled date of August 30, 2024 to November 1, 2024...ENDORSEMENT...Granted. SO ORDERED (Signed by Judge Lewis A. Kaplan on 8/29/24)(jw) (Entered: 08/29/2024) |
| 08/29/2024 | 484 | LETTER by Ryan Salame addressed to Judge Lewis A. Kaplan from H. Christopher Bartolomucci dated 08/29/2024 re: Withdrawal of Petition for a Writ of Error Coram Nobis, or Alternatively for a Writ of Audita Querela (ECF No. 470) (Bartolomucci, H. Christopher) (Entered: 08/29/2024) |
| 08/29/2024 | | Set/Reset Deadlines/Hearings as to Samuel Bankman-Fried: Government Responses due by 11/1/2024. (jw) (Entered: 08/29/2024) |
| 08/29/2024 | 485 | ORDER as to Ryan Salame. Notwithstanding defendant's purported withdrawal without prejudice of his petition for writ of error coram nobis or alternatively a writ of audita querula, the parties shall file the papers contemplated by the Court's order of August 21, 2024 on the schedule there set forth. Counsel shall appear for argument on September 12, 2024 as scheduled. Defendant's presence is required and his compliance with this requirement hereby is made a condition of his continued release on bail pending voluntary surrender. (Signed by Judge Lewis A. Kaplan on 8/29/2024)(Mohan, Andrew) (Entered: 08/29/2024) |

# A-85

| 08/30/2024 | 486 | LETTER by USA as to Ryan Salame addressed to Judge Lewis A. Kaplan from AUSA Danielle R. Sassoon dated August 30, 2024 re: scheduling Document filed by USA. (Sassoon, Danielle) (Entered: 08/30/2024) |
|---|---|---|
| 08/30/2024 | 487 | MEMO ENDORSEMENT as to Ryan Salame on re: 486 The Government respectfully writes to request an additional day to file its response to Ryan Salame's coram nobis petition by September 5, 2024, at 1:00pm. (Dkt. 470). The Court ordered the Government to file any response on or before September 4, 2024....ENDORSEMENT...Granted (Signed by Judge Lewis A. Kaplan on 8/30/2024)(jw) (Entered: 08/30/2024) |
| 08/30/2024 | | Set/Reset Deadlines/Hearings as to Ryan Salame: Government Responses due by 9/5/2024. (jw) (Entered: 08/30/2024) |
| 09/03/2024 | 488 | LETTER MOTION addressed to Judge Lewis A. Kaplan re: Terminate appearance . Document filed by USA as to Samuel Bankman-Fried, Zixiao (Gary) Wang, Caroline Ellison, Nishad Singh, Ryan Salame. (Raymond, Samuel) (Entered: 09/03/2024) |
| 09/04/2024 | 489 | MEMO ENDORSEMENT as to Samuel Bankman-Fried (1), Zixiao (Gary) Wang (2), Caroline Ellison (3), Nishad Singh (4), Ryan Salame (5) granting 488 LETTER MOTION addressed to Judge Lewis A. Kaplan re: Terminate appearance. ENDORSEMENT: Granted. (Signed by Judge Lewis A. Kaplan on 9/4/2024) (ap) (Entered: 09/04/2024) |
| 09/04/2024 | 490 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 09/04/2024) |
| 09/05/2024 | 491 | MEMORANDUM in Opposition by USA as to Ryan Salame re 470 MOTION for Writ of OF ERROR CORAM NOBIS, OR ALTERNATIVELY FOR A WRIT OF AUDITA QUERELA .. (Attachments: # 1 Affidavit AUSA Sassoon declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Affidavit AUSA Swett declaration, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8)(Sassoon, Danielle) (Entered: 09/05/2024) |
| 09/09/2024 | 492 | LETTER MOTION addressed to Judge Lewis A. Kaplan from Anjan Sahni dated September 9, 2024 re: Sealing of Sentencing Materials . Document filed by Caroline Ellison. (Sahni, Anjan) (Entered: 09/09/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/10/2024 11:24:32 | | |
| **PACER Login:** | teamrpacc | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cr-00673-LAK |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**A-86**

1

N133banc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                   v.                        22 Cr. 673 (LAK)

5   SAMUEL BANKMAN-FRIED,

6                   Defendant.

7   ------------------------------x    Arraignment

8                                       New York, N.Y.
                                        January 3, 2023
9                                       2:00 p.m.

10

    Before:
11
                        HON. LEWIS A. KAPLAN,
12
                                        District Judge
13

14                          APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    DANIELLE R. SASSOON
17  NICOLAS ROOS
    ANDREW ROHRBACH
18  SAMUEL RAYMOND
         Assistant United States Attorneys
19
    COHEN & GRESSER, LLP
20       Attorneys for Defendant
    MARK S. COHEN
21  CHRISTIAN R. EVERDELL

22

23

24

25

N133banc

 1          MS. SASSOON:  Couple things, your Honor.  The first is
 2    with respect to victim notification.  FTX was the second
 3    largest cryptocurrency exchange, and the number of victims is
 4    potentially above 1 million.  At least as estimated in a filing
 5    by the FTX debtors, they said there could be as many as over 1
 6    million victims.  So we intend to file a motion with the Court
 7    in the next couple days asking to provide notice to victims
 8    through a website rather than individually.
 9          THE COURT:  Okay.
10          MS. SASSOON:  And then with respect to the defendant's
11    bail conditions.  The parties proposed an agreed-upon package
12    to Judge Gorenstein, which was entered at the presentment.  But
13    we would like to propose an additional bail condition that we
14    think would have been supported at the time of the presentment,
15    but in light of some recent events, we believe it's necessary
16    to add this condition.
17          Specifically, we'd like to add a condition that the
18    defendant be prohibited from accessing or transferring any FTX
19    or Alameda assets, including cryptocurrency, and including
20    assets or cryptocurrency purchased with FTX or Alameda funds.
21          THE COURT:  Mr. Cohen?
22          MR. COHEN:  Yes, your Honor.  We've been discussing
23    this with the government.  We spoke with them about it
24    yesterday.
25          Just as context for the Court, on Friday, there was I

**A-88**

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                │
│ DATE FILED:  2/01/2023               │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

           -against-                              22-cr-0673 (LAK)

SAMUEL BANKMAN-FRIED, et al.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        This matter now is before the Court on the government's application to modify the release conditions of defendant Samuel Bankman-Fried by adding as additional conditions of his continued release that he shall not (1) contact or communicate with current or former employees of FTX or Alameda (other than immediate family members) except in the presence of counsel, unless the government or Court exempts an individual from this rule, or (2) use any encrypted or ephemeral call or messaging application, including but not limited to Signal.[1]  (Dkt 50)  The defendant, who was arrested in the Bahamas and then extradited on December 21, 2022, opposes the government's proposed additional bail conditions and cross-moves to eliminate the existing bail condition that defendant is prohibited from accessing or transferring any FTX or Alameda assets or cryptocurrency, including assets or cryptocurrency purchased with funds from FTX or Alameda.

---

[1]        For the purposes of this order, the Court defines "FTX" to include FTX.com, FTX US, FTX Digital Markets Ltd., and all affiliated, subsidiary, and successor entities, and "Alameda" to include Alameda Research and any affiliated, subsidiary, and successor entities. *See* Dkt 50, at 1.

2

(Dkt 51)  Briefing is complete on the government's application but not yet complete on the defendant's cross-application.  Nor has the Court yet held oral argument, which hereby is set for February 7, 2023 at 2 p.m.

Both the government and defendant have made proffers in support of their motions. The defendant does not contest any of the material historical facts with respect to the two additional release conditions proposed by the government.  Rather, he merely disputes the proper characterization of those facts.  For the purposes of this order, the Court accepts as established all undisputed historical facts in the parties' proffers.[2]  Accordingly, the following facts are accepted as true for purposes of this order:

- Defendant directed that FTX and Alameda business be conducted on Slack and Signal, two encrypted messaging applications that permit users to implement settings that cause messages to automatically delete on the devices of others with whom they are communicating.  In or about 2021, the defendant directed also that Slack and Signal communications between FTX and Alameda employees – including his own business communications – be set to automatically delete after 30 days or less.[3]

- Defendant indicated to Caroline Ellison – the former chief executive of Alameda who has pleaded guilty pursuant to a cooperation agreement with the government – in substance and in part, that many legal cases turn on documentation and it is more

---

[2]

*See United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986) (citing *United States v. Acevedo-Ramos*, 755 F.2d 203, 208–09 (1st Cir. 1985) ("[Defendant's] failure to question the reliability of the government's proffer . . . tends to justify the [district court's] acceptance of the proffer as accurate."); *see also id.* (citing *United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985) ("[Defendant] did not challenge the proffer in any way.  In the absence of such an attack, we cannot say that [the presiding judge] erred in failing to demand further elaboration from the government.  In the informal evidentiary framework of a detention hearing, the methods used to scrutinize government proffers for reliability must lie within the discretion of the presiding judicial officer, informed by an awareness of the high stakes involved."); *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (no abuse of discretion where presiding judge accepted government's uncontradicted proffer, which was corroborated by extrinsic evidence).

[3]

Dkt 50, at 3.

3

difficult to build a legal case if information is not written down or preserved.[4]

- In November 2022, the general counsel of FTX US ("Witness-1") was one of a group of FTX insiders who participated with defendant in a series of Signal and Slack communications in which defendant directed the transfer of $45 million of Alameda funds to remedy a hole in FTX's balance sheet.[5]

- Defendant was released on bond on December 22, 2022.  His bond does not presently impose limitations on the defendant's ability to contact any prospective witnesses in the case.[6]

- After defendant's release, he has initiated direct communications with at least one prospective witness.[7]

- On January 15, 2023, defendant initiated contact with Witness-1 – who the government identifies as a potential witness at trial – without the presence of either defendant's or Witness-1's counsel.  Defendant contacted Witness-1 over the encrypted messaging application Signal, as well as by email, and wrote, in relevant part:  "Hey [Witness-1], I know it's been a while since we've talked.  And I know things have ended up on the wrong foot.  I would really love to reconnect and see if there's a way for us to have a constructive relationship, use each other as resources when possible, or at least vet things with each other.  I'd love to get on a phone call sometime soon and chat."[8]

- Since his release, defendant has contacted other current and former FTX employees.[9]

Section 3142(c)(3) of the Bail Reform Act permits the Court to "amend the order

[releasing a defendant on conditions] to impose additional or different conditions of release [at any

---

[4]    *Id.*

[5]    *Id.* at 2.

[6]    *Id.*at 1.

[7]    *Id.*

[8]    *See id.*; Dkt 53 Ex. 1.

[9]    Dkt 50, at 1.

NAVIGATION

4

time].["10]  It does not explicitly establish a legal standard that must be satisfied in order to warrant

such action.  However, courts in this district have found that judicial "authorization to amend a

release order" under section 3142(c) arises where there is "a changed situation or new information

[that] warrant[s] altered release conditions."[11]

      "When considering an application to modify a defendant's bail conditions, the Court

considers 'the statutory standards applicable to the setting of bail.'"[12]  Specifically, in determining

what conditions to impose, and whether to modify those conditions, the Court shall "take into

account the available information" regarding "the nature and circumstances of the offense charged,"

"the weight of the evidence against the person," "the history and characteristics of the person,"and

the "nature and seriousness of the danger . . . that would be posed by the person's release."[13]

      While the Court has not yet heard counsel orally on that application, which it plans

to do on February 7 when it hears also defendant's cross-application, briefing has been completed

on the government's application.  Nevertheless, it is appropriate to consider whether defendant's

continued release on the present conditions, which do not limit his ability to contact potential

witnesses nor his use of electronic means of communication capable of auto-deleting messages,

should be altered in view of the undisputed facts proffered by the government – at least pending oral

---

[10] 18 U.S.C. § 3142(c)(3).

[11] *United States v. Rains*, No. 22-CR-18 (NSR), 2022 WL 4534540, at *2 (S.D.N.Y. Sept. 28, 2022) (quoting *United States v. Dzhamgarova*, No. 21 Cr. 58 (MKV), 2021 WL 3113036, at *1 (S.D.N.Y. July 21, 2021) (internal quotation marks and citations omitted)).

[12] *Dzhamgarova*, 2021 WL 3113036, at *1 (quoting *United States v. Zuccaro*, 645 F.2d 104, 106 (2d Cir. 1981)).

[13] 18 U.S.C. § 3142(g).

**A-92**

5

argument next week and a final decision on the government's application.

As noted, defendant's January 15 message to the general counsel of FTX stated:

"Hey [Witness-1], I know it's been a while since we've talked.  And I know things have ended up on the wrong foot.  I would really love to reconnect and see if there's a way for us to have a constructive relationship, use each other as resources when possible, or at least vet things with each other.  I'd love to get on a phone call sometime soon and chat."[14]

While defendant's counsel seeks to have the Court interpret that message in a benign way, that does not appear, on a preliminary basis, to be a persuasive reading.  The message is addressed to Witness-1 and seeks a reconciliation of an apparently damaged personal relationship.  It invites a "constructive" repaired relationship.  It proposes that the defendant and Witness-1 "vet things with each other."  Subject to hearing counsel's argument, the message in its entirety seems to be an invitation for Witness-1 to align his views and recollections with defendant's version of events and thus make their relationship "constructive."  In perhaps more colloquial terms, it appears to have been an effort to have both the defendant and Witness-1 sing out of the same hymn book.

A possible motive for such an attempt is evident from the fact that Witness-1 undisputedly was a witness to some events likely to be at issue in this case, and defendant is facing the possibility of a long prison term.  Coupled with the apparently most plausible reading of the communication to Witness-1, the directions to employees to use Slack and Signal, the statement to Ms. Ellison referred to above, and the fact that defendant's message to Witness-1 invited a telephonic rather than written response, the question arises whether further measures now should be imposed to assure the safety of the community from efforts by this defendant to influence or

---

[14] Dkt 53 Ex. 1.

**A-93**

6

tamper with prospective witnesses.[15]

This question – whether to tighten for a very limited period the conditions under which defendant remains at liberty – is very narrow. The Court considers it to be analogous to an application for a temporary restraining order. There, the Court considers whether there is a threat of irreparable injury and, if so, the strength of the applicant's case for a more lasting injunction as well as the equities.

Here, the undisputed information available to the Court regarding the "nature and seriousness of the danger . . . posed by [defendant's continued] release" on the existing conditions has changed substantially since he was released, and there appears to be a material threat of inappropriate contact with prospective witnesses. That risk, the Court finds, is clearly and convincingly sufficient to warrant the imposition of additional conditions pending the full argument of the cross-applications. That is particularly true given the very limited constraint on defendant's actions that a tightening of his conditions of release pending oral argument on February 7 would impose.

The Court will hear argument on this matter on February 7, 2023 at 2 p.m. In the interim, pending the outcome of that hearing, I hereby amend the conditions of defendant's release, effective immediately, to add the government's proposed additional conditions that (1) the defendant shall not contact or communicate with current or former employees of FTX or Alameda (other than

---

[15]

> *See LaFontaine*, 210 F.3d at 127, 134–35 ("[O]bstruction of justice by a white-collar criminal, even where it does not involve violence or threat of violence, may support a finding of danger to the community."); *see also United States v. Stein*, No. S1-05-cr-0888 (LAK), 2005 WL 8157371, at *2 (S.D.N.Y. Nov. 14, 2005) (citing *LaFontaine*, 210 F.3d at 132) ("The Court agrees in principle that nonviolent witness tampering and obstruction poses a danger to the community and that the risk of such activities, in an appropriate case, would support pretrial detention.")

**A-94**

7

immediate family members) except in the presence of counsel, unless the government or Court exempts an individual from this rule and (2) the defendant shall not use any encrypted or ephemeral call or messaging application, including but not limited to Signal.  The terms "FTX" and "Alameda" are defined as indicated above.

SO ORDERED.

Dated:          February 1, 2023

/s/ Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge

**A-95**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-

SAMUEL BANKMAN-FRIED, et al.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

22-cr-0673 (LAK)

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 2-14-2023

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

        The parties' motions for an extension of the deadline for their submission or submissions with respect to defendant's conditions of release (Dkt 66; Dkt 67) are denied in part. The parties will supplement their submissions with respect to the defendant's conditions of release by February 15, 2023 at 5:00 p.m. The Court will hear argument on this matter on February 16, 2023 at 2:30 p.m.

        It is undisputed by the parties that the defendant has used a VPN or "Virtual Private Network" at least twice to access the internet while on release – and at least once since the Court ordered that the defendant refrain from using any encrypted or ephemeral call or messaging applications. (Dkt 58) The defendant's use of a VPN presents many of the same risks associated with his use of an encrypted messaging or call application. Thus, pending the outcome of the hearing on February 16, I hereby amend the conditions of defendant's release, effective immediately, to prohibit the defendant's use of any VPN. Moreover, the Court extends the February 1, 2023 Order (Dkt 58), as thus amended, until 11:59 p.m. on February 24, 2023.

        SO ORDERED.

Dated:      February 14, 2023

                                    Lewis A. Kaplan
                                United States District Judge

**A-96**

1

N2GKBANC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                 v.                          22 CR 673 (LAK)

5    SAMUEL BANKMAN-FRIED,

6                 Defendant.

7    ------------------------------x

                                             New York, N.Y.
8                                            February 16, 2023
                                             2:30 p.m.
9
     Before:
10
                         HON. LEWIS A. KAPLAN,
11
                                             District Judge
12
                              APPEARANCES
13

14   DAMIAN WILLIAMS
          United States Attorney for the
15        Southern District of New York
     NICOLAS ROOS
16   DANIELLE SASSOON
     ANDREW ROHRBACH
17   SAMUEL RAYMOND
     DANIELLE M. KUDLA
18        Assistant United States Attorneys

19   MARK COHEN
     CHRISTIAN R. EVERDELL
20        Attorneys for Defendant

21   ALSO PRESENT:  JOHN MOSCATO, Pretrial Services

22

23

24

25

7

N2GKBANC

1    computer.

2            THE COURT:  Smart TVs?

3            MR. ROOS:  Smart TVs.

4            I would say maybe, broadly speaking, electronic

5    devices that allow access to the internet or to radio or

6    cellular networks might be a better way to describe it,

7    narrowed to these three categories.  I think your Honor

8    understands, broadly speaking, we're seeking to restrict the

9    ways in which he can use electronic devices to access the

10    internet.

11            THE COURT:  Let me start off right away with a

12    question.

13            You later on jump to allowing him to use these devices

14    in certain circumstances, yes?

15            MR. ROOS:  Yes.

16            THE COURT:  You are putting an awful lot of trust in

17    him, aren't you?

18            MR. ROOS:  Well, your Honor, this is something we've

19    thought a lot about — what's the way in which we can allow for

20    really three things — the defendant's communications with his

21    counsel, his ability to review discovery and prepare his

22    defense, and exercise of his First Amendment rights.

23            Beyond those three things, we are focused on ways --

24            THE COURT:  Let's maybe deal with the third one last.

25    The implication of your reference to the First Amendment here

**A-98**

14

N2GKBANC

1   THE COURT:  But we are dealing with somebody who, on

2   the basis of your proffer anyway, has done things that suggest

3   to me that there may very well be probable cause to believe

4   that he either committed or attempted to commit a federal

5   felony while on release, namely, witness tampering or attempted

6   witness tampering.  And I explained why that might be in what I

7   wrote a week or so ago.

8   Why am I being asked to turn him loose in this garden

9   of electronic devices, where he is in home detention, in light

10  of that background?

11  MR. ROOS:  So, I don't disagree with your Honor about

12  how you're characterizing the facts.  We've taken the same

13  position in our letter briefing.  I think in terms of the

14  broader question, of the defendant's release, the government is

15  attuned to finding a solution that is narrowly tailored under

16  the Bail Reform Act, but guards against these risks going

17  forward.

18  I think like a more drastic alternative, while the

19  defendant would still be on release, would be to have no access

20  to any form of electronic device, and not to allow him to be

21  around them, but, of course, there are countervailing issues,

22  namely, access to his attorneys and to discovery.  And I think,

23  in part, having him live with his parents is a check against

24  some other risks, which is risks that come from being

25  unmonitored and by yourself.

19

N2GKBANC

1          Let's talk now about the no-contact rule, the no

2     contact condition.  When we were last before your Honor, we

3     thought your Honor made an excellent suggestion, and we put it

4     in our draft to your Honor, which was:  He's not allowed to

5     contact anyone, any witness or potential witness, without

6     counsel, and then we had worked out this exemption procedure,

7     and your Honor said, how do we know -- how do we have a record

8     of that, we need to have a record of that, and right after the

9     Court, we said, that's right.  So we proposed adding that

10    condition with a requirement in writing.

11         Respectfully, we think that addresses the concern that

12    was raised before the Court last week and is itself not a

13    factor under 3142(c) for further modification.

14         Which brings us to the apps and the VPN.  The reason

15    we put the declaration in before your Honor — believe me, I am

16    probably the least technical person in this courtroom, one of

17    them anyway — is just to show that this wasn't an effort -- in

18    watching the Super Bowl by using a VPN, it wasn't an effort to

19    get around the Court or get around the government.  It's

20    different technology.

21         THE COURT:  Look, I know the difference between a VPN

22    and -- right?  But let's talk about that for a minute.

23         MR. COHEN:  Sure.

24         THE COURT:  I read your affidavit or declaration from

25    Dr. Sun — I forget his title, but whatever — and he tells me,

**A-100**

20

N2GKBANC

1   and I certainly have no dispute, VPNs are used for different

2   purposes and all of that.  What he does not say is VPNs do not

3   involve the use of encryption.  He didn't say it because, as I

4   understand it, they do.  And the condition was no encryption.

5          Now, I'm not quoting it exactly, I understand that,

6   but if there is one person in this courtroom who knew, I'm

7   pretty confident, without having to look up the difference

8   between a VPN and these encrypted messaging services, that the

9   VPN involved encryption, I'm betting it's your client.

10         MR. COHEN:  With respect, people who grew up in the

11  technology world, like my client, actually if you ask them —

12  and we spoke to a number of people before we spoke to Dr. Sun,

13  but with the press of time, the reaction was they're just very

14  different things.

15         THE COURT:  Well, I understand that.

16         MR. COHEN:  I don't think by doing that, anyone with

17  that background would think, oh, I'm in contrast or conflict

18  with the limitation on the use of the Signal app.  That's all

19  we were trying to say to your Honor.

20         The point is that, as well, can be addressed by a

21  condition, and what we tried to do in our submission is narrow

22  even further what could be used.  And, frankly, one issue I had

23  with the government's presentation is, it starts from the

24  presumption, let's put in the most restrictive set of

25  conditions we can think of and then give a few carveouts.  And

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A-101**

23

N2GKBANC

```
 1   telephones, any form of communication could be used improperly.

 2   And what the government keeps doing in its papers is saying,

 3   well, here's something he could have done, yes, he used it to

 4   watch a football game, but it could have been done improperly.

 5   On that standard, there's no limiting principle, your Honor.

 6           THE COURT:  You know, you made me forget about the

 7   football game.  What was he doing watching football games on a

 8   VPN, if that's really what he was doing, that anybody could

 9   turn on their television set and watch for nothing?

10           MR. COHEN:  I wish I had sent him a television from

11   Best Buy, your Honor.

12           THE COURT:  Well --

13           MR. COHEN:  There isn't a television in the house.

14           THE COURT:  How about this possibility:  You say --

15   and I'm not questioning your veracity at all; indeed, on this

16   point, I'm assuming he used it this way.

17           MR. COHEN:  Understood.

18           THE COURT:  So, on that assumption, the theory is that

19   he used it because he had the subscription from the provider to

20   an international license, which allowed him to watch the

21   football game provided he was outside the United States; yes?

22           MR. COHEN:  Yes.

23           THE COURT:  Okay.

24           So, what he was doing was sitting in California, in

25   the United States, using the VPN to create the impression that
```

**A-102**

24

N2GKBANC

1    he was going to use this international subscription from

2    somewhere outside the United States and getting the service

3    from the provider of the programming by using the VPN to

4    deceive as to location.

5            MR. COHEN:  Well, what a VPN does — and that's why we

6    put the declaration in to your Honor — we're open about what it

7    does and why lots of companies use it.

8            THE COURT:  Sure, I understand.

9            MR. COHEN:  And that's why we proposed to your Honor

10   that he not be allowed to use a VPN except to use the database

11   unless, as your Honor suggested, there's an alternative way.

12           I'm just worried because we got a communication from

13   company counsel this week when they saw the correspondence

14   between us and the government, they said, by the way, you know,

15   if you want to look at this database, your client needs to use

16   a VPN.  So, if there's an alternative that can be fashioned

17   along the lines your Honor suggested for looking at the

18   database, we would be fine with that, but, as of today, I don't

19   know that there is.

20           THE COURT:  Well, one of my problems here is that you

21   have (a) your client and (b) access to high-tech people who can

22   advise you about this; the government may also, I don't know; I

23   don't.  And viewing this from the perspective that it's your

24   burden to satisfy me here, what about the defense bearing the

25   cost of a consultant to the Court to advise me about this — not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SUPERSEDING INDICTMENT** |
| v. | S3 22 Cr. 673 (LAK) |
| SAMUEL BANKMAN-FRIED, a/k/a "SBF," | |
| Defendant. | |

### Overview

1.      From at least in or about 2019, up to and including in or about November 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, corrupted the operations of the cryptocurrency companies he founded and controlled—including FTX.com ("FTX") and Alameda Research ("Alameda")—through a pattern of fraudulent schemes that victimized FTX customers, investors, financial institutions, lenders, and the Federal Election Commission ("FEC"). Exploiting the trust that FTX customers placed in him and his exchange, BANKMAN-FRIED stole FTX customer deposits, and used billions of dollars in stolen funds for a variety of purposes, including, among other things, to support the operations and investments of FTX and Alameda; to fund speculative venture investments; to make charitable contributions; to enrich himself; and to try to purchase influence over cryptocurrency regulation in Washington, D.C. by steering tens of millions of dollars of illegal campaign contributions to both Democrats and Republicans.

2.      Founded in 2019, FTX, the global cryptocurrency exchange led by SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, grew quickly, and with it grew BANKMAN-FRIED's public profile, political influence, and personal fortune. In promoting FTX and its smaller sister company FTX.US, which he also controlled, BANKMAN-FRIED represented

himself as the figurehead of a trustworthy and law-abiding segment of the cryptocurrency industry that was focused not only on profits, but also on investor and client protection. Likewise, in public statements, including in testimony before the United States Senate, BANKMAN-FRIED represented that FTX had a focus on "consumer protection," had adopted "principles for ensuring investor protections on digital asset-platforms," including "avoiding or managing conflicts of interest," and that "as a general principle FTX segregates customer assets from its own assets across our platforms." As recently as late 2022, BANKMAN-FRIED boasted about FTX's profits and portrayed himself as a savior of the cryptocurrency industry, making venture investments and acquisitions purportedly to assist struggling industry participants. BANKMAN-FRIED used FTX.US to further burnish his image, spending millions of dollars on celebrity advertisements for FTX.US during the 2022 Super Bowl that promoted FTX.US as the "safest and easiest way to buy and sell crypto" and "the most trusted way to buy and sell" digital assets.

3. In fact, and as SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, well knew, FTX—which by early 2022 claimed to handle approximately $15 billion in daily trading volume on its platforms—was not focused on investor or client protection, nor was it the legitimate business that BANKMAN-FRIED claimed it was. Contrary to BANKMAN-FRIED's promises to FTX customers that the exchange would protect their interests and segregate their assets, BANKMAN-FRIED routinely tapped FTX customer assets to provide interest-free capital for his and Alameda's private expenditures, and in the process exposed FTX customers to massive, undisclosed risk. In addition, while BANKMAN-FRIED publicly claimed that FTX operated independently from Alameda's cryptocurrency trading and investments in other companies, by his design, the reality was otherwise. BANKMAN-FRIED controlled FTX, FTX.US, and Alameda

2

and used them to prop each other up, notwithstanding conflicts of interests and outright lies to the contrary.

4.       SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, perpetrated this multi-billion-dollar fraud through a series of systems and schemes that allowed BANKMAN-FRIED, through Alameda, to access and steal FTX customer deposits without detection.  For instance, in 2021, FTX began to accept customer fiat deposits into an Alameda-affiliated bank account that itself was established through a fraudulent scheme that BANKMAN-FRIED directed.   This account functioned as a mechanism for the routine and brazen misappropriation of those deposits. BANKMAN-FRIED also caused the creation of secret loopholes in the computer code that powered FTX's trading platform—loopholes that allowed Alameda to incur a multi-billion-dollar negative balance on FTX that BANKMAN-FRIED knew Alameda could not repay.   Further, BANKMAN-FRIED concealed from both Alameda's lenders and FTX's equity investors the fact that Alameda had taken billions of dollars from FTX.  And at relevant times, BANKMAN-FRIED required his co-conspirators and others who worked for him to communicate using encrypted and ephemeral messaging platforms that self-deleted, thereby preventing regulators and law enforcement from later obtaining a record of his misdeeds.

5.       SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, used the FTX customer funds he misappropriated and caused to be misappropriated to, among other things, support the trading and operations of Alameda, fund acquisitions and venture investments, and finance in substantial part BANKMAN-FRIED's unlawful political influence campaign, which involved flooding the political system with tens of millions of dollars in illegal contributions to both Democrats and Republicans made in the names of others in order to obscure the true source of the money and evade federal election law.

3

6.      In or about early November 2022, an internet news organization leaked what appeared to be Alameda's balance sheet, revealing publicly that Alameda's solvency was dependent on the multi-billion-dollar valuation that Alameda assigned to its holdings of FTT, FTX's proprietary digital currency, which was illiquid and difficult to value.   Following this revelation, substantial numbers of FTX customers began seeking to withdraw their funds from FTX.   Knowing that FTX had misappropriated billions of dollars in customer funds, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, tried to reassure FTX customers, and slow customer withdrawals from FTX, with what he knew were false public claims about the ability of FTX to repay customer deposits, the security of FTX's customer assets, and the status of Alameda's balance sheet.   BANKMAN-FRIED also transferred funds putatively belonging to Alameda to fill an approximately $45 million hole in customer assets on FTX.US.

7.      In or about November 2022, in a last-ditch effort to secure sufficient liquid capital to satisfy FTX customer withdrawals, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, doubled down on his fraudulent schemes by soliciting billions of dollars in additional capital investments from existing and potential investors in FTX, many of whom he had previously defrauded.   In soliciting this additional capital, BANKMAN-FRIED made more false representations to potential investors about the source of the multi-billion-dollar hole in FTX's balance sheet caused by his misappropriation of customer deposits and his own knowledge of how the hole originated.

8.      The efforts of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, to raise sufficient capital to satisfy the demand for customer withdrawals failed.   In November 2022, FTX halted trading and entered bankruptcy along with Alameda, FTX.US, and dozens of related entities.   Left in FTX's wake were thousands of customers who had trusted BANKMAN-FRIED,

4

FTX, and FTX.US with billions of dollars in savings and investment capital and found themselves overnight unable to withdraw their funds and unsure about whether they would ever be repaid.

### Background on Alameda Research and FTX

9.     In or about November 2017, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, founded Alameda, a quantitative cryptocurrency trading firm that had operations in the United States, Hong Kong, and The Bahamas.  At the time, Alameda principally engaged in high-frequency cryptocurrency arbitrage trading, and also some market making, pooling of digital assets to earn interest (called yield farming), and other forms of cryptocurrency trading.  At times, Alameda was financially successful.  In or about 2019, FTX described Alameda as the "largest liquidity provider and market maker" in the digital asset space, trading "$600 million to 1 billion a day" and accounting for "roughly 5% of global volume" in digital asset trading.  BANKMAN-FRIED and Gary Wang were the sole equity owners of the firm, and BANKMAN-FRIED was the CEO of Alameda from in or about November 2017 until in or around October 2021, at which time he passed the title to two Alameda employees.  Even after BANKMAN-FRIED was no longer CEO, however, he remained Alameda's ultimate decisionmaker, and directed, among other things, trading strategy, investment decisions, and venture spending.

10.     In or around May 2019 and while still the CEO of Alameda, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, founded and served as the CEO of FTX Trading Ltd., a global cryptocurrency exchange that, through several subsidiary entities, did business as FTX.  FTX offered customers the ability to trade in cryptocurrencies such as bitcoin, ether, and stablecoins, as well as crypto derivatives such as options, swaps, and futures.  FTX also offered customers a "spot market" for trading cryptocurrency with other FTX customers in exchange for other cryptocurrencies or traditional currency, also known as fiat (referred to below generally as

5

"dollars"), such as U.S. dollars. FTX also eventually added a "spot margin trading and borrowing" service, which permitted FTX customers who opted into the service to either lend their crypto assets to other customers for spot trading, or trade on credit using borrowed crypto assets by posting collateral and borrowing crypto assets through the spot market on FTX.

11. From its launch, FTX grew rapidly. By in or about 2020, FTX was one of the largest digital asset exchanges in the world based on trading volume, and by in or about early 2022, FTX claimed to handle approximately $15 billion in daily trading volume on its platforms.

12. SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, raised at least $1.8 billion dollars from investors, including investors based in the United States and the Southern District of New York, in exchange for various classes of stock in FTX. This money was raised through multiple fundraising rounds, including: (1) a fundraising completed in or around August 2019 of approximately $8 million; (2) a fundraising completed in or around July 2021 of approximately $1 billion; (3) a fundraising completed in or around October 2021 of approximately $420 million; and (4) a fundraising completed in or around January 2022 of approximately $500 million. BANKMAN-FRIED continued efforts to fundraise for FTX at least up to and including November 2022.

### **BANKMAN-FRIED's Multiple Schemes to Defraud**

#### At BANKMAN-FRIED's direction, FTX Fraudulently Opened and Used Bank Accounts Affiliated with Alameda to Receive Customer Deposits and Transmit Funds

13. From FTX's founding in or about 2019, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, sought to use the United States financial system, and in particular, bank accounts in the United States, to promote FTX's business. In particular, after FTX launched in or around May 2019, and in order to attract customers and their assets, including U.S. dollars, FTX needed bank accounts that would allow FTX customers to deposit dollars with FTX that could be

6

used to purchase cryptocurrency assets and pay for transactions. When FTX was founded, however, many U.S. banks were reluctant to do business with cryptocurrency companies, and those banks that were willing to open accounts for cryptocurrency companies had extensive customer due diligence and licensing requirements, with which FTX was not compliant.

14.    Because FTX did not have its own bank accounts for holding customer deposits, for a period of time in or around 2019 and 2020, FTX instructed customers to wire dollar deposits to bank accounts that were owned or controlled by Alameda, which at the time SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also controlled as the CEO. These Alameda accounts had been opened as trading accounts and had been used almost exclusively for Alameda's trading purposes until they were also employed as accounts for FTX to receive and transmit its customer deposits and withdrawals. Alameda never informed the banks where these accounts were held that these accounts in Alameda's name began to be used in substantial part by FTX to accept customer deposits for, and as a vehicle for customer withdrawals from, FTX's cryptocurrency exchange.

15.    During the time period in which FTX was using Alameda bank accounts to receive and transmit customer deposits, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others, made efforts to open bank accounts for this purpose in FTX's name. In particular, BANKMAN-FRIED, through Alameda employees, attempted to open an account for FTX at a bank in California ("Bank-1"), the deposits of which were insured by the Federal Deposit Insurance Corporation and where Alameda already had bank accounts. Bank-1 made clear, however, that it would not open an account for customer deposits and withdrawals absent evidence that FTX was licensed and registered, including federal registration as a money services business, and that, in any event, Bank-1 would need to conduct an enhanced due diligence process before

7

opening any account used to process customer deposits and withdrawals.

16.     In or about January 2020, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, contacted Bank-1 about opening an FTX account. BANKMAN-FRIED learned from Bank-1 that BANKMAN-FRIED should not attempt to open an account for FTX, an international platform, at that time. He was further told that if he wished to open an account to process customer deposits and withdrawals for FTX.US, FTX's business in the United States, FTX.US would need to register as a money services business. While BANKMAN-FRIED did later register FTX.US as a money services business in 2020, no attempts were made to make FTX a licensed money services business and BANKMAN-FRIED never sought to have FTX or Alameda comply with the regulatory requirements of licensure. Instead, FTX continued to use Alameda trading accounts to accept customer deposits and process customer withdrawals.

17.     In part to obscure the relationship between FTX and Alameda, and in order to overcome Bank-1's refusal to open a bank account for FTX without extensive due diligence and licensing, in or about August 2020, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, directed the incorporation of a new U.S.-based entity, North Dimension. BANKMAN-FRIED was listed as sole owner, CEO, and president of North Dimension, which had no employees or business operations outside of its bank account. BANKMAN-FRIED and others chose the name "North Dimension" in part to conceal that there was a relationship between North Dimension and Alameda from FTX customers and from banks approving transactions with the North Dimension bank account. BANKMAN-FRIED also directed the creation of a website for North Dimension and used a credit card in his name to fund the hosting services for the website.

18.     Aware of the fact that Bank-1 would not open an exchange account or account for receiving customer deposits for an entity without the appropriate registration and enhanced due

8

diligence, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and other Alameda employees told Bank-1 a false story, namely, that North Dimension sought to open an account to function as a trading account connected to Alameda's existing trading accounts, instead of the truth, which was that the North Dimension account would function as an account to receive and transmit FTX customer deposits.   Under BANKMAN-FRIED's supervision, employees of Alameda completed an account application that falsely stated that the purpose of the North Dimension bank account was for "trading" and "market making."   Bank-1 was also given a completed North Dimension due diligence questionnaire—which BANKMAN-FRIED signed— that falsely stated that North Dimension "trades on multiple cryptocurrency exchanges worldwide for its own account" and that North Dimension "also participates in direct peer-to-peer, OTC purchases and sales with certain third parties for its own account."   Furthermore, despite the fact that North Dimension was created for the purpose of transmitting customer deposits on and off the FTX exchange, the due diligence questionnaire falsely claimed that North Dimension was not a money services business.

19.   In or about April 2021, Bank-1 approved the opening of the North Dimension account, without enhanced due diligence or review by Bank-1's executive committee, as would have been required had the true purposes of North Dimension's account been disclosed to Bank-1.

20.   Once the North Dimension bank account was opened, FTX directed customer dollar deposits to the North Dimension account.   Thereafter, when FTX customers deposited or withdrew fiat currency, Alameda personnel, who maintained control over the North Dimension account and acted under the direction and supervision of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators, manually credited or subtracted the customer's FTX account with the corresponding amount of fiat currency on an internal ledger system.   Customers could

9

then convert their deposits to a range of cryptocurrencies and traditional currencies, engage in various types of trading, and make withdrawals denominated in various types of cryptocurrencies and traditional currencies. FTX charged fees and generated revenues from many of these activities, using the fraudulently obtained access to a U.S. bank account. Customers could also convert various cryptocurrencies and traditional currencies to dollars on their FTX account, and withdraw the dollars from FTX. FTX sent customer withdrawals by wire transfer from the North Dimension bank account, and by at least summer 2021 charged a fee for dollar withdrawals.

The Misappropriation of Customer Deposits

21.     Despite representations SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, made and caused to be made to the contrary, FTX never held customer funds in dedicated accounts for the benefit of customers or segregated from Alameda's assets. Rather, with the knowledge and under the supervision of BANKMAN-FRIED, Alameda commingled FTX customer funds with Alameda assets in Alameda accounts. With BANKMAN-FRIED's knowledge and at his direction, Alameda regularly took money from accounts funded by or that included funds from FTX customers, including the North Dimension account. Alameda ultimately spent billions of dollars of those FTX customer funds, among other things, to finance Alameda's trading and expenses, to make venture investments directed by BANKMAN-FRIED, and to bankroll tens of millions of dollars in campaign contributions made in the names of individuals but in fact funded from Alameda accounts.

22.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, was able to accomplish this scheme not only by causing FTX customers to deposit money into accounts controlled by Alameda, but also by secretly building Alameda's capacity to misuse FTX customer funds into the computer code that operated the FTX trading platform.

10

23.     In or about July 2019, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, publicly claimed that: "Alameda is a liquidity provider on FTX but their account is just like everyone else's."  Such representations continued through 2022, with BANKMAN-FRIED asserting, for example, that "[t]here are no parties that have privileged access" on FTX, and that "Alameda is a wholly separate entity."  Contrary to those representations, BANKMAN-FRIED had caused FTX's computer code and software to allow Alameda to accrue a negative balance on FTX's exchange.  That modification to FTX's code, along with others implemented at BANKMAN-FRIED's direction, made Alameda's account unlike those of other customers.  While FTX typically would have automatically liquidated a client's account once its negative balance exceeded the amount of any posted collateral, net of fees, FTX permitted Alameda to maintain a negative balance, draw on a multi-billion-dollar line of credit, borrow funds from FTX without sufficient collateral, evade auto-liquidation, and withdraw funds off the exchange.  Over time, BANKMAN-FRIED directed that Alameda's credit limit be raised to approximately $65 billion, which in practice permitted Alameda to draw on FTX accounts funded by customer assets on an unlimited basis—in amounts that exceeded FTX revenue and tapped into customer funds.

24.     Over time, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, hid the close relationship between FTX and Alameda and his continued involvement in and control of both FTX and Alameda in order to minimize the appearance of potential conflicts of interest and to prevent further scrutiny that might uncover his schemes.  To publicly distance himself from Alameda, BANKMAN-FRIED stepped down as CEO of Alameda in or about October 2021, and named Caroline Ellison, a long-time associate and co-conspirator in the fraudulent scheme, and another individual as co-CEOs of Alameda.  But in practice, BANKMAN-FRIED continued routinely to direct investment and operational decisions at Alameda and exercised supervisory

control over it.

25.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also took steps to conceal that his multi-billion-dollar venture investments and expenditures were funded by transfers originating with Alameda, and therefore funded with FTX customer funds.  For example, BANKMAN-FRIED directed Ellison to change the name of Alameda entities that were funding venture capital investments by FTX so that it would not be apparent that the money was coming from Alameda.  Similarly, BANKMAN-FRIED personally borrowed more than $1 billion from Alameda and oversaw similar borrowing by other FTX executives, which was then principally used to make investments in the name of BANKMAN-FRIED and his associates, rather than in the name of Alameda.  This conduct served to conceal the close connection to Alameda, as well as the criminal source of the funds.  At the same time, BANKMAN-FRIED falsely projected ignorance about Alameda's affairs.

26.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also deceived FTX investors about the exchange's relationship with Alameda, and about the safety of the exchange more generally, through the use of audited financial statements provided to investors.  In the course of the audits underlying the financial statements, BANKMAN-FRIED and those acting at his direction misled auditors and avoided providing information about FTX customers, including Alameda, and about the commingling of customer assets with Alameda funds, as well as Alameda's enormous line of credit on the exchange.  When one co-conspirator expressed concern to BANKMAN-FRIED about auditors disapproving of the commingling of customer assets with Alameda funds, BANKMAN-FRIED assured that co-conspirator that the auditors would not find out.  The audited financials were then used to falsely reassure customers and investors that FTX had proper risk management controls and systems for storing customer assets.

<u>BANKMAN-FRIED Directed Alameda to Misappropriate Billions of Dollars in FTX Customer
Funds to Repay Alameda's Lenders</u>

27.     In or around June 2022, the cryptocurrency markets experienced a downturn.
SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, through Alameda, was heavily
invested in the cryptocurrency industry through cryptocurrency trading and related illiquid venture
investments.  As a result of the market downturn, Alameda faced demands for repayment from
multiple third-party cryptocurrency lenders on substantial outstanding loans.  While Alameda was
obligated to repay the loans on demand, Alameda lacked the funds to repay these lenders.

28.     Rather than allow Alameda to default on its loans, which would have jeopardized
the survival of both Alameda and FTX, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the
defendant, authorized Alameda to draw down billions of dollars in customer assets from FTX and
to use those assets to repay Alameda's lenders.  The billions of dollars that BANKMAN-FRIED
caused Alameda to draw from FTX greatly exceeded FTX's revenue, liquid capital, and available
funds under FTX's relatively small peer-to-peer lending program.  BANKMAN-FRIED was able
to divert billions of dollars in FTX customer funds to Alameda undetected as a result of the features
to benefit Alameda that he had directed be built into FTX's code and software.

29.     Shortly after authorizing the misappropriation billions of dollars of FTX customer
funds to repay Alameda's loans, in or about July 2022, SAMUEL BANKMAN-FRIED, a/k/a
"SBF," the defendant, tweeted, "Backstopping customer assets should always be primary.
Everything else is secondary."

30.     Even after SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had
misappropriated billions of dollars of FTX customer funds to repay Alameda's lenders,
BANKMAN-FRIED continued to direct discretionary investments, charitable contributions, and
political donations using Alameda funds, including by directing that Alameda continue to draw on

its line of credit on FTX.

31.     Although SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had caused Alameda to repay lenders using FTX customer funds, Alameda still had at least hundreds of millions of dollars in outstanding loans, and had to provide financial information to its creditors. BANKMAN-FRIED directed Ellison to devise a way to mislead those creditors about the money Alameda had "borrowed" from FTX, as well as about the substantial personal loans Alameda had made to FTX executives, and together, BANKMAN-FRIED and Ellison provided false and misleading financial statements to creditors.

BANKMAN-FRIED Made Unlawful Political Contributions to Acquire Bipartisan Influence

32.     As he used Alameda to siphon off FTX's customer funds and deploy them for political causes, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, became one of the largest publicly reported political donors for the 2022 midterm elections. But his effort to influence politics did not stop there. To avoid certain contributions being publicly reported in his name, BANKMAN-FRIED conspired to and did have certain political contributions made in the names of two other FTX executives ("CC-1" and "CC-2"). Those contributions were made directly to candidates in the names of those FTX executives, but with FTX and Alameda funds.

33.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, perpetuated his campaign finance scheme at least in part to improve his personal standing in Washington, D.C., increase FTX's profile, and curry favor with candidates that could help pass legislation favorable to FTX or BANKMAN-FRIED's personal agenda, including legislation concerning regulatory oversight over FTX and its industry. To accomplish these goals, BANKMAN-FRIED caused substantial contributions to be made in support of candidates of both major political parties and across the political spectrum. BANKMAN-FRIED, however, did not want to be known as a left-

14

leaning partisan, or to have his name publicly attached to Republican candidates. In those instances when he wanted to obscure his association with certain contributions, BANKMAN-FRIED and others conspired to and did have those contributions made in the names of CC-1 and CC-2.

34.     As part of this scheme, contributions were coordinated to be made in the names of the two FTX straw donors to candidates they did not necessarily support or know. These straw donations were instead made for purposes of furthering the political agenda of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, while providing him cover to avoid being associated with certain contributions, and concealing that the source of the contributions was in fact Alameda.

35.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators selected CC-1 to be the face of BANKMAN-FRIED's and FTX's more left-leaning spending. CC-1 ultimately became—at least in name—one of the largest Democratic donors in the 2022 midterm elections and made donations to further BANKMAN-FRIED's agenda that CC-1 otherwise would not have made.

36.     For instance, in or around 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others agreed that he and his co-conspirators should contribute at least a million dollars to a super PAC that was supporting a candidate running for a United States Congressional seat and appeared to be affiliated with pro-LGBTQ issues, and selected CC-1 to be the contributor. A political consultant working for BANKMAN-FRIED asked CC-1 to make the contribution and told CC-1, "in general, you being the center left face of our spending will mean you giving to a lot of woke shit for transactional purposes." CC-1 expressed discomfort with making the contribution in his name, but agreed there was not anyone "trusted at FTX [who was] bi/gay" in a position to

15

make the contribution.  At the direction of BANKMAN-FRIED and individuals working for him, CC-1 nonetheless contributed to the PAC.

37.     Likewise, it was the preference of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, to keep contributions to Republicans "dark." In keeping with that preference, CC-2, who publicly aligned himself with conservatives, made contributions to Republican candidates that were directed by BANKMAN-FRIED and funded by Alameda.

38.     From at least in or around March 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators began coordinating political contributions paid for using FTX and Alameda funds through an encrypted, auto-deleting Signal chat called "Donation Processing."  From time to time, BANKMAN-FRIED and his co-conspirators substituted other individuals in BANKMAN-FRIED's place for contributions originally intended to be made in BANKMAN-FRIED's name.  For instance, shortly before the midterm elections, an FTX employee was directed to "wire $107k from [BANKMAN-FRIED] personal to New York State Democratic Committee," but then was asked by BANKMAN-FRIED to "update this to a 107k contribution from [CC-1]."

39.     In total, between in or about the fall of 2021 and the November 2022 election, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and the two FTX executives who served as straw donors as part of his scheme—CC-1 and CC-2—collectively made millions of dollars in contributions, including in "hard money" contributions to federal candidates from both major political parties.

40.     The money used to make these political donations originated from Alameda bank accounts, and included funds that had been deposited by FTX customers.  Notwithstanding his awareness of the campaign finance laws, in order to conceal the true source of the funds, SAMUEL

16

BANKMAN-FRIED, a/k/a "SBF," the defendant, agreed with others that funds for contributions would be transferred from Alameda's bank accounts, which also contained FTX customer funds, to bank accounts in the name of the donors, and then quickly transferred from those individuals' bank accounts to political campaigns.

41.    In total, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant,  and his co-conspirators made over 300 political contributions, totaling tens of millions of dollars, that were unlawful because they were made in the name of a straw donor or paid for with corporate funds. In dozens of instances, BANKMAN-FRIED's use of straw donors allowed him to evade contribution limits on individual donations to candidates to whom he had already donated.  As a result of this fraudulent conduct, BANKMAN-FRIED and his co-conspirators caused false information to be reported by campaigns and PACs to the FEC, which had the result of impairing and impeding the FEC's reporting and enforcement functions.

42.    To further conceal the scheme, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators recorded the outgoing wire transfers from Alameda to individuals' bank accounts for purposes of making contributions as Alameda "loans" or "expenses."  But unlike other loans that were made to FTX executives, including to BANKMAN-FRIED, CC-1, and CC-2, these outgoing wire payments were not documented in agreements or on term sheets, and there were no set interest rates, no interest payments, no collateral, and no evidence of repayment.  While employees at Alameda generally tracked loans to executives, the transfers to BANKMAN-FRIED, CC-1, and CC-2 in the months before the 2022 midterm elections were not recorded on internal Alameda tracking spreadsheets.  Instead, an internal Alameda spreadsheet noted over $100 million in political contributions, even though FEC records reflect no political contributions by Alameda for the 2022 midterm elections to candidates or PACs.

17

43.     In or around November 2022, as FTX customer withdrawals were surging and FTX was experiencing a solvency crisis (as described below), and just days before the midterm elections, CC-1 messaged SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, that he was concerned about the "maybe 80m" of "donations/personal/etc that went through my bank [account] and are in my name." CC-1 proposed a back-dated transaction to undo any sort of debt he might owe as a result of wire transfers being recorded on Alameda's ledger as "loans." BANKMAN-FRIED asked CC-1 how they would go about doing it, and CC-1 proposed a retroactive sale of certain cryptocurrencies "earlier in 2022" to remove the $80 million liability CC-1 had to FTX/Alameda, which would have further concealed the campaign finance scheme. The transaction was not, however, completed before FTX's collapse.

### BANKMAN-FRIED's Lies During FTX's Collapse

44.     On or about November 2, 2022, an online news publication published an article that appeared to leak Alameda's balance sheet, disclosing that the predominant portion of Alameda's $14.6 billion of assets comprised Alameda's holdings of FTX's digital token, FTT. Prior to November 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had engineered the price of FTT, including by directing that Alameda buy large amounts of the token to maintain its price when it was dropping, and to keep such price manipulation a secret. Over time, FTT became a sizeable asset on Alameda's balance sheet despite its illiquidity, and Alameda began using it as collateral to obtain billions of dollars in loans from third-party lenders for Alameda, which exponentially increased Alameda's ability to obtain sizeable loans, while at the same time leaving Alameda exposed to significant financial risk.

45.     After the November 2, 2022 leak showing Alameda's assets comprised mostly FTT, commentary expressing fear, uncertainty, and doubt about the value of FTT, and in turn the

18

prospects of FTX as an exchange, spread across the internet.

46.     In an effort to tamp down those concerns about FTX, Alameda, and FTT, at the direction of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, Ellison tweeted on or about November 6, 2022: "A few notes on the balance sheet info that has been circulating recently: - that specific balance sheet is for a subset of our corporate entities, we have > $10b of assets that aren't reflected there . . . . given the tightening in the crypto credit space this year we've returned most of our loans by now." This tweet was misleading in several respects. First, while Alameda had by that time repaid most of its loans to external lenders, it had done so by misappropriating billions of dollars of FTX customer funds that it still owed to FTX. Second, the supposed additional $10 billion in assets included not only the loans Alameda had made to related-parties, like BANKMAN-FRIED and other FTX executives, but also the value of investments made by BANKMAN-FRIED with that money, even though those investments were not owned or controlled by Alameda.

47.     That same day, on or about November 6, 2022, the CEO of another cryptocurrency exchange tweeted that he had decided to liquidate approximately $2.1 billion of FTT held by his exchange. Soon after, Ellison, in consultation with SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others, and in an effort to prevent the collapse of FTT's value, tweeted in response that if the CEO was "looking to minimize the market impact on your FTT sales, Alameda will happily buy it all from you today at $22!" The effort to blunt the effect of the threatened sale of FTT was unsuccessful. The value of the FTT token fell and many FTX customers sought to withdraw their assets from FTX, resulting not only in the plummeting of FTT's value, but also the equivalent of a cryptocurrency bank run of several billion dollars.

48.     Because SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had

misappropriated FTX customer assets for use by Alameda, however, FTX lacked the funds to meet surging customer demands for withdrawals of their deposits. At BANKMAN-FRIED's direction, Alameda began liquidating its assets and using the proceeds to satisfy FTX customer withdrawals. On or about November 6, 2022, BANKMAN-FRIED sent CC-1 a screenshot of a message from Ellison that read, in part: "I just had an increasing dread of this day that was weighing on me for a long time, and now that it's actually happening it just feels great to get it over with one way or another."

49.     In an attempt to stem the withdrawals from FTX and forego a solvency crisis, on or about November 7, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, posted a series of false and misleading tweets. First, he tweeted: "A competitor is trying to go after us with false rumors. FTX is fine. Assets are fine." He added in a second tweet, in part, "FTX has enough to cover all client holdings. We don't invest client assets (even in treasuries). We have been processing all withdrawals, and will continue to be." In a third tweet about FTX, BANKMAN-FRIED stated: "It's heavily regulated, even when that slows us down. We have GAAP audits, with > $1B excess cash. We have a long history of safeguarding client assets, and that remains true today."

50.     Despite his false assurances, the fraudulent scheme of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, caused significant negative price impact on the value of commodities in interstate commerce in the United States, including bitcoin and ether spot and future prices.

51.     Customer withdrawals continued to surge and threaten the solvency of FTX. Beginning on or about November 7, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others acting at his direction, began contacting existing and potential investors for

a multi-billion-dollar bailout.  BANKMAN-FRIED supplied existing and potential investors with what purported to be FTX's balance sheet, showing that FTX had approximately $9.6 billion of assets versus approximately $8.9 billion of liabilities, which would yield a positive net equity of approximately $700 million.  The balance sheet noted, however, that FTX had an additional liability of $8 billion in a "Hidden, poorly internally labled [sic] 'fiat@' account," and that FTX had experienced $5 billion in customer withdrawals on November 6, 2022.  Beneath these two line items, BANKMAN-FRIED stated: "There are many things I wish I could do differently than I did, but the largest are represented by these two things: the poorly labeled internal bank-related account, and the size of customer withdrawals during a run on the bank."

52.     In fact, and as SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, well knew, the "[h]idden, poorly internally labled [sic] 'fiat@' account," was the multi-billion-dollar entry on FTX's ledger reflecting the amount of FTX customer fiat deposits accepted into Alameda's bank accounts that had not been maintained for the benefit of customers or repaid to FTX, and of which BANKMAN-FRIED was aware throughout the relevant time period.  The labeling of the account was deliberate: BANKMAN-FRIED had previously authorized moving the ledger entry of Alameda's fiat liability from an account with "fiat" in its name, into a subaccount under the last name of an Alameda intern.  On or about November 6, 2022, in the course of directing CC-1 and others to calculate Alameda assets and liabilities for purposes of estimating available funds to meet customer withdrawal demands, BANKMAN-FRIED specifically told CC-1 to include this subaccount in his calculations, describing it as the account that "has the old fiat@ account."

53.     On or about November 9, 2022, it became clear to FTX and Alameda employees that the companies would not survive the solvency crisis because there were not sufficient funds

to cover customer withdrawals, and there was no third party willing to bailout FTX. That day, Ellison addressed Alameda employees in an all-hands meeting. Ellison acknowledged that earlier that year, she, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, Wang, and CC-1 had decided to use, and used, FTX customer assets to pay Alameda's debts to lenders.

54.     At the same time that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, was trying to address FTX's solvency crisis caused by the misappropriation of FTX customer assets, he prioritized certain disbursements at the expense of satisfying FTX customer withdrawals. For example, on or about November 8, 2022, the general counsel of FTX.US, in a Signal chat that included BANKMAN-FRIED and several close associates, demanded: "I need to know the fucking truth about FTX US right now." Soon thereafter, on or about November 9, 2022, BANKMAN-FRIED was told in the same Signal chat that there was an approximately $45 million deficit in FTX.US customer assets. BANKMAN-FRIED responded that he had transferred $46 million from Alameda to FTX.US. On or about November 8, 2022, FTX suspended customer withdrawals. Shortly thereafter, however, BANKMAN-FRIED reopened withdrawals only for customers in The Bahamas, resulting in millions of dollars being preferentially withdrawn from the exchange, while other customers of FTX had no true access to it.

55.     To conceal his activities and the activities of his co-conspirators during the unraveling of FTX, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant communicated with his employees over Signal, an ephemeral messaging application. BANKMAN-FRIED had previously instructed employees to communicate over Signal, and directed that employee Signal messages be set to auto-delete after brief periods of time, in part to prevent the preservation of evidence that could be used against him. In November 2022, the general counsel of FTX.US warned employees that they should preserve documents because of the involvement of regulators,

and then posted in a company Slack channel that FTX would need to be shut down. BANKMAN-FRIED, however, deleted the general counsel's message about FTX being shut down, continued to use Signal messaging, and proceeded to delete some of his own statements on Twitter, including his tweets about customer assets being "fine."

56.    Before resigning from FTX, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, met with one of FTX's in-house attorneys to discuss what, if any, legal explanation BANKMAN-FRIED could provide for the use of customer funds in response to questions from potential investors.    BANKMAN-FRIED and the attorney discussed and dismissed several potential explanations as inadequate.    In particular, they considered whether BANKMAN-FRIED could claim that Alameda had borrowed from customers who had opted into FTX's peer-to-peer borrow/lend program.    BANKMAN-FRIED and the attorney, however, quickly dismissed the explanation because Alameda's borrowing greatly exceeded the funds lent through the FTX borrow/lend program, even if Alameda had been the only borrower.    BANKMAN-FRIED, however, later publicly embraced the explanation that he earlier had acknowledged privately was unsupported by the facts: that Alameda did not misuse FTX customer funds but permissibly borrowed funds that customers had opted in to FTX's peer-to-peer lending program.

57.    On November 11, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, resigned from FTX, and FTX and approximately one hundred affiliated entities, including FTX.US, and Alameda filed for Chapter 11 bankruptcy protection.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Conspiracy to Commit Wire Fraud on Customers of FTX)

The Grand Jury charges:

58.    The allegations contained in paragraphs 1 through 57 of this Indictment are

23

repeated and realleged as if fully set forth herein.

59.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

60.     It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, BANKMAN-FRIED agreed with others to defraud customers of FTX by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda, and to make investments, and for other purposes.

(Title 18, United States Code, Section 1349.)

### COUNT TWO
### (Wire Fraud on Customers of FTX)

The Grand Jury further charges:

61.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

62.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF,"

24

the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud customers of FTX by misappropriating those customers' deposits, and using those deposits to pay expenses and debts of Alameda to make investments, and for other purposes.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Conspiracy to Commit Fraud on Customers of FTX in Connection with Purchase and Sales of Derivatives)

The Grand Jury further charges:

63.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

64.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, commodities fraud, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), and Title 17, Code of Federal Regulations, Section 180.1.

65.     It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly, would and did, directly and indirectly, use and employ, and attempt to use and employ, in connection with a

25

swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (a) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (b) making, and attempting to make, an untrue and misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (c) engaging, and attempting to engage in an act, practice, and course of business, which operated and would operate as a fraud and deceit upon a person, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), to wit, BANKMAN-FRIED agreed with others to defraud customers of FTX trading or intending to trade futures, options, swaps, and derivatives by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda, and to make investments, and for other purposes.

Overt Act

66.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere: in or about June 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others misappropriated FTX customer deposits in order to, among other things, satisfy loan obligations owed by Alameda Research.

(Title 18, United States Code, Section 371.)

**COUNT FOUR**
**(Fraud on Customers of FTX in Connection with Purchase and Sales of Derivatives)**

The Grand Jury further charges:

67.    The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

26

68.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, willfully and knowingly, directly and indirectly, used and employed, and attempted to use and employ, in connection with a swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (1) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (2) making, and attempting to make, an untrue and misleading statement of material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (3) engaging, and attempting to engage in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, to BANKMAN-FRIED, along with others, engaged in a scheme to defraud customers of FTX trading or intending to trade futures, options, swaps, and derivatives by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda, and to make investments, and for other purposes.

(Title 7, United States Code, Sections 9(1) and 13(a)(5), and Title 17, Code of Federal Regulations, Section 180.1; Title 18, United States Code, Section 2.)

**COUNT FIVE**
**(Conspiracy to Commit Securities Fraud on Investors in FTX)**

The Grand Jury further charges:

69.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

70.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF,"

27

the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

71.     It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly would and did, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, BANKMAN-FRIED agreed with others to engage in a scheme to defraud investors in FTX by providing false and misleading information to those investors regarding FTX's financial condition and the relationship between FTX and Alameda.

Overt Act

72.     In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere: on or about September 18, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, caused an email to be sent to an FTX investor in New York, New York that contained

28

materially false information about FTX's financial condition.

(Title 18, United States Code, Section 371.)

## COUNT SIX
### (Securities Fraud on Investors in FTX)

The Grand Jury further charges:

73.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

74.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud investors in FTX by providing false and misleading information to those investors regarding FTX's financial condition and the relationship between FTX and Alameda.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

29

## COUNT SEVEN
**(Conspiracy to Commit Wire Fraud on Lenders to Alameda Research)**

The Grand Jury further charges:

75.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

76.     From at least in or about June 2022, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Sections 1343.

77.     It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, BANKMAN-FRIED agreed with others to defraud, including through the use of interstate wires, lenders to Alameda by providing false and misleading information to those lenders regarding Alameda's financial condition.

(Title 18, United States Code, Section 1349.)

30

## COUNT EIGHT
### (Wire Fraud on Lenders to Alameda Research)

The Grand Jury further charges:

78.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

79.     From at least in or about June 2022, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud, including through the use of interstate wires, lenders to Alameda by providing false and misleading information to those lenders regarding Alameda's financial condition.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT NINE
### (Conspiracy to Commit Bank Fraud)

The Grand Jury further charges:

80.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

81.     From at least in or about October 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine,

31

conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

82.     It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did execute, and attempt to execute, a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, as defined in Title 18, United States Code, Section 20, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, BANKMAN-FRIED, along with others, in order to open a bank account and to obtain customer deposits and fees, falsely represented to a financial institution that the account would be used for trading and market making, even though BANKMAN-FRIED knew that the account would be used to receive and transmit customer funds in the operation of a cryptocurrency exchange, and thereafter, in connection with using the account for the receipt and transmission of customer funds, omitted material facts in a manner that made what was communicated misleading.

(Title 18, United States Code, Section 1349.)

### COUNT TEN
### (Conspiracy to Operate an Unlicensed Money Transmitting Business)

The Grand Jury further charges:

83.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

84.     From at least in or about October 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the

United States, to wit, operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

85.    It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did knowingly conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business affecting interstate and foreign commerce, which failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, in violation of Title 18, United States Code, Section 1960.

### Overt Act

86.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere: Alameda and FTX employees, at the direction of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, caused FTX customers to send wire transfers and sent wire transfers to FTX customers, some of which were received in and were transmitted through the Southern District of New York.

(Title 18, United States Code, Section 371.)

**COUNT ELEVEN**
**(Conspiracy to Commit Money Laundering)**

The Grand Jury further charges:

87.    The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

88.    From at least in or about 2020, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF,"

the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a).

89.     It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, in an offense in and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction, to wit, one or more monetary transfers, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud alleged in Count Two of this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

90.     It was a further part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, within the United States, would and did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, to wit, the wire fraud alleged in Count Two of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

### COUNT TWELVE
**(Conspiracy to Make Unlawful Political Contributions and Defraud the FEC)**

The Grand Jury further charges:

91.     The allegations contained in paragraphs 1 through 57 of this Indictment are repeated and realleged as if fully set forth herein.

34

92.     From at least in or about 2020, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States, in violation of Title 18, United States Code, Section 371, and willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States by engaging in violations of federal law involving the making, receiving, and reporting of a contribution, donation, or expenditure, in violation of Title 52, United States Code, Sections 30109(d)(1)(A) & (D).

93.     It was part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did knowingly and willfully make contributions to candidates for federal office, joint fundraising committees, and independent expenditure committees in the names of other persons, aggregating to $25,000 and more in a calendar year, in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A) & (D).

94.     It was a further part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did knowingly and willfully make contributions to candidates for federal office and joint fundraising committees by a corporation, aggregating to $25,000 and more in a calendar year, in violation of Title 52, United States Code, Sections 30118 and 30109(d)(1)(A).

95.     It was a further part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did defraud the United States, and an agency thereof, by impairing, obstructing, and defeating the lawful functions of a department and agency of the United States through deceitful and dishonest means, to wit, the

35

Federal Election Commission's function to administer federal law concerning source and amount restrictions in federal elections, including the prohibitions applicable to corporate contributions and conduit contributions, in violation of Title 18, United States Code, Section 371.

### Overt Act

96.     In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, was committed in the Southern District of New York and elsewhere: in or about 2022, SAMUEL BANKMAN-FRIED a/k/a "SBF," the defendant, and one or more other conspirators agreed to and did make corporate contributions to candidates and committees in the Southern District of New York that were reported in the name of another person.

(Title 18, United States Code, Section 371.)

### **FORFEITURE ALLEGATION**

97.     As a result of committing the offenses alleged in Counts One, Two, Seven, Eight, and Nine of this Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses, and the following specific property:

a.     55,273,469 shares of the stock of Robinhood Markets Inc. from Account Number 499-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

b.     $20,746,713.67 in United States currency formerly on deposit in Account Numbers 499-30500 and 429-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

c.     $49,999,500 in United States currency formerly on deposit in Account

36

Number 9000-1924-02685 at Farmington State Bank d/b/a "Moonstone Bank" held in the name of "FTX Digital Markets," seized by the Government on or about January 4, 2023;

        d.      $5,322,385.32 in United States currency formerly held on deposit in Account Number 0000005090042549 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

        e.      $719,359.65 in United States currency formerly on deposit in Account Number 0000005090042556 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

        f.      $1,071.83 in United States currency formerly on deposit in Account Number 0000005090042564 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

        g.      $94,570,490.63 in United States currency formerly on deposit in Account Number 0000005091010037 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 19, 2023;

        h.      Any and all monies, assets, and funds contained in Binance account number 94086678;

        i.      Any and all monies, assets, and funds contained in Binance.us account number 35000066; and

        j.      Any and all monies, assets, and funds contained in Binance.us account number 35155204.

98.    As a result of committing the offenses alleged in Counts Five and Six of this Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

99.    As a result of committing the offenses alleged in Counts Ten and Eleven of this Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and

personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses, and the following specific property:

a.      55,273,469 shares of the stock of Robinhood Markets Inc. from Account Number 499-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

b.      $20,746,713.67 in United States currency formerly on deposit in Account Numbers 499-30500 and 429-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

c.      $49,999,500 in United States currency formerly on deposit in Account Number 9000-1924-02685 at Farmington State Bank d/b/a "Moonstone Bank" held in the name of "FTX Digital Markets," seized by the Government on or about January 4, 2023;

d.      $5,322,385.32 in United States currency formerly held on deposit in Account Number 0000005090042549 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

e.      $719,359.65 in United States currency formerly on deposit in Account Number 0000005090042556 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

f.      $1,071.83 in United States currency formerly on deposit in Account Number 0000005090042564 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

g.      $94,570,490.63 in United States currency formerly on deposit in Account Number 0000005091010037 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 19, 2023;

h.      Any and all monies, assets, and funds contained in Binance account number 94086678;

i.      Any and all monies, assets, and funds contained in Binance.us account number 35000066; and

j.      Any and all monies, assets, and funds contained in Binance.us account number 35155204.

100.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred

or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the

Court; (d) has been substantially diminished in value; or (e) has been commingled with other

property which cannot be subdivided without difficulty; it is the intent of the United States,

pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section

2461(c), to seek forfeiture of any other property of the defendant up to the value of the above

forfeitable property.

>(Title 18, United States Code, Section 981;
>Title 18, United States Code, Section 982;
>Title 21, United States Code, Section 853; and
>Title 28, United States Code, Section 2461.)

FOREPERSON
2/22/23

DAMIAN WILLIAMS
United States Attorney

2/22/23 - Superseding Indictment Filed - No Warrants
USMS
Valerie Figueredo

39

ORIGIN/

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SUPERSEDING INDICTMENT** |
| v. | S5 22 Cr. 673 (LAK) |
| SAMUEL BANKMAN-FRIED, a/k/a "SBF," | |
| Defendant. | |

## **Overview**

1.      From at least in or about 2019, up to and including in or about November 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, corrupted the operations of the cryptocurrency companies he founded and controlled—including FTX.com ("FTX") and Alameda Research ("Alameda")—through a pattern of fraudulent schemes that victimized FTX customers, investors, financial institutions, lenders, and the Federal Election Commission ("FEC"). Exploiting the trust that FTX customers placed in him and his exchange, BANKMAN-FRIED stole FTX customer deposits, and used billions of dollars in stolen funds for a variety of purposes, including, among other things, to support the operations and investments of FTX and Alameda; to fund speculative venture investments; to make charitable contributions; and to enrich himself. BANKMAN-FRIED also engaged in corrupt practices to advance his aims. In the United States, he tried to influence cryptocurrency regulation in Washington, D.C. by steering tens of millions of dollars of illegal campaign contributions to both Democrats and Republicans. He also conspired to bribe one or more Chinese government officials in order to regain access to Alameda trading accounts that had been frozen by Chinese law enforcement authorities.

2.      Founded in 2019, FTX, the global cryptocurrency exchange led by SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, grew quickly, and with it grew BANKMAN-FRIED's public profile, political influence, and personal fortune.  In promoting FTX and its smaller sister company FTX.US, which he also controlled, BANKMAN-FRIED represented himself as the figurehead of a trustworthy and law-abiding segment of the cryptocurrency industry that was focused not only on profits, but also on investor and client protection.  Likewise, in public statements, including in testimony before the United States Senate, BANKMAN-FRIED represented that FTX had a focus on "consumer protection," had adopted "principles for ensuring investor protections on digital asset-platforms," including "avoiding or managing conflicts of interest," and that "as a general principle FTX segregates customer assets from its own assets across our platforms."  As recently as late 2022, BANKMAN-FRIED boasted about FTX's profits and portrayed himself as a savior of the cryptocurrency industry, making venture investments and acquisitions purportedly to assist struggling industry participants.  BANKMAN-FRIED used FTX.US to further burnish his image, spending millions of dollars on celebrity advertisements during the 2022 Super Bowl that promoted FTX.US as the "safest and easiest way to buy and sell crypto" and "the most trusted way to buy and sell" digital assets.

3.      In fact, and as SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, well knew, FTX—which by early 2022 claimed to handle approximately $15 billion in daily trading volume on its platforms—was not focused on investor or client protection, nor was it the legitimate business that BANKMAN-FRIED claimed it was.  Contrary to BANKMAN-FRIED's promises to FTX customers that the exchange would protect their interests and segregate their assets, BANKMAN-FRIED routinely tapped FTX customer assets to provide interest-free capital for his and Alameda's private expenditures, and in the process exposed FTX customers to massive,

2

undisclosed risk. In addition, while BANKMAN-FRIED publicly claimed that FTX operated independently from Alameda's cryptocurrency trading and investments in other companies, by his design, the reality was otherwise. BANKMAN-FRIED controlled FTX, FTX.US, and Alameda and used them to prop each other up, notwithstanding conflicts of interests and outright lies to the contrary.

4. SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, perpetrated this multi-billion-dollar fraud through a series of systems and schemes that allowed BANKMAN-FRIED, through Alameda, to access and steal FTX customer deposits without detection. For instance, in 2021, FTX began to accept customer fiat deposits into an Alameda-affiliated bank account that itself was established through a fraudulent scheme that BANKMAN-FRIED directed. This account functioned as a mechanism for the routine and brazen misappropriation of those deposits. BANKMAN-FRIED also caused the creation of secret loopholes in the computer code that powered FTX's trading platform—loopholes that allowed Alameda to incur a multi-billion-dollar negative balance on FTX that BANKMAN-FRIED knew Alameda could not repay. Further, BANKMAN-FRIED concealed from both Alameda's lenders and FTX's equity investors the fact that Alameda had taken billions of dollars from FTX. At relevant times, BANKMAN-FRIED required his co-conspirators and others who worked for him to communicate using encrypted and ephemeral messaging platforms that self-deleted, thereby preventing regulators and law enforcement from later obtaining a record of his misdeeds.

5. Over time, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, publicly distanced himself from Alameda, but in reality, continued to exercise supervisory control over it and to direct Alameda's criminal activity. BANKMAN-FRIED used the FTX customer funds he misappropriated and caused to be misappropriated to, among other things, support the trading and

3

operations of Alameda, fund acquisitions and venture investments, and finance in substantial part BANKMAN-FRIED's unlawful political influence campaign, which involved flooding the political system with tens of millions of dollars in illegal contributions to both Democrats and Republicans made in the names of others in order to obscure the true source of the money and evade federal election law.

6.      In addition, in or about 2021, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, authorized and directed a bribe of at least $40 million to one or more Chinese government officials.  The purpose of the bribe was to influence and induce one or more Chinese government officials to unfreeze certain Alameda trading accounts containing over $1 billion in cryptocurrency, which had been frozen by Chinese authorities.  BANKMAN-FRIED and others sought to regain access to the assets to fund additional Alameda trading activity, in order to assist BANKMAN-FRIED and Alameda in obtaining and retaining business.

7.      In or about early November 2022, an internet news organization leaked what appeared to be Alameda's balance sheet, revealing publicly that Alameda's solvency was dependent on the multi-billion-dollar valuation that Alameda assigned to its holdings of FTT, FTX's proprietary digital currency, which was illiquid and difficult to value.  Following this revelation, substantial numbers of FTX customers began seeking to withdraw their funds from FTX.  Knowing that FTX had misappropriated billions of dollars in customer funds, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, tried to reassure FTX customers, and slow customer withdrawals from FTX, with what he knew were false public claims about the ability of FTX to repay customer deposits, the security of FTX's customer assets, and the status of Alameda's balance sheet.  BANKMAN-FRIED also transferred funds putatively belonging to Alameda to fill an approximately $45 million hole in customer assets on FTX.US.

8.     In or about November 2022, in a last-ditch effort to secure sufficient liquid capital to satisfy FTX customer withdrawals, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, doubled down on his fraudulent schemes by soliciting billions of dollars in additional capital investments from existing and potential investors in FTX, many of whom he had previously defrauded.   In soliciting this additional capital, BANKMAN-FRIED made more false representations to potential investors about the source of the multi-billion-dollar hole in FTX's balance sheet caused by his misappropriation of customer deposits and his own knowledge of how the hole originated.

9.     The efforts of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, to raise sufficient capital to satisfy the demand for customer withdrawals failed.  In November 2022, FTX halted trading and entered bankruptcy along with Alameda, FTX.US, and dozens of related entities.  Left in FTX's wake were thousands of customers who had trusted BANKMAN-FRIED, FTX, and FTX.US with billions of dollars in savings and investment capital and found themselves overnight unable to withdraw their funds and unsure about whether they would ever be repaid.

### Background on Alameda Research and FTX

10.    In or about November 2017, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, a United States citizen, founded Alameda, a quantitative cryptocurrency trading firm incorporated in Delaware, which had operations in the United States, Hong Kong, and The Bahamas.  At the time, Alameda principally engaged in high-frequency cryptocurrency arbitrage trading, and also some market making, pooling of digital assets to earn interest (called yield farming), and other forms of cryptocurrency trading.   At times, Alameda was financially successful. In or about 2019, FTX described Alameda as the "largest liquidity provider and market maker" in the digital asset space, trading "$600 million to 1 billion a day" and accounting for

"roughly 5% of global volume" in digital asset trading. BANKMAN-FRIED and Gary Wang were the sole equity owners of the firm, and BANKMAN-FRIED was the CEO of Alameda from in or about November 2017 until in or around October 2021, at which time he passed the title to two Alameda employees. Even after BANKMAN-FRIED was no longer CEO, however, he remained Alameda's ultimate decisionmaker, and directed, among other things, trading strategy, investment decisions, and venture spending.

11.     In or around May 2019 and while still the CEO of Alameda, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, founded and served as the CEO of FTX Trading Ltd., a global cryptocurrency exchange that, through several subsidiary entities, did business as FTX. FTX offered customers the ability to trade in cryptocurrencies such as bitcoin, ether, and stablecoins, as well as crypto derivatives such as options, swaps, and futures. FTX also offered customers a "spot market" for trading cryptocurrency with other FTX customers in exchange for other cryptocurrencies or traditional currency, also known as fiat (referred to below generally as "dollars"), such as U.S. dollars. FTX also eventually added a "spot margin trading and borrowing" service, which permitted FTX customers who opted into the service to either lend their crypto assets to other customers for spot trading, or trade on credit using borrowed crypto assets by posting collateral and borrowing crypto assets through the spot market on FTX.

12.     From its launch, FTX grew rapidly. By in or about 2020, FTX was one of the largest digital asset exchanges in the world based on trading volume, and by in or about early 2022, FTX claimed to handle approximately $15 billion in daily trading volume on its platforms.

13.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, raised at least $1.8 billion dollars from investors, including investors based in the United States and the Southern District of New York, in exchange for various classes of stock in FTX. This money was raised

through multiple fundraising rounds, including:  (1) a fundraising completed in or around August 2019 of approximately $8 million; (2) a fundraising completed in or around July 2021 of approximately $1 billion; (3) a fundraising completed in or around October 2021 of approximately $420 million; and (4) a fundraising completed in or around January 2022 of approximately $500 million.  BANKMAN-FRIED continued efforts to fundraise for FTX at least up to and including November 2022.

### BANKMAN-FRIED's Multiple Criminal Schemes

<u>At BANKMAN-FRIED's direction, FTX Fraudulently Opened and Used Bank Accounts
Affiliated with Alameda to Receive Customer Deposits and Transmit Funds</u>

14.     From FTX's founding in or about 2019, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, sought to use the United States financial system, and in particular, bank accounts in the United States, to promote FTX's business.  In particular, after FTX launched in or around May 2019, and in order to attract customers and their assets, including U.S. dollars, FTX needed bank accounts that would allow FTX customers to deposit dollars with FTX that could be used to purchase cryptocurrency assets and pay for transactions.  When FTX was founded, however, many U.S. banks were reluctant to do business with cryptocurrency companies, and those banks that were willing to open accounts for cryptocurrency companies had extensive customer due diligence and licensing requirements, with which FTX was not compliant.

15.     Because FTX did not have its own bank accounts for holding customer deposits, for a period of time in or around 2019 and 2020, FTX instructed customers to wire dollar deposits to bank accounts that were owned or controlled by Alameda, which at the time SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also controlled as the CEO.  These Alameda accounts had been opened as trading accounts and had been used almost exclusively for Alameda's trading purposes until they were also employed as accounts for FTX to receive and transmit its

A-149

customer deposits and withdrawals.  Alameda never informed the banks where these accounts were held that these accounts in Alameda's name began to be used in substantial part by FTX to accept customer deposits for, and as a vehicle for customer withdrawals from, FTX's cryptocurrency exchange.

16.     During the time period in which FTX was using Alameda bank accounts to receive and transmit customer deposits, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others, made efforts to open bank accounts for this purpose in FTX's name.  In particular, BANKMAN-FRIED, through Alameda employees, attempted to open an account for FTX at a bank in California ("Bank-1"), the deposits of which were insured by the Federal Deposit Insurance Corporation and where Alameda already had bank accounts.  Bank-1 made clear, however, that it would not open an account for customer deposits and withdrawals absent evidence that FTX was licensed and registered, including federal registration as a money services business, and that, in any event, Bank-1 would need to conduct an enhanced due diligence process before opening any account used to process customer deposits and withdrawals.

17.     In or about January 2020, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, contacted Bank-1 about opening an FTX account.  BANKMAN-FRIED learned from Bank-1 that BANKMAN-FRIED should not attempt to open an account for FTX, an international platform, at that time.  He was further told that if he wished to open an account to process customer deposits and withdrawals for FTX.US, FTX's business in the United States, FTX.US would need to register as a money services business.  While BANKMAN-FRIED did later register FTX.US as a money services business in 2020, no attempts were made to make FTX a licensed money services business and BANKMAN-FRIED never sought to have FTX or Alameda comply with the regulatory requirements of licensure.  Instead, FTX continued to use Alameda trading accounts to

8

accept customer deposits and process customer withdrawals.

18.     In part to obscure the relationship between FTX and Alameda, and in order to overcome Bank-1's refusal to open a bank account for FTX without extensive due diligence and licensing, in or about August 2020, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, directed the incorporation of a new U.S.-based entity, North Dimension. BANKMAN-FRIED was listed as sole owner, CEO, and president of North Dimension, which had no employees or business operations outside of its bank account. BANKMAN-FRIED and others chose the name "North Dimension" in part to conceal that there was a relationship between North Dimension and Alameda from FTX customers and from banks approving transactions with the North Dimension bank account. BANKMAN-FRIED also directed the creation of a website for North Dimension and used a credit card in his name to fund the hosting services for the website.

19.     Aware of the fact that Bank-1 would not open an exchange account or account for receiving customer deposits for an entity without the appropriate registration and enhanced due diligence, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and other Alameda employees told Bank-1 a false story, namely, that North Dimension sought to open an account to function as a trading account connected to Alameda's existing trading accounts, instead of the truth, which was that the North Dimension account would function as an account to receive and transmit FTX customer deposits. Under BANKMAN-FRIED's supervision, employees of Alameda completed an account application that falsely stated that the purpose of the North Dimension bank account was for "trading" and "market making." Bank-1 was also given a completed North Dimension due diligence questionnaire—which BANKMAN-FRIED signed— that falsely stated that North Dimension "trades on multiple cryptocurrency exchanges worldwide for its own account" and that North Dimension "also participates in direct peer-to-peer, OTC

9

purchases and sales with certain third parties for its own account." Furthermore, despite the fact that North Dimension was created for the purpose of transmitting customer deposits on and off the FTX exchange, the due diligence questionnaire falsely claimed that North Dimension was not a money services business.

20.    In or about April 2021, Bank-1 approved the opening of the North Dimension account, without enhanced due diligence or review by Bank-1's executive committee, as would have been required had the true purposes of North Dimension's account been disclosed to Bank-1.

21.    Once the North Dimension bank account was opened, FTX directed customer dollar deposits to the North Dimension account. Thereafter, when FTX customers deposited or withdrew fiat currency, Alameda personnel, who maintained control over the North Dimension account and acted under the direction and supervision of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators, manually credited or subtracted the customer's FTX account with the corresponding amount of fiat currency on an internal ledger system. Customers could then convert their deposits to a range of cryptocurrencies and traditional currencies, engage in various types of trading, and make withdrawals denominated in various types of cryptocurrencies and traditional currencies. FTX charged fees and generated revenues from many of these activities, using the fraudulently obtained access to a U.S. bank account. Customers could also convert various cryptocurrencies and traditional currencies to dollars on their FTX account, and withdraw the dollars from FTX. FTX sent customer withdrawals by wire transfer from the North Dimension bank account, and by at least summer 2021 charged a fee for dollar withdrawals.

BANKMAN-FRIED Directed the Misappropriation of Customer Deposits

22.    Despite representations SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, made and caused to be made to the contrary, FTX never held customer funds in

A-152

dedicated accounts for the benefit of customers or segregated from Alameda's assets. Rather, with the knowledge and under the supervision of BANKMAN-FRIED, Alameda commingled FTX customer funds with Alameda assets in Alameda accounts. With BANKMAN-FRIED's knowledge and at his direction, Alameda regularly took money from accounts funded by or that included funds from FTX customers, including the North Dimension account. Alameda ultimately spent billions of dollars of those FTX customer funds, among other things, to finance Alameda's trading and expenses, to make venture investments directed by BANKMAN-FRIED, and to bankroll tens of millions of dollars in campaign contributions made in the names of individuals but in fact funded from Alameda accounts.

23.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, was able to accomplish this scheme not only by causing FTX customers to deposit money into accounts controlled by Alameda, but also by secretly building Alameda's capacity to misuse FTX customer funds into the computer code that operated the FTX trading platform.

24.     In or about July 2019, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, publicly claimed that: "Alameda is a liquidity provider on FTX but their account is just like everyone else's." Such representations continued through 2022, with BANKMAN-FRIED asserting, for example, that "[t]here are no parties that have privileged access" on FTX, and that "Alameda is a wholly separate entity." Contrary to those representations, BANKMAN-FRIED had caused FTX's computer code and software to allow Alameda to accrue a negative balance on FTX's exchange. That modification to FTX's code, along with others implemented at BANKMAN-FRIED's direction, made Alameda's account unlike those of other customers. While FTX typically would have automatically liquidated a client's account once its negative balance exceeded the amount of any posted collateral, net of fees, FTX permitted Alameda to maintain a

11

negative balance, draw on a multi-billion-dollar line of credit, borrow funds from FTX without sufficient collateral, evade auto-liquidation, and withdraw funds off the exchange. Over time, BANKMAN-FRIED directed that Alameda's credit limit be raised to approximately $65 billion, which in practice permitted Alameda to draw on FTX accounts funded by customer assets on an unlimited basis—in amounts that exceeded FTX revenue and tapped into customer funds.

25.     Over time, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, hid the close relationship between FTX and Alameda and his continued involvement in and control of both FTX and Alameda in order to minimize the appearance of potential conflicts of interest and to prevent further scrutiny that might uncover his schemes. To publicly distance himself from Alameda, BANKMAN-FRIED stepped down as CEO of Alameda in or about October 2021, and named Caroline Ellison, a long-time associate and co-conspirator in the fraudulent scheme, and another individual as co-CEOs of Alameda. But in practice, BANKMAN-FRIED continued routinely to direct investment and operational decisions at Alameda and exercised supervisory control over it.

26.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also took steps to conceal that his multi-billion-dollar venture investments and expenditures were funded by transfers originating with Alameda, and therefore funded with FTX customer funds. For example, BANKMAN-FRIED directed Ellison to change the name of Alameda entities that were funding venture capital investments by FTX so that it would not be apparent that the money was coming from Alameda. Similarly, BANKMAN-FRIED personally borrowed more than $1 billion from Alameda and oversaw similar borrowing by other FTX executives, which was then principally used to make investments in the name of BANKMAN-FRIED and his associates, rather than in the name of Alameda. This conduct served to conceal the close connection to Alameda, as well

as the criminal source of the funds.  At the same time, BANKMAN-FRIED falsely projected ignorance about Alameda's affairs.

27.    SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, also deceived FTX investors about the exchange's relationship with Alameda, and about the safety of the exchange more generally, through the use of audited financial statements provided to investors.  In the course of the audits underlying the financial statements, BANKMAN-FRIED and those acting at his direction misled auditors and avoided providing information about FTX customers, including Alameda, and about the commingling of customer assets with Alameda funds, as well as Alameda's enormous line of credit on the exchange.  When one co-conspirator expressed concern to BANKMAN-FRIED about auditors disapproving of the commingling of customer assets with Alameda funds, BANKMAN-FRIED assured that co-conspirator that the auditors would not find out.  The audited financials were then used to falsely reassure customers and investors that FTX had proper risk management controls and systems for storing customer assets.

### BANKMAN-FRIED Directed a Multi-Million Dollar Bribe to One or More Chinese Government Officials in Order to Unfreeze Alameda Trading Accounts

28.    In or around early 2021, Chinese law enforcement authorities froze certain Alameda cryptocurrency trading accounts (the "Accounts") on two of China's largest cryptocurrency exchanges (the "Chinese Exchanges") that collectively contained approximately $1 billion in cryptocurrency.  SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, understood that the Accounts had been frozen by Chinese authorities as part of an ongoing investigation of a particular Alameda trading counterparty.

29.    After the Accounts were frozen, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others operating at his direction, considered and tried numerous methods to unfreeze the Accounts or otherwise to regain access to the cryptocurrency in the Accounts,

including retaining attorneys to lobby or otherwise advocate in China for Alameda's funds to be unfrozen; communicating with the Chinese Exchanges; and opening new accounts on the Chinese Exchanges using the personal identifying information of several individuals unaffiliated with FTX or Alameda (the "Fraudulent Accounts") and attempting to transfer the cryptocurrency from the frozen Accounts to the Fraudulent Accounts in an effort to circumvent the Chinese authorities' freeze orders.

30.     After months of failed attempts to unfreeze the Accounts, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, discussed with others and ultimately agreed to and directed a multi-million-dollar bribe to seek to unfreeze the Accounts.  In particular, BANKMAN-FRIED authorized and directed the illicit transfer of cryptocurrency intended to induce and influence one or more Chinese government officials to unfreeze the Accounts.  Following BANKMAN-FRIED's authorization and direction, an Alameda employee sent cryptocurrency payment instructions for at least a portion of the bribe payment to other Alameda employees, including at least one employee located in the United States.  As a result, in or about November 2021, BANKMAN-FRIED caused a bribe payment of cryptocurrency then worth approximately $40 million to be transferred from Alameda's main trading account to a private cryptocurrency wallet.  At or around the time of the $40 million bribe payment, the Accounts were unfrozen.  After confirmation that the Accounts were unfrozen, BANKMAN-FRIED authorized the transfer of additional tens of millions of dollars in cryptocurrency to complete the bribe.

31.     After the Accounts were unfrozen, at the direction of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, Alameda used the unfrozen cryptocurrency to fund additional Alameda trading activity.

BANKMAN-FRIED Directed Alameda to Misappropriate
Billions of Dollars in FTX Customer Funds to Repay Alameda's Lenders

32.     In or around June 2022, the cryptocurrency markets experienced a downturn. SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, through Alameda, was heavily invested in the cryptocurrency industry through cryptocurrency trading and related illiquid venture investments.  As a result of the market downturn, Alameda faced demands for repayment from multiple third-party cryptocurrency lenders on substantial outstanding loans.  While Alameda was obligated to repay the loans on demand, Alameda lacked the funds to repay these lenders.

33.     Rather than allow Alameda to default on its loans, which would have jeopardized the survival of both Alameda and FTX, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, authorized Alameda to draw down billions of dollars in customer assets from FTX and to use those assets to repay Alameda's lenders.  The billions of dollars that BANKMAN-FRIED caused Alameda to draw from FTX greatly exceeded FTX's revenue, liquid capital, and available funds under FTX's relatively small peer-to-peer lending program.  BANKMAN-FRIED was able to divert billions of dollars in FTX customer funds to Alameda undetected as a result of the features to benefit Alameda that he had directed be built into FTX's code and software.

34.     Shortly after authorizing the misappropriation of billions of dollars of FTX customer funds to repay Alameda's loans, in or about July 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, tweeted, "Backstopping customer assets should always be primary. Everything else is secondary."

35.     Even after SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had misappropriated billions of dollars of FTX customer funds to repay Alameda's lenders, BANKMAN-FRIED continued to direct discretionary investments, charitable contributions, and political donations using Alameda funds, including by directing that Alameda continue to draw on

its line of credit on FTX.

36.     Although SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had caused Alameda to repay lenders using FTX customer funds, Alameda still had at least hundreds of millions of dollars in outstanding loans, and had to provide financial information to its creditors. BANKMAN-FRIED directed Ellison to devise a way to mislead those creditors about the money Alameda had "borrowed" from FTX, as well as about the substantial personal loans Alameda had made to FTX executives, and together, BANKMAN-FRIED and Ellison provided false and misleading financial statements to creditors.

BANKMAN-FRIED Made Unlawful Political Contributions to Acquire Bipartisan Influence

37.     As he used Alameda to siphon off FTX's customer funds and deploy them for political causes, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, became one of the largest publicly reported political donors for the 2022 midterm elections. But his effort to influence politics did not stop there. To avoid certain contributions being publicly reported in his name, BANKMAN-FRIED conspired to and did have certain political contributions made in the names of two other FTX executives ("CC-1" and "CC-2"). Those contributions were made directly to candidates in the names of those FTX executives, but with FTX and Alameda funds.

38.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, perpetuated his campaign finance scheme at least in part to improve his personal standing in Washington, D.C., increase FTX's profile, and curry favor with candidates that could help pass legislation favorable to FTX or BANKMAN-FRIED's personal agenda, including legislation concerning regulatory oversight over FTX and its industry. To accomplish these goals, BANKMAN-FRIED caused substantial contributions to be made in support of candidates of both major political parties and across the political spectrum. BANKMAN-FRIED, however, did not want to be known as a left-

leaning partisan, or to have his name publicly attached to Republican candidates. In those instances when he wanted to obscure his association with certain contributions, BANKMAN-FRIED and others conspired to and did have those contributions made in the names of CC-1 and CC-2.

39.     As part of this scheme, contributions were coordinated to be made in the names of the two FTX straw donors to candidates they did not necessarily support or know. These straw donations were instead made for purposes of furthering the political agenda of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, while providing him cover to avoid being associated with certain contributions, and concealing that the source of the contributions was in fact Alameda.

40.     SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators selected CC-1 to be the face of BANKMAN-FRIED's and FTX's more left-leaning spending. CC-1 ultimately became—at least in name—one of the largest Democratic donors in the 2022 midterm elections and made donations to further BANKMAN-FRIED's agenda that CC-1 otherwise would not have made.

41.     For instance, in or around 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others agreed that he and his co-conspirators should contribute at least a million dollars to a super PAC that was supporting a candidate running for a United States Congressional seat and appeared to be affiliated with pro-LGBTQ issues, and selected CC-1 to be the contributor. A political consultant working for BANKMAN-FRIED asked CC-1 to make the contribution and told CC-1, "in general, you being the center left face of our spending will mean you giving to a lot of woke shit for transactional purposes." CC-1 expressed discomfort with making the contribution in his name, but agreed there was not anyone "trusted at FTX [who was] bi/gay" in a position to

make the contribution.  At the direction of BANKMAN-FRIED and individuals working for him, CC-1 nonetheless contributed to the PAC.

42.     Likewise, it was the preference of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, to keep contributions to Republicans "dark."  In keeping with that preference, CC-2, who publicly aligned himself with conservatives, made contributions to Republican candidates that were directed by BANKMAN-FRIED and funded by Alameda.

43.     From at least in or around March 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators began coordinating political contributions paid for using FTX and Alameda funds through an encrypted, auto-deleting Signal chat called "Donation Processing."  From time to time, BANKMAN-FRIED and his co-conspirators substituted other individuals in BANKMAN-FRIED's place for contributions originally intended to be made in BANKMAN-FRIED's name.  For instance, shortly before the midterm elections, an FTX employee was directed to "wire $107k from [BANKMAN-FRIED] personal to New York State Democratic Committee," but then was asked by BANKMAN-FRIED to "update this to a 107k contribution from [CC-1]."

44.     In total, between in or about the fall of 2021 and the November 2022 election, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and the two FTX executives who served as straw donors as part of his scheme—CC-1 and CC-2—collectively made millions of dollars in contributions, including in "hard money" contributions to federal candidates from both major political parties.

45.     The money used to make these political donations originated from Alameda bank accounts, and included funds that had been deposited by FTX customers.  Notwithstanding his awareness of the campaign finance laws, in order to conceal the true source of the funds, SAMUEL

18

BANKMAN-FRIED, a/k/a "SBF," the defendant, agreed with others that funds for contributions would be transferred from Alameda's bank accounts, which also contained FTX customer funds, to bank accounts in the name of the donors, and then quickly transferred from those individuals' bank accounts to political campaigns.

46.     In total, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant,  and his co-conspirators made over 300 political contributions, totaling tens of millions of dollars, that were unlawful because they were made in the name of a straw donor or paid for with corporate funds. In dozens of instances, BANKMAN-FRIED's use of straw donors allowed him to evade contribution limits on individual donations to candidates to whom he had already donated.  As a result of this fraudulent conduct, BANKMAN-FRIED and his co-conspirators caused false information to be reported by campaigns and PACs to the FEC, which had the result of impairing and impeding the FEC's reporting and enforcement functions.

47.     To further conceal the scheme, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and his co-conspirators recorded the outgoing wire transfers from Alameda to individuals' bank accounts for purposes of making contributions as Alameda "loans" or "expenses."  But unlike other loans that were made to FTX executives, including to BANKMAN-FRIED, CC-1, and CC-2, these outgoing wire payments were not documented in agreements or on term sheets, and there were no set interest rates, no interest payments, no collateral, and no evidence of repayment.  While employees at Alameda generally tracked loans to executives, the transfers to BANKMAN-FRIED, CC-1, and CC-2 in the months before the 2022 midterm elections were not recorded on internal Alameda tracking spreadsheets.  Instead, an internal Alameda spreadsheet noted over $100 million in political contributions, even though FEC records reflect no political contributions by Alameda for the 2022 midterm elections to candidates or PACs.

48.     In or around November 2022, as FTX customer withdrawals were surging and FTX was experiencing a solvency crisis (as described below), and just days before the midterm elections, CC-1 messaged SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, that he was concerned about the "maybe 80m" of "donations/personal/etc that went through my bank [account] and are in my name." CC-1 proposed a back-dated transaction to undo any sort of debt he might owe as a result of wire transfers being recorded on Alameda's ledger as "loans." BANKMAN-FRIED asked CC-1 how they would go about doing it, and CC-1 proposed a retroactive sale of certain cryptocurrencies "earlier in 2022" to remove the $80 million liability CC-1 had to FTX/Alameda, which would have further concealed the campaign finance scheme. The transaction was not, however, completed before FTX's collapse.

<u>BANKMAN-FRIED's Lies During FTX's Collapse</u>

49.     On or about November 2, 2022, an online news publication published an article that appeared to leak Alameda's balance sheet, disclosing that the predominant portion of Alameda's $14.6 billion of assets comprised Alameda's holdings of FTX's digital token, FTT. Prior to November 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had engineered the price of FTT, including by directing that Alameda buy large amounts of the token to maintain its price when it was dropping, and to keep such price manipulation a secret. Over time, FTT became a sizeable asset on Alameda's balance sheet despite its illiquidity, and Alameda began using it as collateral to obtain billions of dollars in loans from third-party lenders for Alameda, which exponentially increased Alameda's ability to obtain sizeable loans, while at the same time leaving Alameda exposed to significant financial risk.

50.     After the November 2, 2022 leak showing Alameda's assets comprised mostly FTT, commentary expressing fear, uncertainty, and doubt about the value of FTT, and in turn the

prospects of FTX as an exchange, spread across the internet.

51.     In an effort to tamp down those concerns about FTX, Alameda, and FTT, at the direction of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, Ellison tweeted on or about November 6, 2022: "A few notes on the balance sheet info that has been circulating recently: - that specific balance sheet is for a subset of our corporate entities, we have > $10b of assets that aren't reflected there . . . . given the tightening in the crypto credit space this year we've returned most of our loans by now." This tweet was misleading in several respects. First, while Alameda had by that time repaid most of its loans to external lenders, it had done so by misappropriating billions of dollars of FTX customer funds that it still owed to FTX.  Second, the supposed additional $10 billion in assets included not only the loans Alameda had made to related-parties, like BANKMAN-FRIED and other FTX executives, but also the value of investments made by BANKMAN-FRIED with that money, even though those investments were not owned or controlled by Alameda.

52.     That same day, on or about November 6, 2022, the CEO of another cryptocurrency exchange tweeted that he had decided to liquidate approximately $2.1 billion of FTT held by his exchange.  Soon after, Ellison, in consultation with SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others, and in an effort to prevent the collapse of FTT's value, tweeted in response that if the CEO was "looking to minimize the market impact on your FTT sales, Alameda will happily buy it all from you today at $22!"  The effort to blunt the effect of the threatened sale of FTT was unsuccessful.  The value of the FTT token fell and many FTX customers sought to withdraw their assets from FTX, resulting not only in the plummeting of FTT's value, but also the equivalent of a cryptocurrency bank run of several billion dollars.

**A-163**

53.     Because SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, had misappropriated FTX customer assets for use by Alameda, however, FTX lacked the funds to meet surging customer demands for withdrawals of their deposits.  At BANKMAN-FRIED's direction, Alameda began liquidating its assets and using the proceeds to satisfy FTX customer withdrawals. On or about November 6, 2022, BANKMAN-FRIED sent CC-1 a screenshot of a message from Ellison that read, in part: "I just had an increasing dread of this day that was weighing on me for a long time, and now that it's actually happening it just feels great to get it over with one way or another."

54.     In an attempt to stem the withdrawals from FTX and forego a solvency crisis, on or about November 7, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, posted a series of false and misleading tweets.  First, he tweeted: "A competitor is trying to go after us with false rumors.  FTX is fine.  Assets are fine."  He added in a second tweet, in part, "FTX has enough to cover all client holdings.  We don't invest client assets (even in treasuries).  We have been processing all withdrawals, and will continue to be."   In a third tweet about FTX, BANKMAN-FRIED stated: "It's heavily regulated, even when that slows us down.  We have GAAP audits, with > \$1B excess cash.  We have a long history of safeguarding client assets, and that remains true today."

55.     Despite his false assurances, the fraudulent scheme of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, caused significant negative price impact on the value of commodities in interstate commerce in the United States, including bitcoin and ether spot and future prices.

56.     Customer withdrawals continued to surge and threaten the solvency of FTX. Beginning on or about November 7, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the

defendant, and others acting at his direction, began contacting existing and potential investors for a multi-billion-dollar bailout. BANKMAN-FRIED supplied existing and potential investors with what purported to be FTX's balance sheet, showing that FTX had approximately $9.6 billion of assets versus approximately $8.9 billion of liabilities, which would yield a positive net equity of approximately $700 million. The balance sheet noted, however, that FTX had an additional liability of $8 billion in a "Hidden, poorly internally labled [sic] 'fiat@' account," and that FTX had experienced $5 billion in customer withdrawals on November 6, 2022. Beneath these two line items, BANKMAN-FRIED stated: "There are many things I wish I could do differently than I did, but the largest are represented by these two things: the poorly labeled internal bank-related account, and the size of customer withdrawals during a run on the bank."

57.     In fact, and as SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, well knew, the "[h]idden, poorly internally labled [sic] 'fiat@' account," was the multi-billion-dollar entry on FTX's ledger reflecting the amount of FTX customer fiat deposits accepted into Alameda's bank accounts that had not been maintained for the benefit of customers or repaid to FTX, and of which BANKMAN-FRIED was aware throughout the relevant time period. The labeling of the account was deliberate: BANKMAN-FRIED had previously authorized moving the ledger entry of Alameda's fiat liability from an account with "fiat" in its name, into a subaccount under the last name of an Alameda intern. On or about November 6, 2022, in the course of directing CC-1 and others to calculate Alameda assets and liabilities for purposes of estimating available funds to meet customer withdrawal demands, BANKMAN-FRIED specifically told CC-

1 to include this subaccount in his calculations, describing it as the account that "has the old fiat@ account."

58.    On or about November 9, 2022, it became clear to FTX and Alameda employees that the companies would not survive the solvency crisis because there were not sufficient funds to cover customer withdrawals, and there was no third party willing to bailout FTX.  That day, Ellison addressed Alameda employees in an all-hands meeting.  Ellison acknowledged that earlier that year, she, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, Wang, and CC-1 had decided to use, and used, FTX customer assets to pay Alameda's debts to lenders.

59.    At the same time that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, was trying to address FTX's solvency crisis caused by the misappropriation of FTX customer assets, he prioritized certain disbursements at the expense of satisfying FTX customer withdrawals. For example, on or about November 8, 2022, the general counsel of FTX.US, in a Signal chat that included BANKMAN-FRIED and several close associates, demanded: "I need to know the fucking truth about FTX US right now."  Soon thereafter, on or about November 9, 2022, BANKMAN-FRIED was told in the same Signal chat that there was an approximately $45 million deficit in FTX.US customer assets.  BANKMAN-FRIED responded that he had transferred $46 million from Alameda to FTX.US.  On or about November 8, 2022, FTX suspended customer withdrawals. Shortly thereafter, however, BANKMAN-FRIED reopened withdrawals only for customers in The Bahamas, resulting in millions of dollars being preferentially withdrawn from the exchange, while other customers of FTX had no true access to it.

60.    To conceal his activities and the activities of his co-conspirators during the unraveling of FTX, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant communicated with his employees over Signal, an ephemeral messaging application.  BANKMAN-FRIED had

previously instructed employees to communicate over Signal, and directed that employee Signal messages be set to auto-delete after brief periods of time, in part to prevent the preservation of evidence that could be used against him. In November 2022, the general counsel of FTX.US warned employees that they should preserve documents because of the involvement of regulators, and then posted in a company Slack channel that FTX would need to be shut down. BANKMAN-FRIED, however, deleted the general counsel's message about FTX being shut down, continued to use Signal messaging, and proceeded to delete some of his own statements on Twitter, including his tweets about customer assets being "fine."

61.    Before resigning from FTX, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, met with one of FTX's in-house attorneys to discuss what, if any, legal explanation BANKMAN-FRIED could provide for the use of customer funds in response to questions from potential investors. BANKMAN-FRIED and the attorney discussed and dismissed several potential explanations as inadequate. In particular, they considered whether BANKMAN-FRIED could claim that Alameda had borrowed from customers who had opted in to FTX's peer-to-peer borrow/lend program. BANKMAN-FRIED and the attorney, however, quickly dismissed the explanation because Alameda's borrowing greatly exceeded the funds lent through the FTX borrow/lend program, even if Alameda had been the only borrower. BANKMAN-FRIED, however, later publicly embraced the explanation that he earlier had acknowledged privately was unsupported by the facts: that Alameda did not misuse FTX customer funds but permissibly borrowed funds that customers had opted in to FTX's peer-to-peer lending program.

62.    On November 11, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, resigned from FTX, and FTX and approximately one hundred affiliated entities, including FTX.US, and Alameda filed for Chapter 11 bankruptcy protection.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Conspiracy to Commit Wire Fraud on Customers of FTX)

The Grand Jury charges:

63.     The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

64.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

65.     It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, BANKMAN-FRIED agreed with others to defraud customers of FTX by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda, and to make investments, and for other purposes.

(Title 18, United States Code, Section 1349.)

26

**A-168**

## COUNT TWO
### (Wire Fraud on Customers of FTX)

The Grand Jury further charges:

66.     The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

67.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud customers of FTX by misappropriating those customers' deposits, and using those deposits to pay expenses and debts of Alameda to make investments, and for other purposes.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Conspiracy to Commit Fraud on Customers of FTX in Connection with Purchase and Sales of Derivatives)

The Grand Jury further charges:

68.     The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

69.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire,

**A-169**

confederate, and agree together and with each other to commit an offense against the United States, to wit, commodities fraud, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), and Title 17, Code of Federal Regulations, Section 180.1.

70.    It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly, would and did, directly and indirectly, use and employ, and attempt to use and employ, in connection with a swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (a) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (b) making, and attempting to make, an untrue and misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (c) engaging, and attempting to engage in an act, practice, and course of business, which operated and would operate as a fraud and deceit upon a person, in violation of Title 7, United States Code, Sections 9(1) and 13(a)(5), to wit, BANKMAN-FRIED agreed with others to defraud customers of FTX trading or intending to trade futures, options, swaps, and derivatives by misappropriating those customers' deposits and using those deposits to pay expenses and debts of Alameda, and to make investments, and for other purposes.

<u>Overt Act</u>

71.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere: in or about June 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant,

and others misappropriated FTX customer deposits in order to, among other things, satisfy loan obligations owed by Alameda Research.

(Title 18, United States Code, Section 371.)

**COUNT FOUR**
**(Fraud on Customers of FTX in Connection with Purchase and Sales of Derivatives)**

The Grand Jury further charges:

72.     The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

73.     From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, willfully and knowingly, directly and indirectly, used and employed, and attempted to use and employ, in connection with a swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (1) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (2) making, and attempting to make, an untrue and misleading statement of material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (3) engaging, and attempting to engage in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, to BANKMAN-FRIED, along with others, engaged in a scheme to defraud customers of FTX trading or intending to trade futures, options, swaps, and derivatives by

29

misappropriating those customers' deposits and using those deposits to pay expenses and debts of

Alameda, and to make investments, and for other purposes.

(Title 7, United States Code, Sections 9(1) and 13(a)(5), and Title 17, Code of Federal
Regulations, Section 180.1; Title 18, United States Code, Section 2.)

## COUNT FIVE
### (Conspiracy to Commit Securities Fraud on Investors in FTX)

The Grand Jury further charges:

74.    The allegations contained in paragraphs 1 through 62 of this Indictment are

repeated and realleged as if fully set forth herein.

75.    From at least in or about 2019, up to and including in or about November 2022, in

the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF,"

the defendant, and others known and unknown, willfully and knowingly did combine, conspire,

confederate, and agree together and with each other to commit an offense against the United States,

to wit, securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and

Title 17, Code of Federal Regulations, Section 240.10b-5.

76.    It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED,

a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly would and

did, directly and indirectly, by use of a means and instrumentality of interstate commerce and of

the mails, and of a facility of a national securities exchange, use and employ, in connection with

the purchase and sale of a security, a manipulative and deceptive device and contrivance, in

violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device,

scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to

state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading; and (c) engaging in an act, practice,

and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, BANKMAN-FRIED agreed with others to engage in a scheme to defraud investors in FTX by providing false and misleading information to those investors regarding FTX's financial condition and the relationship between FTX and Alameda.

Overt Act

77.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere: on or about September 18, 2022, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, caused an email to be sent to an FTX investor in New York, New York that contained materially false information about FTX's financial condition.

(Title 18, United States Code, Section 371.)

**COUNT SIX**
**(Securities Fraud on Investors in FTX)**

The Grand Jury further charges:

78.    The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

79.    From at least in or about 2019, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b)

31

making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud investors in FTX by providing false and misleading information to those investors regarding FTX's financial condition and the relationship between FTX and Alameda.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

## COUNT SEVEN
### (Conspiracy to Commit Wire Fraud on Lenders to Alameda Research)

The Grand Jury further charges:

80.    The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

81.    From at least in or about June 2022, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Sections 1343.

82.    It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign

**A-174**

commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, BANKMAN-FRIED agreed with others to defraud, including through the use of interstate wires, lenders to Alameda by providing false and misleading information to those lenders regarding Alameda's financial condition.

(Title 18, United States Code, Section 1349.)

## COUNT EIGHT
### (Wire Fraud on Lenders to Alameda Research)

The Grand Jury further charges:

83.     The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

84.     From at least in or about June 2022, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, BANKMAN-FRIED, along with others, engaged in a scheme to defraud, including through the use of interstate wires, lenders to Alameda by providing false and misleading information to those lenders regarding Alameda's financial condition.

(Title 18, United States Code, Sections 1343 and 2.)

33

**COUNT NINE**
**(Conspiracy to Commit Bank Fraud)**

The Grand Jury further charges:

85.    The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

86.    From at least in or about October 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

87.    It was a part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did execute, and attempt to execute, a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, as defined in Title 18, United States Code, Section 20, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, BANKMAN-FRIED, along with others, in order to open a bank account and to obtain customer deposits and fees, falsely represented to a financial institution that the account would be used for trading and market making, even though BANKMAN-FRIED knew that the account would be used to receive and transmit customer funds in the operation of a cryptocurrency exchange, and thereafter, in connection with using the account for the receipt and transmission of customer funds, omitted material facts in a manner that made what was communicated misleading.

(Title 18, United States Code, Section 1349.)

34

**COUNT TEN**
**(Conspiracy to Operate an Unlicensed Money Transmitting Business)**

The Grand Jury further charges:

88.    The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

89.    From at least in or about October 2019, up to and including in or about November 2022, in the Southern District of New York and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

90.    It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did knowingly conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business affecting interstate and foreign commerce, which failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, in violation of Title 18, United States Code, Section 1960.

Overt Act

91.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere: Alameda and FTX employees, at the direction of SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, caused FTX customers to send wire transfers and sent wire transfers to FTX

customers, some of which were received in and were transmitted through the Southern District of New York.

(Title 18, United States Code, Section 371.)

**COUNT ELEVEN**
**(Conspiracy to Commit Money Laundering)**

The Grand Jury further charges:

92.    The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

93.    From at least in or about 2020, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a).

94.    It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, in an offense in and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction, to wit, one or more monetary transfers, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud alleged in Count Two of this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

95.    It was a further part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, within the United States,

would and did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, to wit, the wire fraud alleged in Count Two of this Indictment, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## COUNT TWELVE
### (Conspiracy to Make Unlawful Political Contributions and Defraud the FEC)

The Grand Jury further charges:

96.    The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

97.    From at least in or about 2020, up to and including in or about November 2022, in the Southern District of New York, and elsewhere, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States, in violation of Title 18, United States Code, Section 371, and willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States by engaging in violations of federal law involving the making, receiving, and reporting of a contribution, donation, or expenditure, in violation of Title 52, United States Code, Sections 30109(d)(1)(A) & (D).

98.    It was part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did knowingly and willfully make contributions to candidates for federal office, joint fundraising committees, and independent expenditure committees in the names of other persons, aggregating to $25,000 and

**A-179**

more in a calendar year, in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A) & (D).

99.    It was a further part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did knowingly and willfully make contributions to candidates for federal office and joint fundraising committees by a corporation, aggregating to $25,000 and more in a calendar year, in violation of Title 52, United States Code, Sections 30118 and 30109(d)(1)(A).

100.    It was a further part and object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, would and did defraud the United States, and an agency thereof, by impairing, obstructing, and defeating the lawful functions of a department and agency of the United States through deceitful and dishonest means, to wit, the Federal Election Commission's function to administer federal law concerning source and amount restrictions in federal elections, including the prohibitions applicable to corporate contributions and conduit contributions, in violation of Title 18, United States Code, Section 371.

Overt Act

101.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, was committed in the Southern District of New York and elsewhere: in or about 2022, SAMUEL BANKMAN-FRIED a/k/a "SBF," the defendant, and one or more other conspirators agreed to and did make corporate contributions to candidates and committees in the Southern District of New York that were reported in the name of another person.

(Title 18, United States Code, Section 371.)

38

**A-180**

## COUNT THIRTEEN
### (Conspiracy to Violate the Anti-Bribery Provisions
### of the Foreign Corrupt Practices Act)

The Grand Jury further charges:

102.    The allegations contained in paragraphs 1 through 62 of this Indictment are repeated and realleged as if fully set forth herein.

103.    From at least in or about January 2021 up to and including in or about February 2022, in an offense begun and committed out of the jurisdiction of any particular State or district, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others known and unknown, at least one of whom was first brought to and will be arrested in the Southern District of New York, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, to violate the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2.

104.    It was a part and an object of the conspiracy that SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, (1) being a domestic concern and an officer, employee, and agent of a domestic concern and a stockholder thereof acting on behalf of such domestic concern, would and did willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce, and (2) being a United States person, would and did willfully and corruptly do any act outside the United States, in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and offer, gift, promise to give, and authorization of the giving of a thing of value to a foreign official, and to a person while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (A)(i) influencing an act and decision of such foreign official in that foreign official's official capacity; (ii) inducing such foreign official to do

39

and omit to do an act in violation of the lawful duty of such foreign official; and (iii) securing an improper advantage; and (B) inducing such foreign official to use that foreign official's influence with a foreign government and agencies and instrumentalities thereof to affect and influence an act and decision of such government and agencies and instrumentalities, in order to assist BANKMAN-FRIED, Alameda, and others in obtaining and retaining business for and with, and directing business to, a person, in violation of Title 15, United States Code, Section 78dd-2, to wit, BANKMAN-FRIED and others agreed to pay cryptocurrency to one or more foreign officials in China to influence and induce them to unfreeze the Accounts, in order to assist BANKMAN-FRIED, Alameda, and others in obtaining and retaining business for, and directing business to, BANKMAN-FRIED, Alameda, and others.

<u>Overt Act</u>

105.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed and caused to be committed abroad: in or about November 2021, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, and others directed and caused the transfer of at least approximately $40 million in cryptocurrency intended for the benefit of one or more Chinese government officials in order to influence and induce them to unfreeze the Accounts.

(Title 18, United States Code, Sections 371 and 3238.)

**FORFEITURE ALLEGATION**

106.   As a result of committing the offenses alleged in Counts One, Two, Seven, Eight, Nine, and Thirteen of this Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that

constitutes or is derived from proceeds traceable to the commission of said offenses, including but

not limited to a sum of money in United States currency representing the amount of proceeds

traceable to the commission of said offenses, and the following specific property:

      a.    55,273,469 shares of the stock of Robinhood Markets Inc. from Account Number 499-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

      b.    $20,746,713.67 in United States currency formerly on deposit in Account Numbers 499-30500 and 429-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

      c.    $49,999,500 in United States currency formerly on deposit in Account Number 9000-1924-02685 at Farmington State Bank d/b/a "Moonstone Bank" held in the name of "FTX Digital Markets," seized by the Government on or about January 4, 2023;

      d.    $5,322,385.32 in United States currency formerly held on deposit in Account Number 0000005090042549 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

      e.    $719,359.65 in United States currency formerly on deposit in Account Number 0000005090042556 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

      f.    $1,071.83 in United States currency formerly on deposit in Account Number 0000005090042564 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

      g.    $94,570,490.63 in United States currency formerly on deposit in Account Number 0000005091010037 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 19, 2023;

      h.    Any and all monies, assets, and funds contained in Binance account number 94086678;

      i.    Any and all monies, assets, and funds contained in Binance.us account number 35000066; and

      j.    Any and all monies, assets, and funds contained in Binance.us account number 35155204.

      107.    As a result of committing the offenses alleged in Counts Five and Six of this

Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United

States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

108.    As a result of committing the offenses alleged in Counts Ten and Eleven of this Indictment, SAMUEL BANKMAN-FRIED, a/k/a "SBF," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses, and the following specific property:

   a. 55,273,469 shares of the stock of Robinhood Markets Inc. from Account Number 499-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

   b. $20,746,713.67 in United States currency formerly on deposit in Account Numbers 499-30500 and 429-30500 at ED&F Man Capital Markets, Inc., a/k/a "Marex," held in the name of "Emergent Fidelity Technologies," seized by the Government on or about January 4, 2023;

   c. $49,999,500 in United States currency formerly on deposit in Account Number 9000-1924-02685 at Farmington State Bank d/b/a "Moonstone Bank" held in the name of "FTX Digital Markets," seized by the Government on or about January 4, 2023;

   d. $5,322,385.32 in United States currency formerly held on deposit in Account Number 0000005090042549 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

   e. $719,359.65 in United States currency formerly on deposit in Account Number 0000005090042556 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

   f. $1,071.83 in United States currency formerly on deposit in Account Number 0000005090042564 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 11, 2023;

**A-184**

g.      $94,570,490.63 in United States currency formerly on deposit in Account Number 0000005091010037 at Silvergate Bank held in the name of "FTX Digital Markets," seized by the Government on or about January 19, 2023;

h.      Any and all monies, assets, and funds contained in Binance account number 94086678;

i.      Any and all monies, assets, and funds contained in Binance.us account number 35000066; and

j.      Any and all monies, assets, and funds contained in Binance.us account number 35155204.

109.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON
3/[6]7/23

DAMIAN WILLIAMS
United States Attorney

KENNETH A. POLITE, JR.
Assistant Attorney General
Criminal Division

3/27/23   Filed superseding Indictment undersea[l]
USMJ Lehrburger
MC

43

**A-185**

# Exhibit 9

1

```
 1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2

 3   IN RE:                    .  Chapter 11
                               .
 4   FTX TRADING LTD., et al., .  Case No. 22-11068 (JTD)
                               .
 5                             .
                               .  Courtroom No. 5
 6                             .  824 Market Street
                 Debtors.      .  Wilmington, Delaware 19801
 7                             .
                               .  Monday, February 6, 2023
 8   . . . . . . . . . . . . . .  9:30 a.m.

 9                       TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE JOHN T. DORSEY
10                   UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtor:           Adam Landis, Esquire
                               LANDIS RATH & COBB LLP
13                             919 Market Street, Suite 1800
                               Wilmington, Delaware 19801
14
                               James L. Bromley, Esquire
15                             Christopher Dunne, Esquire
                               SULLIVAN & CROMWELL LLP
16                             125 Broad Street
                               New York, NY 10004
17

18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Jermaine Cooper

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

**A-187**

31

1  with the 3,800 pages, so ...

2          THE COURT:  Okay.

3          MS. SARKESSIAN:  Can we just have -- I don't know -

4  - I don't know how to do that technically, but I don't want

5  that entire thing being -- coming in as an exhibit.

6          THE COURT:  No, understood.  We'll just submit

7  Exhibit 1 to Mr. Glueckstein's declaration as a separate

8  exhibit as Debtors' Exhibit Number 1.

9          MS. SARKESSIAN:  Thank you, Your Honor.

10      (Debtors' Exhibit 1 received in evidence)

11      (Participants confer)

12          THE COURT:  Any other evidence, Ms. Sarkessian?

13          MS. SARKESSIAN:  I'm sorry, Your Honor?

14          THE COURT:  Any other evidence?

15          MS. SARKESSIAN:  No.

16          THE COURT:  Okay.

17          MS. SARKESSIAN:  No, Your Honor.

18          THE COURT:  Thank you.

19          Mr. Bromley.

20          MR. BROMLEY:  Your Honor, the debtors would like to

21  call John J. Ray, III to the stand.

22          THE COURT:  Okay.  Mr. Ray, please come forward,

23  take the stand and remain standing, please.

24          THE ECRO:  Please raise your right hand.  Please

25  state your full name and spell your last name for the court

**A-188**

32

1   record, please?

2           THE WITNESS:  John J. Ray, III.  Last name R-a-y.

3   JOHN J. RAY, III, WITNESS FOR THE DEBTORS, AFFIRMED

4           THE ECRO:  You may be seated.

5           Your Honor.

6           THE COURT:  Thank you.

7           Mr. Bromley, you may proceed.

8           MR. BROMLEY:  Thank you, Your Honor.

9                        DIRECT EXAMINATION

10  BY MR. BROMLEY:

11  Q    Mr. Ray, what's your current occupation?

12  A    I'm owner of an advisory firm called Owl Hill Partners,

13  and I'm also Chief Executive Officer of FTX.

14  Q    And could you please give a brief summary of your

15  educational background?

16  A    Yes.  I graduated in 1980 from the University of

17  Massachusetts.  In 1982, I graduated from Drake University

18  Law School, initially admitted in Iowa, Nebraska, and still

19  admitted in good standing in the State of Illinois.

20  Q    And could you please give the Court a short summary of,

21  say, the first ten years of your professional career?

22  A    The first ten years, I began at Touche Ross, an

23  accounting firm, doing tax work as a lawyer.

24       Thereafter, I moved on to become an associate at Mayer,

25  Brown & Platt, now known as Mayer Brown, in Chicago Illinois,

**A-189**

51

1  that was in a control position that today is in a control

2  position whatsoever.  That was eliminated, you know,

3  immediately on my taking control.

4  Q    Now, when you took control, the omnibus corporate

5  authority, which is Debtors Exhibit 1, referenced a request

6  for Mr. Bankman-Fried to consult with his counsel at Paul

7  Weiss regarding director appointments.  Did you ever consult

8  with Paul Weiss.

9  A    No, I did not.

10  Q    And why not?

11  A    I didn't think it was in the best interest of the

12  estate to consult with lawyers for someone we now know has

13  been charged with crimes.

14  Q    Now, Mr. Ray, I'd like to throw your attention on the

15  demonstrative to the lower right-hand corner, federal,

16  criminal, and regulatory authorities.  Do you see that?

17  A    Yes.  I do.

18  Q    Are you familiar with criminal and regulatory

19  investigations that are ongoing?

20  A    Yes.  I am.

21  Q    And what have you directed the company and your

22  advisors to do with respect to those investigations?

23  A    I made it very, very clear from the beginning of my

24  taking control, on virtually the day of the control, that we

25  would do whatever the Government request relative to

**A-190**

52

1   cooperation.

2        We believe that, ultimately, not only is that, you

3   know, required but we believe that, you know, it's in the

4   best interest of creditors to allow these regulatory

5   authorities to get full access to the information on a real

6   time basis as we're learning about what happened in the

7   company.  They're virtually getting information, again, real

8   time, and we believe that was sort of fundamental to our, you

9   know, mission here which is to maximize value for the

10  creditors.

11  Q    And do you receive regular reports on the materials

12  that have -- and cooperation that's been given to the

13  investigative authorities?

14  A    Virtually, daily.

15  Q    I'd like to -- I'll come back to the slide in a moment,

16  but I'd like to turn to the next one.  You familiar with this

17  slide?

18  A    Very much so.

19        MS. SARKESSIAN:  Your Honor, I'm going to, again,

20  object on relevance.

21        THE COURT:  Overruled.

22  BY MR. BROMLEY:

23  Q    And Mr. Ray, what does this slide --

24  A    The first part of it, it talks really about -- speaks

25  to the volume, the massive amount of data that we have

**A-191**

53

1   produced.  As you can see, we've collected ten terabytes of

2   data, over twenty-seven million documents.  We've provided an

3   analysis of several hundred thousand documents.  We've

4   interviewed and received pro offers of 24 current and former

5   employees.  And then, we've also provided an analysis

6   relative to the transactions inside the companies databases.

7        The companies databases include a couple of different

8   databases of primarily primary databases, the AWS System

9   which Amazon Web Services, where we housed some of the

10  wallets, the hot wallets.  And the database itself is in the

11  millions of terabytes of date so it's a vast resource of

12  information, unfortunately, in a somewhat unconstructed

13  environment which requires, you know, the assistance of, you

14  know, people like Alvarez and people like AlixPartners to

15  sift through these terabytes to ultimately provide useful

16  data to the regulatory authorities.

17  Q    Are you familiar with the cooperation that's been given

18  to the U.S. Attorney's Office for the Southern District of

19  New York and the Department of Justice's National Crypto-

20  Currency Enforcement Team?

21  A    Yes.  Our teams have been involved with, you know,

22  virtually daily requests.  As you can see, we've had over 150

23  requests from the Southern District, produced substantial

24  amounts of information, and provided substantial cooperation

25  relative to instances where they wanted specific information

**A-192**

54

1   related to certain actions, prehistoric actions, for the

2   company.

3         So, it's virtually an ongoing exercise, but the last,

4   you know, roughly 90 days have been an extremely intense

5   effort to provide the information that the Government has

6   requested which, obviously, you know, yielded substantial

7   results in record time.

8   Q    Now, Mr. Ray, are you familiar with how these requests

9   come in from the Department of Justice?

10  A    Yes, I am.  I am familiar with how they contact the

11  company.  They do that through Sullivan & Cromwell primarily.

12  Q    And have you ever -- are you aware of any instances

13  where full cooperation was not given immediately?

14  A    That wouldn't be tolerated.

15  Q    I'd like you to turn your attention to the next slide.

16  Now in addition to the Southern District of New York, the

17  U.S. Attorneys Office, you are familiar with other U.S.

18  Attorneys Offices that have submitted information requests?

19  A    We have had full participation.  You know, we have had

20  numerous requests, as shown by this chart, from other

21  prosecutors around the country.  The Securities & Exchange

22  Commission has had a number of requests; again, all

23  cooperative presentations that have been provided.  The CFTC

24  has been extremely active here in connection with their

25  investigation and have submitted over 150 requests.

**A-193**

55

1    On a state basis, not shown on this chart, but we have

2  entered into dozens of cease and desist orders with respect

3  to licenses around the world, the money transaction sector,

4  licenses that were maintained by the company.  So, this chart

5  really doesn't show the full gambit of the things that we

6  have done to cooperate on a state, you know, and local basis,

7  as well as these particular federal agencies.

8  Q    If I could draw your attention to the next slide.

9  A    Yes.  This is really what I am referring to.  We self-

10  reported to 26 state regulators.  We produced a mountain of

11  documents there as well. We have been in regular contact with

12  these agencies; not leaving it to the agencies to come to us.

13  You know, we have taken a pro-active effort to work with

14  them.  We have hosted update calls with these agencies.  They

15  are almost treating these agencies, in effect, like they're

16  own committee, if you will, in giving them real time

17  information.

18         MS. SARKESSIAN:  Objection, Your Honor.

19         THE COURT:  Overruled.

20  BY MR. BROMLEY:

21  Q    Now in addition to the various states and state

22  authorities have you -- are you aware of additional requests

23  that have come from Congress and non-US authorities?

24  A    Yes.  I have been very active and personally involved in

25  these requests.  As everyone has reported, I testified in

**A-194**

56

1   front of Congress, but leading up to that congressional

2   testimony we have had 100 requests from the Financial

3   Services Committee.  We have requests from the Senate as well

4   and follow-up testimony that has been provided to the House

5   Financial Services Committee and then we've also been

6   involved in regulatory requests from outside the United

7   States.

8        They are listed here and pretty extensive requests that

9   stem from our international operations.  We have exchanges

10  that, for example, are in Japan and Singapore, Cyprus, we

11  have European operations where we host a European exchange.

12  So, all of these agencies relate to the operations outside

13  the United States, and they've been very active in terms of

14  requests as well as us responding to those requests.

15  Q    And since the -- you're aware of the appointment of the

16  creditors committee in these cases?

17  A    Yes, I am.

18  Q    And so what has been the level of cooperation with the

19  creditors committee since its appointment?

20  A    Well, I'd like to think it's a model of how a company

21  should work with the creditors committee.  My approach really

22  is a, sort of, partnership approach with the creditors

23  committee.  We have numerous requests from the committee.

24  They have been in place, I think, for less then probably a

25  full 45 days; something to that effect.

**A-195**

64

1  Q    Mr. Ray, can you take a look at the next slide.  So, Mr.

2  Ray, could you describe the computing environment at FTX

3  today?

4  A    We have created, you know, the environment, you know, as

5  it should be.  I mean we have hired experts in computer

6  science and cryptography.  I mentioned the Sygnia group as

7  well as the Alvarez & Marsal group that have been essential

8  to rebuilding the brick walls around these wallets to give

9  them some security.

10     We have gotten access to the code, the controls and the

11  data to prevent any further loss by way of hacking.  We have

12  moved hot wallets into what is called cold storage to secure

13  those.  We have also gone off to exchanges where wallets are

14  contained and moved those wallets over to a controlled

15  environment.

16     So, this first exercise, with the assistance of computer

17  experts, is to provide integrity to the environment, increase

18  the security, move those wallets into cold storage and secure

19  the assets for the benefit of customers and creditors.  That,

20  of course, involves, you know, the analytics that these

21  experts use to find wallets and also what is key here is to -

22  - we're doing a tracing analysis in to look at unauthorized

23  transfers of crypto that either were in wallets or in the

24  environment itself; all with the goal -- this isn't, sort of,

25  a study for study sake.  There is a purpose here to what this

**A-196**

65

1    is beyond just the integrity of the system and maintaining

2    it, and securing the assets.

3         This is, effectively, to also, you know, recoup those

4    assets to investigate who moved assets and for what purpose,

5    the source of the funds for those assets, whether that is

6    external or on an inter-company basis.  When we are

7    investigating who did that, the potential misconduct, the

8    wrongdoers, the claw back opportunities, really, to that.

9    And, of course, in the process of that all of the evidentiary

10   work that we are doing to cooperate with the Government is

11   not an exercise for exercise sake.

12        There is no, sort of, billing code that just says

13   cooperate with the Government.  We look at all of our

14   cooperation really on an end-use basis.  What do we do with

15   that information, what is the buy product of that

16   investigation.  The by-product is always with an asset in

17   mind or recovery in mind.  Its not sharing for sharing sake.

18   Its how do we use that information that we provided to

19   ourselves and to regulatory authorities to then synthesize it

20   in a way that provides us with the tools that we need to

21   recover on avoidance actions, to inevitably file actions

22   related to, you know, misfeasance or malfeasance against

23   insiders, for example.

24        Then, obviously, you know, there is the compliance with

25   our Chapter 11 obligations and disclosure.  You know, that is

**A-197**

66

1   an ongoing obligation that we have and that is fulfilled

2   through this very exercise.  Then lastly, as I mentioned, our

3   by-product of that leads to sharing evidence and cooperating

4   with the authorities.

5       This is an ongoing, you know, circular effort, right,

6   you know, answers, we get questions, we provide information,

7   that information gets synthesized, that turns into new

8   inquiries, new questions, and we're continuing to evolve in

9   the process.  We have been at it 90 days. Its night and day.

10  When you see this environment today it's a very simple chart,

11  but to get from where we were 90 days ago, which I would

12  describe as pure hell, to where we are today is pretty

13  satisfying.

14  Q   Mr. Ray, do you think there would be a danger of

15  introducing a new party into the environment?

16          MS. SARKESSIAN:  Objection.  His opinion on this

17  issue is not relevant to the Court's determination regarding

18  appointing an examiner.

19          THE COURT:  Overruled.

20          THE WITNESS:  There is a danger.  You know, beyond

21  the -- we have a lot of seats at the table.  We are happy to

22  feed all those people at the table, but what is unique about

23  this, you know, is this controlled environment.  This isn't

24  some, you know, lawyer exercise, you know, where we bring in

25  a well-healed professional who observes some misconduct by

**A-198**

67

1    people.

2              Literally you have to operate in this laboratory

3    to investigate, to secure these assets, and to develop a

4    process of translating this data into recoverable assets for

5    customers.  This is just too fragile of an environment for me

6    to accept, you know, yet another seat at the table of someone

7    who just bounces into this environment and puts ourselves at

8    risk.  We have come too far to allow that to happen in my

9    mind.

10             MR. BROMLEY:  That's all I have for this witness

11   at the moment, Your Honor, reserving time for redirect.

12             THE COURT:  All right.  Thank you.

13             Let's go ahead and take a 15-minute recess.  We

14   will reconvene at 11:25.

15        (Recess taken at 11:11 a.m.)

16        (Proceedings resumed at 11:27 a.m.)

17             THE COURTROOM DEPUTY:  All rise.

18             THE COURT:  Thank you, everybody.  You may be

19   seated.  We are back on the record.

20             Whenever you're ready.

21             MS. SARKESSIAN:  Thank you, Your Honor.  And for

22   the record Juliet Sarkessian on behalf of the U.S. Trustee.

23                        CROSS-EXAMINATION

24   BY MS. SARKESSIAN:

25   Q    Good morning, Mr. Ray.

**A-199**

111

1  who are going to do the exact same thing, with no evidence

2  that any of those professionals or this examiner to be

3  appointed would be any more independent, any more qualified,

4  any more able to secure these assets.  It's simply going to

5  be the duplication of effort and an enormous amount of

6  expense.

7          The fact that we may have $1.2 billion of

8  unrestricted cash is not the point.  We need $8 billion of

9  unrestricted cash.  We do not have enough money to pay back

10  all of our creditors.  And the U.S. Trustee, for pure

11  purposes of public policies, because bleach and sunshine is a

12  public policy that we need here, says that we should spend

13  tens, or even hundreds of millions of dollars to provide some

14  guidance to states that have written one paragraph that said,

15  We agree with what they said before.

16          And the evidence that Mr. Ray has put on, and is

17  uncontradicted, is that we have done nothing over the past 90

18  days, other than cooperate and provide massive amounts of

19  information to warrant regulators all around the world.

20          THE COURT:  Well, let me ask you a question.  You

21  mentioned bleach and sunshine, so let me ask you about one

22  issue that the U.S. Trustee raises, which is that under 1106,

23  if I appointed an examiner, there'd be a public report filed.

24          MR. BROMLEY:  Uh-huh.

25          THE COURT:  And what is the view of the debtors in

**A-200**

112

1   this case of the need to provide the creditors in this case

2   with something that shows them what's been done:  what

3   investigations have been undertaken, how they were

4   undertaken, and what the results of those investigations are,

5   because under 1107, a debtor-in-possession doesn't have that

6   obligation.

7           MR. BROMLEY:  Well, there are two things, Your

8   Honor, right.  One is what we've already done and we continue

9   to do and then there's what the Bankruptcy Code provided in

10  other sections.  So, what we have already done is one of the

11  exhibits, which we agreed to jointly, is a very extensive

12  presentation that the debtors made to the Creditors'

13  Committee.  It is not normal course in a case of this size or

14  substance that when you meet with the Creditors' Committee,

15  that you publish the same day for the public, the complete

16  contents of the presentation that we made.  We did that.  We

17  will continue to do things like that.

18          It is the view of Mr. Ray and the management of

19  the directors that there is -- this is a different case.  We

20  need to approach that in a different way.  Do we have a

21  specific schedule of things that we're going to say and at

22  what point?  No.  But are we going to continue to follow in

23  those footsteps that we've already set forth?  Yes, we will.

24          In addition, Your Honor, we have an obligation to

25  put together a disclosure statement.  That disclosure

**A-201**

113

1    statement in a case like this is going to be a recitation of

2    everything that has taken place.  And it'll be up to you,

3    Your Honor, to determine whether the information set forth in

4    that disclosure statement is adequate, under the

5    circumstances.

6          We believe that in order for us to confirm a plan,

7    we're going to have to put together a disclosure statement

8    that brings that bleach and sunshine to this situation.  So,

9    we believe that -- well, and I will note, 1106 and 1107 and

10   1104 do not require in every circumstance that there be a

11   public report.  When we talk about the debtors furthering

12   public policy, we have spent, literally, tens of millions of

13   dollars, complying with public policy by reporting to the

14   Congress, to the House, to the Senate, to the U.S. Attorney's

15   Office in the Southern District of New York and three other

16   Districts.  It has led to the indictment of three individuals

17   who led the company in record time.  There have been lawsuits

18   already filed by the SEC and the CFTC.

19         When you talk about the debtors dedicating assets

20   to transparency to the public process, I don't think you can

21   find a case where debtors have done anything matching what

22   these debtors have done in the first 90 days of the case.

23   And will we continue to do that?  Yes, we will.

24         What Mr. Ray testified to is that on a daily

25   basis, we receive emails that, in substance, say, We would

**A-202**

114

1   like you to look at these transactions, these individuals,

2   and get us this information in 24 hours.  And what that

3   requires, Your Honor, is us to actually go in -- and when I

4   say, "us," it's the entirety of the investigations team -- to

5   go into this virtual environment and track down the

6   information that's being requested by the authorities.  It's

7   not simply going into a warehouse and picking things off of a

8   shelf.  It's interpreting code.  It's making sure that when

9   the code is discovered and accessed, it doesn't trigger

10  things that Mr. Ray was talking about that might damage the

11  assets.

12          We don't have -- there are no wallets.  There are

13  no keys.  There are no buildings.  Everything we have is a

14  series of zeros and ones and any time that environment is

15  accessed, it creates risk that damage will occur.  And so

16  every time we're going into that environment, the

17  investigation exercise is also securing assets.  It's also

18  figuring out whether there are claims as to whether or not

19  the issues that we're finding in the environment have some

20  explanation that's other than a mistake or incompetence or

21  inexperience.  Maybe it's fraud.  You don't know that.

22          When we talk about fraud in court, we also talk

23  about badges of fraud.  You don't have badges of fraud in the

24  same way when you're sitting there and having digital experts

25  in Israel and in the United States trying to figure out why

**A-203**

115

1    the code was changed from X to Y, by whom, who had the right

2    to change it, who had access to it; all of that is a

3    consolidated exercise that takes place every single day.  So,

4    quite honestly, the idea that we are able to simply hand over

5    that environment to an examiner is naive.

6            Mr. Ray said he will comply with any order of this

7    Court and I know he will and I know we all will.  But the

8    idea that there's going to be some ability to find somebody

9    else out there and put together a team and have that team

10   operate as independently and as effectively as the team

11   that's in place and then write a report, simply means that

12   we're going to add on top of this, months, if not years of

13   additional time and tens of millions, if not hundreds of

14   millions of additional cost.

15           And who bears that cost?  The creditors,

16   Mr. Pasquale's clients.

17           We should not be sitting here duplicating the same

18   thing that is happening every single day because the U.S.

19   Trustee believes that there's a policy point of view that

20   1104 says that it's mandatory no matter what.  And the

21   slippery slope of that mandatory argument is not in this

22   courtroom.  It's not because the U.S. Trustee is going to be

23   an advocate or pushing a particular agenda.  I don't believe

24   that.

25           But 1104 doesn't stop at the U.S. Trustee.  It

**A-204**

138

                        CERTIFICATION

1              We certify that the foregoing is a correct

2   transcript from the electronic sound recording of the

3   proceedings in the above-entitled matter to the best of our

4   knowledge and ability.

5

6

7   /s/ William J. Garling                February 6 2023

8   William J. Garling, CET-543

9   Certified Court Transcriptionist

10  For Reliable

11

12  /s/ Tracey J. Williams                February 6, 2023

13  Tracey J. Williams, CET-914

14  Certified Court Transcriptionist

15  For Reliable

16

17  /s/ Mary Zajaczkowski                 February 6, 2023

18  Mary Zajaczkowski, CET-531

19  Certified Court Transcriptionist

20  For Reliable

21

22  /s/ Coleen Rand                       February 6, 2023

23  Coleen Rand, CET-341

24  Certified Court Transcriptionist

25  For Reliable

**A-205**

# Exhibit 10

# A-206

F10705-E001526976 (redactions)_Redacted
- Date: 9/28/2021
- Custodians: ███████████████

Additionally, for F10705-E001146472 (or the similar documents), is there indication that it was sent to Silvergate Bank? The versions previously provided were drafts prepared by Panamanian counsel at the request of ███████████. Attached is a family of documents, including an executed version of F10705-E001146472, which were sent to Silvergate Bank. The custodians of these files are ██████████████████████, and FTX.

Best,

Stephanie

---

**From:** Raymond, Samuel (USANYS)█████████████████
**Sent:** Thursday, February 16, 2023 3:47 PM
**To:** Wheeler, Stephanie G.██████████████████; Rehn, Nathan (USANYS)████████████████; Roos, Nicolas (USANYS)█████████████████; Rohrbach, Andrew (USANYS)██████████████████; Peikin, Steven R. ████████████
**Cc:** McDonald, James M.████████████████; Sassoon, Danielle (USANYS)██████████████████; Croke, Jacob M. ███████████████; Friedlander, Nicole W.█████████████████; Levin, Sharon Cohen ██████████████████; Materni, Michele C.████████████>; O'Hara, Daniel P.█████████████████; Kudla, Danielle (USANYS) ████████████████
**Subject:** RE: [EXTERNAL] RE: FTX - Priority Requests for Documents and Presentations

Thanks Stephanie – this is very helpful, and we're very grateful for how quickly you got this to us. Are there any other documents you expect to produce to us on these topics?

Also, could you tell us the date and custodian for the following documents in the production:

F10705-E001141324 (redactions)_Redacted
F10705-E001146472
F10705-E001157938
F10705-E001230022
F10705-E001526976 (redactions)_Redacted

Additionally, for F10705-E001146472 (or the similar documents), is there indication that it was sent to Silvergate Bank?

Samuel L. Raymond
Assistant United States Attorney
Digital Asset Coordinator
Southern District of New York
██████████████

---

**From:** Wheeler, Stephanie G.██████████████
**Sent:** Thursday, February 16, 2023 12:21 PM
**To:** Rehn, Nathan (USANYS)█████████████ Roos, Nicolas (USANYS)███████████████; Rohrbach, Andrew (USANYS) ██████████████; Peikin, Steven R.████████
**Cc:** McDonald, James M.███████████████; Raymond, Samuel (USANYS)█████████████████; Sassoon, Danielle (USANYS)██████████████; Croke, Jacob M.██████████████; Friedlander, Nicole W. ████████████ Levin, Sharon Cohen████████████████; Materni, Michele C.██████████████████ O'Hara, Daniel P. <█████████████████████████ ████████████████
**Subject:** RE: [EXTERNAL] RE: FTX - Priority Requests for Documents and Presentations

**A-207**

Dear Thane,

Attached is a zip file containing documents relating to legal advice concerning whether FTX.com, Alameda or entities (other than FTX US) needed to register as a MSB or have money transmitting licenses.  As we discussed yesterday, as part of its cooperation, the FTX Debtors agreed to waive privilege on these topics to assist in your investigation.

Best,

Stephanie

**From:** Rehn, Nathan (USANYS) ███████████████████
**Sent:** Tuesday, February 14, 2023 5:43 PM
**To:** Roos, Nicolas (USANYS) ███████████ Wheeler, Stephanie G. ████████████████; Rohrbach, Andrew (USANYS) █████████████████; Peikin, Steven R. ██████████████
**Cc:** McDonald, James M. ███████████████ Raymond, Samuel (USANYS) ██████████████████ Sassoon, Danielle (USANYS) ██████████████; Croke, Jacob M. █████████████; Friedlander, Nicole W. ██████████████ Levin, Sharon Cohen ██████████████ Materni, Michele C. ███████████████ O'Hara, Daniel P. ███████████████; Kudla, Danielle (USANYS) ███████████████
**Subject:** RE: [EXTERNAL] RE: FTX - Priority Requests for Documents and Presentations

Hi Stephanie,

Can we get on the phone with you tomorrow morning if possible? We want to discuss any privilege issues relating to questions we might have for ███████ and/or Fenwick dealing with whether FTX.com needed to register as a MSB or have money transmitting licenses.

Thank you,

Thane

**From:** Roos, Nicolas (USANYS) ████████████████
**Sent:** Monday, February 13, 2023 9:40 PM
**To:** Wheeler, Stephanie G. ██████████████; Rohrbach, Andrew (USANYS) █████████████; Peikin, Steven R. █████████████████
**Cc:** McDonald, James M. ██████████████; Raymond, Samuel (USANYS) ██████████████ Sassoon, Danielle (USANYS) █████████████ Croke, Jacob M. ███████████ Friedlander, Nicole W. ███████████████; Rehn, Nathan (USANYS) ████████████; Levin, Sharon Cohen ████████████████; Materni, Michele C. ███████████ O'Hara, Daniel P. ████████████; Kudla, Danielle (USANYS) ███████████████
**Subject:** RE: [EXTERNAL] RE: FTX - Priority Requests for Documents and Presentations

Thanks very much, we appreciate it.

**From:** Wheeler, Stephanie G. ████████████
**Sent:** Monday, February 13, 2023 9:17 PM
**To:** Roos, Nicolas (USANYS) ████████████ Rohrbach, Andrew (USANYS) █████████████; Peikin, Steven R. █████████████████
**Cc:** McDonald, James M. ██████████████; Raymond, Samuel (USANYS) ██████████████ Sassoon, Danielle (USANYS) █████████████ Croke, Jacob ██████████ Friedlander, Nicole W. ██████████████; Rehn, Nathan (USANYS) ████████████; Levin, Sharon Cohen ████████████████; Materni, Michele C. ███████████ O'Hara, Daniel P. ████████████; Kudla, Danielle (USANYS) ███████████████
**Subject:** RE: [EXTERNAL] RE: FTX - Priority Requests for Documents and Presentations

We will try to send them by Box tomorrow.

A-208

**A-209**

**Date:** Friday, Jan 13, 2023 at 8:09 PM
**To:** Roos, Nicolas (USANYS) ▮▮▮▮▮▮ Sassoon, Danielle (USANYS) ▮▮▮▮▮▮▮ , Rohrbach, Andrew (USANYS) ▮▮▮▮▮▮ Rehn, Nathan (USANYS) ▮▮▮▮▮▮ Raymond, Samuel (USANYS) ▮▮▮▮▮▮
**Cc:** Steve Peikin ▮▮▮▮▮▮ , McDonald, James M. ▮▮▮▮▮▮ , Croke, Jacob M. ▮▮▮▮▮▮ Friedlander, Nicole W. ▮▮▮▮▮▮ Wheeler, Stephanie G. ▮▮▮▮▮▮ Levin, Sharon Cohen ▮▮▮▮▮▮ Materni, Michele C. ▮▮▮▮▮▮
**Subject:** FW: FTX - Priority Requests for Documents and Presentations

Dear Nick,

Updates on each of your priority requests are in-line below.  Happy to discuss if helpful.

Best,

Stephanie

**From:** Roos, Nicolas (USANYS) ▮▮▮▮▮▮
**Sent:** Thursday, January 12, 2023 11:59 PM
**To:** Wheeler, Stephanie G. ▮▮▮▮▮▮
**Cc:** Peikin, Steven R. ▮▮▮▮▮▮ McDonald, James M. ▮▮▮▮▮▮ ; Sassoon, Danielle (USANYS) ▮▮▮▮▮▮ Rohrbach, Andrew (USANYS) ▮▮▮▮▮▮ Raymond, Samuel (USANYS) ▮▮▮▮▮▮ Rehn, Nathan (USANYS) ▮▮▮▮▮▮ ; Croke, Jacob M. ▮▮▮▮▮▮ Friedlander, Nicole W. ▮▮▮▮▮▮ O'Hara, Daniel P. ▮▮▮▮▮▮ Ross, Luke W. ▮▮▮▮▮▮
**Subject:** [EXTERNAL] RE: FTX - Priority Requests for Documents and Presentations

Dear Stephanie,

Can you let us know the status of responses to the other priority items listed below?  We appreciate the materials you've sent to date, and if there's anything responsive to these requests in your upcoming production, it would be helpful if you could identify the documents and/or also produce them on Box.

Thank you,

Nick

**From:** Roos, Nicolas (USANYS) ▮▮▮▮▮▮
**Date:** Friday, Jan 06, 2023 at 12:25 AM
**To:** Peikin, Steven R. ▮▮▮▮▮▮ McDonald, James M. ▮▮▮▮▮▮ Levin, Sharon Cohen ▮▮▮▮▮▮ , Friedlander, Nicole W. ▮▮▮▮▮▮ , Wheeler, Stephanie G. ▮▮▮▮▮▮ , Croke, Jacob M. ▮▮▮▮▮▮
**Cc:** Sassoon, Danielle (USANYS) ▮▮▮▮▮▮ Rohrbach, Andrew (USANYS) ▮▮▮▮▮▮ Rehn, Nathan (USANYS) ▮▮▮▮▮▮ , Raymond, Samuel (USANYS) ▮▮▮▮▮▮
**Subject:** [EXTERNAL] FTX - Priority Requests for Documents and Presentations

Hello:

We're writing to request the following on an expedited basis, ideally as soon as possible.  These would be our top priorities right now:

    1.  A presentation on anything you find about political donations/contributions by Sam Bankman-Fried, ▮▮▮▮▮▮ , and Nishad Singh, including the source of funds for such contributions.

       We would need to review the 60,000 documents identified in 2 and 3 below before being in a position to make a presentation on this topic.

A-210

2. Any documents or communications relating to political donations/contributions by Sam Bankman-Fried, █████████, and Nishad Singh.

Our search terms have identified almost 60,000 documents, which are being reviewed.    We have attached four interesting documents we have identified to date.

3. Any documents or communications relating to the campaign finance laws or restrictions on political contributions.  For this one, the custodians can be limited Sam Bankman-Fried, █████████, and Nishad Singh.

Our search terms have identified almost 60,000 documents, which are being reviewed.

4. Any documents or communications relating to payments (including loans) to bank accounts in the names of Sam Bankman-Fried, █████████, and Nishad Singh.  As part of this request, please include any documents in which █████████ is involved in a discussion of such a loan or payment.

We produced what we were able to identify by email on 1/7.

5. Any Slack communication between █████████ and █████████; between █████████ and Caroline Ellison; or among ██████, Caroline Ellison, and █████████.

These documents were our formal production of 1/12, bearing Bates numbers FTX_000283963-FTX_000286875.

6. Any versions of a Signal chat called "Donation Processing."

We have not been able to identify an such Signal chat.

7. The Alameda Research "pointer" page for loans.

We produced what we were able to identify by email on 1/7.

8. A presentation on anything you can determine with respect to whether FTX.com, Alameda Research, and/or North Dimension were acting as an unlicensed money transmission business.

We need to complete our review of the 6000 documents discussed in 9 below before being in a position to make a presentation on this topic.

9. Any documents or communications about the licensing of FTX.com, FTX.us, Alameda Research, and North Dimension as a money transmission business.

Our searches have identified 6000 documents that we are reviewing.  A large percentage of these documents potentially raise privilege issues.  We produced one memo in our formal production of 1/12, bearing bates numbers FTX_000291852-FTX_000291883.

10. FTX.com account records for any accounts belonging to Sam Bankman-Fried, Nishad Singh, Caroline Ellison, Gary Wang, █████████, and █████████.

Please see the chart below and the attached spreadsheet entitled "2023.01.12 FTX Insiders Withdrawal Information.xlsx:

**A-211**

# Exhibit 11

| | |
|---|---|
| **To:** | Roos, Nicolas (USANYS)⬛⬛⬛; Sassoon, Danielle (USANYS)⬛⬛ |
| **Cc:** | Peikin, Steven R⬛⬛; McDonald, James M⬛⬛; Wheeler, Stephanie G⬛; Croke, Jacob M⬛⬛; Friedlander, Nicole W⬛; *FTXInvestigationsAssociates⬛⬛ |
| **From:** | Yeargan, Shane R. |
| **Sent:** | Fri 12/16/2022 9:57:56 PM |
| **Subject:** | [EXTERNAL] FTX |

Nick, Danielle,

We wanted to draw your attention to an entry in the FTX.us AWS user account and transaction data provided to you on December 5, 2022 via the USAFX FTP site ("AWS Data") that resembles a transfer discussed by Sam Bankman-Fried in Signal chats to address the $45 million "hole" in the FTX.us balance sheet.

The signal chats produced to you on November 23, 2022 reflect that, on November 9, 2022, Zach Dexter noted a "$45M deficit in customer assets based on Gary's spreadsheet," and argued that it was "urgently important to determine where that $45M is, and if it doesn't exist, clearly effectuate a transfer of the same amount of operating cash to the FBO accounts." FTX_000022966. Later that day, Sam Bankman-Fried asked "how much exac[tly] is needed on US for FBO." FTX_000022974. Dexter responded "45,752,126.14 but that's based on Gary's snapshot yesterday." *Id.* Bankman-Fried replied that he had "transferred 46m from info@alameda-research.com to expenses@ftx.us on ftx.us." *Id.*

In the AWS Data file named "UA Transfers," row 891 reflects a transfer (ID No. 5463239) made on November 9, 2022 of $46,000,000 in U.S. Dollars from account number ⬛ (info@alameda-research.com) to account number ⬛⬛ (fiat@ftx.us). The notes field for the transfer includes the note "Fiat accounting." Although the destination account does not match Bankman-Fried's message (*i.e.*, the transfer is to fiat@ftx.us instead of expenses@ftx.us), the timing of the transfer and remaining details are consistent with the transfer described in Bankman-Fried's message.

Best,

Shane

Shane Yeargan
Sullivan & Cromwell LLP | 125 Broad Street | New York, NY  10004-2498
T: ⬛⬛  | F: ⬛⬛
⬛⬛ | http://www.sullcrom.com

---

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.